# REGISTER OF ACTIONS
## CASE NO. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER,SARAH PONDER VS. AUSTIN MONTESSORI SCHOOL, INC.,RONALD BAKER,JINNY GONZALEZ | § § § § | Location: **345th District Court** <br> Judicial Officer: **345TH, DISTRICT COURT** <br> Filed on: **03/28/2025** |

---

### CASE INFORMATION

**Statistical Closures**
04/24/2025    Transfer - CV

Case Type: **Other Civil**

Case Status: **08/05/2025   Open**

---

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Plaintiff** | **PONDER, ROSS** | **WELBORN, AMY CATHERINE** <br> *Retained* <br> 512-200-2150(W) |
| | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** <br> *Retained* <br> 512-200-2150(W) |
| **Defendant** | **AUSTIN MONTESSORI SCHOOL, INC.** | Schulz, Christopher Houston <br> *Retained* <br> 210-840-0022(W) <br> **KOELLER, RANDEE JO WILLIAMS** <br> *Retained* <br> 512-538-5385(W) |
| | **BAKER, RONALD GRAE** | Schulz, Christopher Houston <br> *Retained* <br> 210-840-0022(W) <br> **KOELLER, RANDEE JO WILLIAMS** <br> *Retained* <br> 512-538-5385(W) |
| | **GONZALEZ, JINNY** | Schulz, Christopher Houston <br> *Retained* <br> 210-840-0022(W) <br> **KOELLER, RANDEE JO WILLIAMS** <br> *Retained* <br> 512-538-5385(W) |
| **As Next Friend Of** | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** <br> *Retained* <br> 512-200-2150(W) |
| **Minor Child** | **P., H.** | |
| | **P., L.** | |
| | **P., R.** | |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| | **EVENTS** |
| 03/28/2025 | 📄 ORIGINAL PETITION/APPLICATION (OCA) |



# TRAVIS COUNTY DISTRICT CLERK
# REGISTER OF ACTIONS
## CASE NO. D-1-GN-25-002212

| | |
|---|---|
| | Party: Plaintiff PONDER, ROSS; Plaintiff PONDER, SARAH<br>Atty/Pro Se: Attorney WELBORN, AMY CATHERINE<br>*PLAINTIFFS ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION* |
| 04/16/2025 | 🗎 MOTION<br>Party: Plaintiff PONDER, ROSS; Plaintiff PONDER, SARAH<br>*PLAINTIFFS SUPPLEMENTAL MOTION TO COMPEL MEDIATION* |
| 04/24/2025 | 🗎 CVD: TRANSFER/CHANGE VENUE (OCA) |
| 04/24/2025 | 🗎 FINAL OR PARTIAL DISPOSITION ORDER<br>Party: Defendant AUSTIN MONTESSORI SCHOOL, INC.; Defendant BAKER, RONALD GRAE; Defendant GONZALEZ, JINNY<br>*NOTICE OF REMOVAL* |
| 08/05/2025 | 🗎 OPEN: REMAND FROM HIGHER COURT (OCA)<br>*REMAND ROM USDC WESTERN DISTRICT* |
| 09/17/2025 | 🗎 ORIGINAL ANSWER/WAIVER<br>Party: Defendant AUSTIN MONTESSORI SCHOOL, INC.; Defendant BAKER, RONALD GRAE; Defendant GONZALEZ, JINNY<br>Atty/Pro Se: Attorney Schulz, Christopher Houston<br>*DEFENDANTS' SPECIAL EXCEPTIONS, ORIGINAL ANSWER, AND AFFIRMATIVE DEFENSES* |
| 10/20/2025 | 🗎 OTHER/NOTICE<br>*NOTICE OF INTENTION TAKE DEPOSITION BY WRITTEN QUESTIONS* |
| 10/20/2025 | 🗎 OTHER/NOTICE<br>*NOTICE OF INTENTION TAKE DEPOSITION BY WRITTEN QUESTIONS* |
| 10/20/2025 | 🗎 OTHER/NOTICE<br>*NOTICE OF INTENTION TO TAKE DEPOSITION BY WRITTEN QUESTIONS* |
| 10/20/2025 | 🗎 OTHER/NOTICE<br>*NOTICE OF INTENTION TO TAKE DEPOSITION BY WRITTEN QUESTIONS* |
| 11/04/2025 | 🗎 RESPONSE<br>Party: Defendant AUSTIN MONTESSORI SCHOOL, INC.; Defendant BAKER, RONALD GRAE; Defendant GONZALEZ, JINNY<br>*DEFENDANTS' FIRST AMENDED SPECIAL EXCEPTIONS, ORIGINAL ANSWER, AND AFFIRMATIVE DEFENSES* |
| 11/04/2025 | 🗎 OTHER/NOTICE<br>*NOTICE OF APPEARANCE OF COUNSEL* |
| 11/10/2025 | 🗎 PLEADING<br>Party: Plaintiff PONDER, ROSS; Plaintiff PONDER, SARAH<br>Atty/Pro Se: Attorney WELBORN, AMY CATHERINE<br>*PLAINTIFFS SECOND AMENDED COMPLAINT* |
| 11/13/2025 | 🗎 OTHER/NOTICE<br>*NOTICE OF INTENTION TAKE DEPOSITION BY WRITTEN QUESTIONS* |
| 11/25/2025 | 🗎 OTHER/NOTICE<br>*RULE 203 CERTIFICATE - BLUE MONARCH PEDIATRICS* |
| 11/25/2025 | 🗎 OTHER/NOTICE<br>*RULE 203 CERTIFICATE - BLUE MONARCH PEDIATRICS* |
| 12/02/2025 | 🗎 OTHER/NOTICE<br>*RULE 203 THE OPTOMETRY CENTER FOR VISION THERAPY* |
| 12/02/2025 | 🗎 OTHER/NOTICE<br>*RULE 203 THE OPTOMETRY CENTER FOR VISION THERAPY* |

TRAVIS COUNTY DISTRICT CLERK
# REGISTER OF ACTIONS
### CASE NO. D-1-GN-25-002212

| 12/04/2025 | OTHER/NOTICE |
| | *RULE 203 KIDWORKS THERAPY SERVICES* |

| 12/04/2025 | OTHER/NOTICE |
| | *RULE 203 KIDWORKS THERAPY SERVICES* |

| 12/08/2025 | OTHER/NOTICE |
| | *EXECUTED RETURN OF SERVICE OF SUBPOENA - RACHEL MEANS* |
| 04/24/2025 | **Statistical Closure** |
| | Transfer - CV |

## SERVICE

| 04/01/2025 | **Citation** |
| | AUSTIN MONTESSORI SCHOOL, INC. |
| | Issued |

| 04/01/2025 | **Citation** |
| | BAKER, RONALD GRAE |
| | Issued |

| 04/01/2025 | **Citation** |
| | GONZALEZ, JINNY |
| | Issued |

| DATE | FINANCIAL INFORMATION | |
|---|---|---|
| | **Plaintiff** PONDER, ROSS | | |
| | Total Charges | | 374.00 |
| | Total Payments and Credits | | 374.00 |
| | **Balance Due as of 12/09/2025** | | **0.00** |
| 03/31/2025 | Charge | Plaintiff PONDER, ROSS | 374.00 |
| 03/31/2025 | E-File Electronic   Receipt # 2025-016528 | Plaintiff PONDER, ROSS | (237.00) |
| | Payment | | |
| 03/31/2025 | Credit | Plaintiff PONDER, ROSS | (137.00) |

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on **Dec. 9, 2025**

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

**J. LUCAS**

3/28/2025 4:24 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Ruben Tamez

D-1-GN-25-002212

CAUSE NO. _____

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | 345TH, DISTRICT COURT |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| Defendants. | § | _____ JUDICIAL DISTRICT |

**PLAINTIFFS' ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION**

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend

of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and file their Original Petition and

Motion to Compel Mediation (the "Petition") against Defendants Austin Montessori School, Inc.

("AMS"), Ronald Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually

("Gonzalez") (collectively "Defendants") and would show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.      Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas

Rules of Civil Procedure.

### II.    PARTIES

2.      Plaintiffs Ross and Sarah Ponder are the parents of H.P., L.P., and R.P., minors.  Plaintiffs

reside in Travis, County, Texas.

3.      Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place

of business at 5006 Sunset Trail, Austin, Texas 78745.  Austin Montessori School, Inc. can be

served through its registered agent, Sandra Bartholome at 5006 Sunset Trail, Austin, Texas 78745.

4.      Defendant Ronald Grae Baker is an individual that resides in and can be served at his

principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at his residence at 10521 Redmond Road, Austin, Texas 78739.

5.      Defendant Jinny Gonzalez is an individual that resides in Travis County and can be served at her principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at her residence at 2907 Pops Way, Austin, Texas 78745.

### III.      JURISDICTION AND VENUE

6.      Subject matter jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.      Venue us proper in Travis County, Texas, under Texas Civil Practice and Remedies Code Sec. 15.002(a) as all or substantially all of the events that give rise to this claim occurred in Travis County.

### IV.      SUMMARY

8.      The Ponders fully embraced Montessori practices and were excited to have enrolled their children, H.P., L.P., and R.P., at AMS. Unfortunately, it became evident over time that AMS had adopted their own practices and interpreted Maria Montessori teachings in a way that was meaningfully different from other Montessori schools. AMS's administrative staff had their own beliefs and practices that were not explained prior to enrolling the Ponder children. These practices were very harmful to the Ponder children, especially H.P.

9.      The Ponders had a history of ADHD in their family and as such wanted to put their children in a Montessori School because studies have shown that an adapted educational environment, such as a Montessori school is beneficial for ADHD children. Only after contracting with AMS, were the Ponders made aware that Defendants had major issues with an ADHD diagnosis in children and treatment of ADHD with medication.



10.    Unfortunately, AMS did not ascribe to the inclusive Montessori teachings. AMS failed to admit that they discriminate against those with ADHD, did not believe children should be diagnosed with ADHD, and did not believe in the use of medication to treat the diagnosis. AMS further did not disclose that if a child had ADHD behaviors, AMS would apply their own form of quack medicine in treating the child. Nor did AMS admit that a diagnosis of ADHD and/or treatment of an ADHD diagnosis with medication would result in expulsion. Instead, they fraudulently induced the Ponders into contracts and then discriminated against H.P. and failed to provide him accommodations for his disability.

11.    Further, AMS allowed and supported Jinny Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license. The AMS administration fully supported Jinny Gonzalez and allowed her to make diagnoses of children, knowing she had no medical training. Ms. Gonzalez "diagnosed" H.P. with "an underdeveloped will" in September 2023 and offered to treat H.P.'s disorder. Based on her diagnosis, Ms. Gonzalez made specific demands of the Ponders as part of her quack medicine treatment. Her treatment plan was psychologically abusive, harmful, and disruptive.

12.    To prevent exposure of AMS's quack medical and/or manipulative controlling practices and other harmful practices, AMS refused to provide important information to the parents of the children attending AMS. The parents of AMS students were not given meaningful opportunities to communicate with the staff working with their children. H.P. was often isolated from his peers and taken out of the classroom with a staff person. The Ponders were provided very minimal information about individuals who were alone with and in charge of H.P.'s supervision. The Ponders had a right to know if this individual was qualified to be working with their child. The Ponders had a right to know what this individual was doing with their child when he was isolated

3



and H.P.'s reaction to this treatment method the school had imposed upon H.P. This communication was critical to H.P.'s medical treatment. AMS had created a medical treatment plan and then failed to allow the Ponders to access medical records, school records, and treatment records in violation of state and federal law.

13.    The Ponders were repeatedly called to AMS on short notice to pick up H.P. and/or R.P. without being given any information regarding the alleged incident that had occurred. It was impossible to discern if there were actual issues with H.P. or R.P. or the nature of the alleged concerns because AMS hid the information to the detriment of the entire Ponder family.

14.    Upon questioning AMS's quack medicine, controlling, and manipulative practices, and bringing the concerns to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling all of the Ponder children without notice, including the oldest child, who was in AMS's elementary classroom.

## V.    FACTS

15.    The Ponders first enrolled at AMS in August of 2023. The Ponder children had been enrolled in another Montessori school and the children thrived in the Montessori environment. The Ponders live very close to AMS and hoped to enjoy the opportunity to walk to school and feel a close connection to the AMS community. The Ponders were further drawn to the promise of collaboration and communication in the education of their three children and had hoped to keep all three children enrolled through their middle school education. The Ponders had believed AMS would provide a nurturing supportive environment for their children of all abilities and learning styles in keeping with Maria Montessori's teachings.

16.    The Ponders were told by the AMS administration multiple times from 2022 to 2023 that it was extremely rare to be admitted when children were over 4.5 years old. When the May 2023

4



fall admission opened, they were told to take it, as it was very unlikely that a spot would be available the following year.

17.     The Ponders enrollment contracts were for an 8 am-3:15 school day (full-time) for all three children.  The AMS administration did state that lunchtime pickup was an option if a child was not a napper, making it seem that a failure to nap would not prevent the student's success at AMS. (However, students were not required to nap after age 4.5.)  While the Ponders were required to remain under contract when two of the three children's school day hours were reduced, the reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant.  This caused great financial burden to the Ponders.

18.     H.P.'s first day at AMS was August 17, 2023.  AMS provided an update and noted that there were no issues when H.P. napped.  It was also noted that H.P. did not like his lunch, which the Ponders had prepared according to AMS's strict school lunch requirements.

19.     On August 20, 2023, H.P. turned four years old.

20.     On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time.  A meeting was immediately held the same day to address the matter.

21.     Regardless, on Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day because he was not napping.  The Ponders were told this was a transition period for AMS to allow H.P. to get used to the new classroom.  The Ponders were not given any alternatives and were told that they had to pick him up at noon.  The Ponders specifically chose to enroll their three children at AMS because it allowed for full day coverage for all their children, allowing them to work demanding full-time jobs.

22.     Throughout the next weeks, the Ponders made numerous attempts to update the school

5



regarding H.P. AMS, in turn, did not provide quality feedback but pushed H.P.'s release time to 10 am, a mere two hours after his arrival time without explanation. AMS did not offer to compensate the Ponders nor did AMS discuss letting the Ponders out of their contract. The Ponders were left financially strapped into a contract for full-time care but were receiving less than two hours a day to complete their work before they were forced to bring their young son back home.

23.    On Friday, September 8, 2023, Jinny Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation." The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred. Over the weekend the meeting was scheduled for September 11, 2023. The meeting would include the Ponders, Jinny Gonzalez and Sveta Paris. None of the classroom staff was invited to attend. Ms. Gonzalez informed the Ponders that H.P. would not be allowed to attend AMS until September 12, 2023, meaning the Ponders had to arrange childcare for H.P so that they could attend the meeting.

24.    At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative." AMS notified the Ponders that instead of trying to work with H.P. on his behaviors they were "going to control the systems." It was at this meeting and in her follow-up correspondence that Ms. Gonzalez diagnosed H.P. and laid out her treatment plan for H.P.

25.    Ms. Gonzalez's medical treatment plan required that the Ponders follow a consistent routine in the mornings and even recommended that they "modify the time each family member goes to bed and wakes up." Oddly, this consistent routine was not applied at AMS and they would disrupt the schedule of the child or parent regularly.

26.    Ms. Gonzalez instituted rules for speaking to H.P., requiring that the Ponders only provide brief and factual information to their son and that they acknowledge his feelings only with humor

6



and lightness.

27.    Ms. Gonzalez forbade the Ponders from walking to school and required that H.P. arrive by car at exactly 8 am daily. She further demanded that H.P. be seated in the car closest to the entrance and that the Ponders were not allowed to exit the vehicle or help H.P. exit the vehicle.

28.    Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until 10 am, meaning he would attend school for only two hours a day, until another meeting could be held in two weeks. During this two-week period Ms. Gonzlez and AMS were treating H.P.'s condition, she would determine if H.P. made progress in his treatment that would allow H.P. to attend for a longer day.

29.    AMS and Ms. Gonzalez also required that the school counselor observe H.P. Ms. Gonzalez stated that the treatment plan would "break the habit" of H.P. being in distress.

30.    AMS informed the Ponders that the latest H.P. would be allowed at AMS was noon, even after they had "controlled the systems" with their medical treatment plan. Ms. Gonzalez also demanded that the Ponders keep their phones on at all times to accommodate immediate pickups when AMS required it.

31.    On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders. This was scheduled for September 27, 2023.

32.    On September 15, 2023, the Ponders requested an update on H.P. and asked if he could gradually leave a little later. Ms. Gonzalez informed the Ponders that this would not be an option and that H.P. would continue attending school until 10 am. Another meeting was scheduled on Thursday, September 21, 2023 to discuss the progress of H.P.'s treatment of his condition.

33.    On September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to

7



cancel the meeting due to being very busy. They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

34.     At the September 26, 2023, meeting, additional requirements were added for the Ponders by Ms. Gonzalez for the treatment of H.P.'s condition. This included feeding H.P. **on a tray in the bathroom** each morning instead of with his siblings.

35.     On September 29, 2023, the Ponders were able to have a call with H.P.'s Guide to discuss his improving progress. On October 2, 2023, H.P.'s teacher informed the Ponders that H.P. had been improving and had "the best day at school so far." There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

36.     On December 8, 2023, AMS stated that they were honored to work with the Ponders and that with regard to H.P., they "deeply desired to meet his needs." They were very positive and noted the Ponders followed the treatment plan that AMS had instituted through. Ms. Gonzalez. However, they still refused to allow H.P. to attend school full-time.

37.     AMS suggested hiring an occupational therapist to work with H.P. At the recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an occupational therapist but yet another unqualified medical provider that Ms. Gonzalez and AMS recommended as part of their quack medicine. This caused a delay in getting H.P. an OT evaluation.

38.     On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. She noted that she and Ms. Gonzalez were best suited



for determining when H.P. could extend his day.

39.     Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m. Again, the contractual terms and payments were for full day coverage, not a two-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

40.     On January 23, 2024, AMS informed the Ponders that they were yet again "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time. The Ponders provided more recent evidence from the school of H.P.'s positive improvements.

41.     On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. When notified of the family emergency, AMS refused to accommodate H.P. staying for a full day as contracted. They even denied a request to allow him to stay when Ross had to leave town and was unable to pick up H.P. at 11:45 am. Ross Ponder was trying to leave town to see his brother before life support was pulled. The school administration offered no meaningful condolences and did not offer reasonable courtesies for the parents.

42.     On February 20, 2024, H.P. turned 4.5 years of age. This is significant because it is AMS policy that children 4.5 years of age or older do not have to nap in Casita and are invited to stay until 3:15 p.m. daily without a nap. H.P., like all other children, should have been allowed at AMS until 3:15 p.m. daily even if he was not taking a nap. Unfortunately, AMS chose to discriminate against H.P. and refused to treat him as the other students and continued to demand that he nap.

43.     H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024. On May 16, 2024, Jinny Gonzalez informed the Ponders that they again



had staffing issues that prevented H.P.'s teacher, the one who interacted with him daily, to attend the meeting on May 17, 2024.

44.    At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended-day, as they had contracted for full-time school. The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

45.    On July 2, 2024, immediately upon her return from vacation, H.P.'s teacher communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.

46.    By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes. While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early. Additionally, AMS began requiring that R.P. also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

47.    On September 11, 2024, the Ponders notified the school that the family's beloved dog was going to have to be put down.

48.    On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns. On September 12, 2024, the AMS called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early. The Ponders were informed that AMS was "unsuccessful" and that they were not fulfilling R.P.'s need for sleep and rest. When AMS demanded the Ponders pick up their children with unreasonable notice, the Ponders made clear that they were not available because their beloved family dog, Bear, was actively dying of cancer

10



that afternoon in their home. Bear died around 3 pm and the Ponders were forced to coordinate emergency vet transportation while simultaneously coordinating the school pickups AMS demanded.

49.     AMS then determined that R.P. did not fit their program because she was a bad napper. The Ponders had multiple communications with AMS during the first few weeks of school and were informed she was doing well, and no napping concerns were raised. The demand that she be picked up early was shocking to the Ponders. R.P. had no problems with napping at her prior school and no concerns had been raised at AMS. (Interestingly, R.P. has no napping issues at her current Montessori school.)

50.     On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS. The Ponders asked for a review of the parent partnership agreement, as clearly AMS was in breach.

51.     On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her treatment plan for December 5, 2024. The Ponders asked to discuss if any interim changes needed to be made and informed AMS that H.P. would be going to the doctor to determine if he had ADHD. AMS refused to fill out the requested Vanderbilt questionnaire.

52.     On December 3, 2024, H.P. was formally diagnosed with ADHD. The Ponders provided the diagnosis and medical documentation to AMS immediately.

53.     On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think AMS was the right school for H.P. Ms. Gonzales stated that she did not believe in medicating a child with ADHD and did not approve of the treatment plan of H.P.'s physician. In fact, with the support of AMS, Gonzalez specifically discussed her medial plan, delaying medicating H.P. Oddly, in the meeting report, Ms. Gonzalez



specifically noted that some children require accommodations and that it is the Montessori philosophy to use every resource available to aid in a child's development and stated that they "deeply desired to meet his needs." H.P.'s Guide only attended the first 15 minutes, but could not stay for the whole meeting due to staffing issues.

54.     On December 6, 2024, Jinny Gonzalez, stated that H.P. could no longer benefit from a Montessori education. AMS shortened H.P.'s days to half days.

55.     On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects on the child. The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication.

56.     On December 16, 2024, the Ponders met with Ronald Grae Baker and School Advisor, Jeff Schneider. Mr. Baker told the Ponders that AMS can accommodate an ADHD diagnosis and medicinal treatment. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates on H.P.'s response to medicine.

57.     Over the holidays, the doctor was able to work to find the proper medication dose to best assist H.P. This led to significant improvement in his ADHD behaviors.

58.     From December 16, 2024, to January 27, 2025, AMS refused to provide requested feedback to the Ponders on H.P.'s response to ADHD medication. Ronald Grae Baker falsely promised to withhold an enrollment decision for the following year until the middle of the spring semester to allow AMS to observe and update the Ponders on H.P.'s response to medication.

59.     The Ponders made repeated requests for an accommodation meeting and requested that Ms. Gonzalez be taken off the team, due to her alternative treatment methods not being accepted over those of H.P.'s physician.

60.     On January 17, 2025, Ronald Grae Baker sent correspondence stating that AMS would not



be offering an enrollment contract for the following year to H.P. Mr. Baker also chastised the Ponders for requesting that Ms. Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine.

61.     On January 20, 2025, the Ponders again requested a meeting to discuss the observations of H.P. in the weeks after he had started ADHD medication. Once the Ponders shared H.P.'s diagnosis, the team no longer worked to help H.P. but alienated him and discriminated against him due to his disability.

62.     On January 24, 2025, the Ponders met with Ronald Grae Baker and Jeff Schneider, School Advisor. In preparation for this meeting, they requested to discuss communication issues and noted that these issues were pervasive throughout the school, noting other parents had similar concerns. The Ponders were concerned with the lack of communication and the systematic barriers that prevented parents from being informed of concerns regarding their children. AMS was reminded of the need to provide reasonable accommodations to H.P. The Ponders noted that no incidents had been report at AMS since winter break, and that H.P. was responding well to medication, including at church, YMCA, and other common places. Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

63.     On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services. The fact that this complaint was filed was made known to AMS on January 25, 2025. The Ponders chose to file this reported based on their experiences and after reviewing AMS's most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS.



64.    On January 28, 2025, Ronald Grae Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including their quack medicine.  The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make change and to help all students, an effort to gain community support and raise concerns, as the discrimination and retaliation were factors all parents should be informed of when renewing enrollment.  The WhatsApp group was a private, optional, parent run platform that was not associated with the school administration.  A coffee was also held at the Ponders home to further discuss systematic communication issues affecting many students at AMS.

65.    On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. had ADHD but that he would be placed in a standard classroom and did not need special education or occupational therapy. The results were immediately distributed to AMS and the Ponders requested a meeting with Gina Applegate, the school support specialist, Jinny Gonzalez, and H.P.'s guide.  The Ponders included Jinny Gonzalez in this communication because Ronald Grae Baker had stated it was a requirement for the continued enrollment of L.P. and R.P. in his email dated January 28, 2025.

66.    On January 30, 2025, Ronald Grae Baker sent a letter to all parents stating that the information provided by the Ponders was "misleading" and that "false claims" were made.

67.    On January 31, 2025, AMS terminated the enrollment of all three Ponder children.  H.P. was denied full and equal educational access, denied disability accommodations, as the enrollment was terminated when the school received notice that H.P. had a disability, ADHD.  Additionally, AMS terminated L.P. and R.P. because the Ponder parents' "actions were detrimental to the school."  Clearly the actions referred to are the filing of the HHS complaint, advocating for

14



disability accommodations, and reaching out to other parents to discuss the concerns and determine if others were in a similar situation. The termination of the remaining Ponder children was retaliation.

68.    The impact on the family has been extreme. While attending the school, the failure to institute a 504 plan for H.P. caused developmental delays and extreme anxiety for H.P. H.P. was forced to attend expensive outside services at the demand of AMS.

69.    H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS. The level of torture he experienced was not understood until he was placed in a new school, where he is not only thriving, but has had zero behavior problems and is a model student. Clearly, the root of his behavior problems stemmed from AMS's intentional and negligent failure to address his needs. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

70.    The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family. The Ponders entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to walk their children to school and were told when and how to wake their children each morning. Maria Montessori stated, "We must respect the child, and he must understand that he is respected." AMS neither respected nor made the Ponders feel respected. Further, the Ponders were forced to spend thousands of dollars on demanded outside OT that did not address H.P.'s ADHD.

71.    Due to the change in hours, Ross Ponder was forced to quit his job, to allow him to be available to pick up the children on a moment's notice. This has been detrimental to his income in both the long and short term.



72.     The impact on Sarah Ponder's career is significant. Some of her clients were in the AMS community.  Sending a letter to the entire community defaming the Ponders will have serious long-term impacts on her company's growth.  Ms. Ponder is aware of at least one client that she lost due to this entire situation.

73.     The impact on the children has been significant.  They were forced from their school and the friends they had expected to go to school with until they graduated middle school.  They were not able to be immediately placed in school, and the oldest child is in elementary school, thus causing a severe impact to her education.

74.     The expulsion caused extreme mental anguish for the entire family.  Maria Montessori stated, "The things the child sees are not just remembered; they form part of his soul."  This will forever impact the Ponder family.

## VI.     CAUSES OF ACTION

**A.     Count 1- Negligence**

75.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

76.     The occurrences made the basis of this suit and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligent conduct of Defendants.  Defendants were negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

    a. Failing to exercise the care necessary under the circumstances;

    b. Failing to do what a reasonable daycare would have done under the circumstances;

    c. Failing to intervene to ensure a child's safety;

    d. Failing to provide proper supervision;

16



e. Failing to properly hire, qualify, train and supervise its employees;

f. Failing to provide reasonable accommodations; and

g. Failing to adhere to the Texas Minimum standards for childcare.

77.    Defendants had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

78.    Defendants had a duty to maintain a safe environment for children in its care;

79.    Defendants had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

80.    Defendants breached the duty of care by failing to care for the children, failing to supervise the children, failing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

81.    Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B.    Count 2- Negligence *Per Se***

82.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

83.    Defendants failed to exercise the mandatory standard of care in violation of the minimum standards for childcare.

84.    Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Repeatedly, AMS failed to use praise and encouragement, instead used humiliation and rejection with H.P.

85.    Texas law has specific maximums on the number of children that can be in a room. 26 TAC

17



Sec. 746.1601-1615. These numbers were exceeded or the Ponder children were sent home to accommodate new students after the holidays.

86.     Accommodations recommended by qualified professionals and medical experts were not provided to H.P. in violation of 26 TAC 746.2202.

87.     AMS failed to encourage H.P. to express feelings and failed to give him appropriate attention. 20 TAC 746.2601

88.     AMS failed to comply with the regulations regarding naptimes and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321.

89.     AMS failed to notify the Ponders that AMS refused to administer or allow students to take ADHD medications in violations of 26 TAC Sec. 746.3811.

90.     AMS failed to follow the laws regarding release of children. 26 TAC Sec. 746.4103

91.     Additionally, according to AMS staff, AMS had 39 children in the Casita at one time, the location used for young children to nap. Clearly the state of Texas created these regulations to protect children. The violation of these statues harmed the Ponder family.

92.     Defendant Gonzalez violated the law by practicing medicine without a license. Defendants AMS and Baker supported and assisted Gonzalez in her medical endeavors.

93.     Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

94.     Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.

95.     As a result of the Defendants' illegal acts and/or omissions in violating the statutes, Plaintiffs sustained injuries.

**C.     Count 3- Gross Negligence**

96.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully



herein.

97.     Defendants' conduct was more than momentarily thoughtlessness or inadvertence. Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

98.     Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs. Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiffs and/or other similarly situated individuals. Plaintiffs acted with malice. Plaintiffs suffered damages and further seek punitive damages.

**D.     Count 4- Negligent Activity**

99.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

100.    Defendant AMS is the owner, operator and possessor of the daycare premises.

101.    Plaintiffs H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owned a duty to exercise reasonable care.

102.    Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

103.    Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

**E.     Count 5- *Respondeat Superior***

104.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

19



105.    The negligence, carelessness, and callousness of Defendant AMS's employees proximately caused the damage and loss suffered by Plaintiffs.   At all times material to this action, Defendant AMS's employees were acting in the course and scope of their employment.   Accordingly, Defendant's may be held responsible for its employees' negligence under the doctrine of *respondeat superior.*

**F.    Count 6- Violations of the Americans with Disabilities Act (ADA)- Title III**

106.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

107.    Defendants discriminated on the basis of H.P.'s disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III of the ADA, 42 U.S.C Sec. 12182(a) and the title III implementing regulation at 28 C.F. R. Part 36.

108.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by failing to reasonably accommodate his disability while he attended school there in violation of 42 USCA Sec 12181(7)(J).

109.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by dismissing him from school for behaviors that were a manifestation of his disability in violation of 28 CFR Part 36.

110.    Defendant AMS discriminated against H.P. by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 USC Section 12182(b)(2) (A) (ii) and its implementing regulation 28 C.F.R. Sec. 36.302.



111.    Defendant AMS's action in disenrolling H.P. on the basis of disability, constitutes a denial of the opportunity for H.P. to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity in violation of 42 U.S.C. Sec. 12182(b)(1)(A)(i) and 28 C.F.R. Sec. 36.202.

112.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**G.    Count 7- Violations of Section 504**

113.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

114.    Defendants excluded Plaintiff H.P. from participation in activities and programs, and was denied the benefits of the services, programs, and activities and was subjected to discrimination because of his disability, ADHD.

115.    The actions of Defendant Gonzalez created an interference of professional bad faith or gross misjudgment.

116.    The actions of Defendants were done out of prejudice, malice, ill will, and/or spite against Plaintiffs.

117.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**H.    Count 8-Breach of Contract**

118.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

119.    Plaintiffs entered into a valid contract for the provision of childcare services for their three minor children. There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

120.    Plaintiffs tendered performance according to the terms of the contact.



Montessori teaching paradigm and that they would offer full-day schooling for the three children, meaning the children would attend AMS from 8 am to 3 pm Monday-Friday. The Ponders relied on these assertions when entering into contracts with AMS.

131.    The mission of the school stated that they are inclusive and "cultivate compassion and respect." Unfortunately, the administration of AMS lacked compassion and respect for the entire Ponder family.

132.    The teachings of Montessori include "protecting the autonomy and integrity" of a student and developing a program that follows "the developmental states manifested by the children" and "honor and respect each child's individual timetable for development"- (Bryant Goertz, Donna. *"Children Who Are Not Yet Peaceful: Preventing Exclusion in the Early Elementary Classroom,"* [Frog, Ltd. Berkeley, CA, 2001.]) The Montessori teachings do not include discrimination and refusal to comply with 504 and provide accommodations.

133.    The Ponders were further induced to reenroll for a second year. The AMS handbook clearly stated that the Guides would be trained by AMI and would engage in the "most authentic standard of Montessori pedagogy" and that the Guides would have an understanding of developmental milestones and ensure a structured learning approach that aligns with the AMI guidance.

134.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging. These principals were not utilized with H.P.

135.    The AMS parent handbook outlines procedures for programmatic changes that were not followed. The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations regarding the Ponder children, or hold



requested conferences.

136.    AMS further stated that it would not discriminate and comply with ADA and Section 504 of the Rehabilitation Act of 1973, as amended.  Ronald Grae Baker was the alleged coordinator, yet the school insisted that Jinny Gonzalez be the point person and Ronald Grae Baker failed to address or even discuss violations.

137.    AMS fraudulently induced the Ponder family to contract for all three children's education. AMS breached its contracts with the Ponders by failing to provide 504 services for H.P., failing to allow the children to receive full day education, and failing to follow the school policies.

138.    As a result of Defendants fraudulent inducement, Plaintiffs suffered harm, injury and damages.  Further, Plaintiffs seek attorney fees and treble damages.

**K.    Count 11- Civil Conspiracy**

139.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

140.    Defendants acted in combination to seek or accomplish a course of action to commit unlawful acts. There was a meeting of the minds of the Defendants to agree to accomplish the above stated unlawful acts.  Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement.  As a result, Plaintiffs suffered harm, injury and damages.

**L.    Count 12- Retaliation**

141.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

142.    Plaintiffs and Defendants did not agree on the use of medication to treat a child who suffers from ADHD.  While the school did not have a no medication policy, Defendant Gonzalez clearly



felt that it was unacceptable to treat H.P. in the manner his physician recommended. Ms. Gonzalez was not a doctor and had no training or experience to justify her position or the action plans she required. Ms. Gonzalez had very specific requirements for treatment of H.P., both at home and at school, including requiring the Ponders to drive to school, wake up children in a certain order, and other questionable commands. AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine. The Ponders voiced concern over these methods and were shut down by Ms. Gonzalez. Further, she failed to provide insight on what was occurring in the classroom or how any of her requirements would provide any effective change.

143.    When the Ponders asked to discuss with another staff member and remove Defendant Gonzalez from H.P.'s case, Defendant Baker refused to accommodate, chastised the Ponders for their request, fully supported Ms. Gonzalez, and expelled H.P. in retaliation for Plaintiff's medicating H.P. The school's support of Ms. Gonzalez's quack medicine is very concerning, as she is not a physician nor trained in any way on the treatment of children with ADHD.

144.    Defendant AMS has explicitly stated that it follows 504 regulations. However, AMS vehemently supported Ms. Gonzalez's refusal to follow 504 procedures. When the Ponders questioned her, AMS retaliated by expelling H.P. and days later, all of the Ponder children.

145.    Defendants retaliated for the filing of a complaint with the HHS by threatening and later expelling the Ponder children.

146.    The Ponders care not only about their own children but about the entire AMS community. When they learned that H.P. had been expelled, they decided to bring their concerns to the attention of other parents, in hopes of making AMS better for all students attending. The policies and procedures were not followed with H.P. As such, the Ponders reached out to the community so that the community, as a whole, could work together to find ways to foster better communication.



The Ponders posted a letter to all parents on the WhatsApp on January 28, 2025. The letter did not violate any rules of AMS. AMS had the letter taken down on January 30, 2025. Yet, as a further act of retaliation, AMS chose to send an email making defamatory statements against the Ponders to all families at AMS.

## VI.    DAMAGES

147.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

148.    Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

1.  Loss of value of the tuition/fees that Plaintiffs paid for the childcare;

2.  Loss of wages for Mr. and/or Ms./ Ponder incurred by having to stay home and care for H.P. and R.P when they were sent home early and while they began the long, slow, and careful process of finding another school/childcare to entrust their children, after undergoing such a traumatic ordeal;

3.  Medical expenses for the reasonable and necessary examination of H.P.;

4.  Medical expenses for the reasonable and necessary family and individual counseling and therapy for Plaintiffs;

5.  The cost of the unnecessary and inappropriate therapies and quack medicine that Defendants required Plaintiffs seek for H.P.;

6.  Physical pain and suffering in the past;

7.  Physical pain and suffering, in reasonable probability, sustained in the future;

8.  Mental anguish in the past;

9.  Mental anguish, in reasonable probability, sustained in the future;



10. Lost wages in the past;

11. Lost wages, in reasonable probability, sustained in the future;

12. Loss of wage-earning capacity in the past;

13. Loss of wage earning capacity, in reasonable probability, sustained in the future;

14. Loss of normal enjoyment of the pleasure of life in the past;

15. Loss of normal enjoyment of the pleasure of life, in reasonable probability, sustained in the future;

16. Treble damages;

17. Punitive damages;

18. Pre-judgment interest;

19. Post-judgment interest;

20. Court costs;

21. Reasonable and necessary attorney fees; and

22. Costs of suit

## VII.    CONDITIONS PRECEDENT

149.    All conditions precedent have been performed or occurred, except for mediation which is addressed below.

## VIII.    JURY DEMAND

150.    Plaintiffs respectfully demand the right to have a trial by jury and hereby tender the jury fee.

## IX.    MOTION TO COMPEL MEDIATION

151.    The contracts between the parties require pre-suit mediation.  Despite multiple attempts to schedule mediation, Defendants have refused to get a mediation scheduled.



152.    Defendants move for the Court to compel mediation as per the agreements between parties.

## X.    PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial Plaintiffs have and recover:

1.  Judgment against Defendants for a sum in excess of the minimum jurisdictional limits of this Court;

2.  Pre-judgment at the highest legal rate;

3.  Reasonable and necessary attorney's fees;

4.  Taxable Court costs;

5.  Post-judgment interest on the above amount at the highest legal rate; and

6.  Such other and further relief to which Plaintiff may show themselves justly entitled in law or equity.

Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390

By:___*/s/ Amy C. Welborn*_____
    Amy C. Welborn
    State Bar No. 24012853
    amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS



## **CERTIFICATE OF SERVICE**

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 28th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com



C I T A T I O N

THE STATE OF TEXAS

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

vs.                                                                                                          , PLAINTIFF(S)

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

                                                                                                             , DEFENDANT(S)

TO:     **JINNY GONZALEZ**
        **5006 SUNSET TRAIL**
        **AUSTIN TX 78745**
        **OR**
        **2907 POPS WAY**
        **AUSTIN TX 78745**
        **OR WHEREVER FOUND**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office. **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX  78759**



Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

R E T U R N

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at
_____ within the County of _____ on the _____ day of
_____, _____, at _____ o'clock ____M., by delivering to the within named
_____, each in person, a true copy of this citation together with the **PLAINTIFFS**
**ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached such copy of such citation to such copy
of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

                                              _____
                                              Sheriff / Constable / Authorized Person
Sworn to and subscribed before me this the
_____ day of _____, _____.            By:_____

                                              _____
                                              Printed Name of Server
_____
Notary Public, THE STATE OF TEXAS                   _____ County, Texas
**D-1-GN-25-002212**
                                              **SERVICE FEE NOT PAID**



C I T A T I O N
THE STATE OF TEXAS
**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

vs.                                                                                                      , PLAINTIFF(S)

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

                                                                                                      , DEFENDANT(S)

TO:    AUSTIN MONTESSORI SCHOOL, INC.
       BY SERVING ITS REGISTERED AGENT SANDRA BARTHOLOME
       5006 SUNSET TRAIL
       AUSTIN TX 78745

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the <u>PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION</u> in the above styled and numbered cause, which was filed on <u>MARCH 28, 2025</u> in the <u>345TH DISTRICT COURT</u> of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, <u>**APRIL 01, 2025**</u>

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX  78759**



Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock _____M., and executed at _____ within the County of _____ on the _____ day of _____, _____, at _____ o'clock _____M., by delivering to the within named _____, each in person, a true copy of this citation together with the <u>PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION</u> accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____
Notary Public, THE STATE OF TEXAS
**D-1-GN-25-002212**

_____ County, Texas

**SERVICE FEE NOT PAID**



C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

vs.

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:   **RONALD GRAE BAKER**
      **5006 SUNSET TRAIL**
      **AUSTIN TX  78745**
      **OR**
      **10521 REDMOND ROAD**
      **AUSTIN TX**
      **OR WHEREVER FOUND**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX  78759**

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock _____M., and executed at
_____ within the County of _____ on the _____ day
of _____, _____, at _____ o'clock _____M., by delivering to the within named
_____, each in person, a true copy of this citation together with
the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

_____
Notary Public, THE STATE OF TEXAS
D-1-GN-25-002212

**SERVICE FEE NOT PAID**



4/16/2025 9:13 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Candy Schmidt

CAUSE NO. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
|     Defendants. | § | 345th JUDICIAL DISTRICT |

## PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL MEDIATION

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and Supplemental Motion to Compel Mediation (the "Petition") against Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually ("Gonzalez") (collectively "Defendants") and would show the Court as follows:

## I. INTRODUCTION

1.    This Motion seeks to enforce the terms of a written contract between the Parties, specifically the "AMS Year-Round All School Enrollment Agreement " (hereinafter "Contract") and attached as Exhibit 1 and incorporated herein by reference.

2.    The Contract contains a provision requiring the parties to participate in non-binding mediation prior to initiating litigation.



## II. ARGUMENT

3.      The Parties have a dispute regarding Plaintiffs' termination, discrimination, retaliation, and other claims as stated in the Plaintiffs' Original Petition and Motion to Compel Mediation, incorporated herein by reference.  The dispute between the Parties falls squarely within the scope of the mediation clause and directly relate to the terms of the Contract.

4.      Paragraph 12 of the Contract, titled "Governing Law/Disputes/Waiver of Jury Trial," states, in relevant part: "In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation." See Exhibit 1.

5.      Plaintiffs have requested that Defendants mediate this matter prior to the filing of litigation and were unsuccessful.  Suit was filed seeking this Court to compel mediation as per the contract.

6.      A valid and enforceable contract exists between the Parties. The Contract clearly and unequivocally requires the Parties to participate in non-binding mediation before resorting to litigation.

8.      Plaintiffs have complied with the terms of the contract by attempting to resolve the matter informally and requesting pre-suit mediation, but these attempts have been unsuccessful.  To date, Defendants have refused to participate in mediation, violating the terms of the contract.

11.     This court has authority to order the parties to mediation under Texas Civil Practices and Remedies Code Sec. 154.021.

2



## III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully requests that the Court:

1. Grant the Motion to Compel Mediation;

2. Order the Parties to participate in non-binding mediation within the next 30 days with the Parties equally bearing the cost of mediation;

3. Stay any further proceedings in this case, including deadlines for pleadings and discovery, until the mediation has been completed or has reached an impasse;

4. Grant any such other and further relief, in law or equity, to which Plaintiffs may be justly entitled.


Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390


By:___/s/ Amy C. Welborn_____
    Amy C. Welborn
    State Bar No. 24012853
    amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS

3



## CERTIFICATE OF CONFERENCE

I hereby certify by my signature above that I have communicated by phone and email with counsel Chris Schiltz and we were unable to agree to mediation.

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 16th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com



**EXHIBIT 1**

██████ **Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood



**AMS Year-Round All School Enrollment Agreement 24-**

**Introduction**

██████

Entering Year: **2024 - 2025** Date of birth: ██████

This contract ("Contract") is between Austin Montessori School ( "School") and the parent or legal guardian ("Parent," singular or plural, as applicable) of the above-mentioned student ("Student"). Parent must complete and sign this Enrollment Contract and Tuition Schedule by clicking "submit" to the School for processing. Once submitted, a copy is available for your records in the Files & Forms section of your profile.
                                    **Parent Partnership Agreement**

By signing this contract, Parent agrees to the policies and guidelines outlined in the AMS Parent Community Handbook and Partnership Agreement.
                        **This is a legally binding contract. Read it carefully.**

**Tuition and Fees**

Annual tuition is listed under the "Expenses" section below. Parent agrees to pay the tuition specified below according to the terms of this Contract. Parent acknowledges that the tuition changes as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the published tuition and fee schedule:
AMS Tuition and Fee Schedule 2024 - 2025.
            **New Family Fee**

A family new to Austin Montessori School will be charged a one-time fee of $500. This fee will be added to the Smart Tuition account and is in addition to the tuition and fees listed on the Enrollment Contract.

**Expenses**

Children's House - Year Round $20,265.00    **Total Expenses:** $20,265.00

**Total Due: $20,265.00**

**Due at Enrollment**

Deposit $300.00    **Total Due at Enrollment:** $300.00

Please review the descriptions below for the available payment plans, and then choose your desired option in the section below.



**AMS Year-Round All School Enrollment Agreement 24-**

- •<u>One Payment Option:</u> payment of tuition for the Student's program to be paid in one payment on or before June 3, 2024.
- •<u>Monthly Payment Plan Option for Regular Year Programs:</u> payment of tuition for the Student's program to be paid in 12 equal payments, with the first payment due on August 3, 2024, and on the 3rd day of each month thereafter through July 3, 2025. The monthly payment plan option will incur a fee of $27.08/month ($325 total/year)

12 Month Plan
12 Payments


**Terms of Enrollment**

**Austin Montessori School Terms of Enrollment**

Parent understands that all persons responsible for paying any of the amounts due under this Contract must execute the Contract and that all such persons are jointly and severally liable for the amounts due as set forth herein. Parent's signature and/or initials on this Contract evidence Parent's understanding and agreement to the terms of this Contract, as follows:

1. •**Enrollment**: Student will be enrolled for the 2024-2025 academic year. Parent is aware that a final determination of grade and classroom placement will be made by the School in accordance with the School's admissions policies and these decisions are made at the School's discretion. This Contract is valid only for the academic year stated and does not entitle Student to any future enrollment.

2. •**Tuition Obligation**: Parent understands that Student is being enrolled for the academic year covered by this Contract (or remaining portion thereof, in the case of a mid-year enrollment or mid-year move to another level). Parent acknowledges that the tuition and fees change as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amount as specified in the School's published tuition and fee schedule. Parent is responsible for the full tuition amount through the end of the academic year even if Student is withdrawn from or ceases to attend the School. Parent further understands that the overhead expenses of the School do not diminish with the departure of a student during the course of the school year and agrees that it is impossible for the School to determine at the time of the execution of this Contract the damage and loss to the School that would occur due to the later cancellation/withdrawal of students who have enrolled. Therefore, once this Contract has been submitted to the School, Parent becomes liable for the tuition, according to the following schedule:
- •Through May 1, 2024 – responsible for 25% of annual tuition payment
- •After May 1, 2024 – responsible for 100% of annual tuition payment

3. •**Termination Procedures**: Parent may terminate this Contract by submitting a WRITTEN termination notice ("Termination Notice") to the Head of School by May 1, 2024 ("Partial Release Date"). The Termination Notice must (a) be dated, (b) state the Student's name, (c) provide a reason for the termination of the Contract; and (d) be RECEIVED by the Head of School on or before the Partial Release. If such Termination Notice is received before the Partial Release Date, Parent will be partially relieved of tuition obligation as provided in Paragraph 2, above.

4. •**School/Family Partnership**: A positive and constructive working relationship between the School and Parent is essential to the fulfillment of the School's educational purpose. Thus, the School reserves the right not to extend the privilege of enrollment or re-enrollment to Student if the School reasonably concludes that the actions of Parent make such a positive and constructive relationship impossible or otherwise seriously interfere

██████ **Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood





**AMS Year-Round All School Enrollment Agreement 24–**

with the School's accomplishment of its educational purpose. Moreover, the School reserves the right to dismiss Student at any time if, in the judgment of the Head of the School, conduct of anyone directly associated with Student, including but not limited to Student's Parent, in or out of the School, is not in keeping with the School's accepted standards or principles. There will be no refund of tuition in the case of such dismissal and any unpaid balance is payable in full according to the terms of this Contract. If for any reason, the School administration determines that it is in the best interest of the School, The School also reserves the right to withdraw an offer of enrollment or re-enrollment at any time, and/or to nullify an executed Enrollment Contract, if the School administration determines, in its sole discretion, that doing so is in the best interest of the School.

5.•**Tuition Assistance**: Parent understands that if the Student has applied for or received a tuition assistance award toward the amount of tuition hereunder; the Parent remains primarily responsible for all obligations under this Contract. Upon Parent's acceptance of this contract and the tuition assistance award, Parent agrees to pay the balance due pursuant to the payment plan established by the School.

6.•**Probationary Enrollment for New Students:** All new enrollments are probationary for an eight-week period. If the Student is concerned that this enrollment is not in the best interest of the child or the classroom, a conference will be held before the end of the eight-week period with the Head of School, Level Director, Director of Enrollment Management, and parents. Possible outcomes include an agreement to terms of continued, conditional enrollment, or withdrawal of enrollment. The decision to continue or withdraw enrollment is at the sole discretion of the school and is final. The school reserves the right to refund any portion of the tuition based upon the student's withdrawal from the school. Any refund shall be at the sole discretion of the school. In accordance with Austin Montessori School's admissions policy, enrollment beyond the eight-week period lies solely at the discretion of Austin Montessori School.

7.•**Termination of Student's Attendance**: The School has the right to suspend or terminate any Student if (i) in the sole discretion of the School administration, it is determined that the continued attendance of the Student is detrimental to the School community, the Student or to the other students of the School, or (ii) the Parent has failed to pay all or any part of the tuition or fees required under this Contract.

8.•**School Rules**: Student's enrollment at the School is subject to the general statements, rules regulations, conditions, traditions, and financial terms contained in the School's Community Handbook and other published documents, which may be amended from time to time. Parent acknowledges that Parent and Student must abide by such School rules and guidelines.

9.•**Transcripts/Records**: All accounts must be paid in full before records and transcripts can be released or transferred to other schools. Student will not be allowed to continue to attend classes or other programs or activities unless tuition and fees are paid by stated deadlines (or until Parent makes other written arrangements acceptable to the School). The School shall have the right to take such legal action as it may deem appropriate to collect all amounts which are not paid when due. In the event that the School takes legal action to enforce the terms of the Contract, Parent shall be responsible for all costs, including reasonable attorney's fees and costs (whether incurred before, during or after the filing of the lawsuit).

10.•**Delinquent Payments**: Parent understands and agrees that a late charge of $35 will be added for any payment not received within 10 days after the due date ("Late Payment"). Parent understands that at no time does the School intend to contract for, charge, or receive interest in excess of the maximum amount permitted by law and, if it is determined that the School has done so, the School shall credit the excess to any remaining tuition or fees due under the Contract or refund the excess to Parent. In the event that a Parent is more than 90 days in arrears with any tuition or fees due under the Contract, the School reserves the right to accelerate the remaining tuition and fees due under this Contract.

11.•**Release of Student Records**: Parent consents and holds the School harmless for the release of Student's records and information upon request by an education institution or law enforcement agency. Parent also releases and holds the School harmless from any liability stemming from such use, disclosure, or release of Student's records or information.

12.•**Governing Law/Disputes/Waiver of Jury Trial**: This Contract shall be governed under the laws of the State of Texas. In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation. The costs of mediation shall be equally borne between the parties. In the event of litigation, the venue of any action hereunder shall lie exclusively within the Circuit Court of Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury.

**Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood





## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Amy Welborn on behalf of Amy Catherine Welborn
Bar No. 24012853
amy@welborn-law.com
Envelope ID: 99772682
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL
MEDIATION
Status as of 4/17/2025 2:43 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chris Schulz | | cschulz@slh-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on Dec. 9, 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS



4/24/2025 5:55 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Daniel Smith

Cause No. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| *Defendants.* | § | 345TH DISTRICT COURT |

## NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THIS COURT:

**PLEASE TAKE NOTICE** that on April 24, 2025, Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, individually, and Jinny Gonzalez, individually (collectively "Defendants") in the above-captioned action removed this action to the United States District Court for the Western District of Texas, Austin Division by filing a Notice of Removal in that Court. A copy of the Notice of Removal is attached as **Exhibit A** and is fully incorporated herein by reference. Accordingly, under 28 U.S.C. § 1446(d), this Court should proceed no further unless and until this case is remanded, if ever.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER &
ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Christopher Schulz*
**CHRISTOPHER SCHULZ**
State Bar No. 24060576
Email: cshulz@slh-law.com
**ELIZABETH ANGELONE**
State Bar No. 24077349
Email: eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, the foregoing was e-filed with the Clerk of the Court

and a copy will be sent via e-service to the attorney of record for Plaintiffs, namely:

Amy C. Welborn
**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

*/s/ Christopher Schulz*
Attorney for Defendants

2



# EXHIBIT A



# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

|  |  |  |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, *Plaintiffs,* | § § § § | |
| v. | § § § | CIVIL ACTION NO. 1:25-cv-00615 |
| AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, *Defendants.* | § § § § § | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, individually, and Jinny Gonzalez, individually (collectively "Defendants") hereby give notice of the removal of this action from the 345th Judicial District Court of Travis County, Texas to the United States District Court for the Western District of Texas, Austin Division. In support of the Notice of Removal, Defendants allege as follows:

## I.     NATURE OF THE SUIT

Austin Montessori School ("AMS") is a private, non-profit 501(c)(3) organization that provides a Montessori education to children and adolescents aged 16 months to 15 years. For the 2024-2025 school year, Plaintiffs Ross and Sarah Ponder entered into an Enrollment Agreement ("Agreement") with AMS, under which the Ponders enrolled their children, H.P., L.P., and R.P. **Exhibit 1, pp. 38-41**. Plaintiffs assert that shortly after the children's enrollment, on December 3, 2024, H.P. was formally diagnosed with ADHD. **Exhibit 1, p. 17**. Plaintiffs assert eleven (12) causes of action against Defendants, including claims for negligence, breach of contract, fraud, civil conspiracy, and violations of the Americans with Disabilities Act and Section 504 of the

Rehabilitation Act. *Id., pp. 22-32*.

## II.   REMOVAL IS TIMELY

This action is currently pending in the 345th District Court of Travis County, Texas, under the case style *Ross Ponder and Sarah Ponder, Individually and as Next Friends of H.P., L.P., and R.P., Minors v. Austin Montessori School, Inc., Ronald Grae Baker, Individually, and Jinny Gonzalez, Individually*, Cause No. D-1-GN-25-002212 (the "State Action"). The plaintiffs initiated the State Action on March 28, 2025, and on April 1, 2025, the defendants, through counsel, accepted service of the citation and petition. **Exhibit 2**. Accordingly, this Notice is timely filed pursuant to 28 U.S.C. § 1446(b).

## III.   THE COURT HAS ORIGINAL JURISDICTION OVER ONE OR MORE OF PLAINTIFFS' CLAIMS

Plaintiffs assert claims of violations of Title III of the Americans with Disabilities Act ("ADA") under 42 U.S.C. §§ 12182(a), 12182(b)(2)(A), 12182(b)(1)(A)(i), and 12181(7)(j) (Count 6). **Exhibit 1, p. 26**. Plaintiffs also assert claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), alleging failure to accommodate as well as disability-based discrimination and retaliation (Counts 7 and 12). *See* **Exhibit 1, pp. 27-32** (Pl.'s Orig. Pet. pp. 21-26); 29 U.S.C. § 794. Since this case involves federal questions, the Court has original jurisdiction over the Plaintiffs' ADA and Section 504 claims pursuant to 28 U.S.C. § 1331, as these claims constitute a civil action arising under the U.S. Constitution, federal laws, or treaties. Therefore, removal is proper.

## IV.   THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

The Court has supplemental jurisdiction over Plaintiffs' state law claims. In any civil action of which the federal district courts have original jurisdiction, the federal district courts shall have supplemental jurisdiction over all other claims that are related to claims in the action

within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). All of the Plaintiffs' claims relate to their relationship with Defendants, and all claims or causes of action comprise the same case or controversy between the parties. *See* **Exhibit 1**. Because all of the Plaintiffs' claims are interrelated, the Court has supplemental jurisdiction over Plaintiffs' claims that arise under state law. *See* 28 U.S.C. § 1367(a). Consequently, removal is proper under 28 U.S.C. § 1441(a), and the Court may exercise supplemental or pendent jurisdiction over any related state law claims.

## V.    THIS NOTICE IS PROCEDURALLY CORRECT

Defendants submit as exhibits to this Notice true and correct copies of the documents required by 28 U.S.C. § 1446(a), including the State Action Docket Sheet, Original Petition, Citations, and related documents, which are attached hereto and incorporated as **Exhibit 1**. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be provided to all parties and the Clerk of the 345th Judicial District Court of Travis County, Texas. The required filing fee for this removal has been paid.

## VI.    JURY DEMAND

Plaintiffs requested a jury trial in the State Action.

## VII.    NON-WAIVER OF DEFENSES

By removing this case to federal court, Defendants do not waive any available defenses, including any defenses under Federal Rule of Civil Procedure 12, nor do Defendants admit any allegation asserted in Plaintiffs' Petition filed in the State Action.

WHEREFORE, Defendants remove this action from the 345th Judicial District Court of Travis County, Texas, to the United States District Court for the Western District of Texas, Austin Division so that this Court may assume jurisdiction over the case as provided by law.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER &
ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Christopher Schulz*
CHRISTOPHER SCHULZ
State Bar No. 24060576
Email: cshulz@slh-law.com
ELIZABETH ANGELONE
State Bar No. 24077349
Email: eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2025, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the attorney

of record for Plaintiffs, namely:

Amy C. Welborn
WELBORN LAW LLC
8712 Mesa Suite B206
Austin, Teas 78759
Email: amy@welborn-law.com

*/s/ Christopher Schulz*
Attorney for Defendants



JS 44   (Rev. 04/21)              Case 1:25-cv-00615   Document 1-1   Filed 04/24/25      Page 1 of 2

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| ROSS PONDER & SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., &R.P., MINORS, | AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, Indiv.; & JINNY GONZALEZ, Indiv. |

**(b)** County of Residence of First Listed Plaintiff   Travis
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Travis
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*
Amy C. Welborn, WELBORN LAW LLC, 8712 Mesa Suite, B206, Austin, Texas 78759, 512-825-3390

Attorneys *(If Known)*
Christopher H. Schulz & Elizabeth Angelone; Schulman, Lopez, Hoffer & Adelstein, LLP, 9011 Mountain Ridge Dr. Ste. 210, Austin, Texas 78759, 512-840-0022

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

*(defendant incorporated box marked ☒ 4 DEF)*

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | |
| | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☒ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §§ 12182(a), 12182(b)(2)(A), 12182(b)(1)(A)(i), and 12181(7)(j); 29 U.S.C. § 794
Brief description of cause:
Plaintiffs assert claims of violations of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, alleging failure to

**VII. REQUESTED IN COMPLAINT:**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $            CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**   *(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   04/24/2025         SIGNATURE OF ATTORNEY OF RECORD   /s/ Christopher H. Schulz

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: <u>Nature of Suit Code Descriptions.</u>

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.



# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### ... Select Division        DIVISION

Supplement to JS 44 Civil Cover Sheet
Cases Removed from State District Court

This form must be filed with the Clerk's Office no later than the **first business day** following the filing of the Notice of Removal. Additional sheets may be used as necessary.

The attorney of record for the removing party **MUST** sign this form.

**STATE COURT INFORMATION**:

1.    Please identify the court from which the case is being removed; the case number; and the complete style of the case.

345th Judicial District Court of Travis County, Texas; D-1-GN-25-002212; Ross Ponder and Sarah Ponder, Individually, and as Next Friend of H.P., L.P., and R.P., Minors v. Austin Montessori School, Inc., Ronald Grae Baker, Individually, and Jinny Gonzalez, Individually.

2.    Was jury demand made in State Court?    ☒ Yes    ☐ No

If yes, by which party and on what date?

Plaintiffs

Party Name

03/28/2025

Date

**STATE COURT INFORMATION**:

1.    List all plaintiffs, defendants, and intervenors still remaining in the case. Also, please list the attorney(s) of record for each party named and include the attorney's firm name, correct mailing address, telephone number, and fax number (including area codes).

PLAINTIFFS: ROSS PONDER & SARAH PONDER, Indiv., & AS NEXT FRIEND OF H.P., L.P., &R.P., MINORS. Plf. attry: Amy C. Welborn, WELBORN LAW LLC, 8712 Mesa Suite, B206, Austin, TX 78759, 512-825-3390. DEFENDANTS: AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, Indiv.; & JINNY GONZALEZ, Indiv. Defs Attrys: Christopher H. Schulz & Elizabeth Angelone; Schulman, Lopez, Hoffer & Adelstein, LLP, 9011 Mountain Ridge Dr., Ste. 210, Austin, TX 78759, 512-840-0022

2. List all parties that have not been served at the time of the removal, and the reason(s) for non-service.

TXWD - Supplement to JS 44 (Rev. 9/2019)



3.     List all parties that have been non-suited, dismissed, or terminated, and the reason(s) for their removal from the case.

**COUNTERCLAIMS, CROSS-CLAIMS, and/or THIRD-PARTY CLAIMS:**

1.     List separately each counterclaim, cross-claim, or third-party claim still remaining in the case and designate the nature of each such claim.  For each counterclaim, cross-claim, or third-party claim, include all plaintiffs, defendants, and intervenors still remaining in the case.  Also, please list the attorney(s) of record for each party named and include the attorney's firm name, correct mailing address, telephone number, and fax number (including area codes).

**VERIFICATION:**

Christopher H. Schulz & Elizabeth Angelone          04/24/2025
Attorney for Removing Party                                        Date

Defendants
Party/Parties

(NOTE:  Additional comment space is available on page 3)



**ADDITIONAL COMMENTS (As necessary)**:

TXWD - Supplement to JS 44 (Rev. 9/2019)



# EXHIBIT 1



Case 1:25-cv-02020   Document 1-3   Filed 12/09/25   Page 56 of 530
Case 1:25-cv-00615   Document 1-3   Filed 04/24/25   Page 2 of 43
TRAVIS COUNTY DISTRICT CLERK

# REGISTER OF ACTIONS
### CASE NO. D-1-GN-25-002212

| ROSS PONDER,SARAH PONDER VS. AUSTIN MONTESSORI SCHOOL, INC.,RONALD BAKER,JINNY GONZALEZ | § § § § | | Location: **345th District Court** Judicial Officer: **345TH, DISTRICT COURT** Filed on: **03/28/2025** |
|---|---|---|---|

---

## CASE INFORMATION

Case Type: **Other Civil**

Case Status: **03/28/2025  Open**

---

## PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| Plaintiff | **PONDER, ROSS** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| Defendant | **AUSTIN MONTESSORI SCHOOL, INC.** | |
| | **BAKER, RONALD GRAE** | |
| | **GONZALEZ, JINNY** | |
| As Next Friend Of | **PONDER, SARAH** | **WELBORN, AMY CATHERINE** *Retained* 512-825-3390(W) |
| Minor Child | **P., H.** | |
| | **P., L.** | |
| | **P., R.** | |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|

## EVENTS

**03/28/2025**  🖼 ORIGINAL PETITION/APPLICATION (OCA)
Party: Plaintiff PONDER, ROSS; Plaintiff PONDER, SARAH
Atty/Pro Se:  Attorney WELBORN, AMY CATHERINE
*PLAINTIFFS ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION*

**04/16/2025**  🖼 MOTION
*PLAINTIFFS SUPPLEMENTAL MOTION TO COMPEL MEDIATION*

## SERVICE

**04/01/2025**  **Citation**
🖼 AUSTIN MONTESSORI SCHOOL, INC.
Issued

**04/01/2025**  **Citation**
🖼 BAKER, RONALD GRAE
Issued

**04/01/2025**  **Citation**



*Printed on 04 17 2025 at 3:30 PM*

TRAVIS COUNTY DISTRICT CLERK
# REGISTER OF ACTIONS
### CASE NO. D-1-GN-25-002212

GONZALEZ, JINNY
Issued

| DATE | FINANCIAL INFORMATION | | |
|------|------------------------|---|---|

**Plaintiff** PONDER, ROSS
Total Charges
Total Payments and Credits                                      374.00
**Balance Due as of  04/17/2025**                               374.00
                                                                  **0.00**

| | | | |
|------|------|------|------|
| 03/31/2025 | Charge | | |
| 03/31/2025 | E-File Electronic    Receipt # 2025-016528 | Plaintiff PONDER, ROSS | 374.00 |
|  | Payment | Plaintiff PONDER, ROSS | (237.00) |
| 03/31/2025 | Credit | | |
|  |  | Plaintiff PONDER, ROSS | (137.00) |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on_____04/17/2025_____

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

A. HENRIQUEZ QUESADA

Printed on 04 17 2025 at 3.50 PM

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

, PLAINTIFF(S)

*vs.*

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

, DEFENDANT(S)

TO:    **RONALD GRAE BAKER**
**5006 SUNSET TRAIL**
**AUSTIN TX 78745**
**OR**
**10521 REDMOND ROAD**
**AUSTIN TX**
**OR WHEREVER FOUND**

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX  78759**

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

**Ruben Tamez, Deputy**

R E T U R N

Came to hand on the _____ day of _____, _____ at _____ o'clock ____M., and executed at _____ within the County of _____ on the _____ day of _____, _____, at _____ o'clock ____M., by delivering to the within named _____, each in person, a true copy of this citation together with the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the _____ day of _____, _____.

_____
Notary Public, THE STATE OF TEXAS
D-1-GN-25-002212

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

**SERVICE FEE NOT PAID**



CITATION

THE STATE OF TEXAS

**CAUSE NO. D-1-GN-25-002212**

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

vs.                                                                                          , PLAINTIFF(S)

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

                                                                                             , DEFENDANT(S)

TO:    AUSTIN MONTESSORI SCHOOL, INC.
       BY SERVING ITS REGISTERED AGENT SANDRA BARTHOLOME
       5006 SUNSET TRAIL
       AUSTIN TX 78745

Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."**

Attached is a copy of the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** in the above styled and numbered cause, which was filed on **MARCH 28, 2025** in the **345TH DISTRICT COURT** of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, **APRIL 01, 2025**

REQUESTED BY:
**AMY CATHERINE WELBORN**
**8712 MESA, SUITE B206**
**AUSTIN, TX  78759**



_____
Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street | P.O. Box 679003 (78767)
Austin TX 78701

                    **Ruben Tamez, Deputy**

**R E T U R N**

Came to hand on the _____ day of _____, _____ at _____ o'clock _____M., and executed at

_____ within the County of _____ on the _____ day

of _____, _____, at _____ o'clock _____M., by delivering to the within named

_____, each in person, a true copy of this citation together with

the **PLAINTIFFS  ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION** accompanying pleading, having first attached

such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

                                    _____
                                    Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the

_____ day of _____, _____.        By:_____

                                    _____
                                    Printed Name of Server

_____
Notary Public, THE STATE OF TEXAS        _____ County, Texas
**D-1-GN-25-002212**

                                    **SERVICE FEE NOT PAID**



CITATION

THE STATE OF TEXAS

CAUSE NO. D-1-GN-25-002212

ROSS PONDER AND SARAH PONDER, INDIVIDUALLY AND A/N/F OF H.P.; L.P. AND R.P., MINORS

vs.                                                                                              , PLAINTIFF(S)

AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER; JINNY GONZALEZ

                                                                                              , DEFENDANT(S)

TO:    JINNY GONZALEZ
       5006 SUNSET TRAIL
       AUSTIN TX 78745
       OR
       2907 POPS WAY
       AUSTIN TX 78745
       OR WHEREVER FOUND


Defendant, in the above styled and numbered cause:
**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org."

Attached is a copy of the PLAINTIFFS ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION in the above styled and numbered cause, which was filed on MARCH 28, 2025 in the 345TH DISTRICT COURT of Travis County, Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, APRIL 01, 2025

REQUESTED BY:
AMY CATHERINE WELBORN
8712 MESA, SUITE B206
AUSTIN, TX 78759

Velva L Price
Travis County District Clerk
Civil Family Court Facility (CFCF)
1700 Guadalupe Street, P.O. Box 679003 (78767)
Austin TX 78701

Ruben Tamez, Deputy

RETURN

Came to hand on the _____ day of _____, at _____ o'clock _____M., and executed at
_____ within the County of _____ on the _____ day of
_____, _____, at _____ o'clock _____M., by delivering to the within named
_____, each in person, a true copy of this citation together with the PLAINTIFFS
ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION accompanying pleading, having first attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of delivery.

Service Fee: $ _____

                                                    _____
                                                    Sheriff / Constable / Authorized Person

Sworn to and subscribed before me this the
_____ day of _____, _____.             By: _____

                                                    _____
                                                    Printed Name of Server

_____           _____ County, Texas
Notary Public, THE STATE OF TEXAS
D-1-GN-25-002212                                    **SERVICE FEE NOT PAID**



3/28/2025 4:24 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Ruben Tamez

D-1-GN-25-002212

CAUSE NO. _____

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, Plaintiffs, | § § § § § | IN THE DISTRICT COURT |
| VS. | § § § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, Defendants. | § § § § § | 345TH, DISTRICT COURT _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION AND MOTION TO COMPEL MEDIATION

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and file their Original Petition and Motion to Compel Mediation (the "Petition") against Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually ("Gonzalez") (collectively "Defendants") and would show the Court as follows:

### I.    DISCOVERY CONTROL PLAN

1.    Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### II.    PARTIES

2.    Plaintiffs Ross and Sarah Ponder are the parents of H.P., L.P., and R.P., minors. Plaintiffs reside in Travis, County, Texas.

3.    Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place of business at 5006 Sunset Trail, Austin, Texas 78745. Austin Montessori School, Inc. can be served through its registered agent, Sandra Bartholome at 5006 Sunset Trail, Austin, Texas 78745.

4.    Defendant Ronald Grae Baker is an individual that resides in and can be served at his

principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at his residence at 10521 Redmond Road, Austin, Texas 78739.

5.    Defendant Jinny Gonzalez is an individual that resides in Travis County and can be served at her principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at her residence at 2907 Pops Way, Austin, Texas 78745.

## III.    JURISDICTION AND VENUE

6.    Subject matter jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.    Venue us proper in Travis County, Texas, under Texas Civil Practice and Remedies Code Sec. 15.002(a) as all or substantially all of the events that give rise to this claim occurred in Travis County.

## IV.    SUMMARY

8.    The Ponders fully embraced Montessori practices and were excited to have enrolled their children, H.P., L.P., and R.P., at AMS. Unfortunately, it became evident over time that AMS had adopted their own practices and interpreted Maria Montessori teachings in a way that was meaningfully different from other Montessori schools. AMS's administrative staff had their own beliefs and practices that were not explained prior to enrolling the Ponder children. These practices were very harmful to the Ponder children, especially H.P.

9.    The Ponders had a history of ADHD in their family and as such wanted to put their children in a Montessori School because studies have shown that an adapted educational environment, such as a Montessori school is beneficial for ADHD children. Only after contracting with AMS, were the Ponders made aware that Defendants had major issues with an ADHD diagnosis in children and treatment of ADHD with medication.

2



10.     Unfortunately, AMS did not ascribe to the inclusive Montessori teachings.  AMS failed to admit that they discriminate against those with ADHD, did not believe children should be diagnosed with ADHD, and did not believe in the use of medication to treat the diagnosis.  AMS further did not disclose that if a child had ADHD behaviors, AMS would apply their own form of quack medicine in treating the child.  Nor did AMS admit that a diagnosis of ADHD and/or treatment of an ADHD diagnosis with medication would result in expulsion.  Instead, they fraudulently induced the Ponders into contracts and then discriminated against H.P. and failed to provide him accommodations for his disability.

11.     Further, AMS allowed and supported Jinny Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license.  The AMS administration fully supported Jinny Gonzalez and allowed her to make diagnoses of children, knowing she had no medical training.  Ms. Gonzalez "diagnosed" H.P. with "an underdeveloped will" in September 2023 and offered to treat H.P.'s disorder.  Based on her diagnosis, Ms. Gonzalez made specific demands of the Ponders as part of her quack medicine treatment.  Her treatment plan was psychologically abusive, harmful, and disruptive.

12.     To prevent exposure of AMS's quack medical and/or manipulative controlling practices and other harmful practices, AMS refused to provide important information to the parents of the children attending AMS.  The parents of AMS students were not given meaningful opportunities to communicate with the staff working with their children.  H.P. was often isolated from his peers and taken out of the classroom with a staff person.  The Ponders were provided very minimal information about individuals who were alone with and in charge of H.P.'s supervision.  The Ponders had a right to know if this individual was qualified to be working with their child.  The Ponders had a right to know what this individual was doing with their child when he was isolated

3



and H.P.'s reaction to this treatment method the school had imposed upon H.P. This communication was critical to H.P.'s medical treatment. AMS had created a medical treatment plan and then failed to allow the Ponders to access medical records, school records, and treatment records in violation of state and federal law.

13.     The Ponders were repeatedly called to AMS on short notice to pick up H.P. and/or R.P. without being given any information regarding the alleged incident that had occurred. It was impossible to discern if there were actual issues with H.P. or R.P. or the nature of the alleged concerns because AMS hid the information to the detriment of the entire Ponder family.

14.     Upon questioning AMS's quack medicine, controlling, and manipulative practices, and bringing the concerns to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling all of the Ponder children without notice, including the oldest child, who was in AMS's elementary classroom.

### V.     FACTS

15.     The Ponders first enrolled at AMS in August of 2023. The Ponder children had been enrolled in another Montessori school and the children thrived in the Montessori environment. The Ponders live very close to AMS and hoped to enjoy the opportunity to walk to school and feel a close connection to the AMS community. The Ponders were further drawn to the promise of collaboration and communication in the education of their three children and had hoped to keep all three children enrolled through their middle school education. The Ponders had believed AMS would provide a nurturing supportive environment for their children of all abilities and learning styles in keeping with Maria Montessori's teachings.

16.     The Ponders were told by the AMS administration multiple times from 2022 to 2023 that it was extremely rare to be admitted when children were over 4.5 years old. When the May 2023

4



fall admission opened, they were told to take it, as it was very unlikely that a spot would be available the following year.

17.    The Ponders enrollment contracts were for an 8 am-3:15 school day (full-time) for all three children. The AMS administration did state that lunchtime pickup was an option if a child was not a napper, making it seem that a failure to nap would not prevent the student's success at AMS. (However, students were not required to nap after age 4.5.) While the Ponders were required to remain under contract when two of the three children's school day hours were reduced, the reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant. This caused great financial burden to the Ponders.

18.    H.P.'s first day at AMS was August 17, 2023. AMS provided an update and noted that there were no issues when H.P. napped. It was also noted that H.P. did not like his lunch, which the Ponders had prepared according to AMS's strict school lunch requirements.

19.    On August 20, 2023, H.P. turned four years old.

20.    On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time. A meeting was immediately held the same day to address the matter.

21.    Regardless, on Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day because he was not napping. The Ponders were told this was a transition period for AMS to allow H.P. to get used to the new classroom. The Ponders were not given any alternatives and were told that they had to pick him up at noon. The Ponders specifically chose to enroll their three children at AMS because it allowed for full day coverage for all their children, allowing them to work demanding full-time jobs.

22.    Throughout the next weeks, the Ponders made numerous attempts to update the school

5



regarding H.P. AMS, in turn, did not provide quality feedback but pushed H.P.'s release time to 10 am, a mere two hours after his arrival time without explanation. AMS did not offer to compensate the Ponders nor did AMS discuss letting the Ponders out of their contract. The Ponders were left financially strapped into a contract for full-time care but were receiving less than two hours a day to complete their work before they were forced to bring their young son back home.

23.     On Friday, September 8, 2023, Jinny Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation." The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred. Over the weekend the meeting was scheduled for September 11, 2023. The meeting would include the Ponders, Jinny Gonzalez and Sveta Paris. None of the classroom staff was invited to attend. Ms. Gonzalez informed the Ponders that H.P. would not be allowed to attend AMS until September 12, 2023, meaning the Ponders had to arrange childcare for H.P so that they could attend the meeting.

24.     At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative." AMS notified the Ponders that instead of trying to work with H.P. on his behaviors they were "going to control the systems." It was at this meeting and in her follow-up correspondence that Ms. Gonzalez diagnosed H.P. and laid out her treatment plan for H.P.

25.     Ms. Gonzalez's medical treatment plan required that the Ponders follow a consistent routine in the mornings and even recommended that they "modify the time each family member goes to bed and wakes up." Oddly, this consistent routine was not applied at AMS and they would disrupt the schedule of the child or parent regularly.

26.     Ms. Gonzalez instituted rules for speaking to H.P., requiring that the Ponders only provide brief and factual information to their son and that they acknowledge his feelings only with humor

6



and lightness.

27.     Ms. Gonzalez forbade the Ponders from walking to school and required that H.P. arrive by car at exactly 8 am daily. She further demanded that H.P. be seated in the car closest to the entrance and that the Ponders were not allowed to exit the vehicle or help H.P. exit the vehicle.

28.     Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until 10 am, meaning he would attend school for only two hours a day, until another meeting could be held in two weeks. During this two-week period Ms. Gonzlez and AMS were treating H.P.'s condition, she would determine if H.P. made progress in his treatment that would allow H.P. to attend for a longer day.

29.     AMS and Ms. Gonzalez also required that the school counselor observe H.P. Ms. Gonzalez stated that the treatment plan would "break the habit" of H.P. being in distress.

30.     AMS informed the Ponders that the latest H.P. would be allowed at AMS was noon, even after they had "controlled the systems" with their medical treatment plan. Ms. Gonzalez also demanded that the Ponders keep their phones on at all times to accommodate immediate pickups when AMS required it.

31.     On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders. This was scheduled for September 27, 2023.

32.     On September 15, 2023, the Ponders requested an update on H.P. and asked if he could gradually leave a little later. Ms. Gonzalez informed the Ponders that this would not be an option and that H.P. would continue attending school until 10 am. Another meeting was scheduled on Thursday, September 21, 2023 to discuss the progress of H.P.'s treatment of his condition.

33.     On September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to

7



cancel the meeting due to being very busy. They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

34.    At the September 26, 2023, meeting, additional requirements were added for the Ponders by Ms. Gonzalez for the treatment of H.P.'s condition. This included feeding H.P. **on a tray in the bathroom** each morning instead of with his siblings.

35.    On September 29, 2023, the Ponders were able to have a call with H.P.'s Guide to discuss his improving progress. On October 2, 2023, H.P.'s teacher informed the Ponders that H.P. had been improving and had "the best day at school so far." There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

36.    On December 8, 2023, AMS stated that they were honored to work with the Ponders and that with regard to H.P., they "deeply desired to meet his needs." They were very positive and noted the Ponders followed the treatment plan that AMS had instituted through. Ms. Gonzalez. However, they still refused to allow H.P. to attend school full-time.

37.    AMS suggested hiring an occupational therapist to work with H.P. At the recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an occupational therapist but yet another unqualified medical provider that Ms. Gonzalez and AMS recommended as part of their quack medicine. This caused a delay in getting H.P. an OT evaluation.

38.    On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. She noted that she and Ms. Gonzalez were best suited

8



for determining when H.P. could extend his day.

39.     Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m. Again, the contractual terms and payments were for full day coverage, not a two-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

40.     On January 23, 2024, AMS informed the Ponders that they were yet again "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time. The Ponders provided more recent evidence from the school of H.P.'s positive improvements.

41.     On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. When notified of the family emergency, AMS refused to accommodate H.P. staying for a full day as contracted. They even denied a request to allow him to stay when Ross had to leave town and was unable to pick up H.P. at 11:45 am. Ross Ponder was trying to leave town to see his brother before life support was pulled. The school administration offered no meaningful condolences and did not offer reasonable courtesies for the parents.

42.     On February 20, 2024, H.P. turned 4.5 years of age. This is significant because it is AMS policy that children 4.5 years of age or older do not have to nap in Casita and are invited to stay until 3:15 p.m. daily without a nap. H.P., like all other children, should have been allowed at AMS until 3:15 p.m. daily even if he was not taking a nap. Unfortunately, AMS chose to discriminate against H.P. and refused to treat him as the other students and continued to demand that he nap.

43.     H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024. On May 16, 2024, Jinny Gonzalez informed the Ponders that they again

9



had staffing issues that prevented H.P.'s teacher, the one who interacted with him daily, to attend the meeting on May 17, 2024.

44.   At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended-day, as they had contracted for full-time school. The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

45.   On July 2, 2024, immediately upon her return from vacation, H.P.'s teacher communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.

46.   By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes. While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early. Additionally, AMS began requiring that R.P. also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

47.   On September 11, 2024, the Ponders notified the school that the family's beloved dog was going to have to be put down.

48.   On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns. On September 12, 2024, the AMS called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early. The Ponders were informed that AMS was "unsuccessful" and that they were not fulfilling R.P.'s need for sleep and rest. When AMS demanded the Ponders pick up their children with unreasonable notice, the Ponders made clear that they were not available because their beloved family dog, Bear, was actively dying of cancer

10



that afternoon in their home. Bear died around 3 pm and the Ponders were forced to coordinate emergency vet transportation while simultaneously coordinating the school pickups AMS demanded.

49.    AMS then determined that R.P. did not fit their program because she was a bad napper. The Ponders had multiple communications with AMS during the first few weeks of school and were informed she was doing well, and no napping concerns were raised. The demand that she be picked up early was shocking to the Ponders. R.P. had no problems with napping at her prior school and no concerns had been raised at AMS. (Interestingly, R.P. has no napping issues at her current Montessori school.)

50.    On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS. The Ponders asked for a review of the parent partnership agreement, as clearly AMS was in breach.

51.    On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her treatment plan for December 5, 2024. The Ponders asked to discuss if any interim changes needed to be made and informed AMS that H.P. would be going to the doctor to determine if he had ADHD. AMS refused to fill out the requested Vanderbilt questionnaire.

52.    On December 3, 2024, H.P. was formally diagnosed with ADHD. The Ponders provided the diagnosis and medical documentation to AMS immediately.

53.    On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think AMS was the right school for H.P. Ms. Gonzales stated that she did not believe in medicating a child with ADHD and did not approve of the treatment plan of H.P.'s physician. In fact, with the support of AMS, Gonzalez specifically discussed her medial plan, delaying medicating H.P. Oddly, in the meeting report, Ms. Gonzalez



specifically noted that some children require accommodations and that it is the Montessori philosophy to use every resource available to aid in a child's development and stated that they "deeply desired to meet his needs." H.P.'s Guide only attended the first 15 minutes, but could not stay for the whole meeting due to staffing issues.

54.    On December 6, 2024, Jinny Gonzalez, stated that H.P. could no longer benefit from a Montessori education. AMS shortened H.P.'s days to half days.

55.    On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects on the child. The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication.

56.    On December 16, 2024, the Ponders met with Ronald Grae Baker and School Advisor, Jeff Schneider. Mr. Baker told the Ponders that AMS can accommodate an ADHD diagnosis and medicinal treatment. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates on H.P.'s response to medicine.

57.    Over the holidays, the doctor was able to work to find the proper medication dose to best assist H.P. This led to significant improvement in his ADHD behaviors.

58.    From December 16, 2024, to January 27, 2025, AMS refused to provide requested feedback to the Ponders on H.P.'s response to ADHD medication. Ronald Grae Baker falsely promised to withhold an enrollment decision for the following year until the middle of the spring semester to allow AMS to observe and update the Ponders on H.P.'s response to medication.

59.    The Ponders made repeated requests for an accommodation meeting and requested that Ms. Gonzalez be taken off the team, due to her alternative treatment methods not being accepted over those of H.P.'s physician.

60.    On January 17, 2025, Ronald Grae Baker sent correspondence stating that AMS would not



be offering an enrollment contract for the following year to H.P. Mr. Baker also chastised the Ponders for requesting that Ms. Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine.

61.     On January 20, 2025, the Ponders again requested a meeting to discuss the observations of H.P. in the weeks after he had started ADHD medication. Once the Ponders shared H.P.'s diagnosis, the team no longer worked to help H.P. but alienated him and discriminated against him due to his disability.

62.     On January 24, 2025, the Ponders met with Ronald Grae Baker and Jeff Schneider, School Advisor. In preparation for this meeting, they requested to discuss communication issues and noted that these issues were pervasive throughout the school, noting other parents had similar concerns. The Ponders were concerned with the lack of communication and the systematic barriers that prevented parents from being informed of concerns regarding their children. AMS was reminded of the need to provide reasonable accommodations to H.P. The Ponders noted that no incidents had been report at AMS since winter break, and that H.P. was responding well to medication, including at church, YMCA, and other common places. Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

63.     On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services. The fact that this complaint was filed was made known to AMS on January 25, 2025. The Ponders chose to file this reported based on their experiences and after reviewing AMS's most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS.

13



64.    On January 28, 2025, Ronald Grae Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including their quack medicine.  The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make change and to help all students, an effort to gain community support and raise concerns, as the discrimination and retaliation were factors all parents should be informed of when renewing enrollment.  The WhatsApp group was a private, optional, parent run platform that was not associated with the school administration.  A coffee was also held at the Ponders home to further discuss systematic communication issues affecting many students at AMS.

65.    On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. had ADHD but that he would be placed in a standard classroom and did not need special education or occupational therapy. The results were immediately distributed to AMS and the Ponders requested a meeting with Gina Applegate, the school support specialist, Jinny Gonzalez, and H.P.'s guide.  The Ponders included Jinny Gonzalez in this communication because Ronald Grae Baker had stated it was a requirement for the continued enrollment of L.P. and R.P. in his email dated January 28, 2025.

66.    On January 30, 2025, Ronald Grae Baker sent a letter to all parents stating that the information provided by the Ponders was "misleading" and that "false claims" were made.

67.    On January 31, 2025, AMS terminated the enrollment of all three Ponder children.  H.P. was denied full and equal educational access, denied disability accommodations, as the enrollment was terminated when the school received notice that H.P. had a disability, ADHD.  Additionally, AMS terminated L.P. and R.P. because the Ponder parents' "actions were detrimental to the school."  Clearly the actions referred to are the filing of the HHS complaint, advocating for



disability accommodations, and reaching out to other parents to discuss the concerns and determine if others were in a similar situation. The termination of the remaining Ponder children was retaliation.

68.    The impact on the family has been extreme: While attending the school, the failure to institute a 504 plan for H.P. caused developmental delays and extreme anxiety for H.P. H.P. was forced to attend expensive outside services at the demand of AMS.

69.    H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS. The level of torture he experienced was not understood until he was placed in a new school, where he is not only thriving, but has had zero behavior problems and is a model student. Clearly, the root of his behavior problems stemmed from AMS's intentional and negligent failure to address his needs. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

70.    The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family. The Ponders entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to walk their children to school and were told when and how to wake their children each morning. Maria Montessori stated, "We must respect the child, and he must understand that he is respected." AMS neither respected nor made the Ponders feel respected. Further, the Ponders were forced to spend thousands of dollars on demanded outside OT that did not address H.P.'s ADHD.

71.    Due to the change in hours, Ross Ponder was forced to quit his job, to allow him to be available to pick up the children on a moment's notice. This has been detrimental to his income in both the long and short term.



72.    The impact on Sarah Ponder's career is significant.  Some of her clients were in the AMS community.  Sending a letter to the entire community defaming the Ponders will have serious long-term impacts on her company's growth.  Ms. Ponder is aware of at least one client that she lost due to this entire situation.

73.    The impact on the children has been significant.  They were forced from their school and the friends they had expected to go to school with until they graduated middle school.  They were not able to be immediately placed in school, and the oldest child is in elementary school, thus causing a severe impact to her education.

74.    The expulsion caused extreme mental anguish for the entire family.  Maria Montessori stated, "The things the child sees are not just remembered; they form part of his soul."  This will forever impact the Ponder family.

## VI.    CAUSES OF ACTION

### A.    Count 1- Negligence

75.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

76.    The occurrences made the basis of this suit and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligent conduct of Defendants.  Defendants were negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

    a. Failing to exercise the care necessary under the circumstances;

    b. Failing to do what a reasonable daycare would have done under the circumstances;

    c. Failing to intervene to ensure a child's safety;

    d. Failing to provide proper supervision;

16



e. Failing to properly hire, qualify, train and supervise its employees;

f. Failing to provide reasonable accommodations; and

g. Failing to adhere to the Texas Minimum standards for childcare.

77.    Defendants had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

78.    Defendants had a duty to maintain a safe environment for children in its care;

79.    Defendants had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

80.    Defendants breached the duty of care by failing to care for the children, failing to supervise the children, failing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

81.    Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B.    Count 2- Negligence *Per Se***

82.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

83.    Defendants failed to exercise the mandatory standard of care in violation of the minimum standards for childcare.

84.    Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Repeatedly, AMS failed to use praise and encouragement, instead used humiliation and rejection with H.P.

85.    Texas law has specific maximums on the number of children that can be in a room. 26 TAC

17



Sec. 746.1601-1615. These numbers were exceeded or the Ponder children were sent home to accommodate new students after the holidays.

86.   Accommodations recommended by qualified professionals and medical experts were not provided to H.P. in violation of 26 TAC 746.2202.

87.   AMS failed to encourage H.P. to express feelings and failed to give him appropriate attention. 20 TAC 746.2601

88.   AMS failed to comply with the regulations regarding naptimes and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321.

89.   AMS failed to notify the Ponders that AMS refused to administer or allow students to take ADHD medications in violations of 26 TAC Sec. 746.3811.

90.   AMS failed to follow the laws regarding release of children. 26 TAC Sec. 746.4103

91.   Additionally, according to AMS staff, AMS had 39 children in the Casita at one time, the location used for young children to nap. Clearly the state of Texas created these regulations to protect children. The violation of these statues harmed the Ponder family.

92.   Defendant Gonzalez violated the law by practicing medicine without a license. Defendants AMS and Baker supported and assisted Gonzalez in her medical endeavors.

93.   Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

94.   Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.

95.   As a result of the Defendants' illegal acts and/or omissions in violating the statutes, Plaintiffs sustained injuries.

C.   **Count 3- Gross Negligence**

96.   Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully



herein.

97.     Defendants' conduct was more than momentarily thoughtlessness or inadvertence.  Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

98.     Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs.  Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiffs and/or other similarly situated individuals.  Plaintiffs acted with malice. Plaintiffs suffered damages and further seek punitive damages.

**D.     Count 4- Negligent Activity**

99.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

100.    Defendant AMS is the owner, operator and possessor of the daycare premises.

101.    Plaintiffs H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owned a duty to exercise reasonable care.

102.    Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

103.    Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

**E.     Count 5- _Respondeat Superior_**

104.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

19



105.    The negligence, carelessness, and callousness of Defendant AMS's employees proximately

caused the damage and loss suffered by Plaintiffs. At all times material to this action, Defendant

AMS's employees were acting in the course and scope of their employment. Accordingly,

Defendant's may be held responsible for its employees' negligence under the doctrine of

*respondeat superior.*

**F.    Count 6- Violations of the Americans with Disabilities Act (ADA)- Title III**

106.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully

herein.

107.    Defendants discriminated on the basis of H.P.'s disability in the full and equal enjoyment

of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III

of the ADA, 42 U.S.C Sec. 12182(a) and the title III implementing regulation at 28 C.F. R. Part

36.

108.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by failing

to reasonably accommodate his disability while he attended school there in violation of 42 USCA

Sec 12181(7)(J).

109.    Defendant AMS discriminated against Plaintiff H.P. on the basis of his disability by

dismissing him from school for behaviors that were a manifestation of his disability in violation

of 28 CFR Part 36.

110.    Defendant AMS discriminated against H.P. by failing to make reasonable modifications in

policies, practices, or procedures, when such modifications are necessary to afford such goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in

violation of 42 USC Section 12182(b)(2) (A) (ii) and its implementing regulation 28 C.F.R. Sec.

36.302.

20



111.    Defendant AMS's action in disenrolling H.P. on the basis of disability, constitutes a denial of the opportunity for H.P. to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity in violation of 42 U.S.C. Sec. 12182(b)(1)(A)(i) and 28 C.F.R. Sec. 36.202.

112.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**G.    Count 7- Violations of Section 504**

113.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

114.    Defendants excluded Plaintiff H.P. from participation in activities and programs, and was denied the benefits of the services, programs, and activities and was subjected to discrimination because of his disability, ADHD.

115.    The actions of Defendant Gonzalez created an interference of professional bad faith or gross misjudgment.

116.    The actions of Defendants were done out of prejudice, malice, ill will, and/or spite against Plaintiffs.

117.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.

**H.    Count 8-Breach of Contract**

118.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

119.    Plaintiffs entered into a valid contract for the provision of childcare services for their three minor children.  There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

120.    Plaintiffs tendered performance according to the terms of the contact.

21



121.    Defendant AMS breached its duties and obligations under the contract, both explicit and implicit, pertaining to providing appropriate child care, custody, and supervision by all acts stated above.

122.    Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential.

123.    Further, Plaintiffs seek to recover their attorney fees under the Texas Civil Practices and Remedies Code.

**I.     Count 9- Fraud**

124.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

125.    Plaintiffs discovered that Defendants had been defrauding them by making promises and commitments to get Plaintiffs' payments and re-enroll their children when Defendants, particularly Defendant Baker, knew the statements were false and that he had no intention of fulfilling.

126.    Defendants made material misrepresentations that were false.  Defendants knew these statements were false or they were made recklessly without any knowledge of the truth and as a positive assertion.

127.    Defendants made the statements with the intention that Plaintiffs would act upon it and Plaintiffs acted in reliance of the representations and causing injury, damages, and harm.

128.    Plaintiffs seek treble damages and attorney fees.

**J.     Count 10- Fraudulent Inducement to Contract and Breach of Contract**

129.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

130.    The Ponders enrolled all their children at AMS because AMS stated that they followed the



Montessori teaching paradigm and that they would offer full-day schooling for the three children, meaning the children would attend AMS from 8 am to 3 pm Monday-Friday. The Ponders relied on these assertions when entering into contracts with AMS.

131.    The mission of the school stated that they are inclusive and "cultivate compassion and respect." Unfortunately, the administration of AMS lacked compassion and respect for the entire Ponder family.

132.    The teachings of Montessori include "protecting the autonomy and integrity" of a student and developing a program that follows "the developmental states manifested by the children" and "honor and respect each child's individual timetable for development"- (Bryant Goertz, Donna. *"Children Who Are Not Yet Peaceful: Preventing Exclusion in the Early Elementary Classroom,"* [Frog, Ltd. Berkeley, CA, 2001.]) The Montessori teachings do not include discrimination and refusal to comply with 504 and provide accommodations.

133.    The Ponders were further induced to reenroll for a second year. The AMS handbook clearly stated that the Guides would be trained by AMI and would engage in the "most authentic standard of Montessori pedagogy" and that the Guides would have an understanding of developmental milestones and ensure a structured learning approach that aligns with the AMI guidance.

134.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging. These principals were not utilized with H.P.

135.    The AMS parent handbook outlines procedures for programmatic changes that were not followed. The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations regarding the Ponder children, or hold



requested conferences.

136.     AMS further stated that it would not discriminate and comply with ADA and Section 504 of the Rehabilitation Act of 1973, as amended.  Ronald Grae Baker was the alleged coordinator, yet the school insisted that Jinny Gonzalez be the point person and Ronald Grae Baker failed to address or even discuss violations.

137.     AMS fraudulently induced the Ponder family to contract for all three children's education. AMS breached its contracts with the Ponders by failing to provide 504 services for H.P., failing to allow the children to receive full day education, and failing to follow the school policies.

138.     As a result of Defendants fraudulent inducement, Plaintiffs suffered harm, injury and damages.  Further, Plaintiffs seek attorney fees and treble damages.

**K.     Count 11- Civil Conspiracy**

139.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

140.     Defendants acted in combination to seek or accomplish a course of action to commit unlawful acts. There was a meeting of the minds of the Defendants to agree to accomplish the above stated unlawful acts.  Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement.  As a result, Plaintiffs suffered harm, injury and damages.

**L.     Count 12- Retaliation**

141.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

142.     Plaintiffs and Defendants did not agree on the use of medication to treat a child who suffers from ADHD.  While the school did not have a no medication policy, Defendant Gonzalez clearly

24



felt that it was unacceptable to treat H.P. in the manner his physician recommended. Ms. Gonzalez was not a doctor and had no training or experience to justify her position or the action plans she required. Ms. Gonzalez had very specific requirements for treatment of H.P., both at home and at school, including requiring the Ponders to drive to school, wake up children in a certain order, and other questionable commands. AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine. The Ponders voiced concern over these methods and were shut down by Ms. Gonzalez. Further, she failed to provide insight on what was occurring in the classroom or how any of her requirements would provide any effective change.

143.    When the Ponders asked to discuss with another staff member and remove Defendant Gonzalez from H.P.'s case, Defendant Baker refused to accommodate, chastised the Ponders for their request, fully supported Ms. Gonzalez, and expelled H.P. in retaliation for Plaintiff's medicating H.P. The school's support of Ms. Gonzalez's quack medicine is very concerning, as she is not a physician nor trained in any way on the treatment of children with ADHD.

144.    Defendant AMS has explicitly stated that it follows 504 regulations. However, AMS vehemently supported Ms. Gonzalez's refusal to follow 504 procedures. When the Ponders questioned her, AMS retaliated by expelling H.P. and days later, all of the Ponder children.

145.    Defendants retaliated for the filing of a complaint with the HHS by threatening and later expelling the Ponder children.

146.    The Ponders care not only about their own children but about the entire AMS community. When they learned that H.P. had been expelled, they decided to bring their concerns to the attention of other parents, in hopes of making AMS better for all students attending. The policies and procedures were not followed with H.P. As such, the Ponders reached out to the community so that the community, as a whole, could work together to find ways to foster better communication.

25



The Ponders posted a letter to all parents on the WhatsApp on January 28, 2025. The letter did not violate any rules of AMS. AMS had the letter taken down on January 30, 2025. Yet, as a further act of retaliation, AMS chose to send an email making defamatory statements against the Ponders to all families at AMS.

## VI.    DAMAGES

147.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

148.    Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

1.    Loss of value of the tuition/fees that Plaintiffs paid for the childcare;

2.    Loss of wages for Mr. and/or Ms./ Ponder incurred by having to stay home and care for H.P. and R.P when they were sent home early and while they began the long, slow, and careful process of finding another school/childcare to entrust their children, after undergoing such a traumatic ordeal;

3.    Medical expenses for the reasonable and necessary examination of H.P.;

4.    Medical expenses for the reasonable and necessary family and individual counseling and therapy for Plaintiffs;

5.    The cost of the unnecessary and inappropriate therapies and quack medicine that Defendants required Plaintiffs seek for H.P.;

6.    Physical pain and suffering in the past;

7.    Physical pain and suffering, in reasonable probability, sustained in the future;

8.    Mental anguish in the past;

9.    Mental anguish, in reasonable probability, sustained in the future;

26



152.    Defendants move for the Court to compel mediation as per the agreements between parties.

## X.    PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial Plaintiffs have and recover:

1.  Judgment against Defendants for a sum in excess of the minimum jurisdictional limits of this Court;

2.  Pre-judgment at the highest legal rate;

3.  Reasonable and necessary attorney's fees;

4.  Taxable Court costs;

5.  Post-judgment interest on the above amount at the highest legal rate; and

6.  Such other and further relief to which Plaintiff may show themselves justly entitled in law or equity.

Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390

By:____/s/ Amy C. Welborn_____
    Amy C. Welborn
    State Bar No. 24012853
    amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS



### CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 28th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on _____ 04 | 14| 2025
VELVA L. PRICE
DISTRICT CLERK
By Deputy:

29



4/16/2025 9:13 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Candy Schmidt

CAUSE NO.  D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, <br>     Plaintiffs, | § <br> § <br> § <br> § <br> § | IN THE DISTRICT COURT |
| VS. | § <br> § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, <br>     Defendants. | § <br> § <br> § <br> § <br> § | 345ᵗʰ  JUDICIAL DISTRICT |

## PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL MEDIATION

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually, and as Next Friend

of H.P., L.P., and R.P. minors ("Ponders" or "Plaintiffs"), and Supplemental Motion to Compel

Mediation (the "Petition") against Defendants Austin Montessori School, Inc. ("AMS"), Ronald

Grae Baker, Individually ("Baker"), and Jinny Gonzalez, Individually ("Gonzalez") (collectively

"Defendants") and would show the Court as follows:

### I. INTRODUCTION

1.      This Motion seeks to enforce the terms of a written contract between the Parties,

specifically the "AMS Year-Round All School Enrollment Agreement " (hereinafter "Contract")

and attached as Exhibit 1 and incorporated herein by reference.

2.      The Contract contains a provision requiring the parties to participate in non-binding

mediation prior to initiating litigation.



## II. ARGUMENT

3.    The Parties have a dispute regarding Plaintiffs' termination, discrimination, retaliation, and other claims as stated in the Plaintiffs' Original Petition and Motion to Compel Mediation, incorporated herein by reference.  The dispute between the Parties falls squarely within the scope of the mediation clause and directly relate to the terms of the Contract.

4.    Paragraph 12 of the Contract, titled "Governing Law/Disputes/Waiver of Jury Trial," states, in relevant part: "In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation." See Exhibit 1.

5.    Plaintiffs have requested that Defendants mediate this matter prior to the filing of litigation and were unsuccessful.  Suit was filed seeking this Court to compel mediation as per the contract.

6.    A valid and enforceable contract exists between the Parties. The Contract clearly and unequivocally requires the Parties to participate in non-binding mediation before resorting to litigation.

8.    Plaintiffs have complied with the terms of the contract by attempting to resolve the matter informally and requesting pre-suit mediation, but these attempts have been unsuccessful.  To date, Defendants have refused to participate in mediation, violating the terms of the contract.

11.    This court has authority to order the parties to mediation under Texas Civil Practices and Remedies Code Sec. 154.021.

2



### III. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully requests that the Court:

1. Grant the Motion to Compel Mediation;

2. Order the Parties to participate in non-binding mediation within the next 30 days with the Parties equally bearing the cost of mediation;

3. Stay any further proceedings in this case, including deadlines for pleadings and discovery, until the mediation has been completed or has reached an impasse;

4. Grant any such other and further relief, in law or equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390


By: ___/s/ Amy C. Welborn_____
    Amy C. Welborn
    State Bar No. 24012853
    amy@welborn-law.com

ATTORNEY FOR PLAINTIFFS

3



## CERTIFICATE OF CONFERENCE

I hereby certify by my signature above that I have communicated by phone and email with counsel Chris Schiltz and we were unable to agree to mediation.

## CERTIFICATE OF SERVICE

I hereby certify by my signature above that a true and correct copy of the foregoing document has been sent by electronic service to counsel of record, in accordance with the Texas Rules of Civil Procedure, on this 16th day of March 2025:

Chris Schultz
SCHULMAN, LOPEZ, HOFFER, & ADELSTEIN LLP
9011 Mountain Ridge Dr. #210
Austin, TX 78759
cschulz@slh-law.com

4



 **Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood

# EXHIBIT 1



**AMS Year-Round All School Enrollment Agreement 24-**

### Introduction

**Entering Year: 2024 - 2025** Date of birth:

This contract ("Contract") is between Austin Montessori School ( "School") and the parent or legal guardian ("Parent," singular or plural, as applicable) of the above-mentioned student ("Student"). Parent must complete and sign this Enrollment Contract and Tuition Schedule by clicking "submit" to the School for processing. Once submitted, a copy is available for your records in the Files & Forms section of your profile.
**Parent Partnership Agreement**
By signing this contract, Parent agrees to the policies and guidelines outlined in the <u>AMS Parent Community Handbook and Partnership Agreement</u>.
**This is a legally binding contract. Read it carefully.**

### Tuition and Fees

Annual tuition is listed under the "Expenses" section below. Parent agrees to pay the tuition specified below according to the terms of this Contract. Parent acknowledges that the tuition changes as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the published tuition and fee schedule:
<u>AMS Tuition and Fee Schedule 2024 - 2025</u>.
**New Family Fee**
A family new to Austin Montessori School will be charged a one-time fee of $500. This fee will be added to the Smart Tuition account and is in addition to the tuition and fees listed on the Enrollment Contract.

### Expenses

Children's House - Year Round $20,265.00  **Total Expenses:** $20,265.00

**Total Due: $20,265.00**

### Due at Enrollment

Deposit $300.00  **Total Due at Enrollment:** $300.00

Please review the descriptions below for the available payment plans, and then choose your desired option in the section below.

Printed 1/17/2024 Page 1 of 4
**Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood



**AMS Year-Round All School Enrollment Agreement 24–**

- •<u>One Payment Option:</u> payment of tuition for the Student's program to be paid in one payment on or before June 3, 2024.
- •<u>Monthly Payment Plan Option for Regular Year Programs:</u> payment of tuition for the Student's program to be paid in 12 equal payments, with the first payment due on August 3, 2024, and on the 3rd day of each month thereafter through July 3, 2025. The monthly payment plan option will incur a fee of $27.08/month ($325 total/year)

12 Month Plan
12 Payments

**Terms of Enrollment**

**Austin Montessori School Terms of Enrollment**

Parent understands that all persons responsible for paying any of the amounts due under this Contract must execute the Contract and that all such persons are jointly and severally liable for the amounts due as set forth herein. Parent's signature and/or initials on this Contract evidence Parent's understanding and agreement to the terms of this Contract, as follows:

1. •**Enrollment**: Student will be enrolled for the 2024-2025 academic year. Parent is aware that a final determination of grade and classroom placement will be made by the School in accordance with the School's admissions policies and these decisions are made at the School's discretion. This Contract is valid only for the academic year stated and does not entitle Student to any future enrollment.
2. •**Tuition Obligation**: Parent understands that Student is being enrolled for the academic year covered by this Contract (or remaining portion thereof, in the case of a mid-year enrollment or mid-year move to another level). Parent acknowledges that the tuition and fees change as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the School's published tuition and fee schedule. Parent is responsible for the full tuition amount through the end of the academic year even if Student is withdrawn from or ceases to attend the School. Parent further understands that the overhead expenses of the School do not diminish with the departure of a student during the course of the school year and agrees that it is impossible for the School to determine at the time of the execution of this Contract the damage and loss to the School that would occur due to the later cancellation/withdrawal of students who have enrolled. Therefore, once this Contract has been submitted to the School, Parent becomes liable for the tuition, according to the following schedule:
   - •Through May 1, 2024 – responsible for 25% of annual tuition payment
   - •After May 1, 2024 – responsible for 100% of annual tuition payment
3. •**Termination Procedures**: Parent may terminate this Contract by submitting a WRITTEN termination notice ("Termination Notice") to the Head of School by May 1, 2024 ("Partial Release Date"). The Termination Notice must (a) be dated, (b) state the Student's name, (c) provide a reason for the termination of the Contract; and (d) be RECEIVED by the Head of School on or before the Partial Release. If such Termination Notice is received before the Partial Release Date, Parent will be partially relieved of tuition obligation as provided in Paragraph 2, above.
4. •**School/Family Partnership**: A positive and constructive working relationship between the School and Parent is essential to the fulfillment of the School's educational purpose. Thus, the School reserves the right not to extend the privilege of enrollment or re-enrollment to Student if the School reasonably concludes that the actions of Parent make such a positive and constructive relationship impossible or otherwise seriously interfere

**Austin Montessori School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood

Printed 1/17/2024 Page 2 of 4





**AMS Year-Round All School Enrollment Agreement 24–**

with the School's accomplishment of its educational purpose. Moreover, the School reserves the right to dismiss Student at any time if, in the judgment of the Head of the School, conduct of anyone directly associated with Student, including but not limited to Student's Parent, in or out of the School, is not in keeping with the School's accepted standards or principles. There will be no refund of tuition in the case of such dismissal and any unpaid balance is payable in full according to the terms of this Contract. If for any reason, the School administration determines that it is in the best interest of the School, The School also reserves the right to withdraw an offer of enrollment or re-enrollment at any time, and/or to nullify an executed Enrollment Contract, if the School administration determines, in its sole discretion, that doing so is in the best interest of the School.

5.•**Tuition Assistance**: Parent understands that if the Student has applied for or received a tuition assistance award toward the amount of tuition hereunder; the Parent remains primarily responsible for all obligations under this Contract. Upon Parent's acceptance of this contract and the tuition assistance award, Parent agrees to pay the balance due pursuant to the payment plan established by the School.

6.•**Probationary Enrollment for New Students:** All new enrollments are probationary for an eight-week period. If the school is concerned that this enrollment is not in the best interest of the child or the classroom, a conference will be held before the end of the eight-week period with the Head of School, Level Director, Director of Enrollment Management, and parents. Possible outcomes include an agreement to terms of continued, conditional enrollment, or withdrawal of enrollment. The decision to continue or withdraw enrollment is at the sole discretion of the school and is final. The school reserves the right to refund any portion of the tuition based upon the student's withdrawal from the school. Any refund shall be at the sole discretion of the school. In accordance with Austin Montessori School's admissions policy, enrollment beyond the eight-week period lies solely at the discretion of Austin Montessori School.

7.•**Termination of Student's Attendance**: The School has the right to suspend or terminate any Student if (i) in the sole discretion of the School administration, it is determined that the continued attendance of the  Student is detrimental to the School community, the Student or to the other students of the School, or (ii) the  Parent has failed to pay all or any part of the tuition or fees required under this Contract.

8.•**School Rules**: Student's enrollment at the School is subject to the general statements, rules regulations, conditions, traditions, and financial terms contained in the School's Community Handbook and other published documents, which may be amended from time to time. Parent acknowledges that Parent and Student must abide by such School rules and guidelines.

9.•**Transcripts/Records**: All accounts must be paid in full before records and transcripts can be released or transferred to other schools. Student will not be allowed to continue to attend classes or other programs or activities unless tuition and fees are paid by stated deadlines (or until Parent makes other written arrangements acceptable to the School). The School shall have the right to take such legal action as it may deem appropriate to collect all amounts which are not paid when due. In the event that the School takes legal action to enforce the terms of the Contract, Parent shall be responsible for all costs, including reasonable attorney's fees and costs (whether incurred before, during or after the filing of the lawsuit).

10.•**Delinquent Payments**: Parent understands and agrees that a late charge of $35 will be added for any payment not received within 10 days after the due date ("Late Payment"). Parent understands that at no time does the School intend to contract for, charge, or receive interest in excess of the maximum amount permitted by law and, if it is determined that the School has done so, the School shall credit the excess to any remaining tuition or fees due under the Contract or refund the excess to Parent. In the event that a Parent is more than 90 days in arrears with any tuition or fees due under the Contract, the School reserves the right to accelerate the remaining tuition and fees due under this Contract.

11.•**Release of Student Records**: Parent consents and holds the School harmless for the release of Student's records and information upon request by an education institution or law enforcement agency. Parent also releases and holds the School harmless from any liability stemming from such use, disclosure, or release of Student's records or information.

12.•**Governing Law/Disputes/Waiver of Jury Trial**: This Contract shall be governed under the laws of the State of Texas. In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation. The costs of mediation shall be equally borne between the parties. In the event of litigation, the venue of any action hereunder shall lie exclusively within the Circuit Court of Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury.

▬▬ **Austin Montessori
School** Entering 2024 - 2025
Grade CH Mid Cycle - Early Childhood

Printed 1/17/2024 Page 3 of 4





**AMS Year-Round All School Enrollment Agreement 24-**

13.•**Understanding of Terms**: Please read this Contract carefully. By signing below, Parent acknowledges that Parent understands the terms of this Contract, Parent's obligation to pay the full year's tuition even if the Student is withdrawn or dismissed, the Parent's option to terminate, and all other obligations set forth herein.  If Parent has questions about the terms, Parent is encouraged to seek the advice of counsel or to seek  clarification from the Director of Admission.

14.•**Force Majeure**: The School's duties and obligation under this Contract shall be suspended immediately without notice during all periods that the School is closed because of force majeure events including, but not limited to, any fire, act of God, hurricane, war, governmental action, an act of terrorism, epidemic, pandemic, strike, civil unrest, or any other event beyond the School's control. If such an event occurs, the School's duties and obligations in this Contract will be postponed until such time as the School, in the sole discretion of the School administration, may safely reopen. In the event that the School cannot reopen due to an event under this clause, the School is under no obligation to refund any portion of the tuition paid.
*Austin Montessori School does not discriminate on the basis of race, ethnicity, national origin, ancestry, **gender**, gender identity or expression, sexual orientation, **age, or disability** in the administration of its hiring, **admissions policies**, tuition assistance program, or other school-administered programs.*

To ensure a place for the Student, this Contract must be executed and submitted to the School, along with the $300 registration fee.

Ross Ponder

Sarah Ponder                                                                                      Signature Date
                                               Sarah Ponder 1/17/2024 Signature Date

Accepted by Austin Montessori School, Inc. a Texas non-profit corporation

# Grae Baker

**Name:** Grae Baker
**Title:** Head of School

**School Signature**

Grae Baker





## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Amy Welborn on behalf of Amy Catherine Welborn
Bar No. 24012853
amy@welborn-law.com
Envelope ID: 99772682
Filing Code Description: Motion (No Fee)
Filing Description: PLAINTIFFS' SUPPLEMENTAL MOTION TO COMPEL MEDIATION
Status as of 4/17/2025 2:43 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Chris Schulz | | cschulz@slh-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/16/2025 9:13:45 PM | SENT |

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on ___04/21/2025___

VELVA L. PRICE
DISTRICT CLERK
By Deputy:
A. HENRIQUEZ QUESADA



# EXHIBIT 2



**From:** Chris Schulz <cschulz@slh-law.com>
**Date:** Tuesday, April 1, 2025 at 3:22 PM
**To:** Amy Welborn <amy@welborn-law.com>
**Subject:** Re: Service

We will accept service.

Sent from my iPhone

> On Apr 1, 2025, at 3:20 PM, Welborn, Amy <amy@welborn-law.com> wrote:
>
> Chris,
>
> Should we have your clients served?  I did not hear back from you as it if you wil accept service.
>
> Amy
>
>
> Amy Welborn, Managing Partner
> Welborn Law LLC
> 8127 Mesa, Suite B206
> Austin, Texas 78759
> 512.825.3390
> amy@welborn-law.com
> **Error! Filename not specified.**



## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Taylor Norman on behalf of Christopher Schulz
Bar No. 24060576
tnorman@slh-law.com
Envelope ID: 100069999
Filing Code Description: FINAL OR PARTIAL DISPOSITION ORDER
Filing Description: NOTICE OF REMOVAL
Status as of 4/28/2025 1:25 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 4/24/2025 5:55:55 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/24/2025 5:55:55 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 4/24/2025 5:55:55 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 4/24/2025 5:55:55 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 4/24/2025 5:55:55 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 4/24/2025 5:55:55 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 4/24/2025 5:55:55 PM | SENT |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on Dec. 9, 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS







**VELVA L. PRICE**
DISTRICT CLERK, TRAVIS
COUNTY
P.O. BOX 679003
AUSTIN, TX 78767

To:
AMY CATHERINE WELBORN
8712 MESA SUITE B206
AUSTIN TX 78759

4/28/2025

NOTICE OF ORDER
**D-1-GN-25-002212**
www.traviscountytx.gov/district-clerk/online-
case-information

You are hereby notified that an order has been
signed and entered on **04/24/2025** in the **345th
District Court** of Travis County, Texas in the
above case. **Order** is available at the office of the
clerk of the court, located at 1700 Guadalupe
Street, 3rd floor, room 3.200, Austin, Texas
78701. **THE ORDER MAY BE SUBJECT TO
APPEAL.** If you are an individual (not a
company), your money or property may be
protected from being taken to pay this judgment.
Find       out       more       by       visiting
www.texaslawhelp.org/exempt-property.

VELVA L. PRICE, District Clerk



J. LUCAS



## AVISO DE ORDEN

Se le notifica que se ha firmado e ingresado un orden en Condado Travis en Texas en la causa numerada y intitulada referencia. Una copia de dicha Orden está disponible en la oficina del secretario del tribunal, ubicado en 1700 Guadalupe Street, 3er piso, sala 3.200, Austin, Texas 78701. **LA ORDEN PUEDE SER OBJETO DE APELACION.** Si usted es una persona física (no una empresa), su dinero o propiedad pudieran estar protegidos de ser embargado como pago de este fallo. Obtenga más información visitando www.texaslawhelp.org/exempt-property.

VELVA L. PRICE, Del Distrito



## AVISO DE ORDEN

Se le notifica que se ha firmado e ingresado un orden en Condado Travis en Texas en la causa numerada y intitulada referencia. Una copia de dicha Orden está disponible en la oficina del secretario del tribunal, ubicado en 1700 Guadalupe Street, 3er piso, sala 3,200, Austin, Texas 78701. **LA ORDEN PUEDE SER OBJETO DE APELACIÓN.** Si usted es una persona física (no una empresa), su dinero o propiedad pudieran estar protegidos de ser embargado como pago de este fallo. Obtenga más información visitando www.texaslawhelp.org/exempt-property.

VELVA L. PRICE, Del Distrito

CLERK, U. S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
UNITED STATES COURTHOUSE
501 W. 5TH STREET, SUITE 1100
AUSTIN, TEXAS 78701

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE: $300



9589 0710 5270 2121 5133 05

CERTIFIED MAIL

Travis County District Clerk
P. O. Box 679003
Austin, TX 78767-9003

FIRST CLASS MAIL
IMI
$010.44
05/01/2025 ZIP 78701
043M31220B942

US POSTAGE

quadient

9/17/2025 11:00 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Susan Schmidt

**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| *Defendants.* | § | 345TH DISTRICT COURT |

---

## DEFENDANTS' SPECIAL EXCEPTIONS, ORIGINAL ANSWER, AND AFFIRMATIVE DEFENSES

---

TO THE HONORABLE JUDGE OF THIS COURT:

Defendants Austin Montessori School, Inc., Ronald Grae Baker, Individually, and Jinny Gonzalez, Individually (collectively "Defendants") file their Special Exceptions, Original Answer, and Affirmative Defenses to the First Amended Complaint ("Petition") filed by Plaintiffs.

### SPECIAL EXCEPTIONS

The purpose of a special exception is to compel clarification of pleadings when the pleadings are not clear or sufficiently specific or fail to plead a cause of action. *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex. 1998). Special exceptions are used to identify defects in a pleading, including both vagueness and the failure to state a cognizable cause of action, to allow the opposing party to cure them by amendment, if possible. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Mowbray v. Avery*, 76 S.W.3d 663, 677 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). The trial court has broad discretion in granting special exceptions to order more definite pleadings as a particular case may require. *Perry v. Cohen*, 285 S.W.3d 137, 142, 146 (Tex. App.—Austin 2009, pet. denied).



**1)    Retaliation Claim (Count 12).** Defendants specially except to Plaintiffs' live pleading on the grounds that Plaintiffs' retaliation allegations fail to state a legally recognized cause of action under Texas law. Plaintiffs' first amended petition appears to assert a generic claim of "retaliation" (paragraphs 55, 108-110) arising from decisions made in the administration or enrollment practices of a private daycare or childcare provider. However, Texas law does not recognize a standalone cause of action for retaliation in this context. Nowhere in the first amended petition as a whole, or in paragraphs 55, 108-110, do Plaintiffs identify what statute or law they rely on to support a standalone state-law retaliation cause of action in this context. Absent an express statutory basis, such as the Americans with Disabilities Act, Title IX, or another applicable anti-retaliation statute, a plaintiff cannot maintain a general state-law claim for "retaliation" against a private entity operating in a daycare or childcare capacity. To the extent Plaintiffs' attempts to assert the ADA as a basis for this claim, Plaintiffs' expressly withdrew these claims in federal court, which the federal court acknowledged. *See* **Exhibit A**, Report and Recommendation of the United States Magistrate Judge.[1] Because Plaintiffs' first amended petition fails to identify any such statutory foundation for their retaliation claim, Defendants request that the Court make an order sustaining this special exception, requiring that Plaintiffs amend their first amended petition to plead sufficient facts and legal basis its retaliation claim by a date certain, and providing that if and to the extent that Plaintiffs fail or refuse to amend, their retaliation claims be dismissed.

**2)    Unauthorized Practice of Medicine/Retaliation Claims.** Defendants specially except to Plaintiffs' live pleading generally, and specifically to paragraphs 9, 11, 14, 47, 55, 74, and 108-110, on the grounds that Plaintiffs' standalone claim alleging the unlicensed practice of

---

[1] The exhibits to the federal pleadings are being provided as a courtesy to the court as it does not appear as though the federal court pleadings have been filed with the state court.

medicine fails to state a legally cognizable cause of action under Texas law. *Aguirre v. Tristar Risk Mgmt.*, No. C-10-394, 2011 WL 248199, at *6 (S.D. Tex. Jan. 24, 2011) (finding no private cause of action for the unauthorized practice of medicine under the Texas Occupations Code); *Patel v. Rios*, No. 01-20-00856-CV, 2022 WL 3649348, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, pet. denied) (finding the plaintiff lacked standing to bring unauthorized practice of medicine claims because no private cause of action for the unauthorized practice of law under the Texas Occupations Code). Texas law does not recognize a civil cause of action for unauthorized practice of medicine. Nonetheless, Paragraph 74 of the Plaintiffs' first amended petition alleges:

> Under Tex. Occ. Code §§ 151.002(13), 165.152, any person who diagnoses or treats a physical or mental condition without a license commits a statutory violation. By diagnosing H.P. to have an "underdeveloped will," prescribing a treatment plan, monitoring the child's response, and usurping a licensed physician's authority, Gonzalez engaged in the unlicensed practice of medicine.

*See* Exhibit B ¶ 74, Plfts' 1st Amend. Pet.

While TEX. OCC. CODE § 151.002(13) broadly defines the "practice of medicine," it is a definitional provision that does not create a private civil cause of action. Similarly, TEX. OCC. CODE § 165.152 concerns penalties and enforcement mechanisms related to unauthorized practice, including criminal and administrative sanctions, but it does not provide for a civil remedy. Because Plaintiffs fail to identify any cognizable statutory or legal foundation for a civil cause of action based on the alleged unauthorized practice of medicine, their claim is legally insufficient. Accordingly, Defendants request that the Court sustain this special exception and order Plaintiffs to amend their first amended petition to plead sufficient facts and a valid legal basis for their civil claim regarding the practice of medicine by a date certain. Defendants further request that if Plaintiffs fail or refuse to amend, their claims related to the unauthorized practice of medicine be dismissed with prejudice.



**3)** **Failure to Accommodate Claims**. Defendants specially except to Plaintiffs' live pleading, or in paragraphs 30, 43, 63(f), 67, because Plaintiffs' standalone failure to accommodate claim fails to state a legally recognized cause of action under Texas law. Texas law does not recognize a standalone cause of action for failure to accommodate in this context. Nowhere in the first amended petition as a whole, or in paragraphs 30, 43, 63(f), 67, do Plaintiffs identify what statute or law they rely on to support a standalone state-law failure to accommodate cause of action against any of the defendants in this context. Absent an express statutory basis, such as Section 504 of the Rehabilitation Act, a plaintiff cannot maintain a general state-law claim for failure to accommodate against a private entity operating in a daycare or childcare capacity. Moreover, following removal of this case to the federal court, "Plaintiffs removed all federal claims, leaving only claims under state law, so the Court no longer has subject matter jurisdiction." *See* attached **Exhibit A**. Consequently, Plaintiffs' first amended petition fails to identify any such statutory or legal foundation for their failure to accommodate claim. Defendants request that the Court make an order sustaining this special exception, requiring that Plaintiffs amend their first amended petition to plead sufficient facts and legal basis for its failure to accommodate claim by a date certain, and providing that if and to the extent that Plaintiffs fail or refuse to amend, their failure to accommodate claims be dismissed.

**4)** **No Intentional Tort Independent of Breach of Contract**. Defendants' specially except to Plaintiffs' pleadings because they have failed to allege an intentional tort that is independent of their claim for breach of contract. Before tort damages accrue from a contractual matter, liability must arise independent of the fact that a contract exists between the parties. Plaintiffs' first amended petition fails to identify any independent tort. Defendants request that the Court make an order sustaining this special exception, requiring that Plaintiffs amend their first



amended petition to plead sufficient facts and legal basis of their tort claims by a date certain, and providing that if and to the extent that Plaintiffs fail or refuse to amend, their failure to accommodate claims be dismissed.

5) **Negligence Claims (Count 1).** Defendants specially except to Plaintiffs' negligence claims. Under Texas law, a plaintiff asserting negligence must plead and prove the existence of a duty, a breach of that duty, proximate cause, and damages. *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). A general reference to negligent conduct, without identifying the duty breached or facts supporting causation, is legally insufficient. *See* **Exhibit B** at 11-12. Accordingly, Defendants request that the Court sustain this special exception and order Plaintiffs to amend their first amended petition to replead their negligence claim with the specificity required by Texas law. If Plaintiffs are unable or unwilling to cure the pleading defects, the negligence claim should be dismissed.

6) **Negligence *Per Se* Claims (Count 2).** Negligence *per se* is a method of proving breach of duty, not a standalone cause of action. No express or implied private cause of action exists under the administrative codes cited by Plaintiffs. Defendants therefore specially except to Plaintiffs' first amended petition generally and specifically to paragraphs 69-73 as follows:

A.    *Alleged Violations of TAC Nap Time and Food Service Regulations.* Defendants specially except to Plaintiffs' live pleading generally, and specifically to paragraph 73, on the grounds that Plaintiffs' standalone claim alleging violations of the Texas Administrative Code provisions governing nap times and food service (26 TAC §§ 746.2901–2911 and 746.3301–3321) fails to state a legally cognizable cause of action under Texas law. Texas law does not recognize a private civil cause of action based solely on alleged violations of these regulatory provisions. Paragraph 73 of Plaintiffs' first amended petition alleges:



> AMS failed to comply with the regulations regarding nap times and food service for H.P. as set forth in 26 TAC §§ 746.2901–2911 and 746.3301–3321. H.P. and R.P. were forced to nap for more than an hour. H.P. was not allowed to have unhurried meals.

*See* Exhibit B ¶ 73.

While these sections of the Texas Administrative Code establish minimum standards for child-care facilities, including nap time durations and food service practices, they are regulatory provisions intended for administrative enforcement and do not create a private civil cause of action. Because Plaintiffs fail to identify any statutory or legal authority recognizing a private cause of action for alleged violations of these TAC provisions, their claims lack a valid legal foundation and are insufficient as a matter of law. Accordingly, Defendants request that the Court sustain this special exception and order Plaintiffs to amend their first amended petition to plead sufficient facts and a valid legal basis for any claim premised on these regulations by a date certain. Defendants further request that if Plaintiffs fail or refuse to amend, their claims related to the alleged violations of the TAC nap time and food service regulations be dismissed with prejudice.

B.   *Alleged Violations of TAC Emotional Support Regulations.* Defendants specially except to Plaintiffs' live pleading generally, and specifically to paragraph 72, on the grounds that Plaintiffs' standalone claim alleging violations of Texas Administrative Code Section 26 TAC § 746.2601 fails to state a legally cognizable cause of action under Texas law. Texas law does not recognize a private civil cause of action based solely on alleged violations of this regulatory provision. Paragraph 72 of the Plaintiffs' first amended petition alleges:

> AMS failed to encourage the Ponder children to express feelings and failed to give appropriate attention as required by 26 TAC § 746.2601. When H.P. was upset or speaking loudly, he was sent to a bathroom, sometimes without lights on.

*See* Exhibit B ¶ 72.



While 26 TAC § 746.2601 establishes standards related to emotional support and attention in child-care facilities, this provision is regulatory in nature and intended for administrative enforcement. It does not create a private civil cause of action. Because Plaintiffs fail to identify any statutory or legal authority recognizing a private cause of action based on alleged violations of 26 TAC § 746.2601, their claim is legally insufficient. Accordingly, Defendants request that the Court sustain this special exception and order Plaintiffs to amend their first amended petition to plead sufficient facts and a valid legal basis for any claim premised on this regulation by a date certain. Defendants further request that if Plaintiffs fail or refuse to amend, their claim related to the alleged violation of 26 TAC § 746.2601 be dismissed with prejudice.

7)    **Gross Negligence Claims (Count 3).** Defendants specially except to Plaintiffs' gross negligence allegations on the ground that gross negligence is not a standalone cause of action under Texas law. Rather, gross negligence is a heightened form of negligence relevant only to the recovery of exemplary (punitive) damages under Texas Civil Practice and Remedies Code § 41.003; *see Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994) (gross negligence is not an independent tort but a threshold for punitive damages in negligence actions). Plaintiffs' first amended petition does not allege a viable underlying negligence claim that would support an award of exemplary damages, nor does it plead facts showing an extreme degree of risk and Defendants' subjective awareness of and conscious indifference to that risk, as required by *Moriel* and TEX. CIV. PRAC. REM. CODE § 41.001(11). Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead with specificity or clarify that their gross negligence allegations are asserted solely in support of exemplary damages and not as an independent cause of action. If they cannot do so, the claim should be dismissed. Plaintiffs' first amended petition offers only conclusory statements and fails to plead facts showing Defendants



had actual, subjective awareness of any extreme risk or consciously disregarded it. Mere allegations of negligence, even if repeated, are insufficient to support a gross negligence claim. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead their gross negligence claim with sufficient specificity. If they are unable or unwilling to do so, the claim should be dismissed.

8)    **Negligent Activity Claims (Count 4).** Defendants specially except to Plaintiffs' negligent activity claim because it fails to plead facts sufficient to state a legally viable cause of action. Under Texas law, a negligent activity theory requires that the plaintiff's injuries arise from a contemporaneous, ongoing activity by the defendant—not from a static condition. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992). Plaintiffs do not identify any specific ongoing activity by Defendants that caused the alleged harm. Without factual allegations showing a duty, breach, and proximate cause tied to an active occurrence, the claim is deficient. Defendants request that the Court sustain this special exception and require Plaintiffs to replead with specificity or, if they cannot, dismiss the claim.

9)    **Respondeat Superior (Count 5)**. Defendants specially except to Plaintiffs' respondeat superior claims. Plaintiff improperly pleads "respondeat superior" as a separate cause of action. Texas law is clear that respondeat superior is not an independent tort but a theory of vicarious liability that attaches to an underlying actionable wrong committed by an employee within the course and scope of employment. Further, Plaintiffs fail to plead with specificity any actionable tort or wrongful conduct by an employee for which Defendant could be held vicariously liable. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead their "respondeat superior" claim with sufficient specificity. If they are unable or unwilling to do so, the claim should be dismissed.



8

10)     **Breach of Contract. (Count 8).** Plaintiff has failed to plead the contractual provision allegedly breached and the manner in which Defendants' conduct constitutes a breach of the contract, and has failed to plead sufficient terms of the alleged agreement to allow Defendants to ascertain the obligations at issue. Vague references to an unspecified agreement are insufficient to state a cause of action. *See Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead their breach of contract claim with sufficient specificity. If they are unable or unwilling to do so, the claim should be dismissed.

11)     **Breach of Contract Damages (Count 8).** Plaintiff's first amended petition does not plead facts supporting recoverable damages caused by the alleged breach of contract. Merely asserting "damages" in a conclusory fashion does not meet pleading requirements. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead their breach of contract damages with sufficient specificity. If they are unable or unwilling to do so, the claim should be dismissed.

1. **Plaintiff fails to identify which contractual provision was breached (Count 8).** Plaintiff's petition is vague and does not identify any specific contractual term that Defendant allegedly breached. Without such specificity, Defendant cannot prepare an adequate response or defense, including rebuttal of causation and damages.

2. **Breach of Contract Causation (Count 8).** Plaintiff alleges that Defendant breached a contract but fails to allege facts demonstrating a direct causal link between any alleged breach and the damages claimed. Texas law requires that a plaintiff seeking damages for breach of contract must allege facts showing that the alleged breach proximately caused the damages claimed.

12)     **Fraud (Count 9).** Defendants specially except to Plaintiffs' fraud claim because it is conclusory, improperly duplicative of their breach of contract claim, and fails to allege any independent injury as required under Texas law. Under Texas law, a plaintiff may not repackage



a breach of contract claim as fraud merely by asserting that the breach was made with fraudulent intent. To be viable, a fraud claim must allege a duty independent of the contract and a distinct injury that is not merely the loss of contractual benefits. Here, Plaintiffs' fraud allegations are not pleaded with particularity, as required by Rule 45 of the Texas Rules of Civil Procedure. Plaintiffs fail to specify the alleged misrepresentations, when and by whom they were made, and how they caused a separate injury beyond the alleged breach. The alleged injury appears to be identical to the claimed contractual loss, which is insufficient to support a separate tort theory. Accordingly, Defendants request that the Court sustain this special exception and order Plaintiffs to amend their first amended petition to:

1.  Plead the elements of fraud with particularity, including the specific statements made, by whom, when, and how they were false;
2.  Identify a legal duty independent of the contract;
3.  Allege an injury that is distinct from the breach of contract itself.

If Plaintiffs are unable to replead to meet these requirements, Defendants respectfully request that the Court strike or dismiss the fraud claim.

**13)    Fraudulent Inducement Claims (Count 10).** Fraudulent inducement is subject to the same heightened pleading standards as common law fraud. Plaintiffs must identify who made the alleged misrepresentation, what was said, when and where it was said, and why it was false at the time. Here, Plaintiffs fail to plead the elements of fraudulent inducement with sufficient specificity. The allegations do not specify the particular misrepresentations or facts that demonstrate the defendant never intended to fulfill the promise at the time it was made. Further, to the extent Plaintiffs seek only the benefit of their contractual bargain, they have not alleged an independent injury separate from their breach of contract claim. Under Texas law, a fraud claim cannot proceed when it merely duplicates a contract claim without a distinct injury. Accordingly,



10

Defendants respectfully request that the Court sustain this special exception and order Plaintiffs to amend their first amended petition to:

1. Plead fraudulent inducement with particularity, including the who, what, when, where, and how of the alleged misrepresentation;

2. Identify an injury independent of the alleged breach of contract.

**14)    Civil Conspiracy (Count 11).** Defendants specially except to Plaintiffs' civil conspiracy claim to the extent it is based on alleged coordination between a private business and its employees. Under Texas law, a corporation or business entity cannot conspire with its own employees, officers, or agents when they are acting within the course and scope of their employment. Plaintiffs have not alleged that any employees were acting outside the scope of their employment or that they were pursuing purely personal interests adverse to the business. Absent such allegations, the conspiracy claim is legally defective. Accordingly, Defendants respectfully request that the Court sustain this special exception and require Plaintiffs to replead their civil conspiracy claim, if they can do so in compliance with Texas law. If Plaintiffs cannot cure this defect, the conspiracy claim should be dismissed.

**15)    Failure to Plead Elements of Damages.** Plaintiffs allege that they have collectively suffered damages as a result of Defendants' actions (**Exhibit B** at 18-19) but fail to specifically plead:

- The nature and amount of damages claimed;

- How the damages were caused by Defendant's alleged conduct; and

- Any supporting factual allegations linking Defendant's conduct to the claimed damages.

Plaintiffs' amended petition contains only general statements of damages without specifying actual losses, economic or non-economic, or the factual basis for those claims. Plaintiffs



do not differentiate between damages allegedly arising from breach of contract and those allegedly arising from tort claims. Texas law recognizes distinct limitations and measures of recovery for contract and tort claims. Plaintiff's failure to distinguish between these damages leaves Defendants unable to ascertain which damages are claimed under which legal theory, or to respond appropriately. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to amend their pleading to identify the factual basis for their request. If Plaintiffs are unable to do so, the request should be stricken from the first amended petition.

16)    **Attorney's Fees.** Defendants specially except to Plaintiffs' request for attorney's fees because the first amended petition fails to identify any statute or contract provision that would entitle them to recover such fees. *See* **Exhibit B** at 15. Under Texas law, attorney's fees are recoverable only when authorized by statute or by contract. A general request for attorney's fees, without identifying the specific statutory or contractual basis, does not provide fair notice and is legally insufficient. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to amend their pleading to identify the legal basis for their request. If Plaintiffs are unable to do so, the request should be stricken from the first amended petition.

## GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies every allegation contained in Plaintiffs' first amended petition and demands strict proof thereof as required by the Constitution and laws of the State of Texas.

By way of further answer, Defendants hereby give actual notice to Plaintiffs that all documents produced by Plaintiffs during discovery may be used against Plaintiffs at any pre-trial proceeding and/or trial of this matter without the necessity of authenticating the document. This notice is given according to Rule 193.7 of the Texas Rules of Civil Procedure.



12

## AFFIRMATIVE DEFENSES

Without waiving the foregoing general denial, Defendants assert the following affirmative and other defenses:

1.    **Jury Waiver**: The parties have expressly and mutually agreed, as set forth in the executed contract, to waive their right to a trial by jury.

2.    **Failure to State A Claim for "Retaliation"**: No private right of action exists for retaliation under the Texas statutes and regulations governing childcare facilities and daycare operations. Texas law vests enforcement authority for childcare licensing statutes exclusively with the Texas Health and Human Services Commission/Department of Family and Protective Services. Because the Legislature has not created a private cause of action for retaliation in this context, Plaintiff lacks a cognizable legal basis to assert such a claim against Defendant.

3.    **Failure to State a Claim and No Private Right of Action for Failure to Accommodate**: Texas statutes and regulations governing childcare and daycare facilities do not provide a private cause of action for alleged failures to accommodate. Because the Legislature has not created a private cause of action for such claims in this context, Plaintiff lacks standing and a cognizable legal basis to assert this claim against Defendants.

4.    **Failure to State a Claim for the Practice of Medicine (Statutory Exclusion)**: TEX. OCC. CODE § 151.002(a)(13) defines the "practice of medicine" narrowly, including diagnosing, treating, or offering to treat a physical or mental condition by any system or method. Defendants, individually or collectively, did not diagnose, prescribe, or treat any condition, nor did they hold themselves out as qualified to do so. Mere involvement in educational, supportive, clerical, or administrative roles does not constitute the "practice of medicine."



5.    **Lack of Standing (Unauthorized Practice of Medicine Claim)**: Plaintiffs lack standing to assert any claim premised upon the alleged unauthorized practice of medicine under Texas law. The Texas Occupations Code vests exclusive authority to investigate and enforce matters involving the unauthorized practice of medicine in the Texas Medical Board and other designated regulatory authorities. *See* TEX. OCC. CODE §§ 155.001, 165.151, et seq. Texas courts have consistently held that there is no private right of action for alleged violations of these provisions. Accordingly, Plaintiffs cannot establish standing to pursue such a claim, and any cause of action based upon alleged unauthorized practice of medicine fails as a matter of law.

6.    **Failure to State a Claim for Civil Conspiracy**: Plaintiffs' conspiracy claims are barred by the intracorporate conspiracy doctrine.

7.    **Failure to State a Claim for Fraud or Fraudulent Inducement**: Plaintiffs' claims for fraud and/or fraudulent inducement fail to state a claim upon which relief may be granted under Texas law. Plaintiffs have not alleged with the requisite specificity the elements of fraud, including the existence of a material misrepresentation, falsity, intent, justifiable reliance, and damages. In addition, Plaintiffs have failed to plead the circumstances of any alleged fraud with particularity as required by Texas law. Accordingly, Plaintiffs' fraud-based claims are insufficient as a matter of law.

8.    **No Independent Cause of Action for Failure to Train or Supervise**: Defendants assert that Plaintiffs' claim for "failure to train or supervise" fails as a matter of law. Texas does not recognize negligent training or supervision as an independent cause of action, absent an underlying actionable tort by an employee. To the extent Plaintiffs have failed to plead or cannot prove an underlying tort committed by Defendants' employee(s), any claim for negligent training



or supervision is barred as a matter of law. Accordingly, Plaintiffs' allegations of negligent training or supervision fail to state a claim upon which relief may be granted.

9.    **No Breach of Contract**: Defendants assert that, at all relevant times, they fully performed all obligations required under the contract with Plaintiffs. Any alleged damages or dissatisfaction asserted by Plaintiffs arise from Plaintiffs' own actions, assumptions, or misinterpretations, and not from any failure, neglect, or breach by Defendants.

10.    **Failure to State a Claim for Breach of Contract**: Defendants assert that, even if the Court assumes, arguendo, that a contract existed, Plaintiffs have failed to allege facts sufficient to establish a breach. Specifically:

1.    **Failure to Allege Breach of Any Contractual Provision:** Plaintiffs have not identified any specific provision of the contract that Defendants allegedly breached.

2.    **Failure to Plead Damages:** Plaintiffs have not demonstrated that any actual damages were incurred as a direct result of Defendants' alleged conduct.

3.    **Failure to Establish Causation:** Plaintiffs have not pled facts showing a causal connection between any alleged breach by Defendants and the purported harm. Any alleged injuries or losses may have arisen from independent actions of Plaintiffs or third parties, rather than from any act or omission by Defendants.

11.    **Accord and Satisfaction**. The parties agreed to accept different performance in satisfaction of the contract.

12.    **Waiver or Estoppel**: Plaintiffs waived rights or are estopped from asserting the claim due to their own conduct.

13.    **Frustration of Purpose**: The principal purpose of the contract was substantially frustrated by events not caused by Defendants.



14.    **Economic Loss Rule**: Defendants assert the **economic loss rule**. Plaintiffs' claims are barred, in whole or in part, because they improperly seek recovery in tort for purely economic damages arising solely from alleged contractual duties. Under Texas law, a plaintiff may not recover in tort for economic losses that are only the subject matter of a contract. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). Here, Plaintiffs' alleged damages are economic in nature and flow only from the alleged breach of contractual obligations. Because Plaintiffs have not alleged or cannot prove any independent duty recognized by Texas law, beyond the duties imposed by contract, Plaintiffs' tort-based claims are barred.

15.    **Parol Evidence Rule**: Defendants assert, as an affirmative defense, that any alleged oral or written agreements, statements, or representations made before or contemporaneous with the execution of the written contract are barred by the parole evidence rule. The written contract between the parties constitutes the complete and final agreement, and no evidence of prior or contemporaneous agreements may be introduced to vary, alter, or contradict its terms.

16.    **Damages-Contract Claims**: To the extent Plaintiffs seek damages for breach of contract, their recovery, if any, is limited to the benefit of the bargain and direct economic damages. Plaintiffs are not entitled to recover mental anguish, pain and suffering, loss of enjoyment of life, or other non-economic damages in connection with a contract claim. *See Reed*, 711 S.W.2d at 618–19.

17.    **Treble Damages Not Available**: Defendants assert that Plaintiffs' demand for treble damages is improper and unavailable as a matter of law. Treble damages are only authorized under limited statutory schemes, such as the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA"), TEX. BUS. & COM. CODE § 17.50(b)(1), or other expressly enumerated



statutes. Plaintiffs have not pleaded any claim under the DTPA or any other statute that permits treble damages. Accordingly, Plaintiffs' request for treble damages fails to state a claim for relief and is barred.

18.    **Medical Expenses – Paid or Incurred Rule**: Any claim for medical expenses is limited to the amount actually paid or incurred by or on behalf of Plaintiffs, as provided by TEX. CIV. PRAC. & REM. CODE § 41.0105.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants request judgment of this Court that Plaintiffs take nothing by this suit; that Plaintiffs' claims be dismissed with prejudice, and that Defendants recover their attorneys' fees and costs, together with such other and further relief to which they may be justly entitled.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Christopher Schulz*
**CHRISTOPHER SCHULZ**
State Bar No. 24060576
Email: cshulz@slh-law.com
**ELIZABETH ANGELONE**
State Bar No. 24077349
Email: eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2025, the foregoing was e-filed with the Clerk of the

Court and a copy will be sent via e-service to the attorney of record for Plaintiffs, namely:

Amy C. Welborn
**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

*/s/ Christopher Schulz*
Attorney for Defendants



18

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | |
| *Individually, and as Next Friend of* LY, | § | |
| AND AS NEXT FRIEND H.P., L.P., and | § | |
| R.P., *Minors,* | § | |
| **Plaintiffs** | § | |
| v. | § | No. 1:25-Cv-00615-ADA-SH |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, and | § | |
| JINNY GONZALEZ, | § | |
| **Defendants** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

### TO: THE HONORABLE ALAN D ALBRIGHT
### UNITED STATES DISTRICT JUDGE

Now before the Court is Plaintiffs' Unopposed First Amended Motion to Remand (Dkt. 23),

filed June 11, 2025.[1]

## I.    Background

After Plaintiffs Ross and Sarah Ponder's children were expelled from the Austin Montessori

School in Austin, Texas, they filed this suit in state court, alleging negligence, negligence *per se*,

gross negligence, *respondeat superior*, breach of contract, fraud, fraudulent inducement, civil

conspiracy, and violations of Title III of the Americans with Disabilities Act ("ADA") and Section

504 of the Rehabilitation Act. *See Ponder v. AMS*, No. D-1-GN-25-002212 (345th Dist. Ct., Travis

County, Tex. March 28, 2025); Plaintiffs' Original Petition, Dkt. 1-3 at 7-33. Defendants removed,

invoking this Court's federal question jurisdiction based on Plaintiffs' federal claims under the

---

[1] The District Court referred this case to this Magistrate Judge for disposition of non-dispositive motions and a report and recommendation on dispositive motions, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and the District Court's Standing Order. Dkt. 2.

ADA and the Rehabilitation Act, pursuant to 28 U.S.C. §§ 1441(a) and 1446. Dkt. 1. Plaintiffs then filed a First Amended Complaint removing all federal claims (Dkt. 22) and this unopposed motion to remand this action to state court under 28 U.S.C. § 1447.

## II.    Legal Standard

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Congress has granted jurisdiction over two general types of cases: those arising under federal law ("federal question jurisdiction"), and those in which the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties ("diversity jurisdiction"). 28 U.S.C. §§ 1331, 1332(a); *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437-38 (2019). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

The federal removal statute allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Once a defendant removes an action from state to federal court, the plaintiff may move to remand. 28 U.S.C. § 1447(c). A court must remand a case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case removed from state court." *Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991) (quoting 28 U.S.C. § 1447(c)).

## III.    Analysis

Plaintiffs move to remand this action to state court under 28 U.S.C. § 1447(c) because the amended petition contains only state law claims. Dkt. 23 at 5. Defendants agree that this action should be remanded to state court. *Id.*

2

> If a complaint filed in state court asserts federal-law claims, the
> defendant may remove the case to federal court. And if the
> complaint also asserts state-law claims arising out of the same facts,
> the federal court may adjudicate those claims too, in the exercise of
> what is called supplemental jurisdiction.

*Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25 (2025). Because Plaintiffs' Original

Petition asserted both state and federal claims, Defendants properly removed this case to federal

court under 28 U.S.C. § 1441(a), and the Court had subject matter jurisdiction over Plaintiffs'

federal claims and supplemental jurisdiction over Plaintiffs' state claims at that time. *Id.* But after

removal, Plaintiffs removed all federal claims, leaving only claims under state law, so the Court

no longer has subject matter jurisdiction. "When an amendment excises the federal-law claims that

enabled removal, the federal court loses its supplemental jurisdiction over the related state-law

claims," and the case must return to state court. *Id.*

## IV.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT**

Plaintiffs' Unopposed First Amended Motion to Remand (Dkt. 23) and **REMAND** this action to

the 345th Judicial District of Travis County, Texas.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections

must specifically identify those findings or recommendations to which objections are being made.

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v.

United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

objections to the proposed findings and recommendations contained in this Report within 14 days

after the party is served with a copy of the Report shall bar that party from de novo review by the

District Court of the proposed findings and recommendations in the Report and, except on grounds

of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings

and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*,

474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29

(5th Cir. 1996) (en banc).

     **SIGNED** on July 14, 2025.

                               SUSAN HIGHTOWER
                               UNITED STATES MAGISTRATE JUDGE



# EXHIBIT B



# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISON

| | | |
|---|---|---|
| **ROSS PONDER AND SARAH PONDER,** | § | |
| **INDIVIDUALLY, AND AS NEXT FRIEND** | § | |
| **OF H.P., L.P., and R.P., MINORS,** | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 1:25-cv-00615 ADA-SH** |
| | § | |
| **AUSTIN MONTESSORI SCHOOL, INC.;** | § | |
| **RONALD GRAE BAKER, INDIVIDUALLY;** | § | |
| **and JINNY GONZALEZ, INDIVIDUALLY,** | § | |
|     **Defendants.** | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually and as Next Friend of H.P., L.P. and R.P., minors ("Ponders" or "Plaintiff"), file their First Amended Complaint against Defendant Austin Montessori School, Inc.("AMS"), Grae Baker ("Baker"), and Jinny Gonzalez ("Gonzalez") (collectively "Defendants") and show the Court as follows:

## I. PARTIES

1.    Plaintiffs Ross and Sarah Ponder are the parents of Plaintiff H.P., L.P., and R.P., minors. Plaintiffs reside in Travis County, Texas.

2.    Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place of business at 5006 Sunset Trail, Austin, Texas 78745. Defendant AMS has previously answered and accepted service.

3.    Defendant Ronald Grae Baker is an individual that resides at 10521 Redmond Road, Austin, Texas 78739. Defendant Baker has previously answered and accepted service.

4.    Defendant Jinny Gonzalez is an individual that resides at 2907 Pops Way, Austin, Texas 78745. Defendant Gonzalez has previously answered and accepted service.



## II. JURISDICTION

5.    Subject matter jurisdiction is improper in Federal Court because all the claims are based in Texas law and no Federal claims exist. Jurisdiction is proper in Travis County District Court.

## III. SUMMARY

6.    The Ponders fully embraced Montessori practices and were excited to have enrolled their children at AMS. Unfortunately, after enrolling the children, the Ponders learned that AMS does not follow many of the practices of Dr. Maria Montessori and her traditional method, instead using their own practices, which were very harmful to the Ponder children.

7.    Montessori guides are trained to "follow the child" by emphasizing self-directed learning and movement within a prepared environment. Montessori education principles involve the use of collaboration with the parents to create a support plan to best support each child. Montessori education emphasizes discipline through positive guidance and self-regulation, rather than punishment.

8.    At critical points, Defendants did not collaborate with the Ponders and intentionally prevented information from being shared with parents. Defendants utilized questionable and inappropriate punishments.

9.    Defendants also did not disclose that they adopted their own form of quack medicine used to diagnose and treat their students, in violation of state laws and in opposition of standard medical practices.

10.    AMS fraudulently induced the Ponders into contracts. When the Ponders questioned the practices of AMS, the children were expelled.

11.    Further, AMS allowed and supported Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license, allowing her to make diagnoses of children, knowing she

2



had no medical training. Gonzalez "diagnosed" and treated H.P. for "an underdeveloped will." Her prescribed 'treatment plan' included: controlling family medical routines, isolation therapy, dictating parent-child communication, rigid behavioral modification schedules, and specific therapeutic interventions.

12.     To prevent exposure of AMS's quack medical and other practices, AMS refused to provide important information to the parents of the children attending AMS and prevented meaningful parent communication with staff, including information regarding incidents and specifics of the medical treatment.  AMS failed to allow the Ponders access to medical, school and treatment records in violation of state law.

13.     The Ponders were repeatedly called to pick up H.P. and/or R.P. without notice and frequently without detailed information regarding an alleged incident.

14.     Upon questioning AMS's quack medicine and lack of communication and bringing these issues to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling the Ponder children.

### IV. FACTS

15.     The Ponders first enrolled at AMS in August of 2023.  The Ponder children had previously thrived in another Montessori environment. The Ponders believed AMS would provide a nurturing supportive environment for their children in keeping with Dr. Montessori's teachings.

16.     The Ponders' enrollment contracts were for an 8 am-3:15 school day (full-time) for all of their children. During the 2023-2024 school year, H.P. and L.P. attended AMS at a cost of $40,555. During the 2024-2025 school year, R.P., H.P., and L.P. attended AMS at a cost of $57,973.50.  Attached as Exhibit 1 is a redacted (public version) of a contract for H.P.

17.     The Ponders were required to remain under contract when two children's hours were

3



reduced. The reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant, causing financial burden.

18.    H.P.'s first day at AMS was August 17, 2023. AMS noted that there were no issues when H.P. napped. On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time. A meeting was immediately held the same day to address the matter.

19.    On Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day. The Ponders were told this was a transition period to allow H.P. to get used to AMS. The Ponders were given no alternatives. The Ponders specifically chose AMS because it allowed for full day coverage for all their children.

20.    AMS did not offer to let the Ponders out of their contract. The Ponders were strapped into a contract for full-time care but were receiving two to three hours of care.

21.    On Friday, September 8, 2023, Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation." The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred on September 11, 2023, meaning the Ponders had to arrange childcare for H.P. so that they could attend the meeting.

22.    At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative." Ms. Gonzalez diagnosed H.P. with "undeveloped will" and provided her medical treatment plan. The medical treatment plan required that the Ponders follow a specific routine, recommending that they "modify the time each family member goes to bed and wakes up." The treatment plan instituted rules for speaking to H.P. The treatment plan forbade the Ponders from walking to school and required that H.P. arrive by car at exactly 8 am daily.

4



23.     Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until 10 am, until the next treatment meeting in two weeks.  During this two-week period, Gonzalez and AMS would treat H.P.'s condition and Gonzalez would determine if H.P. made medical progress in his treatment that would allow H.P. to attend until noon, not the contracted 3:15 pm.  They required that the school counselor Leslie Grove observe H.P.  Gonzalez stated that the treatment plan would "break the habit" of H.P. being in distress.   Gonzalez also demanded that the Ponders always keep their phones on to accommodate immediate pickups when AMS required it.

24.     On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders.  This was scheduled for September 27, 2023.

25.     On September 15, 2023, the Ponders requested an update on H.P. and asked if he could gradually leave a little later.  Gonzalez informed the Ponders that this would not be an option.

26.     Another meeting was scheduled on Thursday, September 21, 2023 to discuss the progress of H.P.'s medical treatment.  However, on September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to cancel the meeting due to being very busy.  They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

27.     On October 2, 2023, Lesley Williams, H.P.'s teacher, informed the Ponders that H.P. had been improving and had "the best day at school so far."  There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

28.     Gonzalez's treatment included hiring an occupational therapist to work with H.P. At the



recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an occupational therapist. Further, she recommended unnecessary therapy, such as vision therapy. This caused a delay in getting H.P. an OT evaluation.

29.    On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m. Again, the contractual terms and payments were for full day coverage, not a two- or three-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

30.    On January 23, 2024, AMS informed the Ponders that they were "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time.

31.    On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. AMS denied a request to allow H.P. to stay when Ross had to leave town before his brother's life support was pulled and was unable to pick him up at 11:45 am.

32.    H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024. At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended day, as they had contracted for full-time school. The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

33.    On July 2, 2024, immediately upon her return from vacation, Ms. Williams, H.P.'s teacher,



communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.

34.    By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes. While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early. Additionally, AMS began requiring that R.P. to also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

35.    The teachers/Guides were clearly working without enough support and even disclosed their stresses and personal medical information regarding hormonal changes to the children through discussions highly abnormal and inappropriate to have with young students.

36.    While Montessori teachings allow students to be given guidance and redirection, they do not punish. However, AMS allowed the stressed teachers to punish children and classes. Access to water bottles were restricted to an entire class as a punishment and students were encouraged to go into the bathroom often without the lights on, as a normalized way of isolating children from the classroom for being "too loud."

37.    On September 11, 2024, the Ponders notified the school that the family's beloved dog was actively dying of cancer and would likely die in the next 1-3 days.

38.    On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns.

39.    On September 12, 2024, an AMS administrator called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early because she was not sleeping in Casita, something that had not previously been disclosed and was not a problem before or after R.P.'s time at AMS The Ponders were dealing with a different emergency in their home–the death

7



of their terminally ill German shepherd and desire to remove the animal's body prior to the children returning home. AMS was unwilling to provide any concession regarding their demand to pick up regardless of what the family was managing at the home that day.

40. On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS.

41. On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her medical treatment plan for December 5, 2024. The Ponders informed AMS that H.P. would be going to the doctor to determine if he had ADHD, which directly conflicted with Ms. Gonzalez's treatment plan and diagnosis.

42. On December 3, 2024, H.P. was formally diagnosed with ADHD. The Ponders provided the diagnosis and medical documentation to AMS immediately.

43. On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think that AMS was the right school for H.P. Ms. Gonzalez stated that she did not believe in diagnosing or medicating a child for ADHD and did not approve of the treatment plan from H.P.'s actual physician. In fact, with the support of AMS, Gonzalez specifically discussed her own medical plan, stating the need to override the diagnosis of an actual doctor. AMS shortened H.P.'s days to half days.

44. On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects. The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication, which they had found effective at home.

45. On December 16, 2024, the Ponders met with Baker and School Advisor, Jeff Schneider. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates about how H.P. was performing in school, including the response



to medication.

46.    However, from December 16, 2024, to January 27, 2025, AMS refused to provide feedback. The Ponders made repeated requests to meet to discuss H.P. and requested that Gonzalez be taken off the team, due to her alternative medical diagnosis and treatment and disregard of H.P.'s licensed pediatrician and faculty member at Dell Medical School.

47.    On January 17, 2025, Baker sent correspondence stating that AMS would not be offering an enrollment contract for the following year to H.P. Mr. Baker also chastised the Ponders for requesting that Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine, dismissing the parent and pediatrician input and advice.

48.    On January 24, 2025, the Ponders met with Mr. Baker and Mr. Schneider. The Ponders highlighted communication issues, the lack of communications with parents and the systematic barriers that prevented parents from being informed of concerns regarding their children, noting many parents shared these concerns. Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

49.    On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services based on their experiences and after reviewing AMS's most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS. The fact that this complaint was filed was made known to AMS on January 25, 2025.

50.    On January 28, 2025, Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including following the medical treatment plan created by Gonzalez.



51.     The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make changes intended to help all students gain community support and raise concerns. The WhatsApp group was a private, optional, parent-run platform that was not associated with the school administration and with a minor fraction of the school's parents actively participating. The school had no right to limit speech in this forum or have an opinion about a forum not inclusive of the school or faculty. This would be akin to the school trying to limit conversations between parents in a home, church or any other off property location.

52.     On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. would be placed in a standard classroom with minor accommodations and did not need a special education classroom, occupational, speech, or vision therapy. The results were immediately distributed to AMS and the Ponders requested a meeting.

53.     On January 30, 2025, Baker sent a letter to all parents, guardians, and staff at AMS stating that the information provided by the Ponders was "misleading" and that "false claims" were made. The statements made were derogatory and caused the Ponders financial harm. The decision to expel all three children was made on or before the same day.

54.     A coffee was held at 8:30 AM on January 31, 2025, at the Ponders' home to further discuss systematic communication issues affecting many students at AMS. At 5:45 PM on January 31, 2025, AMS terminated the enrollment of all three children. It was stated by AMS that the terminations occurred because the Ponder parents' "actions were detrimental to the school." Clearly the actions referred to are the filing of the HHS complaint and reaching out to other parents to discuss the communication concerns. The termination of the Ponder children was retaliation.

55.     The impact on the family has been extreme. While attending the school, the quack



medicine diagnosis and treatment plan instituted by Gonzalez caused H.P. harm.

56.    H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS. The level of torture he experienced was not understood until he was placed in a new school, where he is thriving. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

57.    The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family. The Ponders' entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to follow their chosen morning routine.

58.    Further, the Ponders were forced to spend thousands of dollars on treatments that Gonzalez prescribed to treat her diagnosis of H.P. with "underdeveloped will." These treatments were not necessary or beneficial to treat H.P.

59.    Due to the change in hours, the Ponders ability to work full-time was severely impacted, clearly impacting their earning abilities.

60.    Sarah Ponder's career was damaged by the actions of Defendants. Some of her clients received the letter, causing at least one to terminate the relationship.

61.    The expulsion and the entire AMS experience caused extreme mental anguish for the entire family. The Ponder children have faced severe emotional distress in having to change schools. They were not able to be immediately placed in school, causing educational disruption.

## V. CAUSES OF ACTION

### A. Count 1- Negligence

62.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

63.    The occurrences made the basis of this suit, and the resulting injuries and damages of the



Plaintiffs were proximately caused by the negligent conduct of the Defendants. Defendants were negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

 a. Failing to exercise the care necessary under the circumstances;

 b. Failing to do what a reasonable daycare would have done under the circumstances;

 c. Failing to intervene to ensure a child's safety;

 d. Failing to provide proper supervision;

 e. Failing to properly hire, qualify, train and supervise its employees;

 f. Failing to provide reasonable accommodations; and

 g. Failing to adhere to the Texas Minimum standards for childcare.

64. Defendants had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

65. Defendants had a duty to maintain a safe environment for children in its care.

66. Defendants had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

67. Defendants breached the duty of care by failing to care for the children, failing to supervise the children, failing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

68. Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B. Count 2- Negligence Per Se**

69. Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.



70.     Defendants failed to exercise the mandatory standard of care in violation of the minimum standards for childcare.

71.     Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Refusal to provide water and putting children in dark bathrooms is not appropriate punishment.

72.     AMS failed to encourage the Ponder children to express feelings and failed to give appropriate attention. 26TAC 746.2601 When H.P. was upset or speaking loudly he was sent to a bathroom, sometimes without lights on.

73.     AMS failed to comply with the regulations regarding nap times and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321. H.P. and R.P. were forced to nap for more than an hour.   H.P. was not allowed to have unhurried meals.

74.    Under Tex. Occ. Code §§ 151.002(13), 165.152, any person who diagnoses or treats a physical or mental condition without a license commits a statutory violation. By diagnosing H.P. to have an "underdeveloped will," prescribing a treatment plan, monitoring the child's response, and usurping a licensed physician's authority, Gonzalez engaged in the unlicensed practice of medicine. Plaintiffs are in the class the statute protects (patients and parents), and the statutory breach proximately caused their injuries.

75.     AMS and Baker aided and abetted this unlawful medical practice by providing institutional support, refusing to curtail Gonzalez's medical interventions, and explicitly defending her unauthorized medical decision-making authority over licensed medical professionals.  Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

76.     Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.



77.    As a result of the Defendants' illegal acts and/or omissions in violating the statues Plaintiffs sustained injuries.

## C. Count 3- Gross Negligence

78.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

79.    Defendants' conduct was more than momentarily thoughtlessness or inadvertence. Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

80.    Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs. Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiffs and/or other similarly situated individuals. Plaintiffs suffered damages and further seek punitive damages.

## D. Count 4- Negligent Activity

82.    Plaintiffs incorporate the above paragraphs by reference as if stated fully herein.

83.    Defendant AMS is the owner, operator and possessor of the daycare premises.

84.    Plaintiffs H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owed a duty to exercise reasonable care.

85.    Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

86.    Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

## E. Count 5- *Respondeat Superior*



87.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

88.    The negligence, carelessness, and callousness of Defendant AMS's employees proximately caused the damage and loss suffered by Plaintiffs.    At all times material to this action, Defendant AMS's employees were acting in the course and scope of their employment.    Accordingly, Defendants may be held responsible for its employees' negligence under the doctrine of *respondeat superior*.

## F. Count 8-Breach of Contract

89.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

90.    Plaintiffs had entered a valid contract for the provision of childcare services for their three minor children.    There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

91.    Plaintiffs tendered performance according to the terms of the contract.

92.    Defendant AMS breached its duties and obligations under the contract, both explicit and implicit, pertaining to providing appropriate care, custody, and supervision by all acts stated above.

93.    Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential.

94.    Further, Plaintiffs seek to recover their attorney fees under the Texas Civil Practices and Remedies Code.

## G. Count 9- Fraud

95.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

96.    Plaintiffs discovered that Defendants had been defrauding them by making promises and commitments to get Plaintiffs' money, knowing the statements were false and that they had no intention of fulfilling.



97.    Defendants made material misrepresentations that were false. Defendants knew these statements were false or they were made recklessly without any knowledge of the truth and as a positive assertion.

98.    Defendants made the statements with the intention that Plaintiffs would act upon it and Plaintiffs acted in reliance of the representations and causing injury, damages, and harm.

99.    Plaintiffs seek treble damages and attorney fees.

**H. Count 10- Fraudulent Inducement to Contract and Breach of Contract**

100.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

101.    The Ponders enrolled all their children at AMS because AMS stated that they followed the Montessori teaching paradigm and that they would offer full-day schooling for the three children, from 8 am to 3 pm. The Ponders relied on these assertions when entering into contracts with AMS. The Ponders were further induced to re-enroll for a second year.

102.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging. These principles were not utilized.

103.    The AMS parent handbook, adopted into the contract, outlines procedures for programmatic changes and communication that were not followed by AMS. The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations, or inform them of incidents at the school.

104.    AMS fraudulently induced the Ponder family to contract for all three children's education. AMS breached its contracts with the Ponders by failing to allow the children to receive full day education, failing to follow the school policies, and failing to follow Montessori

16



teachings.

105.    As a result of Defendants' fraudulent inducement, Plaintiffs suffered harm, injury and damages.  Further, Plaintiffs seek attorney fees and treble damages.

**I.  Count 11- Civil Conspiracy**

106.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

107.    Defendants acted in combination to seek or accomplish a course of action to commit unlawful acts. There was a meeting of the minds of the Defendants to agree to accomplish the above stated unlawful acts.  Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement.  As a result, Plaintiffs suffered harm, injury and damages.

**J.  Count 12- Retaliation**

108.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

109.    AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine.  Defendants expelled H.P. in retaliation for Plaintiffs' questioning of Gonzales's medical treatment plan and for seeking a true medical diagnosis that was inconsistent with her plan.

110.    Defendants retaliated against the Ponders for the filing of a complaint with the HHS and for discussing concerns in the WhatsApp Parent Group by expelling the Ponder children.  As a further act of retaliation, AMS chose to send an email to the entire school email list, including parents, caregivers, faculty and staff, making defamatory statements against the Ponders to all families at AMS.

**VI. DAMAGES**

111.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.



112.    Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

1. Loss of value of the tuition/fees that Plaintiffs paid for the childcare;

2. Loss of wages for Mr. and/or Ms. Ponder incurred by having to stay home and care for their children when sent home early and later when expelled;

3. Medical expenses for the reasonable and necessary examination of H.P.;

4. Medical expenses for the reasonable and necessary therapy for Plaintiffs;

5. The cost of the inappropriate medical treatment prescribed by Gonzales;

6. Physical pain and suffering in the past;

7. Mental anguish in the past;

8. Mental anguish, in reasonable probability, sustained in the future;

9. Lost wages in the past;

10. Lost wages, in reasonable probability, sustained in the future;

11. Loss of wage-earning capacity in the past;

12. Loss of wages/earning capacity, in reasonable probability, sustained in the future;

13. Loss of normal enjoyment of the pleasure of life in the past;

14. Loss of normal enjoyment of the pleasure of life, in reasonable probability, sustained in the future;

15. Treble damages;

16. Punitive damages;

17. Pre-judgment and post-judgment interest;

18. Court costs;

19. Reasonable and necessary attorney fees; and



20. Costs of suit.

## VII. CONDITIONS PRECEDENT

113.   All conditions precedent have been performed or occurred, except for mediation which is addressed below.

## VIII. JURY DEMAND

114.   Plaintiffs respectfully demand the right to have a trial by jury and have tendered the jury fee in Travis County District Court.

## IX. PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial Plaintiffs have and recover:

1. Judgment against Defendants for a sum in excess of the minimum jurisdictional limits of this Court;

2. Pre-judgment at the highest legal rate;

3. Reasonable and necessary attorney's fees;

4. Taxable Court costs;

5. Post-judgment interest on the above amount at the highest legal rate; and

6. Such other and further relief to which Plaintiffs may show themselves justly entitled in law or equity.



Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone:  (512) 825-3390

By: /s/ Amy C. Welborn
    Amy C. Welborn
    State Bar No.  24012853
    amy@welborn-law.com

**ATTORNEY FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on 11ᵗʰ day of June 2025.

/s/ Amy C. Welborn
Amy C. Welborn



**REDACTED PUBLIC VERSION**

# EXHIBIT 1



H██ Ponder
Entering 2024 - 2025
Grade    CH Mid Cycle - Early Childhood

**Austin Montessori School**



### AMS Year-Round All School Enrollment Agreement 24–

### Introduction

H██ Ponder

Entering Year: **2024 - 2025** Date of birth: ████████

This contract ("Contract") is between Austin Montessori School ( "School") and the parent or legal guardian ("Parent," singular or plural, as applicable) of the above-mentioned student ("Student"). Parent must complete and sign this Enrollment Contract and Tuition Schedule by clicking "submit" to the School for processing. Once submitted, a copy is available for your records in the Files & Forms section of your profile.

#### Parent Partnership Agreement

By signing this contract, Parent agrees to the policies and guidelines outlined in the <u>AMS Parent Community Handbook and Partnership Agreement</u>.

**This is a legally binding contract. Read it carefully.**

### Tuition and Fees

Annual tuition is listed under the "Expenses" section below. Parent agrees to pay the tuition  specified below according to the terms of this Contract.  Parent acknowledges that the tuition changes as the Student's participation in the School program change (i.e., advance in level).  If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the published tuition and fee schedule:
<u>AMS Tuition and Fee Schedule 2024 - 2025</u>.

### New Family Fee

A family new to Austin Montessori School will be charged a one-time fee of $500.  This fee will be added to the Smart Tuition account and is in addition to the tuition and fees listed on the Enrollment Contract.

### Expenses

| | |
|---|---|
| Children's House - Year Round | $20,265.00 |
| **Total Expenses:** | |
| | **$20,265.00** |

| | |
|---|---|
| **Total Due:** | |
| | **$20,265.00** |

### Due at Enrollment

| | |
|---|---|
| Deposit | $300.00 |
| **Total Due at Enrollment:** | |
| | **$300.00** |

Please review the descriptions below for the available payment plans, and then choose your desired option in the section below.

Printed    1/17/2024



H▆Ponder
Entering  2024 - 2025
Grade    CH Mid Cycle - Early Childhood



**Austin Montessori School**

### AMS Year-Round All School Enrollment Agreement 24-

·•<u>One Payment Option</u>: payment of tuition for the Student's program to be paid in one payment on or before June 3, 2024.
·•<u>Monthly Payment Plan Option for Regular Year Programs</u>: payment of tuition for the Student's program to be paid in 12 equal payments, with the first payment due on August 3, 2024, and on the 3rd day of each month thereafter through July 3, 2025. The monthly payment plan option will incur a fee of $27.08/month ($325 total/year)

12 Month Plan
12 Payments

✓

**Terms of Enrollment**

**Austin Montessori School Terms of Enrollment**

Parent understands that all persons responsible for paying any of the amounts due under this Contract must execute the Contract and that all such persons are jointly and severally liable for the amounts due as set forth herein. Parent's signature and/or initials on this Contract evidence Parent's understanding and agreement to the terms of this Contract, as follows:

1.•**Enrollment**: Student will be enrolled for the 2024-2025 academic year. Parent is aware that a final determination of grade and classroom placement will be made by the School in accordance with the School's admissions policies and these decisions are made at the School's discretion. This Contract is valid only for the academic year stated and does not entitle Student to any future enrollment.
2.•**Tuition Obligation**: Parent understands that Student is being enrolled for the academic year covered by this Contract (or remaining portion thereof, in the case of a mid-year enrollment or mid-year move to another level). Parent acknowledges that the tuition and fees change as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the School's published tuition and fee schedule. Parent is responsible for the full tuition amount through the end of the academic year even if Student is withdrawn from or ceases to attend the School. Parent further understands that the overhead expenses of the School do not diminish with the departure of a student during the course of the school year and agrees that it is impossible for the School to determine at the time of the execution of this Contract the damage and loss to the School that would occur due to the later cancellation/withdrawal of students who have enrolled. Therefore, once this Contract has been submitted to the School, Parent becomes liable for the tuition, according to the following schedule:
·•Through May 1, 2024 – responsible for 25% of annual tuition payment
·•After May 1, 2024 – responsible for 100% of annual tuition payment
3.•**Termination Procedures**: Parent may terminate this Contract by submitting a WRITTEN termination notice ("Termination Notice") to the Head of School by May 1, 2024 ("Partial Release Date"). The Termination Notice must (a) be dated, (b) state the Student's name, (c) provide a reason for the termination of the Contract; and (d) be RECEIVED by the Head of School on or before the Partial Release. If such Termination Notice is received before the Partial Release Date, Parent will be partially relieved of tuition obligation as provided in Paragraph 2, above.
4.•**School/Family Partnership**: A positive and constructive working relationship between the School and Parent is essential to the fulfillment of the School's educational purpose. Thus, the School reserves the right not to extend the privilege of enrollment or re-enrollment to Student if the School reasonably concludes that the actions of Parent make such a positive and constructive relationship impossible or otherwise seriously interfere

Printed   1/17/2024



H██ Ponder
Entering 2024 - 2025
Grade    CH Mid Cycle - Early Childhood



**Austin Montessori School**

### AMS Year-Round All School Enrollment Agreement 24-

with the School's accomplishment of its educational purpose. Moreover, the School reserves the right to dismiss Student at any time if, in the judgment of the Head of the School, conduct of anyone directly associated with Student, including but not limited to Student's Parent, in or out of the School, is not in keeping with the School's accepted standards or principles. There will be no refund of tuition in the case of such dismissal and any unpaid balance is payable in full according to the terms of this Contract. If for any reason, the School administration determines that it is in the best interest of the School, The School also reserves the right to withdraw an offer of enrollment or re-enrollment at any time, and/or to nullify an executed Enrollment Contract, if the School administration determines, in its sole discretion, that doing so is in the best interest of the School.

5.•**Tuition Assistance**: Parent understands that if the Student has applied for or received a tuition assistance award toward the amount of tuition hereunder; the Parent remains primarily responsible for all obligations under this Contract. Upon Parent's acceptance of this contract and the tuition assistance award, Parent agrees to pay the balance due pursuant to the payment plan established by the School.

6.•**Probationary Enrollment for New Students**: All new enrollments are probationary for an eight-week period. If the school is concerned that this enrollment is not in the best interest of the child or the classroom, a conference will be held before the end of the eight-week period with the Head of School, Level Director, Director of Enrollment Management, and parents. Possible outcomes include an agreement to terms of continued, conditional enrollment, or withdrawal of enrollment. The decision to continue or withdraw enrollment is at the sole discretion of the school and is final. The school reserves the right to refund any portion of the tuition based upon the student's withdrawal from the school. Any refund shall be at the sole discretion of the school. In accordance with Austin Montessori School's admissions policy, enrollment beyond the eight-week period lies solely at the discretion of Austin Montessori School.

7.•**Termination of Student's Attendance**: The School has the right to suspend or terminate any Student if (i) in the sole discretion of the School administration, it is determined that the continued attendance of the Student is detrimental to the School community, the Student or to the other students of the School, or (ii) the Parent has failed to pay all or any part of the tuition or fees required under this Contract.

8.•**School Rules**: Student's enrollment at the School is subject to the general statements, rules regulations, conditions, traditions, and financial terms contained in the School's Community Handbook and other published documents, which may be amended from time to time. Parent acknowledges that Parent and Student must abide by such School rules and guidelines.

9.•**Transcripts/Records**: All accounts must be paid in full before records and transcripts can be released or transferred to other schools. Student will not be allowed to continue to attend classes or other programs or activities unless tuition and fees are paid by stated deadlines (or until Parent makes other written arrangements acceptable to the School). The School shall have the right to take such legal action as it may deem appropriate to collect all amounts which are not paid when due. In the event that the School takes legal action to enforce the terms of the Contract, Parent shall be responsible for all costs, including reasonable attorney's fees and costs (whether incurred before, during or after the filing of the lawsuit).

10.•**Delinquent Payments**: Parent understands and agrees that a late charge of $35 will be added for any payment not received within 10 days after the due date ("Late Payment"). Parent understands that at no time does the School intend to contract for, charge, or receive interest in excess of the maximum amount permitted by law and, if it is determined that the School has done so, the School shall credit the excess to any remaining tuition or fees due under the Contract or refund the excess to Parent. In the event that a Parent is more than 90 days in arrears with any tuition or fees due under the Contract, the School reserves the right to accelerate the remaining tuition and fees due under this Contract.

11.•**Release of Student Records**: Parent consents and holds the School harmless for the release of Student's records and information upon request by an education institution or law enforcement agency. Parent also releases and holds the School harmless from any liability stemming from such use, disclosure, or release of Student's records or information.

12.•**Governing Law/Disputes/Waiver of Jury Trial**: This Contract shall be governed under the laws of the State of Texas. In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation. The costs of mediation shall be equally borne between the parties. In the event of litigation, the venue of any action hereunder shall lie exclusively within the Circuit Court of Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury.



H██Ponder
Entering 2024 - 2025
Grade    CH Mid Cycle - Early Childhood

Austin Montessori School



### AMS Year-Round All School Enrollment Agreement 24-

13.•**Understanding of Terms**: Please read this Contract carefully. By signing below, Parent acknowledges that Parent understands the terms of this Contract, Parent's obligation to pay the full year's tuition even if the Student is withdrawn or dismissed, the Parent's option to terminate, and all other obligations set forth herein. If Parent has questions about the terms, Parent is encouraged to seek the advice of counsel or to seek clarification from the Director of Admission.

14.•**Force Majeure**: The School's duties and obligation under this Contract shall be suspended immediately without notice during all periods that the School is closed because of force majeure events including, but not limited to, any fire, act of God, hurricane, war, governmental action, an act of terrorism, epidemic, pandemic, strike, civil unrest, or any other event beyond the School's control. If such an event occurs, the School's duties and obligations in this Contract will be postponed until such time as the School, in the sole discretion of the School administration, may safely reopen. In the event that the School cannot reopen due to an event under this clause, the School is under no obligation to refund any portion of the tuition paid.

*Austin Montessori School does not discriminate on the basis of race, ethnicity, national origin, ancestry, gender, gender identity or expression, sexual orientation, age, or disability in the administration of its hiring, admissions policies, tuition assistance program, or other school-administered programs.*

To ensure a place for the Student, this Contract must be executed and submitted to the School, along with the $300 registration fee.

Ross Ponder

| | |
|---|---|
| Signature | Date |

Sarah Ponder

| | |
|---|---|
| Sarah Ponder | 1/17/2024 |
| Signature | Date |

Accepted by Austin Montessori School, Inc. a Texas non-profit corporation

## Grae Baker

**Name:** Grae Baker
**Title:** Head of School

**School Signature**

Grae Baker

Printed    1/17/2024



## Automated Certificate of eService
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Taylor Norman on behalf of Christopher Schulz
Bar No. 24060576
tnorman@slh-law.com
Envelope ID: 105694602
Filing Code Description: Answer/Response
Filing Description: DEFENDANTS' SPECIAL EXCEPTIONS, ORIGINAL
ANSWER, AND AFFIRMATIVE DEFENSES
Status as of 9/17/2025 2:36 PM CST

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Taylor Norman | | tnorman@slh-law.com | 9/17/2025 11:00:09 AM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 9/17/2025 11:00:09 AM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 9/17/2025 11:00:09 AM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 9/17/2025 11:00:09 AM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 9/17/2025 11:00:09 AM | SENT |
| Amy Welborn | | amy@welborn-law.com | 9/17/2025 11:00:09 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|-------------------|--------|
| Kim Chambers | | kim@welborn-law.com | 9/17/2025 11:00:09 AM | SENT |
| Chris Schulz | | cshulz@slh-law.com | 9/17/2025 11:00:09 AM | ERROR |



Case 1:25-cv-02020   Document 1-3   Filed 12/09/25   Page 155 of 530

10/20/2025 7:49 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

Cause No. **D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

TO: ALL PARTIES BY AND THROUGH THEIR ATTORNEY(S) OF RECORD AS PROVIDED IN THE ATTACHED SERVICE LIST.

You will take notice that twenty (20) days after the service hereof, with attached questions, a deposition by written questions will be asked of the custodian of records for:

BLUE MONARCH PEDIATRICS-(Medical Records)
3503 WILD CHERRY DRIVE
BLDG 7, STE 2, LAKEWAY, TX 78738

BLUE MONARCH PEDIATRICS - BILLING-(Billing Records)
3503 WILD CHERRY DRIVE
BLDG 7, STE 2, LAKEWAY, TX 78738

AUSTIN REGIONAL CLINIC-(Medical Records)
ARC - RELEASE OF INFORMATION
9503 BROWN LANE, BLDG 4, STE 101, AUSTIN, TX 78754

AUSTIN REGIONAL CLINIC, P.A. - BILLING-(Billing Records)
P.O. BOX 26726, AUSTIN, TX 78755-0726

ERIN SHEPPARD, LPC-(Psychiatric Records)
OPEN PATH PSYCHOTHERAPY COLLECTIVE - TULA COUNSELING
3624 N. HILLS DRIVE, STE 206-D, AUSTIN, TX 78748

ERIN SHEPPARD, LPC - BILLING-(Billing Records)
OPEN PATH PSYCHOTHERAPY COLLECTIVE - TULA COUNSELING
3624 N. HILLS DRIVE, STE 206-D, AUSTIN, TX 78748

FOR KIDS SAKE-(Psychiatric Records)
917 W. 29TH STREET, AUSTIN, TX 78705

FOR KIDS SAKE - BILLING-(Billing Records)
917 W. 29TH STREET, AUSTIN, TX 78705

KIDWORKS THERAPY SERVICES-(Medical Records)
3607 MENCHACA ROAD, AUSTIN, TX 78704

KIDWORKS THERAPY SERVICES - BILLING-(Billing Records)
3607 MENCHACA ROAD, AUSTIN, TX 78704

THE OPTOMETRY CENTER FOR VISION THERAPY-(Medical Records)
10601 PECAN PARK BLVD, STE 201, AUSTIN, TX 78750



THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING-(Billing Records)
10601 PECAN PARK BLVD, STE 201, AUSTIN, TX 78750

Such questions to be answered on or after *11/06/2025*, before a Notary Public at the instance of:

**Written Deposition Service, LLC**
**1755 Wittington Place, Suite 750**
**Dallas, TX 75234**

The deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule(s) 200 & 201(b), Texas Rules of Civil Procedure, to the officer taking this deposition to issue a Subpoena Duces Tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Respectfully Submitted,

/s/Amy Welborn

_____

Amy Welborn
SBA #: 24012853
Welborn Law
1100 West Ave
Austin, TX 78701
512-200-2150
amy@welborn-law.com

Attorney for: Plaintiff



## CERTIFICATE OF SERVICE

I certify that a true and exact copy of foregoing Notice of Intention to Take Deposition upon Written Questions was served to all attorneys of record in the above-styled and numbered matter, said service being effected in the following manner:

CERTIFIED MAIL/RETURN RECEIPT REQUESTED          _____

HAND DELIVERY          _____

TELECOPY          _____

OVERNIGHT/NEXT DAY DELIVERY VIA LONE STAR OR UPS          _____

E-MAIL          ✓

E-FILE          _____

DATED:  10|7|25

BY: */s/ Nicole Whitesides*

SERVED TO ALL PARTIES LISTED BELOW:
*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*
**ATTORNEYS OF RECORD**

Christopher Schulz
Schulman, Lopez, Hoffer & Adelstein, LLP
9011 Mountain Ridge Dr., Suite 210
Austin, TX 78759
512-840-0022; Fax: 210-538-5384
Attorney For: Defendant



CAUSE NO: D-I-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | |
| | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## BLUE MONARCH PEDIATRICS

**RECORDS PERTAINING TO:**                    (MINOR)

1.  State your full name and occupation, address and telephone number.

    ANSWER:     (NAME) _____
                (OCCUPATION) _____
                (ADDRESS) _____
                (CITY, STATE, ZIP) _____
                (TELEPHONE #) _____
                (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: 82103.001



4.   Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.   Were these records kept as described in the previous questions?

     ANSWER: _____

10.  Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

     ANSWER: _____

11.  Has anything been removed or redacted in the original records before making these copies?

     ANSWER: _____

12.  If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

     ANSWER: _____

Order #: 82103.001



13.     Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14.     What is your retention policy?

ANSWER:_____

15.     Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____

Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82103.001**



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: BLUE MONARCH PEDIATRICS - BILLING

**RECORDS PERTAINING TO:**                                    **(MINOR)**

1. State your full name and occupation, address and telephone number.

   ANSWER:    (NAME) _____

   (OCCUPATION)_____

   (ADDRESS) _____

   (CITY, STATE, ZIP)_____

   (TELEPHONE #)_____

   (EMAIL) _____

2. In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

   ANSWER: _____

3. Are you able to identify these records as the originals or true and correct copies of the originals?

   ANSWER: _____

Order #: 82103.002



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

    ANSWER: _____



11. Of the amount of the charges stated in your answer to Question 10, please state the following:

    a. The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer: $_____

    b. The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer: $_____

    c. The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer: $_____

    d. The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer: $_____

    e. The outstanding balance, if any, owed by patient or patient's representative.

        Answer: $_____

12. Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13. Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14. What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____

Order #: 82103.002



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82103.002



CAUSE NO: D-1-GN-25-002212

| | |
|---|---|
| ROSS PONDER and SARAH PONDER, Individually, and as Next Friend of H.P., L.P., and R.P., Minors | §     IN THE DISTRICT COURT OF |
| vs. | § |
| AUSTIN MONTESSORI SCHOOL, INC., RONALD GRAE BAKER, Individually, And JINNY GONZALEZ, Individually | §     TRAVIS COUNTY, TEXAS |
| | §     345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: AUSTIN REGIONAL CLINIC

**RECORDS PERTAINING TO:** _____ (MINOR)

1.  State your full name and occupation, address and telephone number.

    ANSWER:   (NAME) _____
                   (OCCUPATION)_____
                   (ADDRESS) _____
                   (CITY, STATE, ZIP)_____
                   (TELEPHONE #)_____
                   (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: 82103.003



4.   Were these records made and kept in the regular course of your business?

ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.   Were these records kept as described in the previous questions?

ANSWER: _____

10.  Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

ANSWER: _____

11.  Has anything been removed or redacted in the original records before making these copies?

ANSWER: _____

12.  If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

ANSWER: _____

Order #: 82103.003



13. Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14. What is your retention policy?

ANSWER:_____

15. Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:    (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS ____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX


_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____    .

Order #: 82103.003



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
## CUSTODIAN OF RECORDS FOR:
## AUSTIN REGIONAL CLINIC, P.A. - BILLING

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
                  (OCCUPATION)_____
                  (ADDRESS) _____
                  (CITY, STATE, ZIP)_____
                  (TELEPHONE #)_____
                  (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____

Order #: **82103.004**



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

    ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

Answer:  $_____

b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

Answer:  $_____

c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

Answer:  $_____

d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

Answer:  $_____

e.    The outstanding balance, if any, owed by patient or patient's representative.

Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

ANSWER: _____

Order #: **82103.004**



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__ .**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82103.004



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: ERIN SHEPPARD, LPC

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

     ANSWER:    (NAME) _____
               (OCCUPATION)_____
               (ADDRESS) _____
               (CITY, STATE, ZIP)_____
               (TELEPHONE #)_____
               (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS,  RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES,  MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING  IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO the above named?

     ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

     ANSWER: _____

Order #: 82103.005



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.   Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

ANSWER:_____

11.   Has anything been removed or redacted in the original records before making these copies?

ANSWER:_____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

ANSWER:_____

Order #: **82103.005**



13.     Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

       ANSWER:_____

14.     What is your retention policy?

       ANSWER:_____

15.     Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

       ANSWER:       (circle one) YES/NO


      I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.



                               _____
                               Custodian of Record


      I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

      **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


                                 _____
                               SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                                 _____
                               NAME OF NOTARY PUBLIC TYPED OR PRINTED
                               My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | |
| | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
ERIN SHEPPARD, LPC - BILLING**

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

ANSWER:    (NAME) _____
(OCCUPATION)_____
(ADDRESS) _____
(CITY, STATE, ZIP)_____
(TELEPHONE #)_____
(EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____

Order #: 82103.006



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.    Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

      ANSWER: _____

Order #: **82103.006**



11.  Of the amount of the charges stated in your answer to Question 10, please state the following:

   a.  The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

   Answer: $_____

   b.  The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

   Answer: $_____

   c.  The amount, if any, paid by the patient, the patient's family, or the patient's representative.

   Answer: $_____

   d.  The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

   Answer: $_____

   e.  The outstanding balance, if any, owed by patient or patient's representative.

   Answer: $_____

12.  Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

   Answer: _____

13.  Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

   ANSWER: _____

14.  What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid but still owed).

   ANSWER: _____

Order #: 82103.006



15.   Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____

Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__ .**

_____

SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____

NAME OF NOTARY PUBLIC TYPED OR PRINTED

My Commission expires_____

Order #: 82103.006



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,**
**CUSTODIAN OF RECORDS FOR:**
**FOR KIDS SAKE**

**RECORDS PERTAINING TO:**                                   **(MINOR)**

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
                (OCCUPATION)_____
                (ADDRESS) _____
                (CITY, STATE, ZIP)_____
                (TELEPHONE #)_____
                (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____

Order #: **82103.007**



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.   Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

      ANSWER: _____

11.   Has anything been removed or redacted in the original records before making these copies?

      ANSWER: _____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

      ANSWER: _____

Order #: 82103.007



13.  Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14.  What is your retention policy?

ANSWER:_____

15.  Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.



_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX


_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82103.007



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
FOR KIDS SAKE - BILLING**

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____

                   (OCCUPATION)_____

                   (ADDRESS) _____

                   (CITY, STATE, ZIP)_____

                   (TELEPHONE #)_____

                   (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____

Order #: **82103.008**



4. Were these records made and kept in the regular course of your business?

   ANSWER: _____

5. In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

   ANSWER: _____

6. Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

   ANSWER: _____

7. Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

   ANSWER: _____

8. Were the records or documents prepared at or about the time of the events and conditions they record?

   ANSWER: _____

9. Were these records kept as described in the previous questions?

   ANSWER: _____

10. Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

    ANSWER: _____

Order #: 82103.008



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

       Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

       Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

       Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

       Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

       Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82103.008



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: KIDWORKS THERAPY SERVICES

**RECORDS PERTAINING TO:**                      **(MINOR)**

1.  State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
                    (OCCUPATION)_____
                    (ADDRESS) _____
                    (CITY, STATE, ZIP)_____
                    (TELEPHONE #)_____
                    (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: 82103.009



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

    ANSWER: _____

11. Has anything been removed or redacted in the original records before making these copies?

    ANSWER: _____

12. If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

    ANSWER: _____

Order #: **82103.009**



13.    Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

      ANSWER:_____

14.    What is your retention policy?

      ANSWER:_____

15.    Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

      ANSWER:     (circle one) YES/NO


    I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


                           _____
                           Custodian of Record


    I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

    **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS \_\_\_\_ DAY OF _____, 20\_\_.**


                           _____
                           SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                           _____
                           NAME OF NOTARY PUBLIC TYPED OR PRINTED
                           My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
### KIDWORKS THERAPY SERVICES - BILLING

**RECORDS PERTAINING TO:**                                    (MINOR)

1.   State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
                   (OCCUPATION)_____
                   (ADDRESS) _____
                   (CITY, STATE, ZIP)_____
                   (TELEPHONE #)_____
                   (EMAIL) _____

2.   In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

      ANSWER: _____

3.   Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____

Order #: 82103.010



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.   Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

      ANSWER: _____

Order #: **82103.010**



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____

Order #: 82103.010



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

      ANSWER: _____

      I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

                                    _____

                                    Custodian of Record

      I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

                                 _____
                                 SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                                 _____
                                 NAME OF NOTARY PUBLIC TYPED OR PRINTED
                                 My Commission expires_____

Order #: 82103.010



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## THE OPTOMETRY CENTER FOR VISION THERAPY

**RECORDS PERTAINING TO:**                                   (MINOR)

1.    State your full name and occupation, address and telephone number.

ANSWER:    (NAME) _____
(OCCUPATION) _____
(ADDRESS) _____
(CITY, STATE, ZIP) _____
(TELEPHONE #) _____
(EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____

Order #: 82103.011



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.   Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

      ANSWER: _____

11.   Has anything been removed or redacted in the original records before making these copies?

      ANSWER: _____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

      ANSWER: _____



13.     Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14.     What is your retention policy?

ANSWER:_____

15.     Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX


_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82103.011



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, Individually, and as Next Friend of H.P., L.P., and R.P., Minors vs. AUSTIN MONTESSORI SCHOOL, INC., RONALD GRAE BAKER, Individually, And JINNY GONZALEZ, Individually | § § § § § § § | IN THE DISTRICT COURT OF<br><br>TRAVIS COUNTY, TEXAS<br><br>345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

ANSWER:    (NAME) _____
(OCCUPATION)_____
(ADDRESS) _____
(CITY, STATE, ZIP)_____
(TELEPHONE #)_____
(EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____



4.     Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.     In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.     Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.     Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.     Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.     Were these records kept as described in the previous questions?

      ANSWER: _____

10.    Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

      ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

Answer: $_____

b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

Answer: $_____

c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

Answer: $_____

d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

Answer: $_____

e.    The outstanding balance, if any, owed by patient or patient's representative.

Answer: $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid but still owed).

ANSWER: _____



15.   Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82103.012



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
## THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:** AUSTIN REGIONAL CLINIC, P.A. - BILLING

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO
(MINOR); DOB:         ; at any and all times whatsoever.

Then and there to give evidence at the instance of the <u>Plaintiff</u>, <u>Ross Ponder, et al</u>, represented by <u>Amy Welborn</u> amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. <u>D-1-GN-25-002212</u>, pending on the docket of the <u>District Court of the 345th Judicial District of Travis County,</u> Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this _____ day of _____, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No.  82103.004



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Designated Custodian of Records for:   ERIN SHEPPARD, LPC

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO                        (MINOR); DOB:            at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

~~WITNESS MY HAND~~ this 17th day of October , 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

**176.8 Enforcement of Subpoena. (b)** *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. 82103.005



D-1-GN-25-002212

Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM

# THE STATE OF TEXAS

County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure. You are hereby commanded to subpoena and summon the following witness(es):

## Designated Custodian of Records for:  BLUE MONARCH PEDIATRICS

to be and appear before a Notary Public or other person of my designation for Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234, on or after 11/06/2025 at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO. _____ (MINOR); DOB: _____ at any and all times whatsoever.

Then and there to give evidence at the instance of the Plaintiff, Ross Ponder, et al., represented by Amy Welborn amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. D-1-GN-25-002212, pending on the docket of the District Court of the 345th Judicial District of Travis County, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

*WITNESS MY HAND, this* 14th *day of* October, 2025.

N WHITESIDES
Notary ID #12634642б
My Commission Expires

NOTARY PUBLIC

176 Enforcement of Subpoena. (a) Contempt: Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____ 20____ and executed this _____ day of _____ 20____ in the following manner: By delivering to the witness with attached witness fee of $ _____ , a true copy hereof.

Returned this _____ day of _____ 20____

PROCESS SERVER

Order No. 82103.001

D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: BLUE    MONARCH    PEDIATRICS    -
BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES   AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

(MINOR); DOB:          at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND    this    17 day of    October    2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

NOTARY PUBLIC

**76.8 Enforcement of Subpoena. (a)** *Contempt*. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20 ____ and executed this the _____ day of _____, 20 ____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $ _____.

Returned this _____ day of _____, 20 ____.

_____
PROCESS SERVER

Order No. **82103.002**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:** **KIDWORKS THERAPY SERVICES - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

(MINOR); DOB:             at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this ___ day of _____ , 202_ .

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires

176.8 Enforcement of Subpoena. (a) *Contempt*. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this ____ day of _____ , 20____ and executed this the ____ day of _____ , 20____ , in the following manner: By delivering to the witness _____ , a true copy hereof, with attached witness fee of $_____ .

Returned this _____ day of _____ , 20____ .

_____
PROCESS SERVER

Order No. **82103.010**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   THE OPTOMETRY CENTER FOR VISION THERAPY**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS,  HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

whatsoever.                                                                                      (MINOR); DOB:                     at any and all times

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.
This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*
and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this  17  day of  October  2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires

                                                                                          NOTARY PUBLIC

176.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____ with attached witness fee of $_____ .                                                                        , a true copy hereof,

Returned this _____ day of _____ , 20____ .

_____
PROCESS SERVER

Order No. **82103.011**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO
(MINOR); DOB:          at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff**, **Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 17th day of October 2025.



_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**176.8 Enforcement of Subpoen**. (a) *Contempt*. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20 ____.

_____
PROCESS SERVER

Order No. 82103.012



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107071706
Filing Code Description: No Fee Documents
Filing Description: NOTICE OF INTENTION TAKE DEPOSITION BY WRITTEN QUESTIONS
Status as of 10/21/2025 6:56 AM CST

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 10/20/2025 7:49:47 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 10/20/2025 7:49:47 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 10/20/2025 7:49:47 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 10/20/2025 7:49:47 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 10/20/2025 7:49:47 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:49:47 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:49:47 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:49:47 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kim Chambers | | kim@welborn-law.com | 10/20/2025 7:49:47 PM | SENT |
| Chris  Schulz | | cshulz@slh-law.com | 10/20/2025 7:49:47 PM | ERROR |



10/20/2025 7:50 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

Cause No. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

TO: ALL PARTIES BY AND THROUGH THEIR ATTORNEY(S) OF RECORD AS PROVIDED IN THE ATTACHED SERVICE LIST.

You will take notice that twenty (20) days after the service hereof, with attached questions, a deposition by written questions will be asked of the custodian of records for:

BLUE MONARCH PEDIATRICS-(Medical Records)
3503 WILD CHERRY DRIVE
BLDG 7, STE 2, LAKEWAY, TX 78738

BLUE MONARCH PEDIATRICS - BILLING-(Billing Records)
3503 WILD CHERRY DRIVE
BLDG 7, STE 2, LAKEWAY, TX 78738

AUSTIN REGIONAL CLINIC-(Medical Records)
ARC - RELEASE OF INFORMATION
9503 BROWN LANE, BLDG 4, STE 101, AUSTIN, TX 78754

AUSTIN REGIONAL CLINIC, P.A. - BILLING-(Billing Records)
P.O. BOX 26726, AUSTIN, TX 78755-0726

ERIN SHEPPARD, LPC-(Psychiatric Records)
OPEN PATH PSYCHOTHERAPY COLLECTIVE - TULA COUNSELING
3624 N. HILLS DRIVE, STE 206-D, AUSTIN, TX 78748

ERIN SHEPPARD, LPC - BILLING-(Billing Records)
OPEN PATH PSYCHOTHERAPY COLLECTIVE - TULA COUNSELING
3624 N. HILLS DRIVE, STE 206-D, AUSTIN, TX 78748

FOR KIDS SAKE-(Psychiatric Records)
917 W. 29TH STREET, AUSTIN, TX 78705

FOR KIDS SAKE - BILLING-(Billing Records)
917 W. 29TH STREET, AUSTIN, TX 78705

KIDWORKS THERAPY SERVICES-(Medical Records)
3607 MENCHACA ROAD, AUSTIN, TX 78704

KIDWORKS THERAPY SERVICES - BILLING-(Billing Records)
3607 MENCHACA ROAD, AUSTIN, TX 78704

THE OPTOMETRY CENTER FOR VISION THERAPY-(Medical Records)
10601 PECAN PARK BLVD, STE 201, AUSTIN, TX 78750



THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING-(Billing Records)
10601 PECAN PARK BLVD, STE 201, AUSTIN, TX 78750

Such questions to be answered on or after *11/06/2025*, before a Notary Public at the instance of:

**Written Deposition Service, LLC**
**1755 Wittington Place, Suite 750**
**Dallas, TX 75234**

The deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule(s) 200 & 201(b), Texas Rules of Civil Procedure, to the officer taking this deposition to issue a Subpoena Duces Tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Respectfully Submitted,

*/s/Amy Welborn*

Amy Welborn
SBA #: 24012853
Welborn Law
1100 West Ave
Austin, TX 78701
512-200-2150
amy@welborn-law.com

Attorney for: Plaintiff



## CERTIFICATE OF SERVICE

I certify that a true and exact copy of foregoing Notice of Intention to Take Deposition upon Written Questions was served to all attorneys of record in the above-styled and numbered matter, said service being effected in the following manner:

CERTIFIED MAIL/RETURN RECEIPT REQUESTED    _____

HAND DELIVERY    _____

TELECOPY    _____

OVERNIGHT/NEXT DAY DELIVERY VIA LONE STAR OR UPS    _____

E-MAIL    ✓

E-FILE    _____

DATED: 10/17/25

BY: */s/ Nicole Whitesides*

SERVED TO ALL PARTIES LISTED BELOW:
*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

**ATTORNEYS OF RECORD**

Christopher Schulz
Schulman, Lopez, Hoffer & Adelstein, LLP
9011 Mountain Ridge Dr., Suite 210
Austin, TX 78759
512-840-0022; Fax: 210-538-5384
Attorney For: Defendant



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: BLUE MONARCH PEDIATRICS

**RECORDS PERTAINING TO:**                                                      **(MINOR)**

1.    State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
              (OCCUPATION)_____
              (ADDRESS) _____
              (CITY, STATE, ZIP)_____
              (TELEPHONE #)_____
              (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

    ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____



4.   Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.   Were these records kept as described in the previous questions?

     ANSWER: _____

10.  Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

     ANSWER: _____

11.  Has anything been removed or redacted in the original records before making these copies?

     ANSWER: _____

12.  If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

     ANSWER: _____



13. Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14. What is your retention policy?

ANSWER:_____

15. Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__ .**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: BLUE MONARCH PEDIATRICS - BILLING

**RECORDS PERTAINING TO:**                                             **(MINOR)**

1.  State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
                       (OCCUPATION)_____
                       (ADDRESS) _____
                       (CITY, STATE, ZIP)_____
                       (TELEPHONE #)_____
                       (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.   Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

  a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

       Answer: $_____

  b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

       Answer: $_____

  c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

       Answer: $_____

  d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

       Answer: $_____

  e.    The outstanding balance, if any, owed by patient or patient's representative.

       Answer: $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

       Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

       ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid? (This will include the amount paid and the amount currently unpaid but still owed).

       ANSWER: _____



15.   Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82104.002**



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
### AUSTIN REGIONAL CLINIC

**RECORDS PERTAINING TO:**                                                  (MINOR)

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
               (OCCUPATION)_____
               (ADDRESS) _____
               (CITY, STATE, ZIP)_____
               (TELEPHONE #)_____
               (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____

Order #: **82104.003**



4.    Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.    Were these records kept as described in the previous questions?

     ANSWER: _____

10.    Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

     ANSWER:_____

11.    Has anything been removed or redacted in the original records before making these copies?

     ANSWER:_____

12.    If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

     ANSWER:_____



13. Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER: _____

14. What is your retention policy?

ANSWER: _____

15. Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:    (circle one) YES/NO

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF** _____, 20___.

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82104.003**



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## AUSTIN REGIONAL CLINIC, P.A. - BILLING

**RECORDS PERTAINING TO:**                                        (MINOR)

1.    State your full name and occupation, address and telephone number.

         ANSWER:      (NAME) _____
                            (OCCUPATION)_____
                            (ADDRESS) _____
                            (CITY, STATE, ZIP)_____
                            (TELEPHONE #)_____
                            (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

         ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

         ANSWER: _____

Order #: **82104.004**



4.   Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.   Were these records kept as described in the previous questions?

     ANSWER: _____

10.  Please identify the total amount of charges your office billed for this patient for the **specific time period** requested in the attached Subpoena?

     ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer: $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer: $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer: $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer: $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer: $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid? (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____



15.   Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

   ANSWER: _____

   I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

                                          _____
                                          Custodian of Record

   I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

   **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS** _____ **DAY OF** _____ **, 20__.**

                                          _____
                                          SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                                          _____
                                          NAME OF NOTARY PUBLIC TYPED OR PRINTED
                                          My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
ERIN SHEPPARD, LPC**

**RECORDS PERTAINING TO:**                                         **(MINOR)**

1.  State your full name and occupation, address and telephone number.

    ANSWER:     (NAME) _____
                (OCCUPATION)_____
                (ADDRESS) _____
                (CITY, STATE, ZIP)_____
                (TELEPHONE #)_____
                (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO** the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____



4.   Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.   Were these records kept as described in the previous questions?

     ANSWER: _____

10.  Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

     ANSWER: _____

11.  Has anything been removed or redacted in the original records before making these copies?

     ANSWER: _____

12.  If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

     ANSWER: _____



13.    Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

ANSWER:_____

14.    What is your retention policy?

ANSWER:_____

15.    Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:      (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82104.005



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
ERIN SHEPPARD, LPC - BILLING**

**RECORDS PERTAINING TO:**                                 **(MINOR)**

1.    State your full name and occupation, address and telephone number.

ANSWER:    (NAME) _____
               (OCCUPATION)_____
               (ADDRESS) _____
               (CITY, STATE, ZIP)_____
               (TELEPHONE #)_____
               (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.   Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

      ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____

Order #: 82104.006



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

      I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____

Custodian of Record

      I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____

SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____

NAME OF NOTARY PUBLIC TYPED OR PRINTED

My Commission expires_____

Order #: 82104.006



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: FOR KIDS SAKE

**RECORDS PERTAINING TO:**                                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
                     (OCCUPATION)_____
                     (ADDRESS) _____
                     (CITY, STATE, ZIP)_____
                     (TELEPHONE #)_____
                     (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO** the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____

Order #: 82104.007



4.    Were these records made and kept in the regular course of your business?

        ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

        ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

        ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

        ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

        ANSWER: _____

9.    Were these records kept as described in the previous questions?

        ANSWER: _____

10.   Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

        ANSWER:_____

11.   Has anything been removed or redacted in the original records before making these copies?

        ANSWER:_____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

        ANSWER:_____



13.  Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

      ANSWER:_____

14.  What is your retention policy?

      ANSWER:_____

15.  Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

      ANSWER:     (circle one) YES/NO


    I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


                                 _____
                                 Custodian of Record


    I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

    **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


                              _____
                            SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                              _____
                            NAME OF NOTARY PUBLIC TYPED OR PRINTED
                            My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## FOR KIDS SAKE - BILLING

**RECORDS PERTAINING TO:**                                      **(MINOR)**

1.   State your full name and occupation, address and telephone number.

ANSWER:   (NAME) _____
          (OCCUPATION)_____
          (ADDRESS) _____
          (CITY, STATE, ZIP)_____
          (TELEPHONE #)_____
          (EMAIL) _____

2.   In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

ANSWER: _____

3.   Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____

Order #: **82104.008**



4.    Were these records made and kept in the regular course of your business?

        ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

        ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

        ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

        ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

        ANSWER: _____

9.    Were these records kept as described in the previous questions?

        ANSWER: _____

10.   Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

        ANSWER: _____



11.     Of the amount of the charges stated in your answer to Question 10, please state the following:

   a.     The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

          Answer:  $_____

   b.     The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

          Answer:  $_____

   c.     The amount, if any, paid by the patient, the patient's family, or the patient's representative.

          Answer:  $_____

   d.     The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

          Answer:  $_____

   e.     The outstanding balance, if any, owed by patient or patient's representative.

          Answer:  $_____

12.     Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

        Answer: _____

13.     Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

        ANSWER: _____

14.     What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid but still owed).

        ANSWER: _____



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

    ANSWER: _____

    I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

                                                    _____
                                                    Custodian of Record

    I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

    **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__ .**

                                    _____
                                    SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                                    _____
                                    NAME OF NOTARY PUBLIC TYPED OR PRINTED
                                    My Commission expires_____

Order #: 82104.008



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
KIDWORKS THERAPY SERVICES**

RECORDS PERTAINING TO:                                    (MINOR)

1.    State your full name and occupation, address and telephone number.

     ANSWER:    (NAME) _____
                     (OCCUPATION)_____
                     (ADDRESS) _____
                     (CITY, STATE, ZIP)_____
                     (TELEPHONE #)_____
                     (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

     ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

     ANSWER: _____

Order #: 82104.009



4.   Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.   Were these records kept as described in the previous questions?

    ANSWER: _____

10.  Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

    ANSWER: _____

11.  Has anything been removed or redacted in the original records before making these copies?

    ANSWER: _____

12.  If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

    ANSWER: _____

Order #: 82104.009



13.   Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

ANSWER:_____

14.   What is your retention policy?

ANSWER:_____

15.   Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN  UNDER  MY  HAND  AND  SEAL  OF  OFFICE,  THIS  _____  DAY  OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX


_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82104.009**



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
### KIDWORKS THERAPY SERVICES - BILLING

**RECORDS PERTAINING TO:**                                              **(MINOR)**

1. State your full name and occupation, address and telephone number.

    ANSWER:   (NAME) _____
              (OCCUPATION)_____
              (ADDRESS) _____
              (CITY, STATE, ZIP)_____
              (TELEPHONE #)_____
              (EMAIL) _____

2. In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

    ANSWER: _____

3. Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: 82104.010



4.   Were these records made and kept in the regular course of your business?

ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.   Were these records kept as described in the previous questions?

ANSWER: _____

10.  Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer: $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer: $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer: $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer: $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer: $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid? (This will include the amount paid and the amount currently unpaid but still owed).

    ANSWER: _____



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

      ANSWER: _____

      I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

                                           _____
                                           Custodian of Record

      I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

      **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

                            _____
                            SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                            _____
                            NAME OF NOTARY PUBLIC TYPED OR PRINTED
                            My Commission expires_____

Order #: **82104.010**



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## THE OPTOMETRY CENTER FOR VISION THERAPY

**RECORDS PERTAINING TO:**                                        **(MINOR)**

1.    State your full name and occupation, address and telephone number.

ANSWER:        (NAME) _____
               (OCCUPATION)_____
               (ADDRESS) _____
               (CITY, STATE, ZIP)_____
               (TELEPHONE #)_____
               (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.    Were these records kept as described in the previous questions?

     ANSWER: _____

10.    Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

     ANSWER: _____

11.    Has anything been removed or redacted in the original records before making these copies?

     ANSWER: _____

12.    If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

     ANSWER: _____



13.  Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14.  What is your retention policy?

ANSWER:_____

15.  Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:      (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX


_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82104.011



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, Individually, and as Next Friend of H.P., L.P., and R.P., Minors vs. AUSTIN MONTESSORI SCHOOL, INC., RONALD GRAE BAKER, Individually, And JINNY GONZALEZ, Individually | § § § § § § § | IN THE DISTRICT COURT OF TRAVIS COUNTY, TEXAS 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
### THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING

RECORDS PERTAINING TO:                                    (MINOR)

1.    State your full name and occupation, address and telephone number.

   ANSWER:    (NAME) _____
              (OCCUPATION)_____
              (ADDRESS) _____
              (CITY, STATE, ZIP)_____
              (TELEPHONE #)_____
              (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

   ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

   ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.   Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

ANSWER: _____

Order #: 82104.012



11.   Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.   Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.   Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.   What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____

Order #: **82104.012**



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82104.012



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   BLUE MONARCH PEDIATRICS**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS,  HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO                                    (MINOR); DOB:              at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this ___ day of _____, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

176.8 Enforcement of Subpoena. a) *Contempt*. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No.  82104.001



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: BLUE MONARCH PEDIATRICS - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

(MINOR); DOB: ; at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 17th day of October , 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

166.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82104.002**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: AUSTIN REGIONAL CLINIC**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO                    MINOR); DOB:          at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this ___ day of _____, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

166.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. 82104.003



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: AUSTIN REGIONAL CLINIC, P.A. - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO :

(MINOR); DOB:            at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this 17th day of October, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**176.8 Enforcement of Subpoena** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20 ____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82104.004**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Designated Custodian of Records for:    ERIN SHEPPARD, LPC

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO                                    (MINOR); DOB:              at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this ____ day of ___October_____, 2025

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

### OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82104.005**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   ERIN SHEPPARD, LPC - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

(MINOR); DOB:            at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

~~WITNESS MY HAND~~ this ____ 17th ____ day of ____ October ____ 2025. _____

NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82104.006**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure:  You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   FOR KIDS SAKE**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO _____ (MINOR); DOB: _____ at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff**, **Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND, this** __17th__ **day of** __October__, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**1788 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. 82104.007



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Designated Custodian of Records for:   FOR KIDS SAKE - BILLING

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

_____ (MINOR); DOB: _____ ; at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this ___7th___ day of __October__ _____ _____ 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires

_____
NOTARY PUBLIC

176 SC Enforcement of subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82104.008**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Designated Custodian of Records for:    KIDWORKS THERAPY SERVICES

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS,  HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO                                        (MINOR); DOB:            ; at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND, this** ⎯⎯ day of ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ , 2025.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires

176.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
PROCESS SERVER

Order No. **82104.009**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: KIDWORKS THERAPY SERVICES - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TC

  .(MINOR); DOB:            at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this _____17th_____ day of ___October___, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

176.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. 82104.010



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   THE OPTOMETRY CENTER FOR VISION THERAPY**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS,  HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO _____ (MINOR); DOB: _____ at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this ____ day of _____ 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

NOTARY PUBLIC

176.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82104.011**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING**

to be and appear before a Notary Public of my designation for Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234, on or after 11/06/2025 at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

_____ (MINOR); DOB: _____ at any and all times whatsoever.

Then and there to give evidence at the instance of the <u>Plaintiff</u>, <u>Ross Ponder, et al</u>, represented by <u>Amy Welborn</u> amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. <u>D-1-GN-25-002212</u>, pending on the docket of the <u>District Court of the 345th Judicial District of Travis County</u>, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this ⎕⎕th day of ___October_____ , 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**Enforcement of Subpoena** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. 82104.012



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107071717
Filing Code Description: No Fee Documents
Filing Description: NOTICE OF INTENTION TAKE DEPOSITION BY WRITTEN QUESTIONS
Status as of 10/21/2025 6:56 AM CST

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 10/20/2025 7:50:43 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 10/20/2025 7:50:43 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 10/20/2025 7:50:43 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 10/20/2025 7:50:43 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 10/20/2025 7:50:43 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:50:43 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:50:43 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:50:43 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kim Chambers | | kim@welborn-law.com | 10/20/2025 7:50:43 PM | SENT |
| Chris  Schulz | | cshulz@slh-law.com | 10/20/2025 7:50:43 PM | ERROR |



10/20/2025 7:46 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

Cause No. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

TO: ALL PARTIES BY AND THROUGH THEIR ATTORNEY(S) OF RECORD AS PROVIDED IN THE ATTACHED SERVICE LIST.

You will take notice that twenty (20) days after the service hereof, with attached questions, a deposition by written questions will be asked of the custodian of records for:

HOUSTON HEALTH PSYCHOLOGY - ELAINE HESS, Ph.D.-(Psychiatric Records)
4306 YOAKUM BLVD, STE 395, HOUSTON, TX 77006

HOUSTON HEALTH PSYCHOLOGY - ELAINE HESS, Ph.D. - BILLING-(Billing Records)
4306 YOAKUM BLVD, STE 395, HOUSTON, TX 77006

Such questions to be answered on or after *11/06/2025*, before a Notary Public at the instance of:

Written Deposition Service, LLC
1755 Wittington Place, Suite 750
Dallas, TX 75234

The deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule(s) 200 & 201(b), Texas Rules of Civil Procedure, to the officer taking this deposition to issue a Subpoena Duces Tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.



Respectfully Submitted,

/s/Amy Welborn

Amy Welborn
SBA #: 24012853
Welborn Law
1100 West Ave
Austin, TX 78701
512-200-2150
amy@welborn-law.com

Attorney for: Plaintiff



## CERTIFICATE OF SERVICE

I certify that a true and exact copy of foregoing Notice of Intention to Take Deposition upon Written Questions was served to all attorneys of record in the above-styled and numbered matter, said service being effected in the following manner:

CERTIFIED MAIL/RETURN RECEIPT REQUESTED      _____

HAND DELIVERY      _____

TELECOPY      _____

OVERNIGHT/NEXT DAY DELIVERY VIA LONE STAR OR UPS      _____

E-MAIL      ✓

E-FILE      _____

DATED: __10|17|25__

BY: */s/ Nicole Whitesides*

SERVED TO ALL PARTIES LISTED BELOW:
*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

**ATTORNEYS OF RECORD**

Christopher Schulz
Schulman, Lopez, Hoffer & Adelstein, LLP
9011 Mountain Ridge Dr., Suite 210
Austin, TX 78759
512-840-0022; Fax: 210-538-5384
Attorney For: Defendant



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: HOUSTON HEALTH PSYCHOLOGY - ELAINE HESS, Ph.D.

## RECORDS PERTAINING TO: ROSS PHILIP PONDER

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
                   (OCCUPATION) _____
                   (ADDRESS) _____
                   (CITY, STATE, ZIP) _____
                   (TELEPHONE #) _____
                   (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.   Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

ANSWER: _____

11.   Has anything been removed or redacted in the original records before making these copies?

ANSWER: _____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

ANSWER: _____



13.     Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14.     What is your retention policy?

ANSWER:_____

15.     Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:      (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82106.001



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## HOUSTON HEALTH PSYCHOLOGY - ELAINE HESS, Ph.D. - BILLING

RECORDS PERTAINING TO:  ROSS PHILIP PONDER

1.     State your full name and occupation, address and telephone number.

ANSWER:     (NAME) _____
              (OCCUPATION)_____
              (ADDRESS) _____
              (CITY, STATE, ZIP)_____
              (TELEPHONE #)_____
              (EMAIL) _____

2.     In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

ANSWER: _____

3.     Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

    ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

   a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

   b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

   c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

   d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

   e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid but still owed).

    ANSWER: _____



15.   Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

        ANSWER: _____

        I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


                                            _____
                                            Custodian of Record


        I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

        **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


                                  _____
                                  SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX


                                  _____
                                  NAME OF NOTARY PUBLIC TYPED OR PRINTED
                                  My Commission expires_____

Order #: 82106.002



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: HOUSTON HEALTH PSYCHOLOGY - ELAINE HESS, Ph.D.**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO ROSS PHILIP PONDER; DOB:                at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff**, **Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND this 17th day of October , 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

§ 176.8 Enforcement of Subpoena (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon the person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. 82106.001



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:** HOUSTON HEALTH PSYCHOLOGY - ELAINE HESS, Ph.D. - BILLING

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO ROSS PHILIP PONDER; DOB:          at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, the ___ day of _October_ , 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

NOTARY PUBLIC

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82106.002**



# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107071655
Filing Code Description: No Fee Documents
Filing Description: NOTICE OF INTENTION TO TAKE DEPOSITION BY WRITTEN QUESTIONS
Status as of 10/21/2025 7:22 AM CST

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher H.Schulz | | cschulz@slh-law.com | 10/20/2025 7:46:51 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 10/20/2025 7:46:51 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 10/20/2025 7:46:51 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 10/20/2025 7:46:51 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 10/20/2025 7:46:51 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:46:51 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:46:51 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:46:51 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kim Chambers | | kim@welborn-law.com | 10/20/2025 7:46:51 PM | SENT |
| Chris  Schulz | | cshulz@slh-law.com | 10/20/2025 7:46:51 PM | ERROR |



10/20/2025 7:42 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

Cause No. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

TO: ALL PARTIES BY AND THROUGH THEIR ATTORNEY(S) OF RECORD AS PROVIDED IN THE ATTACHED SERVICE LIST.

You will take notice that twenty (20) days after the service hereof, with attached questions, a deposition by written questions will be asked of the custodian of records for:

BLUE MONARCH PEDIATRICS-(Medical Records)
3503 WILD CHERRY DRIVE
BLDG 7, STE 2, LAKEWAY, TX 78738

BLUE MONARCH PEDIATRICS - BILLING-(Billing Records)
3503 WILD CHERRY DRIVE
BLDG 7, STE 2, LAKEWAY, TX 78738

AUSTIN REGIONAL CLINIC-(Medical Records)
ARC - RELEASE OF INFORMATION
9503 BROWN LANE, BLDG 4, STE 101, AUSTIN, TX 78754

AUSTIN REGIONAL CLINIC, P.A. - BILLING-(Billing Records)
P.O. BOX 26726, AUSTIN, TX 78755-0726

ERIN SHEPPARD, LPC-(Psychiatric Records)
OPEN PATH PSYCHOTHERAPY COLLECTIVE - TULA COUNSELING
3624 N. HILLS DRIVE, STE 206-D, AUSTIN, TX 78748

ERIN SHEPPARD, LPC - BILLING-(Billing Records)
OPEN PATH PSYCHOTHERAPY COLLECTIVE - TULA COUNSELING
3624 N. HILLS DRIVE, STE 206-D, AUSTIN, TX 78748

FOR KIDS SAKE-(Psychiatric Records)
917 W. 29TH STREET, AUSTIN, TX 78705

FOR KIDS SAKE - BILLING-(Billing Records)
917 W. 29TH STREET, AUSTIN, TX 78705

KIDWORKS THERAPY SERVICES-(Medical Records)
3607 MENCHACA ROAD, AUSTIN, TX 78704

KIDWORKS THERAPY SERVICES - BILLING-(Billing Records)
3607 MENCHACA ROAD, AUSTIN, TX 78704

THE OPTOMETRY CENTER FOR VISION THERAPY-(Medical Records)
10601 PECAN PARK BLVD, STE 201, AUSTIN, TX 78750



THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING-(Billing Records)
10601 PECAN PARK BLVD, STE 201, AUSTIN, TX 78750

Such questions to be answered on or after *11/06/2025*, before a Notary Public at the instance of:

**Written Deposition Service, LLC**
**1755 Wittington Place, Suite 750**
**Dallas, TX 75234**

The deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule(s) 200 & 201(b), Texas Rules of Civil Procedure, to the officer taking this deposition to issue a Subpoena Duces Tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Respectfully Submitted,

/s/Amy Welborn

Amy Welborn
SBA #: 24012853
Welborn Law
1100 West Ave
Austin, TX 78701
512-200-2150
amy@welborn-law.com

Attorney for: Plaintiff



## CERTIFICATE OF SERVICE

I certify that a true and exact copy of foregoing Notice of Intention to Take Deposition upon Written Questions was served to all attorneys of record in the above-styled and numbered matter, said service being effected in the following manner:

CERTIFIED MAIL/RETURN RECEIPT REQUESTED    _____

HAND DELIVERY    _____

TELECOPY    _____

OVERNIGHT/NEXT DAY DELIVERY VIA LONE STAR OR UPS    _____

E-MAIL    ✓

E-FILE    _____

DATED: 10/11/25

BY: */s/ Nicole Whitesides*

SERVED TO ALL PARTIES LISTED BELOW:
*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*
**ATTORNEYS OF RECORD**

Christopher Schulz
Schulman, Lopez, Hoffer & Adelstein, LLP
9011 Mountain Ridge Dr., Suite 210
Austin, TX 78759
512-840-0022; Fax: 210-538-5384
Attorney For: Defendant



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,**
**CUSTODIAN OF RECORDS FOR:**
**BLUE MONARCH PEDIATRICS**

**RECORDS PERTAINING TO:**                             (MINOR)

1.    State your full name and occupation, address and telephone number.

ANSWER:    (NAME) _____
(OCCUPATION)_____
(ADDRESS) _____
(CITY, STATE, ZIP)_____
(TELEPHONE #)_____
(EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

    ANSWER: _____

11. Has anything been removed or redacted in the original records before making these copies?

    ANSWER: _____

12. If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

    ANSWER: _____

Order #: **82105.001**



13. Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

   ANSWER:_____

14. What is your retention policy?

   ANSWER:_____

15. Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

   ANSWER:    (circle one) YES/NO


   I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


   _____
   Custodian of Record


   I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

   **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


   _____
   SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

   _____
   NAME OF NOTARY PUBLIC TYPED OR PRINTED
   My Commission expires_____


Order #: **82105.001**



CAUSE NO: D-1-GN-25-002212

| | |
|---|---|
| ROSS PONDER and SARAH PONDER, Individually, and as Next Friend of H.P., L.P., and R.P., Minors | §     IN THE DISTRICT COURT OF |
| vs. | § |
| AUSTIN MONTESSORI SCHOOL, INC., RONALD GRAE BAKER, Individually, And JINNY GONZALEZ, Individually | §     TRAVIS COUNTY, TEXAS |
| | §     345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## BLUE MONARCH PEDIATRICS - BILLING

**RECORDS PERTAINING TO:**                                    (MINOR)

1.  State your full name and occupation, address and telephone number.

    ANSWER:     (NAME) _____
                     (OCCUPATION)_____
                     (ADDRESS) _____
                     (CITY, STATE, ZIP)_____
                     (TELEPHONE #)_____
                     (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.    Were these records kept as described in the previous questions?

     ANSWER: _____

10.   Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

     ANSWER: _____



11.   Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.   The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer: $_____

    b.   The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer: $_____

    c.   The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer: $_____

    d.   The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer: $_____

    e.   The outstanding balance, if any, owed by patient or patient's representative.

        Answer: $_____

12.   Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.   Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.   What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid but still owed).

    ANSWER: _____

Order #: **82105.002**



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

　　　　ANSWER: _____

　　　I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Custodian of Record

　　　I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

　　**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　NAME OF NOTARY PUBLIC TYPED OR PRINTED
　　　　　　　　　　　　　　My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
### AUSTIN REGIONAL CLINIC

**RECORDS PERTAINING TO:**                     (MINOR)

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
                    (OCCUPATION)_____
                    (ADDRESS) _____
                    (CITY, STATE, ZIP)_____
                    (TELEPHONE #)_____
                    (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

        ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

        ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

        ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

        ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

        ANSWER: _____

9.    Were these records kept as described in the previous questions?

        ANSWER: _____

10.    Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

        ANSWER: _____

11.    Has anything been removed or redacted in the original records before making these copies?

        ANSWER: _____

12.    If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

        ANSWER: _____

Order #: **82105.003**



13.   Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

ANSWER:_____

14.   What is your retention policy?

ANSWER:_____

15.   Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82105.003**



CAUSE NO: D-1-GN-25-002212

| | |
|---|---|
| ROSS PONDER and SARAH PONDER, | § IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § |
| H.P., L.P., and R.P., Minors | § |
| vs. | § TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § |
| RONALD GRAE BAKER, Individually, | § |
| And JINNY GONZALEZ, Individually | § 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## AUSTIN REGIONAL CLINIC, P.A. - BILLING

**RECORDS PERTAINING TO:**                    (MINOR)

1.  State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
             (OCCUPATION)_____
             (ADDRESS) _____
             (CITY, STATE, ZIP)_____
             (TELEPHONE #)_____
             (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

    ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer: $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer: $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer: $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer: $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer: $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

       ANSWER: _____

      I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

                                                      _____

                                                      Custodian of Record

      I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

      **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

                                        _____
                                        SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                                        _____
                                        NAME OF NOTARY PUBLIC TYPED OR PRINTED
                                        My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | |
|---|---|
| ROSS PONDER and SARAH PONDER, | §    IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § |
| H.P., L.P., and R.P., Minors | § |
| vs. | §    TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § |
| RONALD GRAE BAKER, Individually, | § |
| And JINNY GONZALEZ, Individually | §    345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
### ERIN SHEPPARD, LPC

**RECORDS PERTAINING TO:**                    **(MINOR)**

1. State your full name and occupation, address and telephone number.

    ANSWER:   (NAME) _____
                    (OCCUPATION)_____
                    (ADDRESS) _____
                    (CITY, STATE, ZIP)_____
                    (TELEPHONE #)_____
                    (EMAIL) _____

2. In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO the above named?

    ANSWER: _____

3. Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

        ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

        ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

        ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

        ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

        ANSWER: _____

9.    Were these records kept as described in the previous questions?

        ANSWER: _____

10.   Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

        ANSWER: _____

11.   Has anything been removed or redacted in the original records before making these copies?

        ANSWER: _____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

        ANSWER: _____

Order #: **82105.005**



13.    Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14.    What is your retention policy?

ANSWER:_____

15.    Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:        (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS ____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82105.005



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
ERIN SHEPPARD, LPC - BILLING**

**RECORDS PERTAINING TO:**                              **(MINOR)**

1.    State your full name and occupation, address and telephone number.

      ANSWER:    (NAME) _____
              (OCCUPATION)_____
              (ADDRESS) _____
              (CITY, STATE, ZIP)_____
              (TELEPHONE #)_____
              (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

      ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

      ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.    Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____

Order #: **82105.006**



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82105.006**



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
### FOR KIDS SAKE

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

ANSWER:    (NAME) _____
(OCCUPATION)_____
(ADDRESS) _____
(CITY, STATE, ZIP)_____
(TELEPHONE #)_____
(EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO** the above named?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____

Order #: 82105.007



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.    Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

ANSWER:_____

11.    Has anything been removed or redacted in the original records before making these copies?

ANSWER:_____

12.    If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

ANSWER:_____

Order #: 82105.007



13. Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14. What is your retention policy?

ANSWER:_____

15. Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO


I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Custodian of Record


I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: FOR KIDS SAKE - BILLING

**RECORDS PERTAINING TO:** _____ (MINOR)

1.  State your full name and occupation, address and telephone number.

    ANSWER:     (NAME) _____
                     (OCCUPATION)_____
                     (ADDRESS) _____
                     (CITY, STATE, ZIP)_____
                     (TELEPHONE #)_____
                     (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: **82105.008**



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

    ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____

Order #: 82105.008



15. Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____.

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____

Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____

SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____

NAME OF NOTARY PUBLIC TYPED OR PRINTED

My Commission expires_____

Order #: **82105.008**



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR: KIDWORKS THERAPY SERVICES

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.  State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
    (OCCUPATION)_____
    (ADDRESS) _____
    (CITY, STATE, ZIP)_____
    (TELEPHONE #)_____
    (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: 82105.009



4.      Were these records made and kept in the regular course of your business?

        ANSWER: _____

5.      In the regular course of business of your practice, business, or institution, did the person who signed
        the records and/or reports either have personal knowledge of the entries shown on the records and/or
        reports, or obtain the information to make the entries from the sources who have such personal
        knowledge?

        ANSWER: _____

6.      Were such memoranda or documents then transmitted to your files and thereafter maintained under
        your care, supervision, direction, custody, control or access as custodian of this facility?

        ANSWER: _____

7.      Were the memoranda or documents that were transmitted to your files original entries on the part of
        the Custodian or other employee or member of the staff of this facility?

        ANSWER: _____

8.      Were the records or documents prepared at or about the time of the events and conditions they record?

        ANSWER: _____

9.      Were these records kept as described in the previous questions?

        ANSWER: _____

10.     Please state whether or not the services provided were necessary for the treatment of the injury of the
        above named person which is the basis for this lawsuit.

        ANSWER:_____

11.     Has anything been removed or redacted in the original records before making these copies?

        ANSWER:_____

12.     If you have answered the previous question yes, please state the alterations or redactions that
        were made and list any "removed" documents.

        ANSWER:_____

Order #: 82105.009



13.     Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

        ANSWER:_____

14.     What is your retention policy?

        ANSWER:_____

15.     Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

        ANSWER:     (circle one) YES/NO


        I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


                                        _____
                                        Custodian of Record


        I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

        **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF**
        _____, 20__.


                                        _____
                                        SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                                        _____
                                        NAME OF NOTARY PUBLIC TYPED OR PRINTED
                                        My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | |
|---|---|
| ROSS PONDER and SARAH PONDER, | § IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § |
| H.P., L.P., and R.P., Minors | § |
| vs. | § TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § |
| RONALD GRAE BAKER, Individually, | § |
| And JINNY GONZALEZ, Individually | § 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
KIDWORKS THERAPY SERVICES - BILLING**

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.   State your full name and occupation, address and telephone number.

ANSWER:    (NAME) _____
(OCCUPATION)_____
(ADDRESS) _____
(CITY, STATE, ZIP)_____
(TELEPHONE #)_____
(EMAIL) _____

2.   In response to the Subpoena Duces Tecum you received, have you produced ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO the above named?

ANSWER: _____

3.   Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.    Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

ANSWER: _____

Order #: **82105.010**



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid but still owed).

    ANSWER: _____



15.    Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

      ANSWER: _____


     I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


                             _____
                             Custodian of Record


     I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

    **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


                        _____
                        SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                        _____
                        NAME OF NOTARY PUBLIC TYPED OR PRINTED
                        My Commission expires_____

Order #: 82105.010



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS,
CUSTODIAN OF RECORDS FOR:
THE OPTOMETRY CENTER FOR VISION THERAPY**

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.    State your full name and occupation, address and telephone number.

     ANSWER:    (NAME) _____
                  (OCCUPATION)_____
                  (ADDRESS) _____
                  (CITY, STATE, ZIP)_____
                  (TELEPHONE #)_____
                  (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

     ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

     ANSWER: _____

Order #: 82105.011



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.   Please state whether or not the services provided were necessary for the treatment of the injury of the above named person which is the basis for this lawsuit.

      ANSWER: _____

11.   Has anything been removed or redacted in the original records before making these copies?

      ANSWER: _____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

      ANSWER: _____



13. Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

ANSWER:_____

14. What is your retention policy?

ANSWER:_____

15. Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:    (circle one) YES/NO

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82105.011



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS, CUSTODIAN OF RECORDS FOR:
## THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING

**RECORDS PERTAINING TO:**                    **(MINOR)**

1.   State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
                 (OCCUPATION)_____
                 (ADDRESS) _____
                 (CITY, STATE, ZIP)_____
                 (TELEPHONE #)_____
                 (EMAIL) _____

2.   In response to the Subpoena Duces Tecum you received, have you produced **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO** the above named?

    ANSWER: _____

3.   Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: 82105.012



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.   Please identify the total amount of charges your office billed for this patient for the **specific** time period requested in the attached Subpoena?

      ANSWER: _____



11.    Of the amount of the charges stated in your answer to Question 10, please state the following:

    a.    The amount, if any, paid by private insurance, identifying each and every private insurance company making any payment.

        Answer:  $_____

    b.    The amount, if any, paid by Medicare, Medicaid, TRICARE and/or Champus, identifying what was paid by each.

        Answer:  $_____

    c.    The amount, if any, paid by the patient, the patient's family, or the patient's representative.

        Answer:  $_____

    d.    The amount, if any, of all adjustments, write-offs, or any discounts based upon this provider's agreement with private and public health insurance.

        Answer:  $_____

    e.    The outstanding balance, if any, owed by patient or patient's representative.

        Answer:  $_____

12.    Please state whether or not the services provided were necessary for the proper care and treatment of the above-named person.

    Answer: _____

13.    Was the amount charged for the service, reasonable and does it reflect the amount the facility has a legal right to be paid for the services provided?

    ANSWER: _____

14.    What is the *total* amount this facility has a legal right to be paid?  (This will include the amount paid and the amount currently unpaid <u>but still owed</u>).

    ANSWER: _____

Order #: 82105.012



15.  Please examine the copies of the itemized bills and records and state whether or not they are true and correct copies of the originals.

ANSWER: _____

I, Custodian of Record, do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____

Custodian of Record

I, Notary Public, do hereby certify the above Custodian was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Custodian testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__ .**

_____

SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____

NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82105.012



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   BLUE MONARCH PEDIATRICS**

to be and appear before a Notary Public of my designation for Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234, on or after 11/06/2025 at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS,  HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO                    (MINOR); DOB:        at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this 17th day of _____  2025.  _____
                                                                                    NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires

176.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No.  82105.001



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: BLUE    MONARCH    PEDIATRICS    - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES   AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO

(MINOR); DOB:          at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND**, this ⌐1⌐ᵗʰ day of _October_ , 2025

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires

176.8 Enforcement of Subpoena. (a) *Contempt*. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82105.002**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:  AUSTIN REGIONAL CLINIC**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX  75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS,  HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO                     . (MINOR); DOB:            at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this 17th day of October , 2025

NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No.  **82105.003**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: AUSTIN REGIONAL CLINIC, P.A. - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO (MINOR); DOB:                      ; at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 17th day of October 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82105.004**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   ERIN SHEPPARD, LPC**

to be and appear before a Notary Public of my designation at **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO _____ (MINOR); DOB: _____ ; at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this 17th day of ___October___ , 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

**176.8 Enforcement of Subpoena** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No.  **82105.005**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   ERIN SHEPPARD, LPC - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO (MINOR); DOB:          at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

**Ross Ponder, et al vs. Austin Montessori School, Inc., et al**

and there remain from day to day and time to time until discharged according to law.

~~WITNESS MY HAND,~~ this 17th day of _October_____, 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

NOTARY PUBLIC

**176.8 Enforcement of Subpoena. (a)** *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20___.

_____
PROCESS SERVER

Order No.  **82105.006**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure:  You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:    FOR KIDS SAKE**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO COUNSELING RECORDS, DOCTOR'S NOTES, NURSES' NOTES, PROGRESS REPORTS, PRESCRIPTION RECORDS, COMPUTER PRINT-OUTS, REFILLS, PATIENT EVALUATIONS, HOSPITAL RECORDS, PATIENT INFORMATION SHEETS/PATIENT HISTORY FORMS, RADIOLOGY REPORTS OR STUDIES; LABORATORY TEST RESULTS, INSURANCE CLAIMS, OFFICE NOTES, MEMORANDA AND/OR CORRESPONDENCE, MEDICAL LOGS, DAILY ACTIVITY LOGS, MEDICATION LOGS, PSYCHIATRIC AND/OR PSYCHOLOGICAL RECORDS, NOTES (HANDWRITTEN OR OTHERWISE) PAPERS, FILES, COUNSELING NOTES, EVALUATIONS, TESTS AND TEST RESULTS, APPLICATIONS FOR BENEFITS, DISABILITY RECORDS, CLAIMS, CORRESPONDENCE FROM OTHER MEDICAL FACILITIES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND ANY OTHER DOCUMENTATION IN WRITING  IN THE POSSESSION, CUSTODY OR CONTROL OF OR TO WHICH THE WITNESS HAS ACCESS, PERTAINING TO                         (MINOR); DOB:                         at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 17th day of _____ 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

176.8 Enforcement of Subpoena. (a) *Contempt.*  Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82105.007**

D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure:  You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   FOR KIDS SAKE - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO (MINOR); DOB:               . at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this ___ day of _Octobr_ _____ 2025 _____

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

NOTARY PUBLIC

**176.8 Enforcement of Subpoena.** *(a) Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this ____ day of _____, 20____ and executed this the ____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____

PROCESS SERVER

Order No. **82105.008**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: KIDWORKS THERAPY SERVICES**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234**, on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO                    (MINOR); DOB:         at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 17th day of October , 2025

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82105.009**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for: KIDWORKS THERAPY SERVICES - BILLING**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO (MINOR); DOB:** at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. **24012853** Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this _____ day of _____, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**176.8 Enforcement of Subpoena** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82105.010**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   THE OPTOMETRY CENTER FOR VISION THERAPY**

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234,** on or after **11/06/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL MEDICAL RECORDS (EXCLUDING BILLING RECORDS), FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO RECORDS REGARDING THE PATIENT'S CONDITIONS AND TREATMENTS, DOCTOR'S NOTES, EVALUATIONS, OFFICE NOTES, PROGRESS NOTES, CORRESPONDENCE WITH OTHER PHYSICIANS, THERAPISTS, HOSPITALS AND/OR HEALTHCARE PROVIDERS, PHYSICAL THERAPY RECORDS, LAB REPORTS, PATHOLOGY REPORTS, RADIOLOGY REPORTS, ALL OTHER DIAGNOSTIC REPORTS, PRESCRIPTIONS, REFERRALS TO OTHER HEALTH CARE PROVIDERS, CLAIMS, WORKER'S COMPENSATION RECORDS, HOSPITAL RECORDS, THERAPISTS' RECORDS, PATIENT INFORMATION FORMS, PATIENT INSURANCE FORMS, INTAKE FORMS, HANDWRITTEN NOTES, LETTERS OF PROTECTION, TELEPHONE MESSAGES, NURSES' NOTES, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM, INCLUDING CORRESPONDENCE IN THE POSSESSION, CUSTODY OR CONTROL OF THE SAID WITNESS AND EVERY SUCH RECORDS TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO                    (MINOR); DOB:            at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 17th day of October 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

**176.8 Enforcement of Subpoena. (a) *Contempt.*** Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82105.011**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

**County of Travis**

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Designated Custodian of Records for:   THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING**

to be and appear before a Notary Public of my designation for Written Deposition Service, LLC, 1755 Whittington Place, Suite 750, Dallas, TX 75234, on or after 11/06/2025 at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying ANY AND ALL BILLING RECORDS, FROM 1/1/2023 TO PRESENT, INCLUDING BUT NOT LIMITED TO, PATIENT ACCOUNT INFORMATION, PAYMENT ARRANGEMENT INFORMATION, ANY BILLS, TRANSACTION HISTORY, LEDGERS, INVOICES, RECEIPTS, ITEMIZED STATEMENTS, FINANCIAL RECORD SCREEN SHOTS/PRINT SCREENS, CPT CODES, UB FORMS, RECORDS REFLECTING PAYMENTS MADE, ADJUSTMENTS, WRITE-OFFS, CHARGES, INSURANCE RECORDS, TABLE OF BILLING CODES, LETTERS OF PROTECTION, ANY TYPE OF CORRESPONDENCE, MEMOS, BILLS, REPORTS, CLAIM FORMS, APPLICATIONS FOR MEDICAL BENEFITS, OFFICE NOTES  AND OTHER MEMORANDA, EVERY SUCH RECORD, INCLUDING BUT NOT LIMITED TO, THOSE EXISTING IN ELECTRONIC OR MAGNETIC FORM AND EVERY SUCH RECORD IN THE POSSESSION, CUSTODY, AND CONTROL OF SAID WITNESS, AND EVERY SUCH RECORD TO WHICH THE WITNESS MAY HAVE ACCESS PERTAINING TO (MINOR); DOB:             at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this ___ day of _____, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #12634-6426
My Commission Expires

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20_____.

_____
PROCESS SERVER

Order No. **82105.012**



# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 107071593
Filing Code Description: No Fee Documents
Filing Description: NOTICE OF INTENTION TO TAKE DEPOSITION BY WRITTEN QUESTIONS
Status as of 10/21/2025 7:23 AM CST

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher H.Schulz | | cschulz@slh-law.com | 10/20/2025 7:42:39 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 10/20/2025 7:42:39 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 10/20/2025 7:42:39 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 10/20/2025 7:42:39 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 10/20/2025 7:42:39 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Chris  Schulz | | cshulz@slh-law.com | 10/20/2025 7:42:39 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 10/20/2025 7:42:39 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:42:39 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:42:39 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 10/20/2025 7:42:39 PM | SENT |



11/4/2025 11:24 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Susan Schmidt

**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, *Plaintiffs,* | § § § § | IN THE DISTRICT COURT |
| VS. | § § § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, *Defendants.* | § § § § § | 345TH DISTRICT COURT |

## DEFENDANTS' FIRST AMENDED SPECIAL EXCEPTIONS, ORIGINAL ANSWER, AND AFFIRMATIVE DEFENSES

TO THE HONORABLE JUDGE OF THIS COURT:

Defendants Austin Montessori School, Inc., Ronald Grae Baker, Individually, and Jinny Gonzalez, Individually (collectively "Defendants") file their First Amended Special Exceptions, Original Answer, and Affirmative Defenses to Plaintiffs' Original Petition.

### SPECIAL EXCEPTIONS

Special exceptions are used to identify defects and compel clarification in a pleading, including both vagueness and the failure to state a cognizable cause of action, and to allow the opposing party to cure them by amendment, if possible. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 897 (Tex. 2000); *Mowbray v. Avery,* 76 S.W.3d 663, 677 (Tex. App.—Corpus Christi–Edinburg 2002, pet. denied). A trial court has broad discretion in ruling on special exceptions. *See, e.g., West Orange-Cove Consol. I.S.D. v. Alanis,* 107 S.W.3d 558, 583 (Tex. 2003); *Perry v. Cohen,* 285 S.W.3d 137, 142, 146 (Tex. App.—Austin 2009, pet. denied). Generally, when the trial court sustains special exceptions, it must allow the pleader to amend the pleading, unless the pleading defect is of a type that amendment cannot cure. *Friesenhahn v. Ryan,* 960 S.W.2d 656, 658 (Tex. 1998).

Defendants specially except to Plaintiffs' petition generally, and specifically as follows.

## I. CIVIL CONSPIRACY (INTENTIONAL TORT) (COUNT 11) - INTRACORPORATE CONSPIRACY DOCTRINE BARS PLAINTIFFS' CLAIM

Defendants specially except to Plaintiffs' civil conspiracy claim alleging AMS and its employees conspired with each other to accomplish an unlawful course of action. Pet., Sec. K, ¶¶ 139-140. Under Texas law, a corporation and its officers, employees, or agents cannot conspire with each other when acting within the course and scope of their employment. *Crouch v. Trinque*, 262 S.W.3d 417, 427 (Tex. App.—Eastland 2008, no pet.); *Fojtik v. First Nat. Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App.—Corpus Christi-Edinburg 1988), writ denied, 775 S.W.2d 632 (Tex. 1989); *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952). Here, even if the defendants could conspire with themselves, Plaintiffs allege that "at all times material to this action, AMS' employees were acting in the course and scope of their employment." Pet., ¶ 108, which affirmatively negates that any employee acted outside the scope of employment or for purely personal interests. Because the alleged conduct involves AMS and its employees acting within the scope of their employment, these allegations fail as a matter of law to support a civil conspiracy claim. Accordingly, Defendants request that the Court sustain this special exception and dismiss the claim with prejudice, as the defect cannot be cured.

## II. CIVIL CONSPIRACY (INTENTIONAL TORT) (COUNT 11) - NO MEETING OF THE MINDS PLEADED

Alternatively, Defendants generally and specially except to Plaintiffs' civil conspiracy claim because no meeting of the minds has been factually pleaded. Pet., ¶¶ 139-140. Under Texas law, to prove a civil conspiracy, five elements must be established: (1) a combination of two or more persons; (2) the persons aim to achieve a particular objective or course of action; (3) the persons agree on the objective or course of action; (4) one or more unlawful, overt acts are



2

committed in furtherance of the objective or course of action; and (5) damages result as a proximate cause. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017).

Even if it were possible for AMS to conspire with itself, Plaintiffs' petition fails to provide any specific factual allegations supporting an agreement or coordinated action by the Defendants to conspire against Plaintiffs. Plaintiffs have not pleaded the necessary elements for a civil conspiracy claim, including a meeting of the minds, an overt act, proximate causation, or damages. *Id.* Instead, Plaintiffs merely assert, without factual support, that "[d]efendants acted in combination to seek or accomplish a course of action to commit unlawful acts. There was a meeting of the minds of the Defendants to agree to accomplish the above-stated unlawful acts. Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement. As a result, Plaintiffs suffered harm, injury, and damages." Pet., ¶ 140. These conclusory allegations fail to state a legally sufficient claim for civil conspiracy. Accordingly, in the unlikely event the Court finds the AMS could conspire with itself, Defendants request that the Court sustain this special exception and require Plaintiffs to replead their civil conspiracy claim by a date certain, if they can do so. If Plaintiffs refuse or fail to do so in compliance with the court's order, the civil conspiracy claim must be dismissed with prejudice.

## III.  PLAINTIFF'S SECTION 504 OF THE REHABILITATION ACT CLAIMS ARE JUDICIALLY WAIVED (COUNT 12)

Defendants specially except to Plaintiffs' Petition, Section G, paragraphs 113–117, because Plaintiffs' Section 504 claims are judicially waived. Plaintiffs originally filed this case in state court, asserting claims under Section 504 of the Rehabilitation Act. Defendants then removed the case to federal court on the basis of federal question jurisdiction. Exhibit A (Notice of Removal). After Defendants filed a Rule 12(b)(6) motion to dismiss, Plaintiffs amended their



complaint to eliminate all federal Section 504 claims in an effort to obtain a remand to state court. Exhibit B (Plaintiffs' Amended Complaint). The federal court subsequently remanded the case based on Plaintiffs' express withdrawal of their federal claims. Exhibit C (Report and Recommendation of the United States Magistrate Judge). By voluntarily waiving their Section 504 claims to secure remand, Plaintiffs judicially waived and are estopped from reasserting those same claims in this Court. Plaintiffs cannot invoke the jurisdiction of the federal court, disclaim those claims to obtain remand, and then revive them upon return to state court. Accordingly, Defendants request that the Court sustain this special exception and dismiss Plaintiffs' Section 504 claims with prejudice as judicially waived, as this defect cannot be cured.

## IV.    PLAINTIFFS' AMERICANS WITH DISABILITIES ACT CLAIMS ARE JUDICIALLY WAIVED (COUNT 6)

Likewise, Defendants specially except to Plaintiffs' original petition, Section F, paragraphs 106-112, on the grounds that Plaintiffs' ADA claims are also judicially waived. Plaintiffs filed their Petition in state court, raising an ADA claim. Defendants removed the case to federal court based on federal question grounds. Exhibit A. Following Defendants' filing of their Rule 12(b)(6) motion to dismiss, and to obtain remand after the case had been removed to federal court, Plaintiffs amended their complaint to affirmatively eliminate the federal ADA claims, which forced the case back to state court. Exhibit C (Report and Recommendation of the United States Magistrate Judge). Therefore, Plaintiffs' federal ADA claims are waived. Defendants request that the Court make an order sustaining this special exception and dismissing Plaintiffs' ADA claims with prejudice.

## V.    PLAINTIFFS FAIL TO STATE A COGNIZABLE RETALIATION CLAIM (COUNT 12)

Defendants generally and specially except to Plaintiffs' retaliation claim. Pet., Sec. L, ¶¶ 141-146. Plaintiffs' petition fails to state a legally recognized cause of action under Texas law,



4

instead asserting a generic claim of "retaliation" arising from administrative or enrollment decisions of a private daycare or childcare provider. Nowhere in the petition, having waived their Section 504 and ADA claims, do Plaintiffs identify any statute or law supporting a standalone state-law retaliation cause of action in this context. Under Texas law, absent an express statutory basis, such as the Americans with Disabilities Act, Title IX, the Texas Labor Code, or another applicable anti-retaliation statute, a plaintiff cannot maintain a general state-law claim for "retaliation" against a private entity. To the extent Plaintiffs attempt to assert the ADA or Section 504 as a basis for this claim, Plaintiffs expressly waived these claims in federal court to avoid removal, which the federal court acknowledged. Because Plaintiffs' petition fails to identify any statutory foundation for their retaliation claim, Defendants request that the Court sustain this special exception, require Plaintiffs to amend their petition to plead sufficient facts and legal basis for their retaliation claim by a date certain, and provide that, if Plaintiffs fail or refuse to amend, their retaliation claims be dismissed with prejudice.

## VI.    PLAINTIFFS FAIL TO PLEAD ANY ELEMENT OF THEIR BREACH OF CONTRACT CLAIM(S) (COUNT 8)

### A.    Failure to Allege any Breach of the Contract

Defendants specially except to Plaintiffs' petition generally, and specifically to paragraphs 118-123 on the grounds that Plaintiffs do not specify or identify the contractual obligation, terms, duties, or conditions of the contract that the Defendants allegedly breached, nor do the facts pleaded provide Defendants with any clues as to the basis of this claim. Vague references to an unspecified agreement term are insufficient to state a cause of action. *See Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.). While Plaintiffs generally allege that the contract provided for services from 8:00 a.m. to 3:15 p.m. each



school day, and then contradict themselves in paragraph 130 of their petition by alleging the children were to attend school until 3:00 p.m. each school day, the contract itself is devoid of any such provision. Pet. at 17. Further, the contract expressly provided a probationary period for new students, which allowed for conditional enrollment or withdrawal of enrollment. While not entirely clear from the petition, Plaintiffs also seem to claim that termination of enrollment was a breach of the contract (*see e.g.*, ¶¶ 64, 143); however, the contract expressly reserves AMS's right to terminate the student's enrollment at its sole discretion or change the student's participation in the school program.

Consequently, without specificity as to what obligation, term, duty, or condition of the contract that the defendants allegedly breached, Defendants cannot prepare an adequate response or defense, including rebuttal of causation and damages. Accordingly, Defendants request that the Court sustain this special exception, require Plaintiffs to amend their petition to plead sufficient facts and legal basis for their breach of the contract claim by a date certain, and provide that, if Plaintiffs fail or refuse to amend, their breach of contract claim(s) be dismissed with prejudice.

**B.    Failure to Plead Facts Establishing Breach of Contract Causation or Damages**

Additionally, Defendants specially except to Plaintiffs' petition generally, and specifically to paragraphs 118-123 on the grounds that Plaintiffs have failed to plead facts establishing a causal link between the unspecified breach of contract and the litany of damages asserted by Plaintiffs, in shotgun fashion. Specifically, Plaintiffs claim some damages, *inter alia*, for the loss of value of the tuition paid, despite that AMS reduced and refunded Plaintiffs' tuition. Pet. at 26. Further, despite the contract permitting AMS to reduce or terminate enrollment, Plaintiffs claim lost wage damages for having to stay home with their children, and also for *future* lost wages. *Id.* at 27. Plaintiffs claim additional unspecified damages for medical expenses; physical pain and suffering;

6



as well as mental anguish and loss of the normal enjoyment of the pleasure of life, both in the past and future. *Id.* at 26-27.

Notwithstanding that Plaintiffs' petition contains only conclusory statements that "Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential" (*id.* ¶ 122), this recitation of the legal standard does not identify any specific action or omission by Defendants that was the but-for cause of any alleged harm by any defendant. Moreover, for consequential damages, such as lost profits, the petition must allege facts showing that such losses were reasonably foreseeable at the time the contract was formed, assuming they seek these damages in relation to their breach of contract claim, and if so, exemplary damages are generally not available for a breach of contract. Plaintiffs have not alleged that Defendants knew or should have known of any special circumstances that would lead to particular losses if the contract were breached. General, conclusory statements of lost profits, much less consequential lost income, are insufficient under Texas law, which requires specificity regarding the nature and amount of the alleged lost business and how the Defendant's breach caused it.

Texas's notice-pleading standard requires that the allegations, taken as a whole, give Defendants fair notice of the claim. Plaintiffs' petition fails to provide sufficient facts regarding causation for Defendants to adequately prepare a defense, including:

- What specific harms allegedly flowed from the unspecified breach;
- Whether those harms were actually caused by Defendants, and if so, which Defendants; and
- What consequential damages were reasonably foreseeable at the time of contract formation.

Defendants are not required to guess what damages might apply to which claims and determine if each was somehow the but-for cause of the unspecified breach. Accordingly, Defendants request



that the Court sustain this special exception and require Plaintiffs to replead their breach of contract claim with sufficient specificity by a date certain. If they are unable or unwilling to do so, the claim must be dismissed with prejudice.

## VII. DUPLICATIVE OF BREACH OF CONTRACT CLAIM AND FAILURE TO STATE A CLAIM FOR FRAUD (COUNT 9)

Defendants specially except to Plaintiffs' petition generally, and specifically to paragraphs 118-123 on the grounds that Plaintiffs' fraud claim is conclusory, improperly duplicative of their breach of contract claim, and fails to allege any independent injury as required under Texas law. Under Texas law, a plaintiff may not repackage a breach of contract claim as fraud merely by asserting that the breach was made with fraudulent intent. To be viable, a fraud claim must allege a duty independent of the contract and a distinct injury that is not merely the loss of contractual benefits. Here, Plaintiffs' fraud allegations are not pleaded with particularity, as required by Rule 45 of the Texas Rules of Civil Procedure. Plaintiffs fail to specify the alleged misrepresentations, when and by whom they were made, and how they caused a separate injury beyond the alleged breach. The alleged injury appears to be identical to the claimed contractual loss, which is insufficient to support a separate tort theory. Accordingly, Defendants request that the Court sustain this special exception and order Plaintiffs to amend their petition to:

1.    Plead the elements of fraud with particularity, including the specific statements made, by whom, when, and how they were false;
2.    Identify a legal duty independent of the contract;
3.    Allege an injury that is distinct from the breach of contract itself.

Defendants ask the Court to sustain this special exception, and if Plaintiffs are unable or unwilling to amend this claim by a date certain, the claim must be dismissed, with prejudice.



## VIII.  FRAUDULENT INDUCEMENT CLAIMS (COUNT 10) – FAILURE TO STATE A CLAIM.

Defendants specially except to Plaintiffs' petition generally, and specifically to paragraphs 10 and Section J, paragraphs 129-138, on the grounds that Plaintiffs' fraudulent inducement and related exemplary damages are subject to the same heightened pleading standards as common law fraud. Under Texas law, a claim for fraudulent inducement requires the plaintiff to plead facts establishing: (1) a material misrepresentation or omission, (2) knowledge of the falsity or reckless disregard for the truth, (3) intent to induce reliance, (4) actual and justifiable reliance by the plaintiff, and (5) resulting damages. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48–49 (Tex. 1998). In other words, Plaintiffs must identify who made the alleged misrepresentation, what was said, when and where it was said, and why it was false at the time, and how Plaintiff relied on the statement. Here, Plaintiffs fail to plead any elements of fraudulent inducement with sufficient specificity. Rather, Plaintiffs conclude, AMS "fraudulently induced the Ponders into contracts and then discriminated against H.P. and failed to provide him accommodations for his disability." Pet., ¶ 10. By further example, Plaintiffs globally claim in support of their fraudulent inducement claim that "AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging." *Id.*, ¶ 134. However, Plaintiffs' allegations fail to specify who made any alleged misrepresentation, what was said, when and where it was said, and why it was false at the time or resulting damages.

Further, under Texas law, a fraud claim cannot proceed when it merely duplicates a contract claim without a distinct injury. Plaintiffs have not alleged an independent injury separate from their breach of contract claim. Accordingly, Defendants respectfully request that the Court sustain this special exception and order Plaintiffs to amend their petition by a date certain to:



1.    Plead fraudulent inducement with particularity, including the who, what, when, where, and how of the alleged misrepresentation;

2.    Identify an injury independent of the alleged breach of contract.

If Plaintiffs are unable or unwilling to do so by a date certain, the claim must be dismissed with prejudice.

## IX.    ATTORNEY'S FEES

Defendants specially except to Plaintiffs' request for attorney's fees and costs under paragraph 148 of the petition because Plaintiffs fail to identify any specific statute or contractual provision that would entitle them to recover such fees and costs. Under Texas law, attorneys' fees are recoverable only when authorized by statute or by contract. A general request for attorney's fees, without identifying the specific statutory or contractual basis, does not provide fair notice and is legally insufficient. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to amend their pleading to identify the legal basis for their request by a date certain. If Plaintiffs are unable or unwilling to do so, the request should be stricken from the petition.

## X.    NEGLIGENCE PER SE – FAILURE TO STATE A CLAIM

In addition to Plaintiffs' negligence claims, Plaintiffs bring numerous negligence per se claims. However, negligence per se does not constitute an independent cause of action apart from a common-law negligence claim. *Zavala v. Trujillo*, 883 S.W.2d 242, 246 (Tex. App.—El Paso 1994, writ denied). Instead, it serves only as a method of establishing a breach of duty, which is an essential element of a negligence claim. *Reynolds v. Murphy*, 188 S.W.3d 252, 267 n.20 (Tex. App.—Fort Worth 2006, pet. denied) (quoting *Zavala*, 883 S.W.2d at 246). To establish a negligence per se claim, premised upon the violation of a statute or an ordinance, a plaintiff must plead and establish: (1) the defendant breached a statute or ordinance; (2) the plaintiff was within



the class protected by the statute or ordinance; and (3) the defendants act or omission with respect to the statute or ordinance proximately caused his injury. *See Nixon v. Mr. Property Management Co. Inc.,* 690 S.W.2d 546, 549 (Tex.1985); *Ambrosio v. Carter's Shooting Ctr., Inc.,* 20 S.W.3d 262, 265 (Tex. App.-Houston [14th Dist.] 2000, pet. denied); *see also Ibarra v. Hines Land Group, Ltd.,* No. 10–09–00231–CV, 2010 WL 2869814, at *7 (Tex. App.-Waco July 21, 2010, no pet.) (mem.op.).

Defendants generally object to Plaintiffs' negligence per se claims (because Plaintiffs fail to allege any facts supporting their conclusion that a Defendant violated a statute, that any alleged act or omission was a cause-in-fact of any Plaintiff's injury, or that any injury connected to the cited statute occurred at all or resulted in damages. Defendants specifically except to the following negligence per se claims.

### A. Negligence/Negligence Per Se – Exceeding Maximum Child-to-Caregiver Ratios (26 TAC §§ 746.1601–1615)

Defendants specifically except to Plaintiffs' Original Petition generally, and specifically to paragraph 85 and the allegation that AMS exceeded the maximum number of children permitted in a classroom under 26 TAC §§ 746.1601–1615. In support of this claim, Plaintiffs assert, "according to AMS staff, AMS had 39 children in the Casita at one time, the location used for young children to nap." Pet., ¶ 91. Notwithstanding that the number of children in a naptime classroom is dependent on the staff: student ratio, which can be reduced during naptime according to 26 TAC § 744.1611, Plaintiffs fail to state a claim for negligence or negligence per se because Plaintiffs do not plead essential factual elements, including:

1. The specific date(s) or the staff: student ratio at any alleged time the ratios were exceeded; and

2. How any alleged exceedances directly and proximately caused injury or damages to any Plaintiff.



Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead with specificity, identifying:

1. The date(s) and number of staff: children present in the Casita classroom;
2. The causal connection between any violation and the alleged injury; and
3. The resulting injury sustained as a direct result of an act or omission under the specific regulation.

Defendants ask the Court to sustain this exception, and if Plaintiffs fail or refuse to cure these deficiencies by a date certain, the claim must be dismissed with prejudice.

**B. Negligence/Negligence Per Se – Failure to Comply with Naptime and Food Service Regulations (26 TAC §§ 746.2901–2911; 746.3301–3321)**

Defendants specially except to Plaintiffs' Petition generally, and specifically to paragraph 88, regarding Plaintiffs' claim that AMS failed to comply with regulations governing naptimes and food service for H.P. under 26 TAC §§ 746.2901–2911 and 746.3301–3321. Plaintiffs fail to state a claim for negligence or negligence per se because the petition does not sufficiently allege the essential elements of such a claim:

1. **Breach** – Plaintiffs fail to allege what specific acts or omissions constituted the alleged breach of naptime or food service, whose actions or omission violated the statutes, or when such acts or omissions occurred. Generalized statements that AMS "failed to comply" do not provide adequate notice to Defendants.

2. **Causation** – The Petition does not allege how any alleged failure to follow the naptime or food service regulations proximately caused injury to H.P. or any plaintiff. Plaintiffs must specifically allege a causal link between the Defendants' conduct and the alleged harm.

3. **Injury** – The Petition does not identify the particular harm suffered as a result of the alleged rule violations.

Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead these claims with sufficient specificity, including: (i) the specific acts or omissions constituting a breach, (ii) the timing of such acts or omissions, (iii) the causal connection



to any alleged injuries, and (iv) the nature of the alleged harm. If Plaintiffs fail or refuse to cure these defects by a date certain, the claims must be dismissed with prejudice.

## C.    Negligence/Negligence Per Se (26 TAC § 746.4103)

Defendants specially except to Plaintiffs' Petition generally, and specifically to paragraph 90, regarding the alleged failure to comply with 26 TAC § 746.4103 (stating, "AMS failed to follow the laws regarding release of children."). Pet. at 90. However, 26 TAC 746.4103 actually states that "A caregiver must be at least 18 years old." Regardless of whether Plaintiffs assert that AMS failed to follow laws relating to the release of children and/or whether they assert a caregiver was not at least 18 years old, Plaintiffs' petition is legally insufficient because it does not allege specific facts showing how Defendants allegedly violated either rule. To state a claim under negligence or negligence per se based on this provision, Plaintiffs must allege:

1.    Which Defendant allegedly failed to comply with the child release or minimum age rules;
2.    The specific acts or omissions constituting a violation of 26 TAC § 746.4103 or any other rule;
3.    When and where the alleged violation occurred;
4.    Which child or children were affected;
5.    The particular harm suffered as a result of the alleged rule violations; and
6.    How such a violation proximately caused the alleged injuries.

Plaintiffs' Petition contains only conclusory statements that "AMS failed to follow the laws regarding release of children" without factual support, and provides zero facts regarding minimum age rules. Such a generalized conclusion fails to give Defendants fair notice of the claim and impedes the preparation of a defense. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead their claim(s) with specificity, including identification of the alleged acts or omissions, the responsible Defendant, the timing of such acts,



13

any alleged injury resulting from any act or omission, and the causal connection to any claimed damages. If Plaintiffs cannot or refuse to cure these defects by a date certain, the claim must be dismissed with prejudice.

**D.    Negligence/Negligence Per Se – Policies Regarding Medications and Medical Assistance (26 TAC § 746.3811)**

Defendants specially except to Plaintiffs' Petition generally, and specifically to paragraph 89, regarding Plaintiffs' claim of 26 TAC § 746.3811. Plaintiffs allege that "AMS refused to administer or allow the student to take medications"; however, this is not what the rule requires. Plaintiffs fail to state a claim for negligence per se because the Petition does not sufficiently allege any essential elements of such a negligence per se claim under this rule, including:

1.    **Violation of the statute:** Plaintiffs fail to allege any facts showing that AMS actually breached a duty under this rule.

2.    **Damages:** Plaintiffs fail to allege actual damages resulting from any alleged rule violation, including the timing, nature, or extent of the harm caused by any alleged act or omission under this rule.

3.    **Proximate cause:** Plaintiffs fail to allege facts establishing that any purported rule violation proximately caused any injuries. The Petition contains only conclusory statements regarding causation without specifying which acts or omissions caused which injuries.

Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead this negligence per se claim with specificity. If Plaintiffs refuse or are unwilling to cure these defects, the negligence/negligence per se claim under 26 TAC § 746.3811 must be dismissed with prejudice.

**E.    Negligence/Negligence Per Se – Written Operational Policies (26 TAC § 744.501)**

Defendants specially except to Plaintiffs' Petition generally, and specifically to paragraph 84, regarding Plaintiffs' claim that AMS failed to follow the positive discipline requirements

14



outlined in 26 TAC § 744.501. Notwithstanding that Section 744.501 does not address positive discipline requirements, but rather that policies be in place, Plaintiffs globally allege that AMS "repeatedly failed to use praise and encouragement, instead used humiliation and rejection with H.P." *Id.* The Petition fails to allege essential facts necessary to state a claim for negligence or negligence per se under this rule. Plaintiffs do not specify:

1.   The particular acts or omissions by AMS that constituted a violation of 26 TAC § 744.501 as it *actually* relates to this rule;

2.   The timing or context of each alleged violation;

3.   The causal connection between each act or omission; and

4.   and any alleged harm to H.P. or any other plaintiff.

Without these specific factual allegations, the claim is vague and conclusory, fails to provide fair notice to Defendants, and constitutes impermissible "shotgun pleading" by lumping all Defendants together. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead with specificity, and if Plaintiffs refuse or fail to cure these deficiencies by a date certain, the claim must be dismissed with prejudice.

F.    **Negligence/Negligence Per Se – Failure to Provide Reasonable Accommodations (26 TAC § 746.2202)**

Defendants specially except to Plaintiffs' Petition generally, and specifically to paragraphs 76(f) and 86, regarding Plaintiffs' claim of negligent failure to provide reasonable accommodations under 26 TAC § 746.2202 (which governs the provision of accommodations recommended by qualified professionals and medical experts in daycare settings). Plaintiffs state, "on January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. had ADHD but that he would be placed in a standard classroom and did not need special education or occupational therapy." Pet. at 65. However, nowhere in the Petition do



Plaintiffs allege that AMS violated this rule. Specifically, Plaintiffs fail to state a claim for negligence or negligence per se because the Petition does not sufficiently allege the essential elements of such a claim, including:

1. **Breach** – Plaintiffs do not allege how this rule was violated, if at all.
2. **Specificity of Acts or Omissions** – The petition does not provide dates, locations, or factual details of any alleged acts or omissions or any act or omission constituting a breach.
3. **Causation** – Plaintiffs fail to allege facts showing a direct causal link between any alleged failure to follow this rule and the injuries or damages claimed.
4. **Damages** – Plaintiffs fail to identify the specific harm or damages that resulted from the alleged omission.

Additionally, the allegations constitute impermissible shotgun pleading because they lump multiple defendants together, asserting broad duties and alleged breaches collectively without providing fair notice of which Defendant allegedly breached which duty. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead with the necessary specificity. If Plaintiffs fail or refuse to cure these deficiencies by a date certain, the negligence and negligence per se claim must be dismissed with prejudice.

## G.    Negligence/Negligence Per Se – Basic Requirements (2[6] TAC § 746.2601)

Defendants specially except to Plaintiffs' Petition generally, and specifically to paragraph 87, regarding Plaintiffs' claim that AMS failed to encourage H.P. to express feelings and failed to provide appropriate attention in violation of 2[6] TAC § 746.2601. Plaintiffs fail to state a claim for negligence or negligence per se because the Petition does not sufficiently allege the essential elements of such a claim, including:

1. **Breach** – Plaintiffs do not allege which Defendant failed to comply, how AMS allegedly failed to encourage expression or provide attention, or the specific actions or omissions constituting the breach.

16



2. **Causation** – Plaintiffs fail to allege facts showing a direct causal link between any alleged failure to encourage expression or provide attention and the injuries or damages claimed.

3. **Damages** – Plaintiffs do not specify the harm or damages allegedly resulting from any such breach.

4. **Specificity** – The Petition does not provide dates, times, or concrete examples of when H.P. was allegedly denied encouragement or attention, making the allegations conclusory.

Additionally, the allegations constitute impermissible shotgun pleading by lumping multiple Defendants together and asserting broad duties and breaches collectively, without fair notice of which Defendant allegedly breached which duty. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead with specificity, and if Plaintiffs fail or refuse to cure these deficiencies by a date certain, the negligence and negligence per se claim be dismissed with prejudice.

## H.    Failure to State a Claim Regarding the Release of Children (26 TAC Sec. 746.4103)

Defendants generally except to the petition and specially except to paragraph 90 of the petition, which merely concludes that "AMS failed to follow the laws regarding release of children. 26 TAC § 746.4103." Nowhere do Plaintiffs allege facts sufficient to state a claim. Specifically, Plaintiffs' pleading is vague, conclusory, and fails to state a claim because it does not allege:

1. Specific policy or procedure violated: Plaintiffs fail to identify which aspect of § 746.4103 AMS allegedly violated, such as failure to verify identity, maintain records, or train staff.

2. Specific conduct: Plaintiffs do not allege the concrete actions or omissions by AMS that violated the statute.

3. Causation: Plaintiffs fail to allege facts showing that any alleged failure directly caused harm or injury to the child.

Accordingly, Plaintiffs' claim is insufficiently pled. Defendants request that the Court sustain this special exception and require Plaintiffs to amend their pleading to specifically allege

17



the alleged violation of § 746.4103, the conduct of AMS, and any resulting harm, and if Plaintiffs fail or refuse to amend by a date certain, dismiss this claim with prejudice.

## I.    Plaintiffs Lack Standing to Bring an Unauthorized Practice of Medicine Claim or Negligence Per Se Claim.

To the extent Plaintiffs attempt to bring an unauthorized practice of medicine claim, Defendants specially except. Pet. ¶¶ 10, 11, 12, 14, 37, 60, 64, 142, 143, 148.5. Plaintiffs claim that AMS permitted and endorsed Defendant Gonzalez, the Director of Early Childhood Programs, to engage in the practice of medicine without a valid license. Pet., ¶11. Specifically, Plaintiff alleges that in September 2023, Gonzalez purportedly "diagnosed" H.P. with "an underdeveloped will." *Id.* Notwithstanding that an "underdeveloped will" is not a medical diagnosis, Plaintiffs then claim, "Defendant Gonzalez violated the law by practicing medicine without a license. Defendants AMS and Baker supported and assisted Gonzalez in her medical endeavors." Pet., ¶ 92. Even if these allegations are accepted as true, Texas law does not recognize a private civil cause of action for the unauthorized practice of medicine, and Plaintiffs lack standing to assert such a claim. *Aguirre v. Tristar Risk Mgmt.*, No. C-10-394, 2011 WL 248199, at *6 (S.D. Tex. Jan. 24, 2011) (holding there is no private cause of action under the Texas Medical Practice Act); *Patel v. Rios*, No. 01-20-00856-CV, 2022 WL 3649348, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, pet. denied) (dismissing unauthorized practice of medicine claim because plaintiff lacked standing, as neither the Medical Practice Act nor the Texas Administrative Code provides a private right of action). Defendants request that the Court sustain this special exception, strike the claim, and require Plaintiffs to replead, if they can, in compliance with Texas law. If the defect cannot be cured, the claim must be dismissed with prejudice.



### J.    Negligence Per Se- Unauthorized Practice of Medicine

Defendants specially except to Plaintiffs' pleading to the extent it attempts to assert a claim for negligence per se based on the alleged unauthorized practice of medicine. Plaintiffs' pleading fails to sufficiently allege facts establishing the required elements of negligence per se, namely:

1. **Existence of a statute or regulation**: Plaintiffs do not identify a specific statute or regulation that Defendants allegedly violated.

2. **Protected class or purpose**: Plaintiffs fail to allege that the statute was designed to protect a class of persons that includes Plaintiffs.

3. **Causal connection**: Plaintiffs do not allege facts showing that the alleged statutory violation proximately caused their alleged injuries.

4. **Violation of a statute**: Plaintiffs fail to allege facts demonstrating that Defendants actually violated the statute.

Accordingly, Plaintiffs' pleading is vague, conclusory, and fails to state a cause of action for negligence per se. Defendants request that the Court sustain this special exception and require Plaintiffs to amend their pleading to specifically identify the statute, describe the alleged violation, and allege facts supporting all required elements of negligence per se, or dismiss this claim with prejudice.

## XI.    GENERAL NEGLIGENCE CLAIMS (COUNT 1).

Defendants specially except to Plaintiffs' petition generally, and specifically to paragraphs ¶¶ 76–81 of the petition asserting ordinary negligence claims for:

a. Failing to exercise the care necessary under the circumstances;

b. Failing to do what a reasonable daycare would have done under the circumstances;

c. Failing to intervene to ensure a child's safety;

d. Failing to provide proper supervision;

e. Failing to properly hire, qualify, train, and supervise its employees;

f. Failing to provide reasonable accommodations; and

g. Failing to adhere to the Texas Minimum standards for childcare.

*Id.* ¶76.



19

First, Defendants specially except to the petition to the extent Plaintiffs assert duplicative claims for negligence and negligence per se. Plaintiffs' pleading is vague and fails to state a claim because it does not clearly distinguish between ordinary negligence and negligence per se, and it improperly attempts to treat negligence per se as an independent cause of action rather than a method of proving a breach of duty under common-law negligence. *Compare* Pet. Count 1 *with* Count 2, pp. 16-19. Accordingly, Plaintiffs' claims are duplicative and confusing. Defendants request that the Court sustain this special exception and require Plaintiffs to amend their petition to clarify whether they are asserting ordinary negligence, negligence per se, or both for each claim, and to plead each cause of action with sufficient factual detail, and if Plaintiffs fail or refuse to do so by a date certain, dismiss the claims with prejudice.

### 1. Failure to Exercise Ordinary Care

Further, Plaintiffs' generalized assertion that Defendants "failed to exercise ordinary care" or "failed to exercise the care necessary under the circumstances" does not identify:

1. The **specific duty** allegedly owed by each or any Defendant to each Plaintiff;
2. The **facts giving rise to that duty**, whether statutory, regulatory, or common law;
3. The **particular acts or omissions** constituting a breach of that duty; or
4. The **causal connection** between the alleged breach and the injuries claimed.

A general assertion that Defendants did not act as a "reasonable daycare" under unspecified "circumstances", Pet., ¶ 76(a-b), does not provide fair notice of the conduct alleged or the standard of care purportedly violated. Texas law requires factual allegations sufficient to inform each Defendant of the specific conduct forming the basis of the negligence claim.



## 2.     Failing to Intervene

Defendants specially except to Plaintiffs' allegation that Defendants were negligent by "failing to intervene to ensure a child's safety". Pet., ¶ 76(c). This allegation is vague, conclusory, and fails to state a cognizable claim under Texas law. The existence of a legal duty is a threshold question of law, and absent a specific duty imposed by law, there is no general duty to control the conduct of another or to affirmatively "intervene" to prevent harm, nor do Plaintiffs identify which defendant purportedly failed to intervene or what circumstance any defendant should have intervened in. Mere assertions that Defendants "failed to intervene to ensure a child's safety," without identifying the nature of the danger, the party creating the danger, or any specific circumstances triggering a duty to act, are conclusory and insufficient to provide fair notice of the claim. Plaintiffs' pleading fails to identify:

1.     The specific legal duty owed by each defendant requiring any Defendant to "intervene";

2.     The source of that duty, whether statutory, regulatory, or based on a special relationship;

3.     What specific conduct or omission constituted a failure to intervene, and

4.     What harm was foreseeable and how Defendants' alleged inaction proximately caused that harm.

Accordingly, Defendants respectfully request that the Court sustain this special exception and order Plaintiffs to replead to identify:

(a) the specific legal duty requiring which Defendants to "intervene";

(b) the factual circumstances giving rise to that duty;

(c) the particular act or omission constituting a breach; and

(d) how that alleged breach proximately caused each of the Plaintiffs' injuries.

If Plaintiffs fail to cure these defects by amendment by a date certain, the allegation should be stricken.



### 3.    Negligent Supervision and Training

To state a viable claim for negligent training or supervision (Pet. at para. 76.d-e), a plaintiff must plead facts showing: (1) that Defendants owed a legal duty to the Plaintiffs to properly train or supervise employees; (2) that Defendants breached that duty; (3) that the breach proximately caused Plaintiffs' injuries; and (4) that actual damages resulted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804–05 (Tex. 2010); *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App.— Fort Worth 2008, no pet.). Further, the employer's duty arises only where the lack of training creates a foreseeable and unreasonable risk of harm. *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 97 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Plaintiffs' Petition fails to identify:

1.    The specific legal duty any Defendant owed to any Plaintiff to train or supervise particular employees;

2.    The nature of the alleged inadequate training, including what training was required, how it was deficient, and how it deviated from any applicable standard of care;

3.    The identity of any untrained employee, or the conduct of such employee that caused harm; and

4.    How the alleged lack of training proximately caused the specific injuries alleged.

Instead, Plaintiffs rely on conclusory statements that Defendants "failed to properly train, hire, or supervise employees" without pleading facts establishing duty, breach, foreseeability, or causation. Accordingly, Defendants respectfully request that the Court sustain this special exception and order Plaintiffs to replead their negligent training and supervision claims with specificity, including:

1.    The legal duty owed by each Defendant to each Plaintiff;

2.    The factual basis for the alleged breach.

3.    The identity of the employee(s) whose alleged training or supervision was deficient; and

4.    The causal connection between that deficiency and each Plaintiff's injuries.



The Court must sustain these objections to Plaintiffs' negligence claims, and if Plaintiffs fail to cure these pleading defects by a date certain, the claims should be dismissed.

### 4.    Minimum Standards of Care

Third, as to paragraph 76 (g), regarding Plaintiff's global negligence claim regarding unspecified violation of the minimum standards for children, Defendants additionally except because this "negligence" claim is vague and overbroad on its face, as Texas has well over 2,000 total standards. 26 TAC Chapter 746, 744. Defendants request that the Court sustain this special exception and require Plaintiffs to amend their petition by a date certain with the requisite specificity, and if they fail or refuse to do so by a date certain, dismiss these negligence claims with prejudice. Conclusory statements that "Defendants had a duty" or "breached their duty" without specifying the nature or source of that duty, the acts or omissions constituting a breach, or how the breach caused the alleged injury, or any injury, are legally insufficient. The Court must sustain this objection and dismiss this shotgun claim.

## XII.    NEGLIGENT ACTIVITY CLAIMS (COUNT 4)

Defendants specially except to Plaintiffs' negligent activity claim (¶¶ 99–103) because Plaintiffs fail to plead facts sufficient to state a legally viable cause of action under Texas law. A negligent activity claim requires that the plaintiff's injuries arise from a contemporaneous, ongoing activity by the defendant—not from a static condition, a past event, or a general situation. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); see also *Martin v. Walmart Stores, Inc.*, 146 S.W.3d 635, 639 (Tex. App.—Texarkana 2004, no pet.).

Plaintiffs' petition does not identify any specific, active conduct by Defendants that allegedly caused the harm. Instead, it merely alleges generalized wrongdoing or the existence of prior conditions, which is insufficient under Texas law. Without allegations demonstrating:



1. **Duty** owed by the Defendants,

2. **Breach** of that duty by engaging in a specific, ongoing activity,

3. **Injury** resulting directly from that active conduct, and

4. **Proximate cause** connecting the conduct to the injury.

Because Plaintiffs' allegations are conclusory and fail to connect Defendants' conduct to the claimed harm, the claim is legally insufficient. Defendants therefore request that the Court:

- Sustain this special exception, and
- Require Plaintiffs to replead with specificity, identifying the precise ongoing activity, how it breached a duty, and how it caused the alleged injury, by a date certain.

If Plaintiffs are unable or unwilling to cure these deficiencies by a date certain, the negligent activity claim should be dismissed with prejudice.

## XIII.   GROSS NEGLIGENCE CLAIMS (COUNT 3)

Defendants specially except to Plaintiffs' gross negligence allegations, paragraphs 96-98, on the ground that gross negligence is not a standalone cause of action under Texas law. Rather, gross negligence is a heightened form of negligence relevant only to the recovery of exemplary (punitive) damages under Texas Civil Practice and Remedies Code § 41.003. *See Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994) (gross negligence is not an independent tort but a threshold for punitive damages in negligence actions). Plaintiffs' petition fails to allege a viable underlying negligence claim that could support an award of exemplary damages and does not plead facts demonstrating an extreme degree of risk or Defendants' subjective awareness of, and conscious indifference to, that risk, as required under *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 22, 28 (Tex. 1994) and TEX. CIV. PRAC. REM. CODE § 41.001(11). Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead with specificity, or

24



clarify, that their gross negligence allegations are asserted solely in support of exemplary damages and not as an independent cause of action, and to replead with specificity the facts showing that Defendants were aware of an extreme degree of risk and acted with conscious indifference and that any grossly negligent act or omission was the proximate cause of the harm suffered. If they are unable or unwilling to do so, the claim must be dismissed.

## XIV. RESPONDEAT SUPERIOR (COUNT 5)

Defendants specially except to Plaintiffs' respondeat superior claims. Plaintiff improperly pleads "respondeat superior" as a separate cause of action. Texas law is clear that respondeat superior is not an independent tort but a theory of vicarious liability that attaches to an underlying actionable wrong committed by an employee within the course and scope of employment. Further, Plaintiffs fail to plead with specificity any actionable tort or wrongful conduct by an employee for which Defendant could be held vicariously liable. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to replead their "respondeat superior" claim with sufficient specificity by a date certain. If they are unable or unwilling to do so, the claim should be dismissed.

## XV. NO INTENTIONAL TORT INDEPENDENT OF BREACH OF CONTRACT

Defendants' special exceptions to Plaintiffs' pleadings generally on the grounds that they have failed to allege a cognizable intentional tort that is independent of their claim for breach of contract. Before tort damages accrue from a contractual matter, liability must arise independent of the fact that a contract exists between the parties. Plaintiffs' petition fails to identify any independent tort. Defendants request that the Court make an order sustaining this special exception, requiring that Plaintiffs amend their petition to plead sufficient facts and legal basis of



their intentional tort claims by a date certain, and providing that if and to the extent that Plaintiffs fail or refuse to amend, that all of their tort claims be dismissed.

## XVI. FAILURE TO PLEAD ELEMENTS OF NEGLIGENCE DAMAGES (INJURY)

Defendants specially except to Plaintiffs' pleadings generally and specifically as to damages claimed. While Plaintiffs plead, *inter alia*, physical pain and suffering damages, paragraphs 148.6-7, they do not actually plead that any Plaintiff suffered any physical injury, much less a catastrophic one. Moreover, Plaintiffs also seek mental anguish damages, paragraphs 148.8-9; however, Plaintiffs have not pleaded that any mental anguish was a foreseeable result of any intentional, extreme, and outrageous negligent conduct, and again, fail to plead that any plaintiff actually suffered a physical injury necessary to sustain an award for these types of requested damages. Moreover, Plaintiffs plead for lost wages and wage-earning capacity, paragraphs 148.10-13, but fail to plead facts to support that any physical injury was sustained or caused by any defendant that prevented or limited Plaintiffs from performing their job duties. Despite not pleading any physical injury, much less a serious injury that led to a long-term or permanent disability, Plaintiffs also claim loss of enjoyment of life damages, paragraphs 148.14-15. Plaintiffs' petition contains only general statements of damages without specifying actual losses, economic or non-economic, or the factual basis for those claims. Plaintiffs also do not differentiate between damages allegedly arising from breach of contract and those allegedly arising from tort claims. Texas law recognizes distinct limitations and measures of recovery for contract and tort claims. Plaintiff's failure to distinguish between these damages leaves Defendants unable to ascertain which damages are claimed under which legal theory, or to respond appropriately. Accordingly, Defendants request that the Court sustain this special exception and require Plaintiffs to amend their pleading to identify the factual basis for their damages requests. If Plaintiffs are unable to do



26

so, the damage requests should be stricken from the petition. Plaintiffs allege that they have collectively suffered global damages as a result of Defendants' breach of contract and tort actions (**Exhibit B** at 18-19), but fail to specifically plead:

- The nature and amount of damages claimed;
- How the damages were caused by Defendant's alleged conduct; and
- Any supporting factual allegations linking Defendant's conduct to the claimed damages.

Defendants request that the Court make an order sustaining this special exception, requiring that Plaintiffs amend their petition to plead sufficient facts and legal basis of damages by a date certain, and providing that if and to the extent that Plaintiffs fail or refuse to amend, that all of their damage claims be dismissed.

## GENERAL DENIAL

Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies every allegation contained in Plaintiffs' petition and demands strict proof thereof as required by the Constitution and laws of the State of Texas.

By way of further answer, Defendants hereby give actual notice to Plaintiffs that all documents produced by Plaintiffs during discovery may be used against Plaintiffs at any pre-trial proceeding and/or trial of this matter without the necessity of authenticating the document. This notice is given according to Rule 193.7 of the Texas Rules of Civil Procedure.

## AFFIRMATIVE DEFENSES

Without waiving the foregoing general denial, Defendants assert the following affirmative and other defenses:

1. **Jury Waiver:** The parties expressly and mutually agreed, as reflected in the executed contract, to waive their right to a trial by jury. Pet. at 27.



2.    **Statutory Immunity:** Austin Montessori School ("AMS") is a private, nonprofit educational organization entitled to protection under both Texas statutory and common law. As a qualifying charitable organization under the Texas Charitable Immunity and Liability Act, TEX. CIV. PRAC. & REM. CODE, Ch. 84, AMS and its employees are immune from liability for acts of ordinary negligence committed in good faith and within the scope of their duties. *See id.* §§ 84.004(a), 84.005. Likewise, under TEX. BUS. ORGS. CODE § 22.221, AMS's directors, officers, and members of its governing body, including its Head of School and other administrators, are not personally liable for acts or omissions undertaken in good faith and with ordinary care on behalf of the organization.

3.    **Common-Law Bar Against Individual Liability:** Under Texas common law, officers, directors, and employees are not personally liable for acts undertaken in a representative capacity on behalf of their employer, so long as those acts are performed in good faith and within the scope of their duties. *Maxey v. Citizens Nat'l Bank*, 507 S.W.2d 722, 725–26 (Tex. 1974). All conduct alleged in Plaintiffs' petition was performed by defendants Baker and Gonzalez in the course of their employment for AMS and therefore cannot give rise to individual liability.

4.    **Intra-Corporate Conspiracy Doctrine:** Plaintiffs allege that AMS and its employees conspired together. Under the **intra-corporate conspiracy doctrine**, a corporation and its agents constitute a single legal entity and cannot conspire with themselves. Because all actions attributed to Baker and Gonzalez were performed within the scope of their duties for AMS, no actionable conspiracy exists under Texas law.

5.    **Respondeat Superior Limitation:** Even assuming, *arguendo*, that any AMS employee engaged in wrongful conduct, which Defendants expressly deny, AMS cannot be held vicariously liable for actions undertaken outside the course and scope of employment or for purely



personal reasons. Here, Plaintiffs have affirmatively alleged that Defendants Baker and Gonzalez acted at all times within the scope of their employment. Further, they have not pleaded, nor could they plausibly allege, that any purported act was motivated by personal interests or undertaken for any purpose other than furthering AMS's educational mission.

6.      **Good Faith and Absence of Malice:** At all times relevant, Defendants acted in good faith, exercised ordinary care, and acted in the best interests of AMS and its students. Plaintiffs have alleged no facts demonstrating malice, bad faith, or conscious indifference. Accordingly, all claims seeking personal or organizational liability fail as a matter of law.

7.      **Waiver of ADA and Section 504 Claim:** Plaintiffs have waived any right to seek judicial relief under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq., by dismissing these claims in federal court to avoid federal jurisdiction.

8.      **No Claim for "Practice of Medicine" (Statutory Exclusion):** Under TEX. OCC. CODE § 151.002(a)(13), the "practice of medicine" is narrowly defined as diagnosing, treating, or offering to treat a physical or mental condition. Defendants did not diagnose, prescribe, or treat any condition, nor did they represent themselves as qualified to do so. Participation in educational, administrative, or supportive activities does not constitute the "practice of medicine" under Texas law.

9.      **Lack of Standing – Unauthorized Practice of Medicine:** Plaintiffs lack standing to assert claims premised on the alleged unauthorized practice of medicine. The Texas Occupations Code vests exclusive investigative and enforcement authority over such matters in the Texas Medical Board. *See* TEX. OCC. CODE §§ 155.001, 165.151 et seq. Texas courts have consistently held that no private right of action exists for alleged violations of these provisions.



10.    **Failure to State a Claim for Fraud or Fraudulent Inducement:** Plaintiffs' fraud-based claims fail to state a claim upon which relief may be granted. Plaintiffs have not alleged, with the requisite specificity, the elements of fraud, including a material misrepresentation, falsity, intent, justifiable reliance, and resulting damages, as required by Texas law.

11.    **No Independent Cause of Action for Negligent Training or Supervision and Failure to State a Claim:** Texas does not recognize negligent training or supervision as a standalone cause of action, absent an underlying actionable tort by an employee. Because Plaintiffs have not alleged or cannot prove such an underlying tort, their negligent training and supervision claims fail as a matter of law. Alternatively, Plaintiffs failed to state a claim by failing to allege that Plaintiffs must allege that AMS, or any Defendants, knew or should have known that caregivers were inadequately trained in state-mandated childcare standards, and Plaintiffs must specify how this lack of training created a foreseeable and unreasonable risk of harm. To state a claim, Plaintiffs must also plead facts to demonstrate that proper training in those standards would have prevented the alleged injuries, as required by Texas law.

12.    **No Breach of Contract:** Defendants fully performed all contractual obligations. Any alleged damages or dissatisfaction asserted by Plaintiffs stem from their own actions, assumptions, or misinterpretations, and not from any failure or breach by Defendants.

13.    **Failure to State a Claim for Breach of Contract:** Even assuming arguendo that a valid contract existed, Plaintiffs have failed to plead facts sufficient to establish a breach because:

    a.    They have not identified any specific contractual provision allegedly breached;

    b.    They have not pleaded or demonstrated actual damages proximately caused by Defendants, and they have failed to establish causation between any alleged breach and their purported harm.



14.    **Accord and Satisfaction:** The parties agreed to accept an alternate performance in satisfaction of the alleged contractual obligation.

15.    **Waiver and Estoppel:** Plaintiffs have waived, or are estopped from asserting, certain claims due to their own conduct, representations, or omissions.

16.    **Frustration of Purpose:** The principal purpose of the contract, if any, was substantially frustrated by circumstances beyond Defendants' control and not caused by Defendants' actions.

17.    **Economic Loss Rule:** Plaintiffs' tort claims are barred, in whole or in part, by the economic loss rule. Under Texas law, a party may not recover in tort for purely economic losses arising from contractual duties. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). Plaintiffs' alleged damages are economic and arise solely from contractual obligations; thus, their tort-based claims are barred.

18.    **Parol Evidence Rule:** The written contract constitutes the parties' complete and final agreement. Any alleged oral or contemporaneous representations or agreements are inadmissible to vary or contradict the written terms.

19.    **Comparative Negligence:** Plaintiffs' claims are barred, in whole or in part, by the doctrine of comparative negligence. *See* TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq*. Any damages or injuries alleged by Plaintiffs were proximately caused or contributed to by Plaintiffs' own acts, omissions, negligence, or failure to exercise ordinary care. To the extent Plaintiffs' percentage of responsibility equals or exceeds fifty percent, recovery is barred as a matter of law. In the alternative, any recovery by Plaintiffs must be reduced in proportion to their own percentage of fault or negligence.



20.     **Damages – Contract Claims:** To the extent Plaintiffs seek damages for breach of contract, their recovery is limited to direct economic damages representing the benefit of the bargain. Non-economic damages such as mental anguish, pain and suffering, or loss of enjoyment are not recoverable in contract. *See Reed*, 711 S.W.2d at 618–19.

21.     **Treble Damages Unavailable:** Plaintiffs' request for treble damages is improper as a matter of law. Treble damages are authorized only under limited statutory schemes, which are not present here. Plaintiffs have not pleaded any claim under any statute permitting treble damages.

22.     **Medical Expenses – Paid or Incurred Rule:** Any claim for medical expenses is limited to the amounts actually paid or incurred on behalf of Plaintiffs, as required by TEX. CIV. PRAC. & REM. CODE § 41.0105.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants request the Court sustain Defendants' Special Exceptions and require Plaintiffs to amend their petition to specifically plead the deficiencies identified herein; strike or dismiss any claims that remain deficient after amendment; order that Plaintiffs take nothing by this suit; that Plaintiffs' claims be dismissed with prejudice, and that Defendants recover their attorneys' fees and costs under Texas Civil Practice and Remedies Code 38.001, together with such other and further relief to which they may be justly entitled.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER &
ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Elizabeth Angelone*
CHRISTOPHER SCHULZ
State Bar No. 24060576
Email: cshulz@slh-law.com
ELIZABETH ANGELONE
State Bar No. 24077349
Email: eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, the foregoing was e-filed with the Clerk of the

Court and a copy will be sent via e-service to the attorney of record for Plaintiffs, namely:

Amy C. Welborn
**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

*/s/ Elizabeth Angelone*

33



**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| *Plaintiffs,* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| *Defendants.* | § | 345TH DISTRICT COURT |

## AFFIDAVIT OF ELIZABETH ANGELONE

**STATE OF TEXAS**
**COUNTY OF TRAVIS**

Before me, the undersigned authority, on this day personally appeared, by means of an interactive two-way audio and video communication, ELIZABETH ANGELONE, who is personally known to me. After I administered an oath, the affiant stated as follows:

1.  "My name is Elizabeth Angelone. I am over the age of eighteen (18) years and fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are true and correct to the best of my knowledge and belief.

2.  I am a licensed attorney eligible to practice law in the State of Texas, and am one of the attorneys at Schulman, Lopez, Hoffer & Adelstein, LLP, responsible for the file and documents contained therein concerning the above-styled and numbered proceeding.

3.  The documents attached to Defendants' First Amended Special Exceptions, Original Answer, and Affirmative Defenses as **Exhibit A** (Notice of Removal to Federal Court), **Exhibit B** (Plaintiffs' Amended



Complaint filed in Federal Court), and **Exhibit C** (Report and Recommendation of the United States Magistrate Judge) are true and correct copies of the original documents filed in federal court in connection with this case.

Further affiant sayeth not."

*Elizabeth Angelone*

_____

ELIZABETH ANGELONE

SUBSCRIBED AND SWORN TO before me by ELIZABETH ANGELONE on November 4, 2025. This notarial act was an online notarization.



TAYLOR RAE NORMAN
Notary Public, State of Texas
ID# 132206548
My Commission Expires
October 10, 2027

*Taylor Rae Norman*

_____

Notary Public, State of Texas

2



# EXHIBIT A



# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISON

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS, *Plaintiffs,* <br><br> v. <br><br> AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY, *Defendants.* | § § § § § § § § § § § | CIVIL ACTION NO. 1:25-cv-00615 |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, individually, and Jinny Gonzalez, individually (collectively "Defendants") hereby give notice of the removal of this action from the 345th Judicial District Court of Travis County, Texas to the United States District Court for the Western District of Texas, Austin Division. In support of the Notice of Removal, Defendants allege as follows:

## I.    NATURE OF THE SUIT

Austin Montessori School ("AMS") is a private, non-profit 501(c)(3) organization that provides a Montessori education to children and adolescents aged 16 months to 15 years. For the 2024-2025 school year, Plaintiffs Ross and Sarah Ponder entered into an Enrollment Agreement ("Agreement") with AMS, under which the Ponders enrolled their children, H.P., L.P., and R.P. **Exhibit 1, pp. 38-41**. Plaintiffs assert that shortly after the children's enrollment, on December 3, 2024, H.P. was formally diagnosed with ADHD. **Exhibit 1, p. 17**. Plaintiffs assert eleven (12) causes of action against Defendants, including claims for negligence, breach of contract, fraud, civil conspiracy, and violations of the Americans with Disabilities Act and Section 504 of the

Rehabilitation Act. *Id.*, **pp. 22-32**.

## II.    REMOVAL IS TIMELY

This action is currently pending in the 345th District Court of Travis County, Texas, under the case style *Ross Ponder and Sarah Ponder, Individually and as Next Friends of H.P., L.P., and R.P., Minors v. Austin Montessori School, Inc., Ronald Grae Baker, Individually, and Jinny Gonzalez, Individually*, Cause No. D-1-GN-25-002212 (the "State Action"). The plaintiffs initiated the State Action on March 28, 2025, and on April 1, 2025, the defendants, through counsel, accepted service of the citation and petition. **Exhibit 2**. Accordingly, this Notice is timely filed pursuant to 28 U.S.C. § 1446(b).

## III.   THE COURT HAS ORIGINAL JURISDICTION OVER ONE OR MORE OF PLAINTIFFS' CLAIMS

Plaintiffs assert claims of violations of Title III of the Americans with Disabilities Act ("ADA") under 42 U.S.C. §§ 12182(a), 12182(b)(2)(A), 12182(b)(1)(A)(i), and 12181(7)(j) (Count 6). **Exhibit 1, p. 26**. Plaintiffs also assert claims under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), alleging failure to accommodate as well as disability-based discrimination and retaliation (Counts 7 and 12). *See* **Exhibit 1, pp. 27-32** (Pl.'s Orig. Pet. pp. 21-26); 29 U.S.C. § 794. Since this case involves federal questions, the Court has original jurisdiction over the Plaintiffs' ADA and Section 504 claims pursuant to 28 U.S.C. § 1331, as these claims constitute a civil action arising under the U.S. Constitution, federal laws, or treaties. Therefore, removal is proper.

## IV.   THE COURT HAS SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

The Court has supplemental jurisdiction over Plaintiffs' state law claims. In any civil action of which the federal district courts have original jurisdiction, the federal district courts shall have supplemental jurisdiction over all other claims that are related to claims in the action

within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). All of the Plaintiffs' claims relate to their relationship with Defendants, and all claims or causes of action comprise the same case or controversy between the parties. *See* **Exhibit 1**. Because all of the Plaintiffs' claims are interrelated, the Court has supplemental jurisdiction over Plaintiffs' claims that arise under state law. *See* 28 U.S.C. § 1367(a). Consequently, removal is proper under 28 U.S.C. § 1441(a), and the Court may exercise supplemental or pendent jurisdiction over any related state law claims.

## V.    THIS NOTICE IS PROCEDURALLY CORRECT

Defendants submit as exhibits to this Notice true and correct copies of the documents required by 28 U.S.C. § 1446(a), including the State Action Docket Sheet, Original Petition, Citations, and related documents, which are attached hereto and incorporated as **Exhibit 1**. Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be provided to all parties and the Clerk of the 345th Judicial District Court of Travis County, Texas. The required filing fee for this removal has been paid.

## VI.    JURY DEMAND

Plaintiffs requested a jury trial in the State Action.

## VII.    NON-WAIVER OF DEFENSES

By removing this case to federal court, Defendants do not waive any available defenses, including any defenses under Federal Rule of Civil Procedure 12, nor do Defendants admit any allegation asserted in Plaintiffs' Petition filed in the State Action.

WHEREFORE, Defendants remove this action from the 345th Judicial District Court of Travis County, Texas, to the United States District Court for the Western District of Texas, Austin Division so that this Court may assume jurisdiction over the case as provided by law.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER &
ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Christopher Schulz*
CHRISTOPHER SCHULZ
State Bar No. 24060576
Email: cshulz@slh-law.com
ELIZABETH ANGELONE
State Bar No. 24077349
Email: eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2025, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the attorney

of record for Plaintiffs, namely:

Amy C. Welborn
WELBORN LAW LLC
8712 Mesa Suite B206
Austin, Teas 78759
Email: amy@welborn-law.com

*/s/ Christopher Schulz*
Attorney for Defendants



# EXHIBIT B



# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
|     Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:25-cv-00615 ADA-SH |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
|     Defendants. | § | |

## PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually and as Next Friend of H.P., L.P. and R.P., minors ("Ponders" or "Plaintiff"), file their First Amended Complaint against Defendant Austin Montessori School, Inc.("AMS"), Grae Baker ("Baker"), and Jinny Gonzalez ("Gonzalez") (collectively "Defendants") and show the Court as follows:

### I. PARTIES

1.    Plaintiffs Ross and Sarah Ponder are the parents of Plaintiff H.P., L.P., and R.P., minors. Plaintiffs reside in Travis County, Texas.

2.    Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place of business at 5006 Sunset Trail, Austin, Texas 78745. Defendant AMS has previously answered and accepted service.

3.    Defendant Ronald Grae Baker is an individual that resides at 10521 Redmond Road, Austin, Texas 78739. Defendant Baker has previously answered and accepted service.

4.    Defendant Jinny Gonzalez is an individual that resides at 2907 Pops Way, Austin, Texas 78745. Defendant Gonzalez has previously answered and accepted service.



**II. JURISDICTION**

5.      Subject matter jurisdiction is improper in Federal Court because all the claims are based in Texas law and no Federal claims exist. Jurisdiction is proper in Travis County District Court.

**III. SUMMARY**

6.      The Ponders fully embraced Montessori practices and were excited to have enrolled their children at AMS. Unfortunately, after enrolling the children, the Ponders learned that AMS does not follow many of the practices of Dr. Maria Montessori and her traditional method, instead using their own practices, which were very harmful to the Ponder children.

7.      Montessori guides are trained to "follow the child" by emphasizing self-directed learning and movement within a prepared environment. Montessori education principles involve the use of collaboration with the parents to create a support plan to best support each child. Montessori education emphasizes discipline through positive guidance and self-regulation, rather than punishment.

8.      At critical points, Defendants did not collaborate with the Ponders and intentionally prevented information from being shared with parents. Defendants utilized questionable and inappropriate punishments.

9.      Defendants also did not disclose that they adopted their own form of quack medicine used to diagnose and treat their students, in violation of state laws and in opposition of standard medical practices.

10.     AMS fraudulently induced the Ponders into contracts. When the Ponders questioned the practices of AMS, the children were expelled.

11.     Further, AMS allowed and supported Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license, allowing her to make diagnoses of children, knowing she

2



had no medical training. Gonzalez "diagnosed" and treated H.P. for "an underdeveloped will." Her prescribed 'treatment plan' included: controlling family medical routines, isolation therapy, dictating parent-child communication, rigid behavioral modification schedules, and specific therapeutic interventions.

12.     To prevent exposure of AMS's quack medical and other practices, AMS refused to provide important information to the parents of the children attending AMS and prevented meaningful parent communication with staff, including information regarding incidents and specifics of the medical treatment. AMS failed to allow the Ponders access to medical, school and treatment records in violation of state law.

13.     The Ponders were repeatedly called to pick up H.P. and/or R.P. without notice and frequently without detailed information regarding an alleged incident.

14.     Upon questioning AMS's quack medicine and lack of communication and bringing these issues to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling the Ponder children.

## IV. FACTS

15.     The Ponders first enrolled at AMS in August of 2023. The Ponder children had previously thrived in another Montessori environment. The Ponders believed AMS would provide a nurturing supportive environment for their children in keeping with Dr. Montessori's teachings.

16.     The Ponders' enrollment contracts were for an 8 am-3:15 school day (full-time) for all of their children. During the 2023-2024 school year, H.P. and L.P. attended AMS at a cost of $40,555. During the 2024-2025 school year, R.P., H.P., and L.P. attended AMS at a cost of $57,973.50. Attached as Exhibit 1 is a redacted (public version) of a contract for H.P.

17.     The Ponders were required to remain under contract when two children's hours were



reduced. The reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant, causing financial burden.

18.    H.P.'s first day at AMS was August 17, 2023. AMS noted that there were no issues when H.P. napped. On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time. A meeting was immediately held the same day to address the matter.

19.    On Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day. The Ponders were told this was a transition period to allow H.P. to get used to AMS. The Ponders were given no alternatives. The Ponders specifically chose AMS because it allowed for full day coverage for all their children.

20.    AMS did not offer to let the Ponders out of their contract. The Ponders were strapped into a contract for full-time care but were receiving two to three hours of care.

21.    On Friday, September 8, 2023, Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation." The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred on September 11, 2023, meaning the Ponders had to arrange childcare for H.P. so that they could attend the meeting.

22.    At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative." Ms. Gonzalez diagnosed H.P. with "undeveloped will" and provided her medical treatment plan. The medical treatment plan required that the Ponders follow a specific routine, recommending that they "modify the time each family member goes to bed and wakes up." The treatment plan instituted rules for speaking to H.P. The treatment plan forbade the Ponders from walking to school and required that H.P. arrive by car at exactly 8 am daily.

4



23.    Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until 10 am, until the next treatment meeting in two weeks. During this two-week period, Gonzalez and AMS would treat H.P.'s condition and Gonzalez would determine if H.P. made medical progress in his treatment that would allow H.P. to attend until noon, not the contracted 3:15 pm. They required that the school counselor Leslie Grove observe H.P. Gonzalez stated that the treatment plan would "break the habit" of H.P. being in distress. Gonzalez also demanded that the Ponders always keep their phones on to accommodate immediate pickups when AMS required it.

24.    On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders. This was scheduled for September 27, 2023.

25.    On September 15, 2023, the Ponders requested an update on H.P. and asked if he could gradually leave a little later. Gonzalez informed the Ponders that this would not be an option.

26.    Another meeting was scheduled on Thursday, September 21, 2023 to discuss the progress of H.P.'s medical treatment. However, on September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to cancel the meeting due to being very busy. They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

27.    On October 2, 2023, Lesley Williams, H.P.'s teacher, informed the Ponders that H.P. had been improving and had "the best day at school so far." There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

28.    Gonzalez's treatment included hiring an occupational therapist to work with H.P. At the

5



recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an occupational therapist. Further, she recommended unnecessary therapy, such as vision therapy. This caused a delay in getting H.P. an OT evaluation.

29.    On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m. Again, the contractual terms and payments were for full day coverage, not a two- or three-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

30.    On January 23, 2024, AMS informed the Ponders that they were "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time.

31.    On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. AMS denied a request to allow H.P. to stay when Ross had to leave town before his brother's life support was pulled and was unable to pick him up at 11:45 am.

32.    H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024. At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended day, as they had contracted for full-time school. The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

33.    On July 2, 2024, immediately upon her return from vacation, Ms. Williams, H.P.'s teacher,

6



communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.

34.     By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes. While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early. Additionally, AMS began requiring that R.P. to also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

35.     The teachers/Guides were clearly working without enough support and even disclosed their stresses and personal medical information regarding hormonal changes to the children through discussions highly abnormal and inappropriate to have with young students.

36.     While Montessori teachings allow students to be given guidance and redirection, they do not punish. However, AMS allowed the stressed teachers to punish children and classes. Access to water bottles were restricted to an entire class as a punishment and students were encouraged to go into the bathroom often without the lights on, as a normalized way of isolating children from the classroom for being "too loud."

37.     On September 11, 2024, the Ponders notified the school that the family's beloved dog was actively dying of cancer and would likely die in the next 1-3 days.

38.     On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns.

39.     On September 12, 2024, an AMS administrator called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early because she was not sleeping in Casita, something that had not previously been disclosed and was not a problem before or after R.P.'s time at AMS The Ponders were dealing with a different emergency in their home—the death



of their terminally ill German shepherd and desire to remove the animal's body prior to the children returning home. AMS was unwilling to provide any concession regarding their demand to pick up regardless of what the family was managing at the home that day.

40.    On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS.

41.    On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her medical treatment plan for December 5, 2024. The Ponders informed AMS that H.P. would be going to the doctor to determine if he had ADHD, which directly conflicted with Ms. Gonzalez's treatment plan and diagnosis.

42.    On December 3, 2024, H.P. was formally diagnosed with ADHD. The Ponders provided the diagnosis and medical documentation to AMS immediately.

43.    On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think that AMS was the right school for H.P. Ms. Gonzalez stated that she did not believe in diagnosing or medicating a child for ADHD and did not approve of the treatment plan from H.P.'s actual physician. In fact, with the support of AMS, Gonzalez specifically discussed her own medical plan, stating the need to override the diagnosis of an actual doctor. AMS shortened H.P.'s days to half days.

44.    On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects. The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication, which they had found effective at home.

45.    On December 16, 2024, the Ponders met with Baker and School Advisor, Jeff Schneider. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates about how H.P. was performing in school, including the response



to medication.

46.     However, from December 16, 2024, to January 27, 2025, AMS refused to provide feedback.  The Ponders made repeated requests to meet to discuss H.P. and requested that Gonzalez be taken off the team, due to her alternative medical diagnosis and treatment and disregard of H.P.'s licensed pediatrician and faculty member at Dell Medical School.

47.     On January 17, 2025, Baker sent correspondence stating that AMS would not be offering an enrollment contract for the following year to H.P.  Mr. Baker also chastised the Ponders for requesting that Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine, dismissing the parent and pediatrician input and advice.

48.     On January 24, 2025, the Ponders met with Mr. Baker and Mr. Schneider. The Ponders highlighted communication issues, the lack of communications with parents and the systematic barriers that prevented parents from being informed of concerns regarding their children, noting many parents shared these concerns.  Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

49.     On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services based on their experiences and after reviewing AMS's most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS. The fact that this complaint was filed was made known to AMS on January 25, 2025.

50.     On January 28, 2025, Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including following the medical treatment plan created by Gonzalez.

9



51.    The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make changes intended to help all students gain community support and raise concerns. The WhatsApp group was a private, optional, parent-run platform that was not associated with the school administration and with a minor fraction of the school's parents actively participating. The school had no right to limit speech in this forum or have an opinion about a forum not inclusive of the school or faculty. This would be akin to the school trying to limit conversations between parents in a home, church or any other off property location.

52.    On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. would be placed in a standard classroom with minor accommodations and did not need a special education classroom, occupational, speech, or vision therapy. The results were immediately distributed to AMS and the Ponders requested a meeting.

53.    On January 30, 2025, Baker sent a letter to all parents, guardians, and staff at AMS stating that the information provided by the Ponders was "misleading" and that "false claims" were made. The statements made were derogatory and caused the Ponders financial harm. The decision to expel all three children was made on or before the same day.

54.    A coffee was held at 8:30 AM on January 31, 2025, at the Ponders' home to further discuss systematic communication issues affecting many students at AMS. At 5:45 PM on January 31, 2025, AMS terminated the enrollment of all three children. It was stated by AMS that the terminations occurred because the Ponder parents' "actions were detrimental to the school." Clearly the actions referred to are the filing of the HHS complaint and reaching out to other parents to discuss the communication concerns. The termination of the Ponder children was retaliation.

55.    The impact on the family has been extreme. While attending the school, the quack



medicine diagnosis and treatment plan instituted by Gonzalez caused H.P. harm.

56.     H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS. The level of torture he experienced was not understood until he was placed in a new school, where he is thriving. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

57.     The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family. The Ponders' entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to follow their chosen morning routine.

58.     Further, the Ponders were forced to spend thousands of dollars on treatments that Gonzalez prescribed to treat her diagnosis of H.P. with "underdeveloped will." These treatments were not necessary or beneficial to treat H.P.

59.     Due to the change in hours, the Ponders ability to work full-time was severely impacted, clearly impacting their earning abilities.

60.     Sarah Ponder's career was damaged by the actions of Defendants. Some of her clients received the letter, causing at least one to terminate the relationship.

61.     The expulsion and the entire AMS experience caused extreme mental anguish for the entire family. The Ponder children have faced severe emotional distress in having to change schools. They were not able to be immediately placed in school, causing educational disruption.

## V. CAUSES OF ACTION

### A. Count 1- Negligence

62.     Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

63.     The occurrences made the basis of this suit, and the resulting injuries and damages of the



Plaintiffs were proximately caused by the negligent conduct of the Defendants.  Defendants were negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

      a. Failing to exercise the care necessary under the circumstances;

      b. Failing to do what a reasonable daycare would have done under the circumstances;

      c. Failing to intervene to ensure a child's safety;

      d. Failing to provide proper supervision;

      e. Failing to properly hire, qualify, train and supervise its employees;

      f. Failing to provide reasonable accommodations; and

      g.  Failing to adhere to the Texas Minimum standards for childcare.

64.      Defendants had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

65.      Defendants had a duty to maintain a safe environment for children in its care.

66.      Defendants had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

67.      Defendants breached the duty of care by failing to care for the children, failing to supervise the children, failing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

68.      Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B. Count 2- Negligence Per Se**

69.      Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.



70.     Defendants failed to exercise the mandatory standard of care in violation of the minimum standards for childcare.

71.     Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Refusal to provide water and putting children in dark bathrooms is not appropriate punishment.

72.     AMS failed to encourage the Ponder children to express feelings and failed to give appropriate attention. 26TAC 746.2601 When H.P. was upset or speaking loudly he was sent to a bathroom, sometimes without lights on.

73.     AMS failed to comply with the regulations regarding nap times and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321. H.P. and R.P. were forced to nap for more than an hour.   H.P. was not allowed to have unhurried meals.

74.   Under Tex. Occ. Code §§ 151.002(13), 165.152, any person who diagnoses or treats a physical or mental condition without a license commits a statutory violation. By diagnosing H.P. to have an "underdeveloped will," prescribing a treatment plan, monitoring the child's response, and usurping a licensed physician's authority, Gonzalez engaged in the unlicensed practice of medicine. Plaintiffs are in the class the statute protects (patients and parents), and the statutory breach proximately caused their injuries.

75.     AMS and Baker aided and abetted this unlawful medical practice by providing institutional support, refusing to curtail Gonzalez's medical interventions, and explicitly defending her unauthorized medical decision-making authority over licensed medical professionals.  Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

76.     Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.



77.     As a result of the Defendants' illegal acts and/or omissions in violating the statues Plaintiffs sustained injuries.

**C. Count 3- Gross Negligence**

78.     Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

79.     Defendants' conduct was more than momentarily thoughtlessness or inadvertence. Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

80.     Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs. Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiffs and/or other similarly situated individuals. Plaintiffs suffered damages and further seek punitive damages.

**D. Count 4- Negligent Activity**

82.     Plaintiffs incorporate the above paragraphs by reference as if stated fully herein.

83.     Defendant AMS is the owner, operator and possessor of the daycare premises.

84.     Plaintiffs H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owed a duty to exercise reasonable care.

85.     Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

86.     Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

**E. Count 5- *Respondeat Superior***



87.     Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

88.     The negligence, carelessness, and callousness of Defendant AMS's employees proximately caused the damage and loss suffered by Plaintiffs.    At all times material to this action, Defendant AMS's employees were acting in the course and scope of their employment.  Accordingly, Defendants may be held responsible for its employees' negligence under the doctrine of *respondeat superior.*

## F. Count 8-Breach of Contract

89.     Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

90.     Plaintiffs had entered a valid contract for the provision of childcare services for their three minor children.  There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

91.     Plaintiffs tendered performance according to the terms of the contract.

92.     Defendant AMS breached its duties and obligations under the contract, both explicit and implicit, pertaining to providing appropriate care, custody, and supervision by all acts stated above.

93.     Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential.

94.     Further, Plaintiffs seek to recover their attorney fees under the Texas Civil Practices and Remedies Code.

## G. Count 9- Fraud

95.     Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

96.     Plaintiffs discovered that Defendants had been defrauding them by making promises and commitments to get Plaintiffs' money, knowing the statements were false and that they had no intention of fulfilling.



97.    Defendants made material misrepresentations that were false. Defendants knew these statements were false or they were made recklessly without any knowledge of the truth and as a positive assertion.

98.    Defendants made the statements with the intention that Plaintiffs would act upon it and Plaintiffs acted in reliance of the representations and causing injury, damages, and harm.

99.    Plaintiffs seek treble damages and attorney fees.

**H. Count 10- Fraudulent Inducement to Contract and Breach of Contract**

100.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

101.    The Ponders enrolled all their children at AMS because AMS stated that they followed the Montessori teaching paradigm and that they would offer full-day schooling for the three children, from 8 am to 3 pm. The Ponders relied on these assertions when entering into contracts with AMS. The Ponders were further induced to re-enroll for a second year.

102.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging. These principles were not utilized.

103.    The AMS parent handbook, adopted into the contract, outlines procedures for programmatic changes and communication that were not followed by AMS. The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations, or inform them of incidents at the school.

104.    AMS fraudulently induced the Ponder family to contract for all three children's education. AMS breached its contracts with the Ponders by failing to allow the children to receive full day education, failing to follow the school policies, and failing to follow Montessori



teachings.

105.    As a result of Defendants' fraudulent inducement, Plaintiffs suffered harm, injury and damages.  Further, Plaintiffs seek attorney fees and treble damages.

**I. Count 11- Civil Conspiracy**

106.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

107.    Defendants acted in combination to seek or accomplish a course of action to commit unlawful acts. There was a meeting of the minds of the Defendants to agree to accomplish the above stated unlawful acts.  Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement.  As a result, Plaintiffs suffered harm, injury and damages.

**J.  Count 12- Retaliation**

108.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.

109.    AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine.  Defendants expelled H.P. in retaliation for Plaintiffs' questioning of Gonzales's medical treatment plan and for seeking a true medical diagnosis that was inconsistent with her plan.

110.    Defendants retaliated against the Ponders for the filing of a complaint with the HHS and for discussing concerns in the WhatsApp Parent Group by expelling the Ponder children. As a further act of retaliation, AMS chose to send an email to the entire school email list, including parents, caregivers, faculty and staff, making defamatory statements against the Ponders to all families at AMS.

**VI. DAMAGES**

111.    Plaintiffs incorporate by reference the above paragraphs as if stated fully herein.



112.    Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

1.   Loss of value of the tuition/fees that Plaintiffs paid for the childcare;

2.   Loss of wages for Mr. and/or Ms. Ponder incurred by having to stay home and care for their children when sent home early and later when expelled;

3.   Medical expenses for the reasonable and necessary examination of H.P.;

4.   Medical expenses for the reasonable and necessary therapy for Plaintiffs;

5.   The cost of the inappropriate medical treatment prescribed by Gonzales;

6.   Physical pain and suffering in the past;

7.   Mental anguish in the past;

8.   Mental anguish, in reasonable probability, sustained in the future;

9.   Lost wages in the past;

10. Lost wages, in reasonable probability, sustained in the future;

11. Loss of wage-earning capacity in the past;

12. Loss of wages/earning capacity, in reasonable probability, sustained in the future;

13. Loss of normal enjoyment of the pleasure of life in the past;

14. Loss of normal enjoyment of the pleasure of life, in reasonable probability, sustained in the future;

15. Treble damages;

16. Punitive damages;

17. Pre-judgment and post-judgment interest;

18. Court costs;

19. Reasonable and necessary attorney fees; and



20. Costs of suit.

## VII. CONDITIONS PRECEDENT

113.    All conditions precedent have been performed or occurred, except for mediation which is addressed below.

## VIII. JURY DEMAND

114.    Plaintiffs respectfully demand the right to have a trial by jury and have tendered the jury fee in Travis County District Court.

## IX. PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial Plaintiffs have and recover:

1.    Judgment against Defendants for a sum in excess of the minimum jurisdictional limits of this Court;

2.    Pre-judgment at the highest legal rate;

3.    Reasonable and necessary attorney's fees;

4.    Taxable Court costs;

5.    Post-judgment interest on the above amount at the highest legal rate; and

6.    Such other and further relief to which Plaintiffs may show themselves justly entitled in law or equity.



Respectfully submitted,

**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Teas 78759
Telephone: (512) 825-3390

By: */s/ Amy C. Welborn*
    Amy C. Welborn
    State Bar No. 24012853
    amy@welborn-law.com

**ATTORNEY FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served with a copy of the foregoing document via the Court's CM/ECF system on 11th day of June 2025.

    */s/ Amy C. Welborn*
    Amy C. Welborn

20



REDACTED PUBLIC VERSION

# EXHIBIT 1



H█████ Ponder
Entering 2024 - 2025
Grade    CH Mid Cycle - Early Childhood



**Austin Montessori School**

### AMS Year-Round All School Enrollment Agreement 24–

### Introduction

H█████ Ponder

Entering Year: **2024 - 2025** Date of birth: ████████

This contract ("Contract") is between Austin Montessori School ( "School") and the parent or legal guardian ("Parent," singular or plural, as applicable) of the above-mentioned student ("Student"). Parent must complete and sign this Enrollment Contract and Tuition Schedule by clicking "submit" to the School for processing. Once submitted, a copy is available for your records in the Files & Forms section of your profile.

**Parent Partnership Agreement**

By signing this contract, Parent agrees to the policies and guidelines outlined in the AMS Parent Community Handbook and Partnership Agreement.

**This is a legally binding contract. Read it carefully.**

### Tuition and Fees

Annual tuition is listed under the "Expenses" section below. Parent agrees to pay the tuition specified below according to the terms of this Contract. Parent acknowledges that the tuition changes as the Student's participation in the School program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay the School the increased amounts as specified in the published tuition and fee schedule:
AMS Tuition and Fee Schedule 2024 - 2025.
**New Family Fee**

A family new to Austin Montessori School will be charged a one-time fee of $500. This fee will be added to the Smart Tuition account and is in addition to the tuition and fees listed on the Enrollment Contract.

### Expenses

| | |
|---|---|
| Children's House - Year Round | $20,265.00 |
| **Total Expenses:** | **$20,265.00** |
| **Total Due:** | **$20,265.00** |

### Due at Enrollment

| | |
|---|---|
| Deposit | $300.00 |
| **Total Due at Enrollment:** | **$300.00** |

Please review the descriptions below for the available payment plans, and then choose your desired option in the section below.

Printed    1/17/2024



H███ Ponder
Entering  2024 - 2025
Grade    CH Mid Cycle - Early Childhood



**Austin Montessori School**

**AMS Year-Round All School Enrollment Agreement 24-**


   •One Payment Option: payment of tuition for the Student's program to be paid in one payment on or before
June 3, 2024.
   •Monthly Payment Plan Option for Regular Year Programs: payment of tuition for the Student's program to
be paid in 12 equal payments, with the first payment due on August 3, 2024, and on the 3rd day of each
month thereafter through July 3, 2025. The monthly payment plan option will incur a fee of $27.08/month
($325 total/year)


12 Month Plan
12 Payments

✓


**Terms of Enrollment**

**Austin Montessori School Terms of Enrollment**

Parent understands that all persons responsible for paying any of the amounts due under this Contract must
execute the Contract and that all such persons are jointly and severally liable for the amounts due as set forth
herein. Parent's signature and/or initials on this Contract evidence Parent's understanding and agreement to
the terms of this Contract, as follows:

   1.•**Enrollment**: Student will be enrolled for the 2024-2025 academic year. Parent is aware that a final
determination of grade and classroom placement will be made by the School in accordance with the School's
admissions policies and these decisions are made at the School's discretion. This Contract is valid only for the
academic year stated and does not entitle Student to any future enrollment.
   2.•**Tuition Obligation**: Parent understands that Student is being enrolled for the academic year covered by
this Contract (or remaining portion thereof, in the case of a mid-year enrollment or mid-year move to another
level). Parent acknowledges that the tuition and fees change as the Student's participation in the School
program change (i.e., advance in level). If any change occurs after the school year starts, Parent agrees to pay
the School the increased amounts as specified in the School's published tuition and fee schedule. Parent is
responsible for the full tuition amount through the end of the academic year even if Student is withdrawn from
or ceases to attend the School. Parent further understands that the overhead expenses of the School do not
diminish with the departure of a student during the course of the school year and agrees that it is impossible
for the School to determine at the time of the execution of this Contract the damage and loss to the School that
would occur due to the later cancellation/withdrawal of students who have enrolled. Therefore, once this
Contract has been submitted to the School, Parent becomes liable for the tuition, according to the following
schedule:
      •Through May 1, 2024 – responsible for 25% of annual tuition payment
      •After May 1, 2024 – responsible for 100% of annual tuition payment
   3.•**Termination Procedures**: Parent may terminate this Contract by submitting a WRITTEN termination notice
("Termination Notice") to the Head of School by May 1, 2024 ("Partial Release Date"). The Termination Notice
must (a) be dated, (b) state the Student's name, (c) provide a reason for the termination of the Contract; and
(d) be RECEIVED by the Head of School on or before the Partial Release. If such Termination Notice is received
before the Partial Release Date, Parent will be partially relieved of tuition obligation as provided in Paragraph 2,
above.
   4.•**School/Family Partnership**: A positive and constructive working relationship between the School and
Parent is essential to the fulfillment of the School's educational purpose. Thus, the School reserves the right not
to extend the privilege of enrollment or re-enrollment to Student if the School reasonably concludes that the
actions of Parent make such a positive and constructive relationship impossible or otherwise seriously interfere

Printed    1/17/2024



H███ Ponder
Entering   2024 - 2025
Grade    CH Mid Cycle - Early Childhood



**Austin Montessori School**

### AMS Year-Round All School Enrollment Agreement 24-

with the School's accomplishment of its educational purpose. Moreover, the School reserves the right to dismiss Student at any time if, in the judgment of the Head of the School, conduct of anyone directly associated with Student, including but not limited to Student's Parent, in or out of the School, is not in keeping with the School's accepted standards or principles. There will be no refund of tuition in the case of such dismissal and any unpaid balance is payable in full according to the terms of this Contract. If for any reason, the School administration determines that it is in the best interest of the School, The School also reserves the right to withdraw an offer of enrollment or re-enrollment at any time, and/or to nullify an executed Enrollment Contract, if the School administration determines, in its sole discretion, that doing so is in the best interest of the School.

5.•**Tuition Assistance**: Parent understands that if the Student has applied for or received a tuition assistance award toward the amount of tuition hereunder; the Parent remains primarily responsible for all obligations under this Contract. Upon Parent's acceptance of this contract and the tuition assistance award, Parent agrees to pay the balance due pursuant to the payment plan established by the School.

6.•**Probationary Enrollment for New Students**: All new enrollments are probationary for an eight-week period. If the school is concerned that this enrollment is not in the best interest of the child or the classroom, a conference will be held before the end of the eight-week period with the Head of School, Level Director, Director of Enrollment Management, and parents. Possible outcomes include an agreement to terms of continued, conditional enrollment, or withdrawal of enrollment. The decision to continue or withdraw enrollment is at the sole discretion of the school and is final. The school reserves the right to refund any portion of the tuition based upon the student's withdrawal from the school. Any refund shall be at the sole discretion of the school. In accordance with Austin Montessori School's admissions policy, enrollment beyond the eight-week period lies solely at the discretion of Austin Montessori School.

7.•**Termination of Student's Attendance**: The School has the right to suspend or terminate any Student if (i) in the sole discretion of the School administration, it is determined that the continued attendance of the Student is detrimental to the School community, the Student or to the other students of the School, or (ii) the Parent has failed to pay all or any part of the tuition or fees required under this Contract.

8.•**School Rules**: Student's enrollment at the School is subject to the general statements, rules regulations, conditions, traditions, and financial terms contained in the School's Community Handbook and other published documents, which may be amended from time to time. Parent acknowledges that Parent and Student must abide by such School rules and guidelines.

9.•**Transcripts/Records**: All accounts must be paid in full before records and transcripts can be released or transferred to other schools. Student will not be allowed to continue to attend classes or other programs or activities unless tuition and fees are paid by stated deadlines (or until Parent makes other written arrangements acceptable to the School). The School shall have the right to take such legal action as it may deem appropriate to collect all amounts which are not paid when due. In the event that the School takes legal action to enforce the terms of the Contract, Parent shall be responsible for all costs, including reasonable attorney's fees and costs (whether incurred before, during or after the filing of the lawsuit).

10.•**Delinquent Payments**: Parent understands and agrees that a late charge of $35 will be added for any payment not received within 10 days after the due date ("Late Payment"). Parent understands that at no time does the School intend to contract for, charge, or receive interest in excess of the maximum amount permitted by law and, if it is determined that the School has done so, the School shall credit the excess to any remaining tuition or fees due under the Contract or refund the excess to Parent. In the event that a Parent is more than 90 days in arrears with any tuition or fees due under the Contract, the School reserves the right to accelerate the remaining tuition and fees due under this Contract.

11.•**Release of Student Records**: Parent consents and holds the School harmless for the release of Student's records and information upon request by an education institution or law enforcement agency. Parent also releases and holds the School harmless from any liability stemming from such use, disclosure, or release of Student's records or information.

12.•**Governing Law/Disputes/Waiver of Jury Trial**: This Contract shall be governed under the laws of the State of Texas. In the event of a dispute regarding the terms of this Agreement or Student's enrollment at the School, the parties agree to first try to resolve such dispute informally through non-binding mediation. The costs of mediation shall be equally borne between the parties. In the event of litigation, the venue of any action hereunder shall lie exclusively within the Circuit Court of Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury.

Printed    1/17/2024



H████Ponder
Entering 2024 - 2025
Grade   CH Mid Cycle - Early Childhood

Austin Montessori School



**AMS Year-Round All School Enrollment Agreement 24–**

13.•**Understanding of Terms**: Please read this Contract carefully. By signing below, Parent acknowledges that Parent understands the terms of this Contract, Parent's obligation to pay the full year's tuition even if the Student is withdrawn or dismissed, the Parent's option to terminate, and all other obligations set forth herein. If Parent has questions about the terms, Parent is encouraged to seek the advice of counsel or to seek clarification from the Director of Admission.

14.•**Force Majeure**: The School's duties and obligation under this Contract shall be suspended immediately without notice during all periods that the School is closed because of force majeure events including, but not limited to, any fire, act of God, hurricane, war, governmental action, an act of terrorism, epidemic, pandemic, strike, civil unrest, or any other event beyond the School's control. If such an event occurs, the School's duties and obligations in this Contract will be postponed until such time as the School, in the sole discretion of the School administration, may safely reopen. In the event that the School cannot reopen due to an event under this clause, the School is under no obligation to refund any portion of the tuition paid.

*Austin Montessori School does not discriminate on the basis of race, ethnicity, national origin, ancestry, gender, gender identity or expression, sexual orientation, age, or disability in the administration of its hiring, admissions policies, tuition assistance program, or other school-administered programs.*

To ensure a place for the Student, this Contract must be executed and submitted to the School, along with the $300 registration fee.

Ross Ponder

| | |
|---|---|
| Signature | Date |

Sarah Ponder

| | |
|---|---|
| Sarah Ponder | 1/17/2024 |
| Signature | Date |

Accepted by Austin Montessori School, Inc. a Texas non-profit corporation

# Grae Baker

**Name:** Grae Baker
**Title:** Head of School

**School Signature**

Grae Baker

Printed    1/17/2024



# EXHIBIT C



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | |
| *Individually, and as Next Friend of* LY, | § | |
| AND AS NEXT FRIEND H.P., L.P., and | § | |
| R.P., *Minors*, | § | |
| Plaintiffs | § | |
| v. | § | No. 1:25-Cv-00615-ADA-SH |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, and | § | |
| JINNY GONZALEZ, | § | |
| Defendants | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE**

Now before the Court is Plaintiffs' Unopposed First Amended Motion to Remand (Dkt. 23),

filed June 11, 2025.[1]

**I.    Background**

After Plaintiffs Ross and Sarah Ponder's children were expelled from the Austin Montessori

School in Austin, Texas, they filed this suit in state court, alleging negligence, negligence *per se*,

gross negligence, *respondeat superior*, breach of contract, fraud, fraudulent inducement, civil

conspiracy, and violations of Title III of the Americans with Disabilities Act ("ADA") and Section

504 of the Rehabilitation Act. *See Ponder v. AMS*, No. D-1-GN-25-002212 (345th Dist. Ct., Travis

County, Tex. March 28, 2025); Plaintiffs' Original Petition, Dkt. 1-3 at 7-33. Defendants removed,

invoking this Court's federal question jurisdiction based on Plaintiffs' federal claims under the

---

[1] The District Court referred this case to this Magistrate Judge for disposition of non-dispositive motions and a report and recommendation on dispositive motions, pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, and the District Court's Standing Order. Dkt. 2.

1

ADA and the Rehabilitation Act, pursuant to 28 U.S.C. §§ 1441(a) and 1446. Dkt. 1. Plaintiffs then filed a First Amended Complaint removing all federal claims (Dkt. 22) and this unopposed motion to remand this action to state court under 28 U.S.C. § 1447.

## II.    Legal Standard

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Congress has granted jurisdiction over two general types of cases: those arising under federal law ("federal question jurisdiction"), and those in which the amount in controversy exceeds $75,000 and there is complete diversity of citizenship among the parties ("diversity jurisdiction"). 28 U.S.C. §§ 1331, 1332(a); *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 437-38 (2019). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

The federal removal statute allows a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Once a defendant removes an action from state to federal court, the plaintiff may move to remand. 28 U.S.C. § 1447(c). A court must remand a case "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction over a case removed from state court." *Int'l Primate Protection League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 87 (1991) (quoting 28 U.S.C. § 1447(c)).

## III.    Analysis

Plaintiffs move to remand this action to state court under 28 U.S.C. § 1447(c) because the amended petition contains only state law claims. Dkt. 23 at 5. Defendants agree that this action should be remanded to state court. *Id.*

> If a complaint filed in state court asserts federal-law claims, the
> defendant may remove the case to federal court. And if the
> complaint also asserts state-law claims arising out of the same facts,
> the federal court may adjudicate those claims too, in the exercise of
> what is called supplemental jurisdiction.

*Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 25 (2025). Because Plaintiffs' Original

Petition asserted both state and federal claims, Defendants properly removed this case to federal

court under 28 U.S.C. § 1441(a), and the Court had subject matter jurisdiction over Plaintiffs'

federal claims and supplemental jurisdiction over Plaintiffs' state claims at that time. *Id.* But after

removal, Plaintiffs removed all federal claims, leaving only claims under state law, so the Court

no longer has subject matter jurisdiction. "When an amendment excises the federal-law claims that

enabled removal, the federal court loses its supplemental jurisdiction over the related state-law

claims," and the case must return to state court. *Id.*

## IV.    Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT**

Plaintiffs' Unopposed First Amended Motion to Remand (Dkt. 23) and **REMAND** this action to

the 345th Judicial District of Travis County, Texas.

## V.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections

must specifically identify those findings or recommendations to which objections are being made.

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v.

United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written

objections to the proposed findings and recommendations contained in this Report within 14 days

after the party is served with a copy of the Report shall bar that party from de novo review by the

District Court of the proposed findings and recommendations in the Report and, except on grounds

of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings

and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*,

474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29

(5th Cir. 1996) (en banc).

    **SIGNED** on July 14, 2025.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

4



## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Taylor Norman on behalf of Elizabeth Angelone
Bar No. 24077349
tnorman@slh-law.com
Envelope ID: 107637112
Filing Code Description: RESPONSE
Filing Description: DEFENDANTS' FIRST AMENDED SPECIAL
EXCEPTIONS, ORIGINAL ANSWER, AND AFFIRMATIVE DEFENSES
Status as of 11/4/2025 1:39 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Taylor Norman | | tnorman@slh-law.com | 11/4/2025 11:24:59 AM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/4/2025 11:24:59 AM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/4/2025 11:24:59 AM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 11:24:59 AM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 11:24:59 AM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 11:24:59 AM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/4/2025 11:24:59 AM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/4/2025 11:24:59 AM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/4/2025 11:24:59 AM | SENT |



11/4/2025 3:05 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| *Plaintiffs,* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| *Defendants.* | § | 345TH DISTRICT COURT |

## <u>NOTICE OF APPEARANCE OF COUNSEL</u>

The undersigned attorney, Randee J. Hobbs, hereby files this Notice of Appearance as counsel for Defendants Austin Montessori School, Inc., Ronald Grae Baker (individually), and Jinny Gonzalez (individually) (collectively, "Defendants"). All notices, filings, and communications from the Court or opposing counsel regarding this matter should be directed to the undersigned.

Additionally, Elizabeth Angelone will continue to serve as lead counsel for Defendants and the attorney primarily responsible for this case.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Randee J. Hobbs*
**ELIZABETH ANGELONE**
State Bar No. 24077349
Email: eanglone@slh-law.com
**RANDEE J. HOBBS**
State Bar No. 24131772
Email: rhobbs@slh-law.com
**CHRISTOPHER SCHULZ**
State Bar No. 24060576
Email: cshulz@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2025, the foregoing was e-filed with the Clerk of the

Court and a copy will be sent via e-service to the attorney of record for Plaintiffs, namely:

Amy C. Welborn
WELBORN LAW LLC
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

*/s/ Randee J. Hobbs*
Attorney for Defendants

2



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Taylor Norman on behalf of Randee Hobbs
Bar No. 24131772
tnorman@slh-law.com
Envelope ID: 107654907
Filing Code Description: Notice
Filing Description: NOTICE OF APPEARANCE OF COUNSEL
Status as of 11/6/2025 1:59 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 11/4/2025 3:05:50 PM | SENT |



11/4/2025 3:05 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| *Plaintiffs,* | § | |
| | § | TRAVIS COUNTY, TEXAS |
| VS. | § | |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| *Defendants.* | § | 345TH DISTRICT COURT |

## <u>NOTICE OF APPEARANCE OF COUNSEL</u>

The undersigned attorney, Randee J. Hobbs, hereby files this Notice of Appearance as counsel for Defendants Austin Montessori School, Inc., Ronald Grae Baker (individually), and Jinny Gonzalez (individually) (collectively, "Defendants"). All notices, filings, and communications from the Court or opposing counsel regarding this matter should be directed to the undersigned.

Additionally, Elizabeth Angelone will continue to serve as lead counsel for Defendants and the attorney primarily responsible for this case.



Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER &
ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Randee J. Hobbs*
**ELIZABETH ANGELONE**
State Bar No. 24077349
Email: eanglone@slh-law.com
**RANDEE J. HOBBS**
State Bar No. 24131772
Email: rhobbs@slh-law.com
**CHRISTOPHER SCHULZ**
State Bar No. 24060576
Email: cshulz@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2025, the foregoing was e-filed with the Clerk of the

Court and a copy will be sent via e-service to the attorney of record for Plaintiffs, namely:

Amy C. Welborn
WELBORN LAW LLC
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

*/s/ Randee J. Hobbs*
Attorney for Defendants

2



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Taylor Norman on behalf of Randee Hobbs
Bar No. 24131772
tnorman@slh-law.com
Envelope ID: 107654907
Filing Code Description: Notice
Filing Description: NOTICE OF APPEARANCE OF COUNSEL
Status as of 11/6/2025 1:59 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/4/2025 3:05:50 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/4/2025 3:05:50 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 11/4/2025 3:05:50 PM | SENT |

I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on Dec. 9 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS



11/10/2025 12:05 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Stephanie Garza

CAUSE NO. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| Defendants. | § | 345TH JUDICIAL DISTRICT |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

COMEN NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually and as Next Friend

of H.P., a minor ("Ponders" or "Plaintiff"), file their Second Amended Complaint against

Defendant Austin Montessori School, Inc.("AMS"), Grae Baker ("Baker"), and Jinny Gonzalez

("Gonzalez") (collectively "Defendants") and show the Court as follows:

### I. DISCOVERY CONTROL PLAN

1.      Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas

Rules of Civil Procedure.

### II. PARTIES

2.      Plaintiffs Ross and Sarah Ponder are the parents of Plaintiff H.P., L.P., and R.P., minors.

Plaintiffs reside in Travis, County, Texas.

3.      Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place

of business at 5006 Sunset Trail, Austin, Texas 78745.  Austin Montessori School, Inc. can be



served through its registered agent, Sandra Bartholome at 5006 Sunset Trail, Austin, Texas 78745. Defendant has previously answered and accepted service.

4.      Defendant Ronald Grae Baker is an individual that resides in and can be served at his principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at his residence at 10521 Redmond Road, Austin, Texas 78739.  Defendant has previously answered and accepted service.

5.      Defendant Jinny Gonzalez is an individual that resides in Travis County and can be served at her principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at her residence at 2907 Pops Way, Austin, Texas 78745.  Defendant has previously answered and accepted service.

## III. JURISDICTION AND VENUE

6.      Subject matter jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.      Venue us proper in Travis County, Texas, under Texas Civil Practice and Remedies Code Sec. 15.002(a) as all or substantially all of the events that give rise to this claim occurred in Travis County.

## IV.  SUMMARY

8.      The Ponders fully embraced Montessori practices and were excited to have enrolled their children at AMS.  Unfortunately, it became evident over time that AMS had adopted their own practices and interpreted Maria Montessori teachings in a way that was meaningfully different from other Montessori schools.  AMS's administrative staff had their own beliefs and practices that were not explained prior to enrolling the Ponder children.  These practices were very harmful to the Ponder children, especially H.P.

2



9.    The Ponders had a history of ADHD in their family and as such wanted to put their children in a Montessori School because studies have shown that an adapted educational environment, such as a Montessori school is beneficial for children who respond differently, have trouble staying focused, or need redirection.

10.    Montessori education emphasizes self-directed learning, movement, and a prepared environment. Montessori education principals involve the use of collaboration with the parents to create a support plan to best support children with unique needs.

11.    Further, Montessori education emphasizes discipline through positive guidance and self-regulation, rather than punishment. There are no rewards or punishments in Montessori education. Instead, the focus is on respectful interactions, encouragements, and redirection.

12.    Only after contracting with AMS, were the Ponders made aware that AMS did not follow the teachings and Montessori methods.

13.    Defendants did not believe in collaboration with the parents to create support plans.  In fact, Defendants intentionally prevented information from being shared with parents regarding the support needs of the students.

14.    Defendants did not follow the no rewards or punishment teachings.  The school had questionable and inappropriate punishments that the Ponder children and many other students were subjected to on a regular basis.

15.    Defendants also did not disclose that they did not follow common Western medical practices adopted in the State of Texas and had adopted their own form of quack medicine used to diagnosis and treat their students.

16.    AMS failed to admit that they did not believe children should be diagnosed with ADHD, and did not believe in the use of medication to treat the diagnosis.

3



17.     Nor did AMS admit that failure to follow their set medical treatment plans and to seek outside medical care or treatment would result in expulsion.   Instead, they fraudulent induced the Ponders into contracts and then failed to follow the basic rules of law in the care and treatment of the Ponder children.

18.     Further, AMS allowed and supported Jinny Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license.  The AMS administration fully supported Jinny Gonzalez and allowed her to make diagnoses of children, knowing she had no medical training. Ms. Gonzalez "diagnosed" H.P. with "an underdeveloped will" in September 2023 and offered to treat H.P.'s disorder.  Based on her diagnosis, Ms. Gonzalez made specific demands of the Ponders as part of her quack medicine treatment.  Her treatment plan was psychologically abusive, harmful, and disruptive.

19.     To prevent exposure of AMS's quack medical and/or manipulative controlling practices and other harmful practices, AMS refused to provide important information to the parents of the children attending AMS.

20.     To hide improper discipline and negligent activity, the parents of AMS students were not given meaningful opportunities to communicate with the staff working with their children.

21.     H.P. was often isolated from his peers and taken out of the classroom with a staff person. At other times he was sent to a bathroom either with a staff person or alone.

22.     The Ponders were provided very minimal information about individuals who were alone with and in charge of H.P.'s supervision.  The Ponders had a right to know if this individual was qualified to be working with their child.  The Ponders had a right to know what this individual was doing with their child when he was isolated and H.P.'s reaction to this treatment method the school had imposed upon H.P.



23.     AMS had created a medical treatment plan and then failed to allow the Ponders to access medical records, school records, and treatment records in violation of state and federal law.

24.     The Ponders were repeatedly called to AMS on short notice to pick up H.P. and/or R.P. without being given any information regarding the alleged incident that had occurred. It was impossible to discern if there were actual issues with H.P. or R.P. or the nature of the alleged concerns because AMS hid the information to the detriment of the entire Ponder family.

25.     Upon questioning AMS's quack medicine practices and controlling and manipulative actions and bringing them to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling all of the Ponder children without notice, including the oldest child, who was in elementary school.

### V. FACTS

26.     The Ponders first enrolled at AMS in August of 2023. The Ponder children had been enrolled in another Montessori school and the children thrived in the Montessori environment. The Ponders live very close to AMS and hoped to enjoy the opportunity to walk to school and feel a close connection to the AMS community.

27.     The Ponders were further drawn to the promise of collaboration and communication in the education of their three children and had hoped to keep all three children enrolled through their middle school education. The Ponders had believed AMS would provide a nurturing supportive environment for their children of all abilities and learning styles in keeping with Maria Montessori's teachings.

28.     The Ponders were told by the AMS administration multiple times from 2022 to 2023 that it was extremely rare to be admitted when children were over 4.5 years old. When the May 2023



fall admission opened, they were told to take it, as it was very unlikely that a spot would be available the following year.

29.    The Ponders enrollment contracts were for an 8 am-3:15 school day (full-time) for all three children.  The AMS administration did state that lunchtime pickup was an option if a child was not a napper, making it seem that a failure to nap would not prevent the student's success at AMS. (However, students were not required to nap after age 4.5.)  While the Ponders were required to remain under contract when two of the three children's school day hours were reduced, the reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant.  This caused great financial burden to the Ponders.

30.    H.P.'s first day at AMS was August 17, 2023.   AMS provided an update and noted that there were no issues when H.P. napped.  It was also noted that H.P. did not like his lunch, which the Ponders had prepared according to AMS's strict school lunch requirements.

31.    On August 20, 2023, H.P. turned four years old.

32.    On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time.  A meeting was immediately held the same day to address the matter.

33.    Regardless, on Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day because he was not napping.  The Ponders were told this was a transition period for AMS to allow H.P. to get used to the new classroom.  The Ponders were not given any alternatives and were told that they had to pick him up at noon.  The Ponders specifically chose to enroll their three children at AMS because it allowed for full day coverage for all their children, allowing them to work demanding full-time jobs.



34.    Throughout the next weeks, the Ponders made numerous attempts to update the school regarding H.P. AMS, in turn, did not provide quality feedback but pushed H.P.'s release time to 10 am, a mere two hours after his arrival time without explanation.

35.    AMS did not offer to compensate the Ponders nor did AMS discuss letting the Ponders out of their contract. The Ponders were left financially strapped into a contract for full-time care but were receiving less than two hours a day to complete their work before they were forced to bring their young son back home.

36.    On Friday, September 8, 2023, Jinny Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation." The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred.

37.    Over the weekend, the meeting was scheduled for September 11, 2023. The meeting would include the Ponders, Jinny Gonzalez and Sveta Paris. None of the classroom staff was invited to attend.

38.    Ms. Gonzalez informed the Ponders that H.P. would not be allowed to attend AMS until September 12, 2023, meaning the Ponders had to arrange childcare for H.P so that they could attend the meeting.

39.    At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative." AMS notified the Ponders that instead of trying to work with H.P. on his behaviors they were "going to control the systems." It was at this meeting and in her follow-up correspondence that Ms. Gonzalez diagnosed H.P. and laid out her treatment plan for H.P.

40.    Ms. Gonzalez's medical treatment plan required that the Ponders follow a consistent routine in the mornings and even recommended that they "modify the time each family member goes to bed and wakes up."



41.    Ms. Gonzalez instituted rules for speaking to H.P., requiring that the Ponders only provide brief and factual information to their son and that they acknowledge his feelings only with humor and lightness.

42.    Ms. Gonzalez forbid the Ponders from walking to school and required that H.P. arrive by car at exactly 8 am daily.  She further demanded that H.P. be seated in the car closest to the entrance and that the Ponders were not allowed to exit the vehicle or help H.P. exit the vehicle.

43.    Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until 10 am, meaning he would attend school for only two hours a day, until another meeting could be held in two weeks.

44.    During this two-week period, Ms. Gonzlez and AMS were treating H.P.'s condition and she would determine if H.P. made progress in his treatment that would allow H.P. to attend for a longer day.

45.    AMS and Ms. Gonzalez also required that the school counselor, Leslie Grove observe H.P. Ms. Gonzalez stated that the treatment plan would "break the habit" of H.P. being in distress.

46.    AMS informed the Ponders that the latest H.P. would be allowed at AMS was noon, even after they had "controlled the systems" with their medical treatment plan.

47.    Ms. Gonzalez also demanded that the Ponders keep their phones on at all times to accommodate immediate pickups when AMS required it.

48.    On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders. This was scheduled for September 27, 2023.



49.     On September 15, 2023, the Ponders requested an update on H.P. and asked if he could gradually leave a little later. Ms. Gonzalez informed the Ponders that this would not be an option and that H.P. would continue attending school until 10 am.

50.     Another meeting was scheduled on Thursday, September 21, 2023, to discuss the progress of H.P.'s treatment of his condition.

51.     On September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to cancel the meeting due to being very busy. They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

52.     At the September 26, 2023, meeting, additional requirements were added for the Ponders by Ms. Gonzalez for the treatment of H.P.'s condition. This included feeding H.P. on a tray in the bathroom each morning instead of with his siblings.

53.     On September 29, 2023, the Ponders were able to have a call with H.P.'s Guide, Lesley Williams to discuss his improving progress.

54.     On October 2, 2023, Lesley Williams informed the Ponders that H.P. had been improving and had "the best day at school so far." There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

55.     On December 8, 2023, AMS stated that they were honored to work with the Ponders and that with regard to H.P., they "deeply desired to meet his needs." They were very positive and noted the Ponders followed the treatment plan that AMS had instituted through. Ms. Gonzalez. However, they still refused to allow H.P. to attend school full-time.

56.     AMS suggested hiring an occupational therapist to work with H.P. At the recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an

9



occupational therapist but yet another unqualified medical provider that Ms. Gonzalez and AMS recommended as part of their quack medicine. This caused a delay in getting H.P. an OT evaluation.

57.     On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. She noted that she and Ms. Gonzalez were best suited for determining when H.P. could extend his day.

58.     Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m.

59.     Again, the contractual terms and payments were for full day coverage, not a two-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

60.     On January 23, 2024, AMS informed the Ponders that they were "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time. The Ponders provided more recent evidence from the school of H.P.'s positive improvements.

61.     On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. AMS refused to accommodate H.P. staying for a full day as contracted. They even denied a request to allow him to stay when Ross had to leave town and was unable to pick up H.P. at 11:45 am. Ross Ponder was trying to leave town to see his brother before life support was pulled. The school administration offered no meaningful condolences and did not offer reasonable courtesies for the parents.



62.     On February 20, 2024, H.P. turned 4.5 years of age. This is significant because it is AMS policy that children 4.5 years of age or older do not have to nap in Casita and are invited to stay until 3:15 p.m. daily without a nap. H.P., like all other children, should have been allowed at AMS until 3:15 p.m. daily even if he was not taking a nap.

63.     Unfortunately, AMS determined that H.P. must continue to nap, something he clearly was not wanting to do anymore.

64.     During naptimes when H.P. was not sleeping, he was directed to the bathroom where the staff had him remain alone for long periods of time, in the dark.

65.     It was considered an acceptable practice at AMS to punish and/or direct a child to a dark bathroom if the child was not sleeping during nap time.

66.     H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024.

67.     On May 16, 2024, Jinny Gonzalez informed the Ponders that they again had staffing issues that prevented H.P.'s teacher, the one who interacted with him daily, to attend the meeting on May 17, 2024.

68.     At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended day, as they had contracted for full-time school.

69.     The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

70.     On July 2, 2024, immediately upon her return from vacation, Ms. Williams, H.P.'s teacher communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.

11



71.     By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes.

72.     While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early.

73.     Additionally, AMS began requiring that R.P. to also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

74.     The teachers/Guides were clearly working without enough support and even disclosed their stresses and personal medical information regarding hormonal changes to the children.

75.     While Montessori teachings allow students to be given guidance and redirection, they do not punish. However, AMS was allowing the stressed teachers to punish children and classes. Access to water bottles was restricted to an entire class as a punishment and students were sent to dark bathrooms.

76.     On September 11, 2024, the Ponders notified the school that the family's beloved dog was going to have to be put down.

77.     On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns.

78.     On September 12, 2024, the AMS called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early. The Ponders were informed that AMS was "unsuccessful" and that they were not fulfilling the R.P.'s need for sleep and rest.

79.     When AMS demanded that the Ponders pick up their children with unreasonable notice, the Ponders made clear that they were not available because their beloved family dog, Bear, was actively dying of cancer that afternoon in their home. Bear died around 3 pm and the Ponders



were forced to coordinate emergency vet transportation while simultaneously coordinating the school pickups AMS demanded.

80.    AMS then determined that R.P. did not fit their program because she was a bad napper. The Ponders had had multiple communications with AMS during the first few weeks of school and was informed she was doing well, and no napping concerns were raised.    The demand that she be picked up early was shocking to the Ponders.  R.P. had no problems with napping at her prior school and no concerns had been raised at AMS. (Interestingly, R.P. has no napping issues at her current Montessori school.)

81.    On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS. The Ponders asked for a review of the parent partnership agreement, as clearly AMS was in breach.

82.    On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her treatment plan for December 5, 2024.  The Ponders asked to discuss if any interim changes needed to be made and informed AMS that H.P. would be going to the doctor to determine if he had ADHD.   AMS refused to fill out the requested Vanderbilt questionnaire.

83.    On December 3, 2024, H.P. was formally diagnosed with ADHD.  The Ponders provided the diagnosis and medical documentation to AMS immediately.

84.    On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think that AMS was the right school for H.P.  Ms. Gonzales stated that she did not believe in medicating a child for ADHD and did not approve of the treatment plan of H.P.'s physician.  In fact, with the support of AMS, Gonzalez specifically discussed her medial plan, delaying medicating H.P.



85.     Oddly, in the meeting report, Ms. Gonzalez specifically noted that some children require accommodations and that it is the Montessori philosophy to use every resource available to aid in a child's development and stated that they "deeply desired to meet his needs."

86.     On December 6, 2024, Jinny Gonzalez, stated that H.P. could no longer benefit from a Montessori education. AMS shortened H.P.'s days to half days.

87.     On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects on the child. The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication, which they had found effective.

88.     On December 16, 2024, the Ponders met with Grae Baker and School Advisor, Jeff Schneider. Mr. Baker told the Ponders that AMS can accommodate an ADHD diagnosis and medicinal treatment. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates on H.P.'s response to medicine.

89.     Over the holidays, the doctor was able to work to find the proper medication dose to best assist H.P. This led to significant improvement in his ADHD behaviors.

90.     From December 16, 2024, to January 27, 2025, AMS refused to provide requested feedback to the Ponders on H.P.'s response to medication. Grae Baker falsely promised to withhold an enrollment decision for the following year until the middle of the spring semester to allow AMS to observe and update the Ponders on H.P.'s response to medication.

91.     The Ponders made repeat requests for an accommodation meeting and requested that Ms. Gonzalez be taken off the team, due to her alternative treatment methods not being accepted over those of H.P.'s physician.

92.     On January 17, 2025, Grae Baker sent correspondence stating that AMS would not be offering an enrollment contract for the following year to H.P. Mr. Baker also chastised the Ponders

14



for requesting that Ms. Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine.

93.     On January 20, 2025, the Ponders again requested a meeting to discuss the observations of H.P. in the weeks after he had started ADHD medication.

94.     On January 24, 2025, the Ponders met with Grae Baker and Jeff Schneider, the School Advisor.  In preparation for this meeting, they requested to discuss communication issues and stated that these issues were pervasive throughout the school, noting other parents had similar concerns.

95.     The Ponders were concerned with the lack of communication and the systematic barriers that prevented parents from being informed of concerns regarding their children.  The Ponders noted that no incidents had been report at AMS since winter break, and that H.P. was responding well to medication, including at church, YMCA, and other common places.  Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

96.     On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services.  The fact that this complaint was filed was made known to AMS on January 25, 2025. The Ponders chose to file this report based on their experiences and after reviewing AMS' most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS.

97.     On January 28, 2025, Grae Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including their quack medicine treatment plan.

15



98.     The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make change and to help all students, an effort to gain community support and raise concerns, as the discrimination and relation were factors all parents should be informed of when renewing enrollment. The WhatsApp group was a private, optional, parent run platform that was not associated with the school administration.

99.     A coffee was also held at the Ponders home to further discuss systematic communication issues affecting many students at AMS.

100.    On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. had ADHD. AISD determined that H.P. would be placed in a standard classroom and did not need special education or occupational therapy. The results were immediately distributed to AMS and the Ponders requested a meeting with Gina Applegate, the school support specialist, Jinny Gonzalez, and Lesley Williams.

101.    The Ponders included Jinny Gonzalez in this communication because Grae Baker had stated it was a requirement for the continued enrollment of L.P. and R.P. in his email dated January 28, 2025.

102.    On January 30, 2025, Grae Baker sent a letter to all parents at AMS stating that the information provided by the Ponders was "misleading" and that "false claims" were made.

103.    On January 31, 2025, AMS terminated the enrollment of all three children. It was stated by AMS that the terminations occurred because the Ponder parents' "actions were detrimental to the school." Clearly the actions referred to are the filing of the HHS complaint, advocating for disability accommodations, and reaching out to other parents to discuss the concerns and determine if others were in a similar situation. The termination of the remaining Ponder children was retaliation.



104.    While at AMS, improper punishment was used on Plaintiff H.P.   He was repeatedly not allowed to finish his meals.  HP was placed in a dark bathroom alone and/or with an adult for punishment and not for bathroom activities. H.P.'s outdoor play time as taken away.  . Further, he was humiliated, instructed to clean up, and when something was outside his capabilities, instead of helping he was ridiculed and made to continue the task for extended periods of time.  All of these punishments and actions are direct violations of state law and regulations

105.    The impact on the family has been extreme.   While attending the school, the quack medicine diagnosis and treatment plan instituted by Ms. Gonzalez caused H.P. harm.  It further prevented him from getting the proper diagnosis with a licensed physician.  H.P. was forced to attend expensive outside services at the demand of AMS.

106.    H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS.  The level of torture he experienced was not understood until he was placed in a new school, where he is not only thriving, but has had zero behavior problems and is a model student.  Clearly, the root of his behavior problems stemmed from AMS's intentional and negligent failure to address his needs. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

107.    The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family.   The Ponders entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to walk their children to school and were told when and how to wake their children each morning.    Maria Montessori stated, "We must respect the child, and he must understand that he is respected."  AMS neither respected nor made the Ponders feel respected.  Further, the Ponders were forced to spend thousands of dollars on demanded outside



OT and other treatments that Ms. Gonzalez prescribed to treat the diagnosis of "underdeveloped will." These treatments were not necessary or beneficial to treat H.P.

108.    Due to the change in hours, Ross Ponder was forced to quit his job, to allow him to be available to pick up the children on a moment's notice. This has been detrimental to his income in both the long and short term.

109.    The impact on Sarah Ponder's career is significant. Some of her clients were in the AMS community. Sending a letter to the entire community defaming the Ponders will have serious long-term impacts on her company's growth. Ms. Ponder is aware of at least one client that she lost due to this entire situation.

110.    The impact on the children has been significant. They were forced from their school and the friends they had expected to go to school with until they graduated middle school. They were not able to be immediately placed in school, and the oldest child is in elementary school, thus causing a severe impact to her education.

111.    The expulsion caused extreme mental anguish for the entire family. Maria Montessori stated, "The things the child sees are not just remembered; they form part of his soul." This will forever impact the Ponder family.

## VI. CAUSES OF ACTION

### A. Count 1- Negligence

112.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

113.    The occurrences made the basis of this suit, and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligent conduct of the Defendants. Defendants were



negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

    a. Failing to exercise the care necessary under the circumstances;

    b. Failing to do what a reasonable daycare would have done under the circumstances;

    c. Failing to intervene to ensure a child's safety;

    d. Failing to provide proper supervision;

    e. Failing to properly hire, qualify, train and supervise its employees

    f. Failing to provide reasonable accommodations

    g. Failing to adhere to the Texas Minimum standards for childcare.

114.    Defendant had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

115.    Defendant had a duty to maintain a safe environment for children in its care;

116.    Defendant had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

117.    Defendants breached the duty of care by failing to care for the children, failing to supervise the children, ailing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

118.    Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B. Count 2- Negligence Per Se**

119.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.



120.    Defendants failed to exercise the mandatory stand of care in violation of the minimum standards for childcare.

121.    Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Repeatedly, AMS failed to use praise and encouragement, instead using humiliation and rejection with H.P.

122.    Texas law has specific maximums on the number of children that can be in a room. 26 TAC Sec. 746.1601-1615.  These numbers were exceeded or the Ponder children were sent home to accommodate the new students after the holidays.

123.    Accommodations recommended by qualified professionals and medical experts were not provided to H.P. in violation of 26 TAC 746.2202.

124.    AMS failed to encourage H.P. to express feelings and failed to give him appropriate attention.  20 TAC 746.2601

125.    AMS failed to comply with the regulations regarding naptimes and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321.

126.    AMS failed to notify the Ponders that AMS refused to administer or allow students to take ADHD medications in violations of 26 TAC Sec. 746.3811.

127.    AMS failed to follow the laws regarding release of children.  26 TAC Sec. 746.4103

128.    Additionally, according to AMS staff, AMS had 39 children in the Casita at one time, the location used for young children to nap.  Clearly the state of Texas created these regulations to protect children.  The violation of these statues harmed the Ponder family.

129.    Defendant Gonzalez violated the law by practicing medicine without a license. Defendants AMS and Baker supported and assisted Gonzalez in her medical endeavors.



130.    Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

131.    Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.

132.    As a result of the Defendants illegal acts and/or omissions in violating the statues Plaintiffs sustained injuries.

**C. Count 3- Gross Negligence**

133.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

134.    Defendants conduct was more than momentarily thoughtlessness or inadvertence. Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

135.    Defendants conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs. Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiff and/or other similarly situated individuals. Plaintiffs suffered damages and further seek punitive damages.

**D. Count 4- Negligent Activity**

136.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

137.    Defendant AMS is the owner, operator and possessor of the daycare premises.

138.    Defendants H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owned a duty to exercise reasonable care.



139.    Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

140.    Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

### E. Count 5- Respondeat Superior

141.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

142.    The negligence, carelessness, and callousness of Defendant AMS's employees proximately caused the damage and loss suffered by Plaintiffs.    At all ties material to this action, Defendant AMS's employees were acting in the course and scope of their employment.    Accordingly, Defendant's may be held responsible for its employees' negligence under the doctrine of respondeat superior.

### F. Count 6- Violations of Section 504

143.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

144.    Defendants excluded Plaintiff H.P. from participation in activities and programs, and was denied the benefits of the services, programs, and activities and was subjected to discrimination because of his disability, ADHD.

145.    The actions of Defendant Gonzalez created an interference of professional bad faith or gross misjudgment.

146.    The actions of Defendants were done out of prejudice, ill will or spite against Plaintiffs.

147.    As a result of these acts, Plaintiffs suffered harm, injuries, and damages.



**G. Count 7-Breach of Contract**

148.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

149.    Plaintiffs had entered into a valid contract for the provision of childcare services for their three minor children.  There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

150.    Plaintiffs tendered performance according to the terms of the contact.

151.    Defendant AMS breached its duties and obligations under the contract, both explicit and implicit, pertaining to providing appropriate care, custody, and supervision by all acts stated above.

152.    Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential.

153.    Further, Plaintiffs seek to recover their attorney fees under the Texas Civil Practices and Remedies Code.

**H. Count 8- Fraud**

154.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

155.    Plaintiffs discovered that Defendants had been defrauding them by making promises and commitments to get Plaintiffs payments and re-enroll their children when Defendants, particularly Defendant Baker, knew the statements were false and that he had no intention of fulfilling.

156.    Defendants made material misrepresentations that were false.  Defendants knew these statements were false or they were made recklessly without any knowledge of the truth and as a positive assertion.

23



157.    Defendants made the statements with the intention that Plaintiffs would act upon it and

Plaintiffs acted in reliance of the representations and causing injury, damages, and harm.

158.    Plaintiffs seek treble damages and attorney fees.

## I.    Count 9- Fraudulent Inducement to Contract and Breach of Contract

159.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully

herein.

160.    The Ponders enrolled all their children at AMS because AMS stated that they followed the

Montessori teaching paradigm and that they would offer full-day schooling for the three children,

meaning the children would attend AMS from 8 am to 3 pm Monday-Friday. The Ponders relied

on these assertions when entering into contracts with AMS.

161.    The mission of the school stated that they are inclusive and "cultivate compassion and

respect." Unfortunately, the administration of AMS lacked compassion and respect for the entire

Ponder family.

162.    The teachings of Montessori include "protecting the autonomy and integrity" of a student

and developing a program that follows "the developmental states manifested by the children" and

"honor and respect each child's individual timetable for development."    Bryant Goertz, Donna.

"Children Who Are Not Yet Peaceful: Preventing Exclusion in the Early Elementary

Classroom," Frog, Ltd. Berkeley, CA, 2001. "Edmond, Nadia and Tad: The Gift of Time" is the

title of chapter twelve. The Montessori teachings do not include discrimination and refusal to

comply with 504 and provide accommodations.

163.    The Ponders were further induced to reenroll for a second year. The AMS handbook

clearly stated that the Guides would be trained by AMI and would engage in the "most authentic

standard of Montessori pedagogy" and that the Guides would have an understanding of

24



developmental milestones and ensure a structured learning approach that aligns with the AMI guidance.

164.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging.  These principals were not utilized with H.P.

165.    The AMS parent handbook outlines procedures for programmatic changes that were not followed.  The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations regarding the Ponder children, or hold requested conferences.

166.    AMS further stated that it would not discriminate and complies with ADA and Section 504 of the Rehabilitation Act of 1973, as amended.  Grae Baker was the alleged coordinator, yet the school insisted that Jinny Gonzalez be the point person and Grae Baker failed to address or even discuss violations.

167.    AMS fraudulently induced the Ponder family to contract for all three children's education. AMS breached its contracts with the Ponders by failing to provide 504 services for H.P., failing to allow the children to receive full day education, and failing to follow the school policies.

168.    As a result of Defendants fraudulent inducement, Plaintiffs suffered harm, injury and damages.  Further, Plaintiffs seek attorney fees and treble damages.


**J. Count 10- Civil Conspiracy**

169.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.



170.    Defendants acted in combination to seek or accomplish a course of action to commit unlawful acts.  Defendants worked together to perform an illegal activity, namely the practice of medicine without a license and the offering of medical services without being licensed as a medical treatment facility.   There was a meeting of the minds of the Defendants to agree to accomplish the above stated unlawful acts.  Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement.  As a result, Plaintiffs suffered harm, injury and damages.

**K.  Count 11- Retaliation**

171.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

172.    Plaintiffs and Defendants did not agree on the use of medication to treat a child who suffers from ADHD.  While the school did not have a no medication policy, Defendant Gonzalez clearly felt that it was unacceptable to treat H.P. in the manner his physician recommended.  Ms. Gonzalez was not a doctor and had no training or experience to justify her position or the action plans she required.  Ms. Gonzalez had very specific requirements for treatment of H.P., both at home and at school, including requiring the Ponders to drive to school, wake up children in a certain order, and other questionable commands.   AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine.   The Ponders voiced concern over these methods and were shut down by Ms., Gonzalez.  Further, she failed to provide insight on what was occurring in the classroom or how any of her requirements would provide any effective change.

173.    When the Ponders asked to discuss with another staff member and remove Defendant Gonzalez from H.P.'s case, Defendant Baker refused to accommodate, chastised the Ponders for their request, fully supported Ms. Gonzalez, and expelled H.P. in retaliation for Plaintiffs



medicating H.P. The school's support of Ms. Gonzalez's quack medicine is very concerning, as she is not a physician nor trained in any way on the treatment of children with ADHD.

174.    Defendant AAMS retaliated for when the Ponders requested ADHD accommodations under 504 and wanted to follow the treatment plan prescribed by their actual physician instead of following the quack medicine prescribed by Ms. Gonzalez.

175.    Defendants retaliated for the filing of a complaint with the HHS by threatening and later actually expelling the Ponder children.

176.    The Ponders care not only about their own children but about the entire AMS community. When they learned that H.P. had been expelled, they decided to bring their concerns to the attention of other parents, in hopes of making AMS better for all students attending. The policies and procedures were not followed with H.P. As such, the Ponders reached out to the community so that the community as a whole, could work together to find ways to foster better communication. The Ponders posted a letter to all parents on the WhatsApp on January 28, 2025. The letter did not violate any rules of AMS. AMS had the letter taken down on January 30, 2025. Yet, as a further act of retaliation, AMS chose to send an email making defamatory statements against the Ponders to all families at AMS.

## VII. DAMAGES

177.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

178.    Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

  1.  Loss of value of the tuition/fees that Plaintiffs paid for the childcare



2. Loss of wages for Mr. and/or Ms. Ponder incurred by having to stay home and care for H.P. and R.P when they were sent home early and while they began the long, slow, and careful process of finding another school/childcare to entrust their children, after undergoing such a traumatic ordeal;

3. Medical expenses for the reasonable and necessary examination of H.P.;

4. Medical expenses for the reasonable and necessary family and individual counseling and therapy for Plaintiffs

5. The cost of the unnecessary and inappropriate therapies and quack medicine that Defendants required Plaintiffs seek for H.P.

6. Physical pain and suffering in the past;

7. Physical pain and suffering, in reasonable probability, sustained in the future;

8. Mental anguish in the past;

9. Mental anguish, in reasonable probability, sustained in the future;

10. Lost wages in the past;

11. Lost wages, in reasonable probability, sustained in the future;

12. Loss of wage-earning capacity in the past

13. Loss of wages/earning capacity, in reasonable probability, sustained in the future;

14. Loss of normal enjoyment of the pleasure of life in the past;

15. Loss of normal enjoyment of the pleasure of life, in reasonable probability, sustained in the future;

16. Treble damages;

17. Punitive damages;

18. Pre-judgment interest;



19. Post-judgment interest;

20. Court costs;

21. Reasonable and necessary attorney fees;

22. Costs of suit

## VIII. CONDITIONS PRECEDENT

179.   All conditions precedent have been performed or occurred, except for mediation which is addressed below.

## IX. JURY DEMAND

180.   Plaintiffs respectfully demand the right to have a trial by jury and have tendered the jury fee in Travis County District Court.

## X. PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial Plaintiffs have and recover:

1.   Judgment against Defendants for a sum in excess of the minimum jurisdictional limits of this Court;

2.   Pre-judgment at the highest legal rate;

3.   Reasonable and necessary attorney's fees;

4.   Taxable Court costs;

5.   Post-judgment interest on the above amount at the highest legal rate; and

6.   Such other and further relief to which Plaintiff may show themselves justly entitled in law or equity.



Respectfully submitted,

**WELBORN LAW LLC**
1100 West Ave.
Austin, Texas 78701
Telephone: (512) 825-3390

By: */s/ Amy C. Welborn*
  Amy C. Welborn
  State Bar No. 24012853
  amy@welborn-law.com

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

   I hereby certify that a true and correct copy of the foregoing document has been sent by e-filing to counsel of record, in accordance with the Texas Rules of Civil Procedure on this 10th day of November, 2025.

Christopher Schulz
cshulz@slh-law.com
Elizabeth Angelone
eanglone@slh-law.com
Randee J. Hobbs
rhobbs@slh-law.com
SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP
Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759

      */s/ Amy C. Welborn*
      Amy C. Welborn

30



11/10/2025 12:05 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Stephanie Garza

CAUSE NO. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| Defendants. | § | 345TH JUDICIAL DISTRICT |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

COMEN NOW Plaintiffs, Ross Ponder and Sarah Ponder, Individually and as Next Friend

of H.P., a minor ("Ponders" or "Plaintiff"), file their Second Amended Complaint against

Defendant Austin Montessori School, Inc.("AMS"), Grae Baker ("Baker"), and Jinny Gonzalez

("Gonzalez") (collectively "Defendants") and show the Court as follows:

## I. DISCOVERY CONTROL PLAN

1.      Plaintiffs intend to conduct discovery under Level 3 pursuant to Rule 190.4 of the Texas

Rules of Civil Procedure.

## II. PARTIES

2.      Plaintiffs Ross and Sarah Ponder are the parents of Plaintiff H.P., L.P., and R.P., minors.

Plaintiffs reside in Travis, County, Texas.

3.      Defendant Austin Montessori School, Inc. is a Texas corporation with its principal place

of business at 5006 Sunset Trail, Austin, Texas 78745.  Austin Montessori School, Inc. can be



served through its registered agent, Sandra Bartholome at 5006 Sunset Trail, Austin, Texas 78745. Defendant has previously answered and accepted service.

4.    Defendant Ronald Grae Baker is an individual that resides in and can be served at his principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at his residence at 10521 Redmond Road, Austin, Texas 78739. Defendant has previously answered and accepted service.

5.    Defendant Jinny Gonzalez is an individual that resides in Travis County and can be served at her principal place of business at 5006 Sunset Trail, Austin, Texas 78745 or at her residence at 2907 Pops Way, Austin, Texas 78745. Defendant has previously answered and accepted service.

### III. JURISDICTION AND VENUE

6.    Subject matter jurisdiction is proper because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.    Venue us proper in Travis County, Texas, under Texas Civil Practice and Remedies Code Sec. 15.002(a) as all or substantially all of the events that give rise to this claim occurred in Travis County.

### IV. SUMMARY

8.    The Ponders fully embraced Montessori practices and were excited to have enrolled their children at AMS. Unfortunately, it became evident over time that AMS had adopted their own practices and interpreted Maria Montessori teachings in a way that was meaningfully different from other Montessori schools. AMS's administrative staff had their own beliefs and practices that were not explained prior to enrolling the Ponder children. These practices were very harmful to the Ponder children, especially H.P.



9.      The Ponders had a history of ADHD in their family and as such wanted to put their children in a Montessori School because studies have shown that an adapted educational environment, such as a Montessori school is beneficial for children who respond differently, have trouble staying focused, or need redirection.

10.     Montessori education emphasizes self-directed learning, movement, and a prepared environment. Montessori education principals involve the use of collaboration with the parents to create a support plan to best support children with unique needs.

11.     Further, Montessori education emphasizes discipline through positive guidance and self-regulation, rather than punishment. There are no rewards or punishments in Montessori education. Instead, the focus is on respectful interactions, encouragements, and redirection.

12.     Only after contracting with AMS, were the Ponders made aware that AMS did not follow the teachings and Montessori methods.

13.     Defendants did not believe in collaboration with the parents to create support plans.  In fact, Defendants intentionally prevented information from being shared with parents regarding the support needs of the students.

14.     Defendants did not follow the no rewards or punishment teachings.  The school had questionable and inappropriate punishments that the Ponder children and many other students were subjected to on a regular basis.

15.     Defendants also did not disclose that they did not follow common Western medical practices adopted in the State of Texas and had adopted their own form of quack medicine used to diagnosis and treat their students.

16.     AMS failed to admit that they did not believe children should be diagnosed with ADHD, and did not believe in the use of medication to treat the diagnosis.



17.     Nor did AMS admit that failure to follow their set medical treatment plans and to seek outside medical care or treatment would result in expulsion.   Instead, they fraudulent induced the Ponders into contracts and then failed to follow the basic rules of law in the care and treatment of the Ponder children.

18.     Further, AMS allowed and supported Jinny Gonzalez, the Director of Early Childhood Programs, to practice medicine without a license.  The AMS administration fully supported Jinny Gonzalez and allowed her to make diagnoses of children, knowing she had no medical training. Ms. Gonzalez "diagnosed" H.P. with "an underdeveloped will" in September 2023 and offered to treat H.P.'s disorder.  Based on her diagnosis, Ms. Gonzalez made specific demands of the Ponders as part of her quack medicine treatment.  Her treatment plan was psychologically abusive, harmful, and disruptive.

19.     To prevent exposure of AMS's quack medical and/or manipulative controlling practices and other harmful practices, AMS refused to provide important information to the parents of the children attending AMS.

20.     To hide improper discipline and negligent activity, the parents of AMS students were not given meaningful opportunities to communicate with the staff working with their children.

21.     H.P. was often isolated from his peers and taken out of the classroom with a staff person. At other times he was sent to a bathroom either with a staff person or alone.

22.     The Ponders were provided very minimal information about individuals who were alone with and in charge of H.P.'s supervision.  The Ponders had a right to know if this individual was qualified to be working with their child.  The Ponders had a right to know what this individual was doing with their child when he was isolated and H.P.'s reaction to this treatment method the school had imposed upon H.P.

4



23.    AMS had created a medical treatment plan and then failed to allow the Ponders to access medical records, school records, and treatment records in violation of state and federal law.

24.    The Ponders were repeatedly called to AMS on short notice to pick up H.P. and/or R.P. without being given any information regarding the alleged incident that had occurred.  It was impossible to discern if there were actual issues with H.P. or R.P. or the nature of the alleged concerns because AMS hid the information to the detriment of the entire Ponder family.

25.    Upon questioning AMS's quack medicine practices and controlling and manipulative actions and bringing them to the attention of other family members at AMS and the Texas Health and Human Services, AMS retaliated by expelling all of the Ponder children without notice, including the oldest child, who was in elementary school.

### V. FACTS

26.    The Ponders first enrolled at AMS in August of 2023.  The Ponder children had been enrolled in another Montessori school and the children thrived in the Montessori environment. The Ponders live very close to AMS and hoped to enjoy the opportunity to walk to school and feel a close connection to the AMS community.

27.    The Ponders were further drawn to the promise of collaboration and communication in the education of their three children and had hoped to keep all three children enrolled through their middle school education.  The Ponders had believed AMS would provide a nurturing supportive environment for their children of all abilities and learning styles in keeping with Maria Montessori's teachings.

28.    The Ponders were told by the AMS administration multiple times from 2022 to 2023 that it was extremely rare to be admitted when children were over 4.5 years old.  When the May 2023



fall admission opened, they were told to take it, as it was very unlikely that a spot would be available the following year.

29.    The Ponders enrollment contracts were for an 8 am-3:15 school day (full-time) for all three children.  The AMS administration did state that lunchtime pickup was an option if a child was not a napper, making it seem that a failure to nap would not prevent the student's success at AMS. (However, students were not required to nap after age 4.5.)  While the Ponders were required to remain under contract when two of the three children's school day hours were reduced, the reduction in the amount of tuition was minimal (about $3000 a year) and the cost for other care to replace the contracted care was significant.  This caused great financial burden to the Ponders.

30.    H.P.'s first day at AMS was August 17, 2023.  AMS provided an update and noted that there were no issues when H.P. napped.  It was also noted that H.P. did not like his lunch, which the Ponders had prepared according to AMS's strict school lunch requirements.

31.    On August 20, 2023, H.P. turned four years old.

32.    On or about August 29, 2023, the Ponders were informed that their son, H.P. was having issues sleeping during nap time.  A meeting was immediately held the same day to address the matter.

33.    Regardless, on Thursday, August 31, 2023, AMS informed the Ponders that H.P. would need to be picked up starting at noon each day because he was not napping.  The Ponders were told this was a transition period for AMS to allow H.P. to get used to the new classroom.  The Ponders were not given any alternatives and were told that they had to pick him up at noon.  The Ponders specifically chose to enroll their three children at AMS because it allowed for full day coverage for all their children, allowing them to work demanding full-time jobs.



34.     Throughout the next weeks, the Ponders made numerous attempts to update the school regarding H.P. AMS, in turn, did not provide quality feedback but pushed H.P.'s release time to 10 am, a mere two hours after his arrival time without explanation.

35.     AMS did not offer to compensate the Ponders nor did AMS discuss letting the Ponders out of their contract. The Ponders were left financially strapped into a contract for full-time care but were receiving less than two hours a day to complete their work before they were forced to bring their young son back home.

36.     On Friday, September 8, 2023, Jinny Gonzalez emailed the Ponders to request a meeting regarding H.P.'s "dysregulation." The Ponders were told that H.P. was not allowed to return to the school until after the meeting occurred.

37.     Over the weekend, the meeting was scheduled for September 11, 2023. The meeting would include the Ponders, Jinny Gonzalez and Sveta Paris. None of the classroom staff was invited to attend.

38.     Ms. Gonzalez informed the Ponders that H.P. would not be allowed to attend AMS until September 12, 2023, meaning the Ponders had to arrange childcare for H.P so that they could attend the meeting.

39.     At the September 11, 2023, meeting, AMS stated that they "interpret behavior differently from the normative." AMS notified the Ponders that instead of trying to work with H.P. on his behaviors they were "going to control the systems." It was at this meeting and in her follow-up correspondence that Ms. Gonzalez diagnosed H.P. and laid out her treatment plan for H.P.

40.     Ms. Gonzalez's medical treatment plan required that the Ponders follow a consistent routine in the mornings and even recommended that they "modify the time each family member goes to bed and wakes up."



41.    Ms. Gonzalez instituted rules for speaking to H.P., requiring that the Ponders only provide brief and factual information to their son and that they acknowledge his feelings only with humor and lightness.

42.    Ms. Gonzalez forbid the Ponders from walking to school and required that H.P. arrive by car at exactly 8 am daily. She further demanded that H.P. be seated in the car closest to the entrance and that the Ponders were not allowed to exit the vehicle or help H.P. exit the vehicle.

43.    Ms. Gonzales informed the Ponders that H.P. would only be allowed to attend school until 10 am, meaning he would attend school for only two hours a day, until another meeting could be held in two weeks.

44.    During this two-week period, Ms. Gonzlez and AMS were treating H.P.'s condition and she would determine if H.P. made progress in his treatment that would allow H.P. to attend for a longer day.

45.    AMS and Ms. Gonzalez also required that the school counselor, Leslie Grove observe H.P. Ms. Gonzalez stated that the treatment plan would "break the habit" of H.P. being in distress.

46.    AMS informed the Ponders that the latest H.P. would be allowed at AMS was noon, even after they had "controlled the systems" with their medical treatment plan.

47.    Ms. Gonzalez also demanded that the Ponders keep their phones on at all times to accommodate immediate pickups when AMS required it.

48.    On September 12, 2023, Leslie Grove notified the Ponders that she would observe H.P. on September 18, 2023, and that she wanted to schedule a conference to discuss H.P. with the Ponders. This was scheduled for September 27, 2023.



49.    On September 15, 2023, the Ponders requested an update on H.P. and asked if he could gradually leave a little later. Ms. Gonzalez informed the Ponders that this would not be an option and that H.P. would continue attending school until 10 am.

50.    Another meeting was scheduled on Thursday, September 21, 2023, to discuss the progress of H.P.'s treatment of his condition.

51.    On September 21, 2023, Jinny Gonzalez emailed the Ponders stating that AMS had to cancel the meeting due to being very busy. They agreed to reschedule the meeting to September 26, 2023, and to move the pick-up time for H.P. the following week to allow him to stay until 10 am on Monday and Tuesday, 10:30 am on Wednesday and Thursday and 11 am on Friday.

52.    At the September 26, 2023, meeting, additional requirements were added for the Ponders by Ms. Gonzalez for the treatment of H.P.'s condition. This included feeding H.P. on a tray in the bathroom each morning instead of with his siblings.

53.    On September 29, 2023, the Ponders were able to have a call with H.P.'s Guide, Lesley Williams to discuss his improving progress.

54.    On October 2, 2023, Lesley Williams informed the Ponders that H.P. had been improving and had "the best day at school so far." There was no concern that he had behavioral issues that the school could not address. His time at the school was extended to noon each day.

55.    On December 8, 2023, AMS stated that they were honored to work with the Ponders and that with regard to H.P., they "deeply desired to meet his needs." They were very positive and noted the Ponders followed the treatment plan that AMS had instituted through. Ms. Gonzalez. However, they still refused to allow H.P. to attend school full-time.

56.    AMS suggested hiring an occupational therapist to work with H.P. At the recommendation of Jinny Gonzalez, the Ponders hired Jennie Buckley but later determined she was not an

9



occupational therapist but yet another unqualified medical provider that Ms. Gonzalez and AMS recommended as part of their quack medicine. This caused a delay in getting H.P. an OT evaluation.

57.     On December 20, 2023, Leslie Grove, the school psychologist, observed H.P. and found that he was doing very well. She noted that she would not be connecting with AMS administration until late January to discuss her findings. She noted that she and Ms. Gonzalez were best suited for determining when H.P. could extend his day.

58.     Regardless, and without waiting for their own psychologist's assessment, on January 5, 2024, Jinny Gonzalez instructed that H.P. no longer be allowed at the school past 11 a.m.

59.     Again, the contractual terms and payments were for full day coverage, not a two-hour drop off. The school informed them that they had additional new children and due to accommodating them, they would need to pick up H.P. early each day until AMS was able to adapt to the new students.

60.     On January 23, 2024, AMS informed the Ponders that they were "changing things" and would not accommodate H.P. attending for more than a few hours each day at that time. The Ponders provided more recent evidence from the school of H.P.'s positive improvements.

61.     On January 31, 2024, Ross Ponder's brother became ill and died March 5, 2024. AMS refused to accommodate H.P. staying for a full day as contracted. They even denied a request to allow him to stay when Ross had to leave town and was unable to pick up H.P. at 11:45 am. Ross Ponder was trying to leave town to see his brother before life support was pulled. The school administration offered no meaningful condolences and did not offer reasonable courtesies for the parents.



62.     On February 20, 2024, H.P. turned 4.5 years of age. This is significant because it is AMS policy that children 4.5 years of age or older do not have to nap in Casita and are invited to stay until 3:15 p.m. daily without a nap. H.P., like all other children, should have been allowed at AMS until 3:15 p.m. daily even if he was not taking a nap.

63.     Unfortunately, AMS determined that H.P. must continue to nap, something he clearly was not wanting to do anymore.

64.     During naptimes when H.P. was not sleeping, he was directed to the bathroom where the staff had him remain alone for long periods of time, in the dark.

65.     It was considered an acceptable practice at AMS to punish and/or direct a child to a dark bathroom if the child was not sleeping during nap time.

66.     H.P. had his initial OT evaluation on April 26, 2024. The school agreed to meet and discuss on May 17, 2024.

67.     On May 16, 2024, Jinny Gonzalez informed the Ponders that they again had staffing issues that prevented H.P.'s teacher, the one who interacted with him daily, to attend the meeting on May 17, 2024.

68.     At the May 17, 2024, meeting, the Ponders reported on the OT evaluation. The Ponders requested that H.P. be transitioned to extended day, as they had contracted for full-time school.

69.     The school refused to allow H.P. to go full-time in June and stated that they would need to wait for an evaluation in July when his teacher returned from vacation. It was evident that the school had staffing issues that needed to be addressed.

70.     On July 2, 2024, immediately upon her return from vacation, Ms. Williams, H.P.'s teacher communicated with the Ponders and stated that H.P.'s day should be extended to 12:30 pm.



71.    By July 30, 2024, it was becoming more evident that AMS had serious staffing issues. Jinny Gonzalez sent multiple communications to all the families at AMS notifying them of staffing changes.

72.    While the plan was for H.P. to begin transitioning to full day school, AMS continued to ask for him to be picked up early.

73.    Additionally, AMS began requiring that R.P. to also be picked up early. Further, according to AMS staff, at times there were as many as 39 children in the nap program called Casita.

74.    The teachers/Guides were clearly working without enough support and even disclosed their stresses and personal medical information regarding hormonal changes to the children.

75.    While Montessori teachings allow students to be given guidance and redirection, they do not punish. However, AMS was allowing the stressed teachers to punish children and classes. Access to water bottles was restricted to an entire class as a punishment and students were sent to dark bathrooms.

76.    On September 11, 2024, the Ponders notified the school that the family's beloved dog was going to have to be put down.

77.    On September 12, 2024, Jinny Gonzalez again provided notice to all the families of staffing concerns.

78.    On September 12, 2024, the AMS called the Ponders at noon, stating that the youngest Ponder child, R.P., would need to be picked up early. The Ponders were informed that AMS was "unsuccessful" and that they were not fulfilling the R.P.'s need for sleep and rest.

79.    When AMS demanded that the Ponders pick up their children with unreasonable notice, the Ponders made clear that they were not available because their beloved family dog, Bear, was actively dying of cancer that afternoon in their home. Bear died around 3 pm and the Ponders



were forced to coordinate emergency vet transportation while simultaneously coordinating the school pickups AMS demanded.

80.     AMS then determined that R.P. did not fit their program because she was a bad napper. The Ponders had had multiple communications with AMS during the first few weeks of school and was informed she was doing well, and no napping concerns were raised.   The demand that she be picked up early was shocking to the Ponders.   R.P. had no problems with napping at her prior school and no concerns had been raised at AMS. (Interestingly, R.P. has no napping issues at her current Montessori school.)

81.     On September 13, 2024, AMS again requested that both children be picked up early. Again, there were significant staffing issues at AMS. The Ponders asked for a review of the parent partnership agreement, as clearly AMS was in breach.

82.     On November 22, 2024, Jinny Gonzalez scheduled a meeting regarding H.P.'s progress under her treatment plan for December 5, 2024.   The Ponders asked to discuss if any interim changes needed to be made and informed AMS that H.P. would be going to the doctor to determine if he had ADHD.   AMS refused to fill out the requested Vanderbilt questionnaire.

83.     On December 3, 2024, H.P. was formally diagnosed with ADHD.  The Ponders provided the diagnosis and medical documentation to AMS immediately.

84.     On December 5, 2024, at the scheduled meeting to discuss H.P.'s progress and accommodations, Jinny Gonzalez stated that she did not think that AMS was the right school for H.P.   Ms. Gonzales stated that she did not believe in medicating a child for ADHD and did not approve of the treatment plan of H.P.'s physician.   In fact, with the support of AMS, Gonzalez specifically discussed her medial plan, delaying medicating H.P.



85.    Oddly, in the meeting report, Ms. Gonzalez specifically noted that some children require accommodations and that it is the Montessori philosophy to use every resource available to aid in a child's development and stated that they "deeply desired to meet his needs."

86.    On December 6, 2024, Jinny Gonzalez, stated that H.P. could no longer benefit from a Montessori education.  AMS shortened H.P.'s days to half days.

87.    On December 7, 2024, H.P. was started on ADHD medication, which had very positive effects on the child.  The Ponders requested that H.P. receive new evaluations by AMS to determine the effects of the new medication, which they had found effective.

88.    On December 16, 2024, the Ponders met with Grae Baker and School Advisor, Jeff Schneider. Mr. Baker told the Ponders that AMS can accommodate an ADHD diagnosis and medicinal treatment. Mr. Baker agreed to delay enrollment decisions for H.P. until the middle of the spring semester and to provide regular updates on H.P.'s response to medicine.

89.    Over the holidays, the doctor was able to work to find the proper medication dose to best assist H.P.  This led to significant improvement in his ADHD behaviors.

90.    From December 16, 2024, to January 27, 2025, AMS refused to provide requested feedback to the Ponders on H.P.'s response to medication.  Grae Baker falsely promised to withhold an enrollment decision for the following year until the middle of the spring semester to allow AMS to observe and update the Ponders on H.P.'s response to medication.

91.    The Ponders made repeat requests for an accommodation meeting and requested that Ms. Gonzalez be taken off the team, due to her alternative treatment methods not being accepted over those of H.P.'s physician.

92.    On January 17, 2025, Grae Baker sent correspondence stating that AMS would not be offering an enrollment contract for the following year to H.P. Mr. Baker also chastised the Ponders



for requesting that Ms. Gonzalez be removed from H.P.'s case, stating AMS's support for Gonzalez and her quack medicine.

93.    On January 20, 2025, the Ponders again requested a meeting to discuss the observations of H.P. in the weeks after he had started ADHD medication.

94.    On January 24, 2025, the Ponders met with Grae Baker and Jeff Schneider, the School Advisor.  In preparation for this meeting, they requested to discuss communication issues and stated that these issues were pervasive throughout the school, noting other parents had similar concerns.

95.    The Ponders were concerned with the lack of communication and the systematic barriers that prevented parents from being informed of concerns regarding their children.  The Ponders noted that no incidents had been report at AMS since winter break, and that H.P. was responding well to medication, including at church, YMCA, and other common places.  Mr. Baker informed them in this meeting that not only was H.P. not allowed to return next semester, that AMS was expelling H.P. on February 7, 2025.

96.    On January 24, 2025, the Ponders filed a complaint with the Texas Health and Human Services.  The fact that this complaint was filed was made known to AMS on January 25, 2025. The Ponders chose to file this report based on their experiences and after reviewing AMS' most recent HHS inspection in October 2024, which recorded deficiencies in recordkeeping, naptime, and operational policies regarding suspension and expulsion. The Ponders also requested to receive copies of these relevant records and policies but were denied by AMS.

97.    On January 28, 2025, Grae Baker emailed to inform the Ponders that all the Ponder children would be expelled if the Ponders did not follow the demands of AMS, including their quack medicine treatment plan.



98.    The same day, the Ponders informed the other school parents of the ongoing issues in a WhatsApp post, in an effort to make change and to help all students, an effort to gain community support and raise concerns, as the discrimination and relation were factors all parents should be informed of when renewing enrollment. The WhatsApp group was a private, optional, parent run platform that was not associated with the school administration.

99.    A coffee was also held at the Ponders home to further discuss systematic communication issues affecting many students at AMS.

100.    On January 29, 2025, the Ponders received H.P.'s initial evaluation from Austin ISD. AISD determined that H.P. had ADHD. AISD determined that H.P. would be placed in a standard classroom and did not need special education or occupational therapy. The results were immediately distributed to AMS and the Ponders requested a meeting with Gina Applegate, the school support specialist, Jinny Gonzalez, and Lesley Williams.

101.    The Ponders included Jinny Gonzalez in this communication because Grae Baker had stated it was a requirement for the continued enrollment of L.P. and R.P. in his email dated January 28, 2025.

102.    On January 30, 2025, Grae Baker sent a letter to all parents at AMS stating that the information provided by the Ponders was "misleading" and that "false claims" were made.

103.    On January 31, 2025, AMS terminated the enrollment of all three children. It was stated by AMS that the terminations occurred because the Ponder parents' "actions were detrimental to the school." Clearly the actions referred to are the filing of the HHS complaint, advocating for disability accommodations, and reaching out to other parents to discuss the concerns and determine if others were in a similar situation. The termination of the remaining Ponder children was retaliation.



104. While at AMS, improper punishment was used on Plaintiff H.P. He was repeatedly not allowed to finish his meals. HP was placed in a dark bathroom alone and/or with an adult for punishment and not for bathroom activities. H.P.'s outdoor play time as taken away. . Further, he was humiliated, instructed to clean up, and when something was outside his capabilities, instead of helping he was ridiculed and made to continue the task for extended periods of time. All of these punishments and actions are direct violations of state law and regulations

105. The impact on the family has been extreme. While attending the school, the quack medicine diagnosis and treatment plan instituted by Ms. Gonzalez caused H.P. harm. It further prevented him from getting the proper diagnosis with a licensed physician. H.P. was forced to attend expensive outside services at the demand of AMS.

106. H.P. has suffered extreme anxiety, mental anguish and distress at the hands of AMS. The level of torture he experienced was not understood until he was placed in a new school, where he is not only thriving, but has had zero behavior problems and is a model student. Clearly, the root of his behavior problems stemmed from AMS's intentional and negligent failure to address his needs. The Montessori teaching is to provide peaceful development, particularly from ages three to six, something that AMS did not provide the Ponder children.

107. The malicious punishments and unreasonable demands made of H.P. and the Ponders caused chaos, anxiety, and disruption of the entire family. The Ponders entire lives were dismantled, as the school would call with less than 15 minutes notice and demand that a child be picked up. They were no longer allowed to walk their children to school and were told when and how to wake their children each morning. Maria Montessori stated, "We must respect the child, and he must understand that he is respected." AMS neither respected nor made the Ponders feel respected. Further, the Ponders were forced to spend thousands of dollars on demanded outside

17



OT and other treatments that Ms. Gonzalez prescribed to treat the diagnosis of "underdeveloped will." These treatments were not necessary or beneficial to treat H.P.

108.    Due to the change in hours, Ross Ponder was forced to quit his job, to allow him to be available to pick up the children on a moment's notice. This has been detrimental to his income in both the long and short term.

109.    The impact on Sarah Ponder's career is significant. Some of her clients were in the AMS community. Sending a letter to the entire community defaming the Ponders will have serious long-term impacts on her company's growth. Ms. Ponder is aware of at least one client that she lost due to this entire situation.

110.    The impact on the children has been significant. They were forced from their school and the friends they had expected to go to school with until they graduated middle school. They were not able to be immediately placed in school, and the oldest child is in elementary school, thus causing a severe impact to her education.

111.    The expulsion caused extreme mental anguish for the entire family. Maria Montessori stated, "The things the child sees are not just remembered; they form part of his soul." This will forever impact the Ponder family.

## VI. CAUSES OF ACTION

### A. Count 1- Negligence

112.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

113.    The occurrences made the basis of this suit, and the resulting injuries and damages of the Plaintiffs were proximately caused by the negligent conduct of the Defendants. Defendants were

18



negligent by breaching the duty that was owed to the Plaintiffs, to exercise ordinary care in one or more of the following acts or omissions, constituting negligence:

    a. Failing to exercise the care necessary under the circumstances;

    b. Failing to do what a reasonable daycare would have done under the circumstances;

    c. Failing to intervene to ensure a child's safety;

    d. Failing to provide proper supervision;

    e. Failing to properly hire, qualify, train and supervise its employees

    f. Failing to provide reasonable accommodations

    g. Failing to adhere to the Texas Minimum standards for childcare.

114.    Defendant had a duty to exercise ordinary care in caring for and supervising the children in its care so as to prevent injury to Plaintiffs H.P., R.P. and L. P.

115.    Defendant had a duty to maintain a safe environment for children in its care;

116.    Defendant had a duty to hire, train, and supervise caregiver employees to ensure children were not subjected to inappropriate medical treatments or action plans and to prevent injury to Plaintiffs and other children similarly situated.

117.    Defendants breached the duty of care by failing to care for the children, failing to supervise the children, ailing to use positive methods of discipline, failing to stop discrimination, failing to provide accommodations, and failing to properly train, hire, and supervise its employees.

118.    Defendants' negligent acts and/or omissions, and breach of duties, directly and proximately caused injury to Plaintiffs, which resulted in significant damages.

**B. Count 2- Negligence Per Se**

119.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

19



120.    Defendants failed to exercise the mandatory stand of care in violation of the minimum standards for childcare.

121.    Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Repeatedly, AMS failed to use praise and encouragement, instead using humiliation and rejection with H.P.

122.    Texas law has specific maximums on the number of children that can be in a room. 26 TAC Sec. 746.1601-1615. These numbers were exceeded or the Ponder children were sent home to accommodate the new students after the holidays.

123.    Accommodations recommended by qualified professionals and medical experts were not provided to H.P. in violation of 26 TAC 746.2202.

124.    AMS failed to encourage H.P. to express feelings and failed to give him appropriate attention. 20 TAC 746.2601

125.    AMS failed to comply with the regulations regarding naptimes and food service for H.P. 26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321.

126.    AMS failed to notify the Ponders that AMS refused to administer or allow students to take ADHD medications in violations of 26 TAC Sec. 746.3811.

127.    AMS failed to follow the laws regarding release of children. 26 TAC Sec. 746.4103

128.    Additionally, according to AMS staff, AMS had 39 children in the Casita at one time, the location used for young children to nap. Clearly the state of Texas created these regulations to protect children. The violation of these statues harmed the Ponder family.

129.    Defendant Gonzalez violated the law by practicing medicine without a license. Defendants AMS and Baker supported and assisted Gonzalez in her medical endeavors.



130.    Plaintiffs were, at all times, members of the class that the statutes the Defendants violated were designed to protect.

131.    Defendants' violation of the statutes were the proximate cause of Plaintiffs' injuries.

132.    As a result of the Defendants illegal acts and/or omissions in violating the statues Plaintiffs sustained injuries.

## C. Count 3- Gross Negligence

133.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

134.    Defendants conduct was more than momentarily thoughtlessness or inadvertence.  Rather, the acts and/or omissions by Defendants constitute gross negligence as defined in the Texas Civil Practice and Remedies Code.

135.    Defendants conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to the Plaintiffs.  Defendants had actual, subjective awareness of the risk involved, but, nevertheless, proceeded in conscious indifference to the rights, safety, and/or welfare of the Plaintiff and/or other similarly situated individuals.  Plaintiffs suffered damages and further seek punitive damages.

## D. Count 4- Negligent Activity

136.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

137.    Defendant AMS is the owner, operator and possessor of the daycare premises.

138.    Defendants H.P., R.P., and L.P. were minor children placed in the care of Defendants and thus an "invitee" to whom Defendants owned a duty to exercise reasonable care.



139.     Defendants owed a legal duty to ensure the Plaintiffs' safety, ensuring employees are necessarily hired, trained, supervised, and terminated in order to maintain a safe environment for children.

140.     Such negligent activity on the part of Defendants proximately caused the injuries and other damages suffered by Plaintiffs.

## E. Count 5- Respondeat Superior

141.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

142.     The negligence, carelessness, and callousness of Defendant AMS's employees proximately caused the damage and loss suffered by Plaintiffs.   At all ties material to this action, Defendant AMS's employees were acting in the course and scope of their employment.   Accordingly, Defendant's may be held responsible for its employees' negligence under the doctrine of respondeat superior.

## F. Count 6- Violations of Section 504

143.     Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

144.     Defendants excluded Plaintiff H.P. from participation in activities and programs, and was denied the benefits of the services, programs, and activities and was subjected to discrimination because of his disability, ADHD.

145.     The actions of Defendant Gonzalez created an interference of professional bad faith or gross misjudgment.

146.     The actions of Defendants were done out of prejudice, ill will or spite against Plaintiffs.

147.     As a result of these acts, Plaintiffs suffered harm, injuries, and damages.



### G. Count 7-Breach of Contract

148.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

149.    Plaintiffs had entered into a valid contract for the provision of childcare services for their three minor children.  There was a meeting of the mind, evidenced by the signing of the contracts, applications, and general paperwork generated by Defendant AMS.

150.    Plaintiffs tendered performance according to the terms of the contact.

151.    Defendant AMS breached its duties and obligations under the contract, both explicit and implicit, pertaining to providing appropriate care, custody, and supervision by all acts stated above.

152.    Defendant AMS's breach was the proximate cause of damages to Plaintiffs, both direct and incidental/consequential.

153.    Further, Plaintiffs seek to recover their attorney fees under the Texas Civil Practices and Remedies Code.

### H. Count 8- Fraud

154.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

155.    Plaintiffs discovered that Defendants had been defrauding them by making promises and commitments to get Plaintiffs payments and re-enroll their children when Defendants, particularly Defendant Baker, knew the statements were false and that he had no intention of fulfilling.

156.    Defendants made material misrepresentations that were false.  Defendants knew these statements were false or they were made recklessly without any knowledge of the truth and as a positive assertion.



157.    Defendants made the statements with the intention that Plaintiffs would act upon it and Plaintiffs acted in reliance of the representations and causing injury, damages, and harm.

158.    Plaintiffs seek treble damages and attorney fees.

## I.    Count 9- Fraudulent Inducement to Contract and Breach of Contract

159.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

160.    The Ponders enrolled all their children at AMS because AMS stated that they followed the Montessori teaching paradigm and that they would offer full-day schooling for the three children, meaning the children would attend AMS from 8 am to 3 pm Monday-Friday. The Ponders relied on these assertions when entering into contracts with AMS.

161.    The mission of the school stated that they are inclusive and "cultivate compassion and respect." Unfortunately, the administration of AMS lacked compassion and respect for the entire Ponder family.

162.    The teachings of Montessori include "protecting the autonomy and integrity" of a student and developing a program that follows "the developmental states manifested by the children" and "honor and respect each child's individual timetable for development."    Bryant Goertz, Donna. "Children Who Are Not Yet Peaceful: Preventing Exclusion in the Early Elementary Classroom," Frog, Ltd. Berkeley, CA, 2001. "Edmond, Nadia and Tad: The Gift of Time" is the title of chapter twelve. The Montessori teachings do not include discrimination and refusal to comply with 504 and provide accommodations.

163.    The Ponders were further induced to reenroll for a second year. The AMS handbook clearly stated that the Guides would be trained by AMI and would engage in the "most authentic standard of Montessori pedagogy" and that the Guides would have an understanding of

24



developmental milestones and ensure a structured learning approach that aligns with the AMI guidance.

164.    AMS further promised to guide students to their fullest potential using the Montessori principles of independence, self-discipline, and social belonging.  These principals were not utilized with H.P.

165.    The AMS parent handbook outlines procedures for programmatic changes that were not followed.  The AMS parent handbook states that AMS will work in partnership with the parents. AMS refused to provide information, observations regarding the Ponder children, or hold requested conferences.

166.    AMS further stated that it would not discriminate and complies with ADA and Section 504 of the Rehabilitation Act of 1973, as amended.  Grae Baker was the alleged coordinator, yet the school insisted that Jinny Gonzalez be the point person and Grae Baker failed to address or even discuss violations.

167.    AMS fraudulently induced the Ponder family to contract for all three children's education. AMS breached its contracts with the Ponders by failing to provide 504 services for H.P., failing to allow the children to receive full day education, and failing to follow the school policies.

168.    As a result of Defendants fraudulent inducement, Plaintiffs suffered harm, injury and damages.  Further, Plaintiffs seek attorney fees and treble damages.


## J. Count 10- Civil Conspiracy

169.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.



170.    Defendants acted in combination to seek or accomplish a course of action to commit unlawful acts. Defendants worked together to perform an illegal activity, namely the practice of medicine without a license and the offering of medical services without being licensed as a medical treatment facility.    There was a meeting of the minds of the Defendants to agree to accomplish the above stated unlawful acts. Defendants were aware of the intended harm or wrongful conduct at the outset of the combination or agreement.  As a result, Plaintiffs suffered harm, injury and damages.

K.  **Count 11- Retaliation**

171.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

172.    Plaintiffs and Defendants did not agree on the use of medication to treat a child who suffers from ADHD.  While the school did not have a no medication policy, Defendant Gonzalez clearly felt that it was unacceptable to treat H.P. in the manner his physician recommended. Ms. Gonzalez was not a doctor and had no training or experience to justify her position or the action plans she required. Ms. Gonzalez had very specific requirements for treatment of H.P., both at home and at school, including requiring the Ponders to drive to school, wake up children in a certain order, and other questionable commands.  AMS allowed Defendant Gonzalez to make these unfounded commands and fully protected her quack medicine.  The Ponders voiced concern over these methods and were shut down by Ms., Gonzalez. Further, she failed to provide insight on what was occurring in the classroom or how any of her requirements would provide any effective change.

173.    When the Ponders asked to discuss with another staff member and remove Defendant Gonzalez from H.P.'s case, Defendant Baker refused to accommodate, chastised the Ponders for their request, fully supported Ms. Gonzalez, and expelled H.P. in retaliation for Plaintiffs

26



medicating H.P. The school's support of Ms. Gonzalez's quack medicine is very concerning, as she is not a physician nor trained in any way on the treatment of children with ADHD.

174.    Defendant AAMS retaliated for when the Ponders requested ADHD accommodations under 504 and wanted to follow the treatment plan prescribed by their actual physician instead of following the quack medicine prescribed by Ms. Gonzalez.

175.    Defendants retaliated for the filing of a complaint with the HHS by threatening and later actually expelling the Ponder children.

176.    The Ponders care not only about their own children but about the entire AMS community. When they learned that H.P. had been expelled, they decided to bring their concerns to the attention of other parents, in hopes of making AMS better for all students attending. The policies and procedures were not followed with H.P. As such, the Ponders reached out to the community so that the community as a whole, could work together to find ways to foster better communication. The Ponders posted a letter to all parents on the WhatsApp on January 28, 2025. The letter did not violate any rules of AMS. AMS had the letter taken down on January 30, 2025. Yet, as a further act of retaliation, AMS chose to send an email making defamatory statements against the Ponders to all families at AMS.

## VII. DAMAGES

177.    Plaintiffs incorporate by reference the above paragraphs by reference as if stated fully herein.

178.    Defendants' acts and omissions jointly and singularly, were the proximate cause of injuries to Plaintiffs, including but not limited to:

    1.  Loss of value of the tuition/fees that Plaintiffs paid for the childcare



2. Loss of wages for Mr. and/or Ms. Ponder incurred by having to stay home and care for H.P. and R.P when they were sent home early and while they began the long, slow, and careful process of finding another school/childcare to entrust their children, after undergoing such a traumatic ordeal;

3. Medical expenses for the reasonable and necessary examination of H.P.;

4. Medical expenses for the reasonable and necessary family and individual counseling and therapy for Plaintiffs

5. The cost of the unnecessary and inappropriate therapies and quack medicine that Defendants required Plaintiffs seek for H.P.

6. Physical pain and suffering in the past;

7. Physical pain and suffering, in reasonable probability, sustained in the future;

8. Mental anguish in the past;

9. Mental anguish, in reasonable probability, sustained in the future;

10. Lost wages in the past;

11. Lost wages, in reasonable probability, sustained in the future;

12. Loss of wage-earning capacity in the past

13. Loss of wages/earning capacity, in reasonable probability, sustained in the future;

14. Loss of normal enjoyment of the pleasure of life in the past;

15. Loss of normal enjoyment of the pleasure of life, in reasonable probability, sustained in the future;

16. Treble damages;

17. Punitive damages;

18. Pre-judgment interest;

28



19. Post-judgment interest;

20. Court costs;

21. Reasonable and necessary attorney fees;

22. Costs of suit

## VIII. CONDITIONS PRECEDENT

179.     All conditions precedent have been performed or occurred, except for mediation which is addressed below.

## IX. JURY DEMAND

180.     Plaintiffs respectfully demand the right to have a trial by jury and have tendered the jury fee in Travis County District Court.

## X. PRAYER

WHEREFORE, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial Plaintiffs have and recover:

1.  Judgment against Defendants for a sum in excess of the minimum jurisdictional limits of this Court;

2.  Pre-judgment at the highest legal rate;

3.  Reasonable and necessary attorney's fees;

4.  Taxable Court costs;

5.  Post-judgment interest on the above amount at the highest legal rate; and

6.  Such other and further relief to which Plaintiff may show themselves justly entitled in law or equity.

29



Respectfully submitted,

**WELBORN LAW LLC**
1100 West Ave.
Austin, Texas 78701
Telephone: (512) 825-3390

By: /s/ Amy C. Welborn
    Amy C. Welborn
    State Bar No. 24012853
    amy@welborn-law.com

**ATTORNEY FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent by e-filing to counsel of record, in accordance with the Texas Rules of Civil Procedure on this 10th day of November, 2025.

Christopher Schulz
cshulz@slh-law.com
Elizabeth Angelone
eanglone@slh-law.com
Randee J. Hobbs
rhobbs@slh-law.com
SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP
Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759

/s/ Amy C. Welborn
Amy C. Welborn



## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Kim Chambers on behalf of Amy Catherine Welborn
Bar No. 24012853
kim@welborn-law.com
Envelope ID: 107859919
Filing Code Description: Amended Filing
Filing Description: PLAINTIFFS SECOND AMENDED COMPLAINT
Status as of 11/10/2025 3:50 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/10/2025 12:05:41 PM | SENT |



Dec. 9, 2025

J. LUCAS



11/13/2025 8:41 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Nodra Ybarra

Cause No. D-1-GN-25-002212

ROSS PONDER and SARAH PONDER,
Individually, and as Next Friend of
H.P., L.P., and R.P., Minors
vs.
AUSTIN MONTESSORI SCHOOL, INC.,
RONALD GRAE BAKER, Individually,
And JINNY GONZALEZ, Individually

§
§
§
§
§
§
§

IN THE DISTRICT COURT OF

TRAVIS COUNTY, TEXAS

345TH JUDICIAL DISTRICT

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

TO: ALL PARTIES BY AND THROUGH THEIR ATTORNEY(S) OF RECORD AS PROVIDED IN THE ATTACHED
SERVICE LIST.

You will take notice that twenty (20) days after the service hereof, with attached questions, a deposition by written questions
will be asked of the witness:

RACHEL MEANS-(Client Record Scope)
5800 BRODIE LN, UNIT 335, AUSTIN, TX 78745

JACKIE TREVINO-(Client Record Scope)
2802 MAGNUM RD., LAREDO, TX 78043

JILLIAN BRIONES-(Client Record Scope)
105 BUTEO ST., CEDAR CREEK, TX 78612

AUZANA KASNAIA-(Client Record Scope)
6811 KENOSHA PASS, AUSTIN, TX 78749

HEATHER HOLLIS-(Client Record Scope)
502 POWELL CIR, AUSTIN, TX 78704

TABITHA BURGESS-(Client Record Scope)
9509 SANFORD DR., AUSTIN, TX 78748

Such questions to be answered on or after *12/02/2025*, before a Notary Public at the instance of:
Written Deposition Service, LLC
1755 Wittington Place, Suite 750
Dallas, TX 75234

The deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause
pending in the above named court. Notice is further given that request is hereby made as authorized under Rule(s) 200 &
201(b), Texas Rules of Civil Procedure, to the officer taking this deposition to issue a Subpoena Duces Tecum and cause it to
be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other
such record in the possession, custody or control of the said witness, and every such record to which the witness may have
access, and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of
the same may be made and attached to said deposition.



Respectfully Submitted,

*/s/Amy Welborn*

Amy Welborn
SBA #: 24012853
Welborn Law
1100 West Ave
Austin, TX 78701
512-200-2150
amy@welborn-law.com

Attorney for: Plaintiff



# CERTIFICATE OF SERVICE

I certify that a true and exact copy of foregoing Notice of Intention to Take Deposition upon Written Questions was served to all attorneys of record in the above-styled and numbered matter, said service being effected in the following manner:

CERTIFIED MAIL/RETURN RECEIPT REQUESTED _____

HAND DELIVERY _____

TELECOPY ✓

OVERNIGHT/NEXT DAY DELIVERY VIA LONE STAR OR UPS _____

E-MAIL _____

E-FILE _____

DATED: 11/3/25

BY: /s/ Nicole Whitesides

SERVED TO ALL PARTIES LISTED BELOW:
*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*
**ATTORNEYS OF RECORD**

Christopher Schulz
Schulman, Lopez, Hoffer & Adelstein, LLP
9011 Mountain Ridge Dr., Suite 210
Austin, TX 78759
512-840-0022; Fax: 210-538-5384
Attorney For: Defendant



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, Individually, and as Next Friend of H.P., L.P., and R.P., Minors | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | |
| | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS: RACHEL MEANS

1. State your full name and occupation, address and telephone number.

   ANSWER:    (NAME) _____
                     (OCCUPATION)_____
                     (ADDRESS) _____
                     (CITY, STATE, ZIP)_____
                     (TELEPHONE #)_____
                     (EMAIL) _____

2. In response to the Subpoena Duces Tecum you received, have you produced **RECORDS AS NAMED IN THE ATTACHED EXHIBIT?**

   ANSWER: _____

3. Are you able to identify these records as the originals or true and correct copies of the originals?

   ANSWER: _____



4.    Were these records made and kept in the regular course of your business?

      ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

      ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

      ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

      ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

      ANSWER: _____

9.    Were these records kept as described in the previous questions?

      ANSWER: _____

10.    Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

      ANSWER: _____

11.    Has anything been removed or redacted in the original records before making these copies?

      ANSWER: _____

12.    If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

      ANSWER: _____



13.  What is your retention policy?

    ANSWER: _____

14.  Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

    ANSWER:    (circle one) YES/NO


    I, _____ (Witness), do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.



                                     _____
                                     Witness

    I, Notary Public, do hereby certify the above Witness was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Witness testimony.


**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20___.**


                                     _____
                                     SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                                     _____
                                     NAME OF NOTARY PUBLIC TYPED OR PRINTED
                                     My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS:
### JACKIE TREVINO

1.  State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
    (OCCUPATION)_____
    (ADDRESS) _____
    (CITY, STATE, ZIP)_____
    (TELEPHONE #)_____
    (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced **RECORDS AS NAMED IN THE ATTACHED EXHIBIT?**

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: **82556.002**



4.    Were these records made and kept in the regular course of your business?

ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

ANSWER: _____

9.    Were these records kept as described in the previous questions?

ANSWER: _____

10.    Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

ANSWER: _____

11.    Has anything been removed or redacted in the original records before making these copies?

ANSWER: _____

12.    If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

ANSWER: _____



13.    What is your retention policy?

       ANSWER: _____

14.    Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

       ANSWER:     (circle one) YES/NO

    I, _____ (Witness), do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


                                   _____
                                   Witness

    I, Notary Public, do hereby certify the above Witness was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Witness testimony.


**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


                              _____
                              SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                              _____
                              NAME OF NOTARY PUBLIC TYPED OR PRINTED
                              My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, Individually, and as Next Friend of H.P., L.P., and R.P., Minors | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| vs. | § | |
| AUSTIN MONTESSORI SCHOOL, INC., | § | TRAVIS COUNTY, TEXAS |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | |
| | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS: JILLIAN BRIONES

1.  State your full name and occupation, address and telephone number.

    ANSWER:      (NAME) _____
                     (OCCUPATION)_____
                     (ADDRESS) _____
                     (CITY, STATE, ZIP)_____
                     (TELEPHONE #)_____
                     (EMAIL) _____

2.  In response to the Subpoena Duces Tecum you received, have you produced **RECORDS AS NAMED IN THE ATTACHED EXHIBIT?**

    ANSWER: _____

3.  Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____

Order #: 82556.003



4.    Were these records made and kept in the regular course of your business?

       ANSWER: _____

5.    In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

       ANSWER: _____

6.    Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

       ANSWER: _____

7.    Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

       ANSWER: _____

8.    Were the records or documents prepared at or about the time of the events and conditions they record?

       ANSWER: _____

9.    Were these records kept as described in the previous questions?

       ANSWER: _____

10.   Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

       ANSWER: _____

11.   Has anything been removed or redacted in the original records before making these copies?

       ANSWER: _____

12.   If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

       ANSWER: _____



13.     What is your retention policy?

ANSWER: _____

14.     Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:     (circle one) YES/NO


I, _____ (Witness), do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Witness

I, Notary Public, do hereby certify the above Witness was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Witness testimony.


**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS ____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: 82556.003



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS:
## AUZANA KASNAIA

1.    State your full name and occupation, address and telephone number.

    ANSWER:    (NAME) _____
              (OCCUPATION)_____
              (ADDRESS) _____
              (CITY, STATE, ZIP)_____
              (TELEPHONE #)_____
              (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **RECORDS AS NAMED IN THE ATTACHED EXHIBIT**?

    ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

    ANSWER: _____



4.   Were these records made and kept in the regular course of your business?

     ANSWER: _____

5.   In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

     ANSWER: _____

6.   Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

     ANSWER: _____

7.   Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

     ANSWER: _____

8.   Were the records or documents prepared at or about the time of the events and conditions they record?

     ANSWER: _____

9.   Were these records kept as described in the previous questions?

     ANSWER: _____

10.  Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

     ANSWER: _____

11.  Has anything been removed or redacted in the original records before making these copies?

     ANSWER: _____

12.  If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

     ANSWER: _____



13.    What is your retention policy?

ANSWER: _____

14.    Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

ANSWER:    (circle one) YES/NO


I, _____ (Witness), do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.


_____
Witness

I, Notary Public, do hereby certify the above Witness was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Witness testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**


_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82556.004**



CAUSE NO: D-1-GN-25-002212

| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS:
### HEATHER HOLLIS

1.    State your full name and occupation, address and telephone number.

ANSWER:     (NAME) _____
            (OCCUPATION)_____
            (ADDRESS) _____
            (CITY, STATE, ZIP)_____
            (TELEPHONE #)_____
            (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **RECORDS AS NAMED IN THE ATTACHED EXHIBIT**?

ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____



4.  Were these records made and kept in the regular course of your business?

    ANSWER: _____

5.  In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

    ANSWER: _____

6.  Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

    ANSWER: _____

7.  Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

    ANSWER: _____

8.  Were the records or documents prepared at or about the time of the events and conditions they record?

    ANSWER: _____

9.  Were these records kept as described in the previous questions?

    ANSWER: _____

10. Please examine copies of the original requested records. Have you produced records for attachment to this Deposition?

    ANSWER: _____

11. Has anything been removed or redacted in the original records before making these copies?

    ANSWER: _____

12. If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

    ANSWER: _____

Order #: **82556.005**



13.     What is your retention policy?

        ANSWER: _____

14.     Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial
        if you have not provided all of the papers, notes, documents, records, general correspondence, or other
        tangible items of any kind pertaining to the above named individual to the Notary Public taking your
        deposition?

        ANSWER:     (circle one) YES/NO


        I, _____ (Witness), do swear or affirm that my answers
to the above questions are the truth, the whole truth and nothing but the truth, so help me God.



                                        _____
                                        Witness

        I, Notary Public, do hereby certify the above Witness was duly sworn and the non-stenographic
recording of this Written Deposition is a true record of the Witness testimony.


        **GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF
_____, 20__.**


                        _____
                        SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

                        _____
                        NAME OF NOTARY PUBLIC TYPED OR PRINTED
                        My Commission expires_____



CAUSE NO: D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS:
## TABITHA BURGESS

1.    State your full name and occupation, address and telephone number.

   ANSWER: (NAME) _____
        (OCCUPATION)_____
        (ADDRESS) _____
        (CITY, STATE, ZIP)_____
        (TELEPHONE #)_____
        (EMAIL) _____

2.    In response to the Subpoena Duces Tecum you received, have you produced **RECORDS AS NAMED IN THE ATTACHED EXHIBIT**?

   ANSWER: _____

3.    Are you able to identify these records as the originals or true and correct copies of the originals?

   ANSWER: _____

Order #: **82556.006**



4.     Were these records made and kept in the regular course of your business?

       ANSWER: _____

5.     In the regular course of business of your practice, business, or institution, did the person who signed the records and/or reports either have personal knowledge of the entries shown on the records and/or reports, or obtain the information to make the entries from the sources who have such personal knowledge?

       ANSWER: _____

6.     Were such memoranda or documents then transmitted to your files and thereafter maintained under your care, supervision, direction, custody, control or access as custodian of this facility?

       ANSWER: _____

7.     Were the memoranda or documents that were transmitted to your files original entries on the part of the Custodian or other employee or member of the staff of this facility?

       ANSWER: _____

8.     Were the records or documents prepared at or about the time of the events and conditions they record?

       ANSWER: _____

9.     Were these records kept as described in the previous questions?

       ANSWER: _____

10.    Please examine copies of the original requested records.  Have you produced records for attachment to this Deposition?

       ANSWER: _____

11.    Has anything been removed or redacted in the original records before making these copies?

       ANSWER: _____

12.    If you have answered the previous question yes, please state the alterations or redactions that were made and list any "removed" documents.

       ANSWER: _____



13.    What is your retention policy?

        ANSWER: _____

14.    Are you aware that it may be necessary to subpoena you or your employer to court at the time of trial if you have not provided all of the papers, notes, documents, records, general correspondence, or other tangible items of any kind pertaining to the above named individual to the Notary Public taking your deposition?

        ANSWER:    (circle one) YES/NO

        I, _____ (Witness), do swear or affirm that my answers to the above questions are the truth, the whole truth and nothing but the truth, so help me God.

_____
Witness

    I, Notary Public, do hereby certify the above Witness was duly sworn and the non-stenographic recording of this Written Deposition is a true record of the Witness testimony.

**GIVEN UNDER MY HAND AND SEAL OF OFFICE, THIS _____ DAY OF _____, 20__.**

_____
SIGNATURE OF NOTARY PUBLIC IN AND FOR THE STATE OF TX

_____
NAME OF NOTARY PUBLIC TYPED OR PRINTED
My Commission expires_____

Order #: **82556.006**



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

## County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Witness: RACHEL MEANS

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Wittington Place, Suite 750, Dallas, TX 75234,** on or after **12/02/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **RECORDS AS NAMED IN THE ATTACHED EXHIBIT;** at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn,** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

***Ross Ponder, et al vs. Austin Montessori School, Inc., et al***

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this ____ day of _____, 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

**§7.03 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this ____ day of _____, 20____ and executed this the ____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82556.001**



# EXHIBIT

## RECORDS TO BE PRODUCED

All communications, documents, notes, personal observations, social media, text messages, emails, manuals, electronic documents, trainings, etc.
1. regarding any of Ponder kids.
2. regarding Ross Ponder
3. Regarding Sarah Ponder
3. Regarding this lawsuit.
4. regarding the classrooms in which Hank Ponder was in during the times he was there
5. regarding the classrooms in which Ruth Ponder was in during the times she was there
6. regarding the classrooms in which Lucy Ponder was in during the times she was there
5. regarding HHS standards
6. regarding HHS violations
7. trainings of staff
6. regarding communications or interactions with parents.
7. regarding discipline at AMS
8. regarding toileting at AMS
9. regarding naps at AMS
10. regarding food at AMS
11. regarding Jinny Gonzalez
12. regarding Grae Baker
13. regarding one or more children being put in a bathroom for non-toilet purposes
14. regarding one or more children being isolated from their peers for more than 5 minutes.
15. regarding staffing concerns during the time period.
16. regarding contractual agreements, including separation agreements
17. Employee handbooks
18. Mandatory employee trainings
19. regarding philosophies of AMS that differ from traditional Montessori teachings
20. regarding 'undeveloped will"

Order #82556.1-6



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

## County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Witness: JACKIE TREVINO

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Wittington Place, Suite 750, Dallas, TX 75234,** on or after **12/02/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **RECORDS AS NAMED IN THE ATTACHED EXHIBIT;** at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn,** amy@welborn-law.com Texas Bar No. **24012853** Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

### *Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND this 10th day of November 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

§176.8 Enforcement of Subpoena (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82556.002**



# EXHIBIT

## RECORDS TO BE PRODUCED

All communications, documents, notes, personal observations, social media, text messages, emails, manuals, electronic documents, trainings, etc.

1. regarding any of Ponder kids.
2. regarding Ross Ponder
3. Regarding Sarah Ponder
3. Regarding this lawsuit.
4. regarding the classrooms in which Hank Ponder was in during the times he was there
5. regarding the classrooms in which Ruth Ponder was in during the times she was there
6. regarding the classrooms in which Lucy Ponder was in during the times she was there
5. regarding HHS standards
6. regarding HHS violations
7. trainings of staff
6. regarding communications or interactions with parents.
7. regarding discipline at AMS
8. regarding toileting at AMS
9. regarding naps at AMS
10. regarding food at AMS
11. regarding Jinny Gonzalez
12. regarding Grae Baker
13. regarding one or more children being put in a bathroom for non-toilet purposes
14. regarding one or more children being isolated from their peers for more than 5 minutes.
15. regarding staffing concerns during the time period.
16. regarding contractual agreements, including separation agreements
17. Employee handbooks
18. Mandatory employee trainings
19. regarding philosophies of AMS that differ from traditional Montessori teachings
20. regarding 'undeveloped will"



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

## County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Witness: JILLIAN BRIONES

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Wittington Place, Suite 750, Dallas, TX 75234**, on or after **12/02/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **RECORDS AS NAMED IN THE ATTACHED EXHIBIT;** at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn,** amy@welborn-law.com Texas Bar No. **24012853** Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

~~WITNESS MY HAND~~ this ___ day of _____ 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82556.003**



# EXHIBIT

## RECORDS TO BE PRODUCED

All communications, documents, notes, personal observations, social media, text messages, emails, manuals, electronic documents, trainings, etc.
1. regarding any of Ponder kids.
2. regarding Ross Ponder
3. Regarding Sarah Ponder
3. Regarding this lawsuit.
4. regarding the classrooms in which Hank Ponder was in during the times he was there
5. regarding the classrooms in which Ruth Ponder was in during the times she was there
6. regarding the classrooms in which Lucy Ponder was in during the times she was there
5. regarding HHS standards
6. regarding HHS violations
7. trainings of staff
6. regarding communications or interactions with parents.
7. regarding discipline at AMS
8. regarding toileting at AMS
9. regarding naps at AMS
10. regarding food at AMS
11. regarding Jinny Gonzalez
12. regarding Grae Baker
13. regarding one or more children being put in a bathroom for non-toilet purposes
14. regarding one or more children being isolated from their peers for more than 5 minutes.
15. regarding staffing concerns during the time period.
16. regarding contractual agreements, including separation agreements
17. Employee handbooks
18. Mandatory employee trainings
19. regarding philosophies of AMS that differ from traditional Montessori teachings
20. regarding 'undeveloped will"



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

## County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Witness: AUZANA KASNAIA**
to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Wittington Place, Suite 750, Dallas, TX 75234**, on or after **12/02/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **RECORDS AS NAMED IN THE ATTACHED EXHIBIT; at any and all times whatsoever.**

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn,** amy@welborn-law.com Texas Bar No. **24012853** Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND** this ___ day of _____ 2025.

_____
NOTARY PUBLIC

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

176.8 Enforcement of Subpoena. (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82556.004**



# EXHIBIT

## RECORDS TO BE PRODUCED

All communications, documents, notes, personal observations, social media, text messages, emails, manuals, electronic documents, trainings, etc.
1. regarding any of Ponder kids.
2. regarding Ross Ponder
3. Regarding Sarah Ponder
3. Regarding this lawsuit.
4. regarding the classrooms in which Hank Ponder was in during the times he was there
5. regarding the classrooms in which Ruth Ponder was in during the times she was there
6. regarding the classrooms in which Lucy Ponder was in during the times she was there
5. regarding HHS standards
6. regarding HHS violations
7. trainings of staff
6. regarding communications or interactions with parents.
7. regarding discipline at AMS
8. regarding toileting at AMS
9. regarding naps at AMS
10. regarding food at AMS
11. regarding Jinny Gonzalez
12. regarding Grae Baker
13. regarding one or more children being put in a bathroom for non-toilet purposes
14. regarding one or more children being isolated from their peers for more than 5 minutes.
15. regarding staffing concerns during the time period.
16. regarding contractual agreements, including separation agreements
17. Employee handbooks
18. Mandatory employee trainings
19. regarding philosophies of AMS that differ from traditional Montessori teachings
20. regarding 'undeveloped will"



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

## County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Witness: HEATHER HOLLIS

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Wittington Place, Suite 750, Dallas, TX 75234,** on or after **12/02/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **RECORDS AS NAMED IN THE ATTACHED EXHIBIT**; at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn,** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212,** pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 12th day of _____November_____, 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

**176.8 Enforcement of Subpoena. (a)** *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82556.005**



# EXHIBIT

## RECORDS TO BE PRODUCED

All communications, documents, notes, personal observations, social media, text messages, emails, manuals, electronic documents, trainings, etc.
1. regarding any of Ponder kids.
2. regarding Ross Ponder
3. Regarding Sarah Ponder
3. Regarding this lawsuit.
4. regarding the classrooms in which Hank Ponder was in during the times he was there
5. regarding the classrooms in which Ruth Ponder was in during the times she was there
6. regarding the classrooms in which Lucy Ponder was in during the times she was there
5. regarding HHS standards
6. regarding HHS violations
7. trainings of staff
6. regarding communications or interactions with parents.
7. regarding discipline at AMS
8. regarding toileting at AMS
9. regarding naps at AMS
10. regarding food at AMS
11. regarding Jinny Gonzalez
12. regarding Grae Baker
13. regarding one or more children being put in a bathroom for non-toilet purposes
14. regarding one or more children being isolated from their peers for more than 5 minutes.
15. regarding staffing concerns during the time period.
16. regarding contractual agreements, including separation agreements
17. Employee handbooks
18. Mandatory employee trainings
19. regarding philosophies of AMS that differ from traditional Montessori teachings
20. regarding 'undeveloped will"

Order #82556.1-6



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

## County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

## Witness: TABITHA BURGESS

to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Wittington Place, Suite 750, Dallas, TX 75234**, on or after **12/02/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **RECORDS AS NAMED IN THE ATTACHED EXHIBIT**; at any and all times whatsoever.

Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al**, represented by **Amy Welborn**, amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County**, Texas.

This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*

and there remain from day to day and time to time until discharged according to law.

WITNESS MY HAND, this 12th day of _December_ 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

176.8 Enforcement of Subpoena. (a) *Contempt*. Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

### OFFICER'S RETURN

Came to hand this _____ day of _____, 20____ and executed this the _____ day of _____, 20____, in the following manner: By delivering to the witness _____, a true copy hereof, with attached witness fee of $_____.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. **82556.006**



# EXHIBIT

## RECORDS TO BE PRODUCED

All communications, documents, notes, personal observations, social media, text messages, emails, manuals, electronic documents, trainings, etc.
1. regarding any of Ponder kids.
2. regarding Ross Ponder
3. Regarding Sarah Ponder
3. Regarding this lawsuit.
4. regarding the classrooms in which Hank Ponder was in during the times he was there
5. regarding the classrooms in which Ruth Ponder was in during the times she was there
6. regarding the classrooms in which Lucy Ponder was in during the times she was there
5. regarding HHS standards
6. regarding HHS violations
7. trainings of staff
6. regarding communications or interactions with parents.
7. regarding discipline at AMS
8. regarding toileting at AMS
9. regarding naps at AMS
10. regarding food at AMS
11. regarding Jinny Gonzalez
12. regarding Grae Baker
13. regarding one or more children being put in a bathroom for non-toilet purposes
14. regarding one or more children being isolated from their peers for more than 5 minutes.
15. regarding staffing concerns during the time period.
16. regarding contractual agreements, including separation agreements
17. Employee handbooks
18. Mandatory employee trainings
19. regarding philosophies of AMS that differ from traditional Montessori teachings
20. regarding 'undeveloped will"

Order #82556.1-6



# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108040927
Filing Code Description: No Fee Documents
Filing Description: NOTICE OF INTENTION TAKE DEPOSITION BY WRITTEN QUESTIONS
Status as of 11/19/2025 10:28 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 11/13/2025 8:41:26 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/13/2025 8:41:26 PM | SENT |
| Jacqueline Hello | | jacqueline@welborn-law.com | 11/13/2025 8:41:26 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/13/2025 8:41:26 PM | SENT |

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Taylor Norman | | tnorman@slh-law.com | 11/13/2025 8:41:26 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/13/2025 8:41:26 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/13/2025 8:41:26 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 11/13/2025 8:41:26 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/13/2025 8:41:26 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 11/13/2025 8:41:26 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 11/13/2025 8:41:26 PM | SENT |



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108040927
Filing Code Description: No Fee Documents
Filing Description: NOTICE OF INTENTION TAKE DEPOSITION BY WRITTEN QUESTIONS
Status as of 11/19/2025 10:28 AM CST

Associated Case Party: SARAH PONDER

| Amy Welborn | | amy@welborn-law.com | 11/13/2025 8:41:26 PM | SENT |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 11/13/2025 8:41:26 PM | SENT |







**NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA.**

# WDSLegal
The Service of Preference

11/25/2025 12:39 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Jonathan Sanders

1755 Wittington Place, Suite 750, Dallas, TX 75234

===============================================================

Telephone (972) 488-5555 ~ (800) 346-4405
Hayley@WDSLegal.com ~ www.WrittenDeposition.com

## Cause No. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## CERTIFICATION
### Rule 203 Filing

**RECORDS FROM: BLUE MONARCH PEDIATRICS - BILLING-Billing Records**
**Our Ref #: 82104.002**

**WITNESS: Timothy Whitaker**

On **11/07/2025** a deposition on written questions was conducted and records from the above named facility pertaining to **(MINOR)** were obtained by Deposition on Written Questions. The above named witness was duly sworn by, **Seyed Laura Neghin Emamian,** a notary public and the non-stenographic recording of the written deposition is a true record of the witness' testimony.

The taxable cost to be paid by **Amy Welborn, TBA 24012853,** amy@welborn-law.com attorney for **Ross Ponder, et al,** is **$160.40.** This charge is for the preparation of the completed Deposition by Written Questions with original exhibits.

The transcript with attached exhibits, if any was delivered to:
**Amy Welborn**
**Welborn Law**
**1100 West Ave**
**Austin, TX 78701**

A copy of this certificate was served on all following parties pursuant to TRCP Rule 203.3 on or about **11/18/25** via __X__ eservice/electronic delivery, or ____ certified mail, postage prepaid:
**Amy Welborn (Welborn Law)**
**Christopher Schulz (Schulman, Lopez, Hoffer & Adelstein, LLP)**

Pursuant to Texas Rules of Civil Procedure 203, I, the undersigned Notary Public in and for the State of Texas do hereby certify the above to be true as stated.

Given under my hand and seal of office, this **18th day of November, 2025.**

```
ANDREA HURLEY
Notary Public, State of Texas
Comm. Expires 01-31-2028
Notary ID 134739657
```

_____
NOTARY PUBLIC IN THE STATE OF TEXAS



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108452730
Filing Code Description: No Fee Documents
Filing Description: RULE 203 CERTIFICATE - BLUE MONARCH PEDIATRICS
Status as of 11/29/2025 2:53 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 11/25/2025 12:39:14 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/25/2025 12:39:14 PM | SENT |
| Jacqueline Hello | | jacqueline@welborn-law.com | 11/25/2025 12:39:14 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/25/2025 12:39:14 PM | SENT |

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Taylor Norman | | tnorman@slh-law.com | 11/25/2025 12:39:14 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/25/2025 12:39:14 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/25/2025 12:39:14 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 11/25/2025 12:39:14 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/25/2025 12:39:14 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:39:14 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:39:14 PM | SENT |



## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 108452730
Filing Code Description: No Fee Documents
Filing Description: RULE 203 CERTIFICATE - BLUE MONARCH
PEDIATRICS
Status as of 11/29/2025 2:53 PM CST

Associated Case Party: SARAH PONDER

| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:39:14 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:39:14 PM | SENT |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on Dec. 9, 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS



NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA



**WDSLegal**
the Service of Excellence

11/25/2025 12:40 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Jonathan Sanders

1755 Wittington Place, Suite 750, Dallas, TX 75234

Telephone (972) 488-5555 ~ (800) 346-4405
Hayley@WDSLegal.com ~ www.WrittenDeposition.com

### Cause No. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

## CERTIFICATION
### Rule 203 Filing

**RECORDS FROM: BLUE MONARCH PEDIATRICS-Medical Records**
**Our Ref #: 82103.001**

**WITNESS: Timothy Whitaker**

On **11/07/2025** a deposition on written questions was conducted and records from the above named facility pertaining to **(MINOR)** were obtained by Deposition on Written Questions. The above named witness was duly sworn by, **Seyed Laura Neghin Emamian**, a notary public and the non-stenographic recording of the written deposition is a true record of the witness' testimony.

The taxable cost to be paid by **Amy Welborn, TBA 24012853, amy@welborn-law.com** attorney for **Ross Ponder, et al**, is **$167.40**. This charge is for the preparation of the completed Deposition by Written Questions with original exhibits.

The transcript with attached exhibits, if any was delivered to:
Amy Welborn
Welborn Law
1100 West Ave
Austin, TX 78701

A copy of this certificate was served on all following parties pursuant to TRCP Rule 203.3 on or about **11/18/25** via __X__ eservice/electronic delivery, or ____ certified mail, postage prepaid:
Amy Welborn (Welborn Law)
Christopher Schulz (Schulman, Lopez, Hoffer & Adelstein, LLP)

Pursuant to Texas Rules of Civil Procedure 203, I, the undersigned Notary Public in and for the State of Texas do hereby certify the above to be true as stated.

Given under my hand and seal of office, this **18th day of November, 2025.**

ANDREA HURLEY
Notary Public, State of Texas
Comm. Expires 01-31-2028
Notary ID 134739657

NOTARY PUBLIC IN THE STATE OF TEXAS

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108452805
Filing Code Description: No Fee Documents
Filing Description: RULE 203 CERTIFICATE - BLUE MONARCH PEDIATRICS
Status as of 11/29/2025 2:54 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher H.Schulz | | cschulz@slh-law.com | 11/25/2025 12:40:30 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/25/2025 12:40:30 PM | SENT |
| Jacqueline Hello | | jacqueline@welborn-law.com | 11/25/2025 12:40:30 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/25/2025 12:40:30 PM | SENT |

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Taylor Norman | | tnorman@slh-law.com | 11/25/2025 12:40:30 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/25/2025 12:40:30 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/25/2025 12:40:30 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 11/25/2025 12:40:30 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/25/2025 12:40:30 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:40:30 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:40:30 PM | SENT |



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108452805
Filing Code Description: No Fee Documents
Filing Description: RULE 203 CERTIFICATE - BLUE MONARCH PEDIATRICS
Status as of 11/29/2025 2:54 PM CST

Associated Case Party: SARAH PONDER

| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:40:30 PM | SENT |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 11/25/2025 12:40:30 PM | SENT |



I, VELVA L. PRICE, District Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on Dec. 9, 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS



**NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.**



# WDSLegal
The Service of Excellence

12/2/2025 11:50 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

1755 Wittington Place, Suite 750, Dallas, TX 75234

================================================================

Telephone (972) 488-5555 ~ (800) 346-4405
Hayley@WDSLegal.com ~ www.WrittenDeposition.com

**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**CERTIFICATION
Rule 203 Filing**

**RECORDS FROM: THE OPTOMETRY CENTER FOR VISION THERAPY-Medical Records
Our Ref #: 82104.011**

**WITNESS: Randi Elmore**

On **11/05/2025** a deposition on written questions was conducted and records from the above named facility pertaining to **(MINOR)** were obtained by Deposition on Written Questions. The above named witness was duly sworn by, **Kristina Anderson**, a notary public and the non-stenographic recording of the written deposition is a true record of the witness' testimony.

The taxable cost to be paid by **Amy Welborn, TBA 24012853,** amy@welborn-law.com attorney for **Ross Ponder, et al**, is **$164.90**. This charge is for the preparation of the completed Deposition by Written Questions with original exhibits.

The transcript with attached exhibits, if any was delivered to:
Amy Welborn
Welborn Law
1100 West Ave
Austin, TX 78701

A copy of this certificate was served on all following parties pursuant to TRCP Rule 203.3 on or about **11/19/25** via __X__ eservice/electronic delivery, or ____certified mail, postage prepaid:
Amy Welborn (Welborn Law)
Christopher Schulz (Schulman, Lopez, Hoffer & Adelstein, LLP)

Pursuant to Texas Rules of Civil Procedure 203, I, the undersigned Notary Public in and for the State of Texas do hereby certify the above to be true as stated.

Given under my hand and seal of office, this **19th day of November, 2025.**

MADISON GLENTZ
Notary Public, State of Texas
Comm. Expires 01-31-2028
Notary ID 134739229

NOTARY PUBLIC IN THE STATE OF TEXAS



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108608982
Filing Code Description: No Fee Documents
Filing Description: RULE 203 THE OPTOMETRY CENTER FOR VISION THERAPY
Status as of 12/3/2025 10:15 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher H.Schulz | | cschulz@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Kim Chambers | | kim@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |
| Jacqueline Hello | | jacqueline@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Taylor Norman | | tnorman@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 12/2/2025 11:50:56 AM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |



## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 108608982
Filing Code Description: No Fee Documents
Filing Description: RULE 203 THE OPTOMETRY CENTER FOR VISION
THERAPY
Status as of 12/3/2025 10:15 AM CST

Associated Case Party: SARAH PONDER

| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on Dec. 9, 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS



NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.



**WDSLegal**

The Service of Excellence

12/2/2025 11:50 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

1755 Wittington Place, Suite 750, Dallas, TX 75234

Telephone (972) 488-5555 ~ (800) 346-4405
Hayley@WDSLegal.com ~ www.WrittenDeposition.com

### Cause No. D-1-GN-25-002212

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

### CERTIFICATION
Rule 203 Filing

**RECORDS FROM: THE OPTOMETRY CENTER FOR VISION THERAPY - BILLING-Billing
Records**
**Our Ref #: 82104.012**

**WITNESS: Randi Elmore**

On **11/05/2025** a deposition on written questions was conducted and records from the above named facility pertaining to **(MINOR)** were obtained by Deposition on Written Questions. The above named witness was duly sworn by, **Kristina Anderson**, a notary public and the non-stenographic recording of the written deposition is a true record of the witness' testimony.

The taxable cost to be paid by **Amy Welborn, TBA 24012853, amy@welborn-law.com** attorney for **Ross Ponder, et al**, is **$160.40**. This charge is for the preparation of the completed Deposition by Written Questions with original exhibits.

The transcript with attached exhibits, if any was delivered to:
Amy Welborn
Welborn Law
1100 West Ave
Austin, TX 78701

A copy of this certificate was served on all following parties pursuant to TRCP Rule 203.3 on or about **11/19/25** via __X__ eservice/electronic delivery, or ____certified mail, postage prepaid:
**Amy Welborn (Welborn Law)**
**Christopher Schulz (Schulman, Lopez, Hoffer & Adelstein, LLP)**

Pursuant to Texas Rules of Civil Procedure 203, I, the undersigned Notary Public in and for the State of Texas do hereby certify the above to be true as stated.

Given under my hand and seal of office, this **19th day of November, 2025.**

MADISON GLENTZ
Notary Public, State of Texas
Comm. Expires 01-31-2028
Notary ID 134739229

NOTARY PUBLIC IN THE STATE OF TEXAS



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108608982
Filing Code Description: No Fee Documents
Filing Description: RULE 203 THE OPTOMETRY CENTER FOR VISION THERAPY
Status as of 12/3/2025 10:15 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher H.Schulz | | cschulz@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Kim Chambers | | kim@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |
| Jacqueline Hello | | jacqueline@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Taylor Norman | | tnorman@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 12/2/2025 11:50:56 AM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 12/2/2025 11:50:56 AM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108608982
Filing Code Description: No Fee Documents
Filing Description: RULE 203 THE OPTOMETRY CENTER FOR VISION THERAPY
Status as of 12/3/2025 10:15 AM CST

Associated Case Party: SARAH PONDER

| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/2/2025 11:50:56 AM | SENT |

I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on Dec. 9, 2025

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS



**NOTICE: THIS DOCUMENT
CONTAINS SENSITIVE DATA.**



**WDSLegal**
The Service of Excellence

12/4/2025 12:20 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Norma Ybarra

*1755 Wittington Place, Suite 750, Dallas, Texas 75234*

===============================================================

Telephone (972) 488-5555 ~ (800) 346-4405
Hayley@WDSLegal.com~ www.WDSLegal.com

**Cause No. D-1-GN-25-002212**

| | | |
|---|---|---|
| ROSS PONDER and SARAH PONDER, | § | IN THE DISTRICT COURT OF |
| Individually, and as Next Friend of | § | |
| H.P., L.P., and R.P., Minors | § | |
| vs. | § | TRAVIS COUNTY, TEXAS |
| AUSTIN MONTESSORI SCHOOL, INC., | § | |
| RONALD GRAE BAKER, Individually, | § | |
| And JINNY GONZALEZ, Individually | § | 345TH JUDICIAL DISTRICT |

**CERTIFICATION**
**Rule 203 Filing**

**RECORDS FROM: KIDWORKS THERAPY SERVICES-Medical Records**
**Our Ref #: 82103.009**

**WITNESS: Theresa Losolla**

On **11/14/2025** a Negative Deposition from the above named facility pertaining to **(MINOR)** was obtained by Subpoena. The above named witness was duly sworn by, **Lizeth Sierra**, a notary public and the non-stenographic recording of the written deposition is a true record of the witness' testimony.

The taxable cost to be paid by **Amy Welborn, TBA 24012853, amy@welborn-law.com** attorney for **Ross Ponder, et al,** is **$154.50.** This charge is for the preparation of the completed Deposition by Written Questions with original exhibits.

The transcript with attached exhibits, if any was delivered to:
Amy Welborn
Welborn Law
1100 West Ave
Austin, TX78701

___X___ A copy of this certificate was served on all following parties pursuant to TRCP Rule 203.3 on or about **11/21/2025** via eservice/electronic delivery, or _____certified mail, postage prepaid:
Amy Welborn (Welborn Law)
Christopher Schulz (Schulman, Lopez, Hoffer & Adelstein, LLP)

Pursuant to Texas Rules of Civil Procedure 203, I, the undersigned Notary Public in and for the State of Texas do hereby certify the above to be true as stated.

Given under my hand and seal of office, this **21st day of November, 2025.**

**NOTARY PUBLIC IN THE STATE OF TEXAS**

MADISON GLENTZ
Notary Public, State of Texas
Comm. Expires 01-31-2028
Notary ID 134739229



## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 108717114
Filing Code Description: No Fee Documents
Filing Description: RULE 203 KIDWORKS THERAPY SERVICES
Status as of 12/4/2025 1:40 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher H.Schulz | | cschulz@slh-law.com | 12/4/2025 12:20:13 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 12/4/2025 12:20:13 PM | SENT |
| Jacqueline Hello | | jacqueline@welborn-law.com | 12/4/2025 12:20:13 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 12/4/2025 12:20:13 PM | SENT |

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Taylor Norman | | tnorman@slh-law.com | 12/4/2025 12:20:13 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 12/4/2025 12:20:13 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 12/4/2025 12:20:13 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 12/4/2025 12:20:13 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 12/4/2025 12:20:13 PM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/4/2025 12:20:13 PM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/4/2025 12:20:13 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 12/4/2025 12:20:13 PM | SENT |



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kim Chambers on behalf of Amy Catherine Welborn
Bar No. 24012853
kim@welborn-law.com
Envelope ID: 107859919
Filing Code Description: Amended Filing
Filing Description: PLAINTIFFS SECOND AMENDED COMPLAINT
Status as of 11/10/2025 3:50 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Taylor Norman | | tnorman@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Amy Welborn | | amy@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 11/10/2025 12:05:41 PM | SENT |
| Kim Chambers | | kim@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 11/10/2025 12:05:41 PM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 11/10/2025 12:05:41 PM | SENT |



VELVA L. PRICE
DISTRICT CLERK
By Deputy:
J. LUCAS



D-1-GN-25-002212
Ross Ponder, et al vs. Austin Montessori School, Inc., et al

12/8/2025 12:00 AM
Velva L. Price
District Clerk
Travis County
D-1-GN-25-002212
Selina Hamilton

# SUBPOENA DUCES TECUM
# THE STATE OF TEXAS

## County of Travis

Greeting, to any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 of Texas Rules of Civil Procedure: You are hereby commanded to subpoena and summon the following witness(es):

**Witness:** **RACHEL MEANS**
to be and appear before a Notary Public of my designation for **Written Deposition Service, LLC, 1755 Wittington Place, Suite 750, Dallas, TX 75234**, on or after **12/02/2025** at the office of the summoned witness. There under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying **RECORDS AS NAMED IN THE ATTACHED EXHIBIT;** at any and all times whatsoever.
Then and there to give evidence at the instance of the **Plaintiff, Ross Ponder, et al,** represented by **Amy Welborn,** amy@welborn-law.com Texas Bar No. 24012853 Attorney of Record, in that Certain Cause No. **D-1-GN-25-002212**, pending on the docket of the **District Court of the 345th Judicial District of Travis County,** Texas.
This Subpoena is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

*Ross Ponder, et al vs. Austin Montessori School, Inc., et al*
and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this ___ day of _____, 2025.

N WHITESIDES
Notary ID #126346426
My Commission Expires
December 7, 2027

_____
NOTARY PUBLIC

Enforcement of Subpoena: (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both. This subpoena falls under exception to confidentiality, Rule 509 (e) Texas rules of Civil Evidence.

## OFFICER'S RETURN

C 11:15AM @ 10:00 Am

Came to hand this 14th day of Nov, 20 25 and executed this the 20th day of Nov., 20 25 in

the following manner: By delivering to the witness Rachel Means , a true copy hereof,

with attached witness fee of $ 10 @ 5800 Brodie Ln # 335, Austin, TX 78745

Returned this 20th day of November, 2025.

_____
PROCESS SERVER
Kelly Muroshi

Order No. 82556.001



# EXHIBIT

## RECORDS TO BE PRODUCED

All communications, documents, notes, personal observations, social media, text messages, emails, manuals, electronic documents, trainings, etc.
1. regarding any of Ponder kids.
2. regarding Ross Ponder
3. Regarding Sarah Ponder
3. Regarding this lawsuit.
4. regarding the classrooms in which Hank Ponder was in during the times he was there
5. regarding the classrooms in which Ruth Ponder was in during the times she was there
6. regarding the classrooms in which Lucy Ponder was in during the times she was there
5. regarding HHS standards
6. regarding HHS violations
7. trainings of staff
6. regarding communications or interactions with parents.
7. regarding discipline at AMS
8. regarding toileting at AMS
9. regarding naps at AMS
10. regarding food at AMS
11. regarding Jinny Gonzalez
12. regarding Grae Baker
13. regarding one or more children being put in a bathroom for non-toilet purposes
14. regarding one or more children being isolated from their peers for more than 5 minutes.
15. regarding staffing concerns during the time period.
16. regarding contractual agreements, including separation agreements
17. Employee handbooks
18. Mandatory employee trainings
19. regarding philosophies of AMS that differ from traditional Montessori teachings
20. regarding 'undeveloped will"



## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 108808129
Filing Code Description: OTHER
Filing Description: EXECUTED RETURN OF SERVICE OF SUBPOENA - RACHEL MEANS
Status as of 12/8/2025 3:03 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher H.Schulz | | cschulz@slh-law.com | 12/7/2025 11:33:38 AM | SENT |
| Kim Chambers | | kim@welborn-law.com | 12/7/2025 11:33:38 AM | SENT |
| Jacqueline Hello | | jacqueline@welborn-law.com | 12/7/2025 11:33:38 AM | SENT |
| Jennifer Van Gorder | | jennifer@welborn-law.com | 12/7/2025 11:33:38 AM | SENT |

Associated Case Party: AUSTIN MONTESSORI SCHOOL, INC.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Taylor Norman | | tnorman@slh-law.com | 12/7/2025 11:33:38 AM | SENT |
| Elizabeth Angelone | | eangelone@slh-law.com | 12/7/2025 11:33:38 AM | SENT |
| Phylicia McClain | | pmcclain@slh-law.com | 12/7/2025 11:33:38 AM | SENT |
| Randee Hobbs | | rhobbs@slh-law.com | 12/7/2025 11:33:38 AM | SENT |
| Chris Schulz | | cschulz@slh-law.com | 12/7/2025 11:33:38 AM | SENT |

Associated Case Party: ROSS PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 12/7/2025 11:33:38 AM | SENT |

Associated Case Party: SARAH PONDER

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Welborn | | amy@welborn-law.com | 12/7/2025 11:33:38 AM | SENT |



## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 108808129
Filing Code Description: OTHER
Filing Description: EXECUTED RETURN OF SERVICE OF SUBPOENA -
RACHEL MEANS
Status as of 12/8/2025 3:03 PM CST

Associated Case Party: SARAH PONDER

| Amy Welborn | | amy@welborn-law.com | 12/7/2025 11:33:38 AM | SENT |
|---|---|---|---|---|
| Amy Welborn | | amy@welborn-law.com | 12/7/2025 11:33:38 AM | SENT |



I, VELVA L. PRICE, District Clerk,
Travis County, Texas, do hereby certify that this is
a true and correct copy as same appears of
record in my office. Witness my hand and seal of
office on ___Dec. 9, 2025___

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

J. LUCAS

