# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
|     *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. 1:25-cv-00615-ADA-SH |
| v. | § | |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
|     *Defendants.* | § | |

## DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER &
ADELSTEIN, LLP**

Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone:    512-840-0022
Facsimile:    210-538-5384

By: */s/ Christopher Schulz*
**CHRISTOPHER SCHULZ**
State Bar No. 24060576
Email: cshulz@slh-law.com
**ELIZABETH ANGELONE**
State Bar No. 24077349
Email:eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ iii

I.      SUMMARY OF CLAIMS.............................................................................1

II.     RULE 12(B)(6) STANDARD .......................................................................1

III.    PLAINTIFFS' DISABILITY-BASED CLAIMS LACK ANY BASIS IN LAW AND MUST BE DISMISSED (COUNTS VI, VII, AND XII) ...............................................3

    A.  Plaintiffs' Failure to Allege that AMS Receives Federal Funding Mandates Dismissal of Their Section 504 Claim................................................3

    B.  Plaintiffs' Title III of the ADA Claims Also Fail as a Matter of Law ....................4

        1.  Plaintiffs' ADA Claims for Compensatory and Punitive Damages Fail as a Matter of Law ...........................................................4

        2.  Plaintiffs Lack Standing Under Title III of the ADA ..................................5

        3.  Plaintiff Parents Lack Associational Standing and Fail to State Viable Claims Under Section 504 and the ADA...........................7

    C.  Summary of Disability-Based Claims ........................................................8

IV.    THE PLAINTIFFS' BREACH OF CONTRACT CLAIMS (COUNT VII & X) LACK MERIT ......8

V.     PLAINTIFFS FAILED TO MEET THE HEIGHTENED PLEADING STANDARD FOR FRAUD (COUNT IX).........................................................................10

VI.    PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM FAILS FOR LACK OF SPECIFICITY AND FAILS TO MEET RULE 9(B) REQUIREMENTS (COUNT X) .................................11

VII.   THE ECONOMIC LOSS RULE BARS PLAINTIFFS' NEGLIGENCE CLAIMS, WHICH ARISE SOLELY FROM CONTRACTUAL OBLIGATIONS (COUNTS I, II, III, AND IV) ...................11

    A.  Negligence *Per Se* Claims Must be Dismissed (Count II).......................13

    B.  Plaintiffs' Gross Negligence Claim Fails to Meet the Required Standards for Punitive Damages (Count III)...................................16

    C.  Negligent Activity Claims Lack Merit (Count IV)..................................16

**VIII.   RESPONDEAT SUPERIOR CLAIMS FAIL AS A MATTER OF LAW (COUNT V)** ................... 17

**IX.   DEFENDANTS GONZALEZ AND BAKER ACTED WITHIN THE SCOPE OF THEIR EMPLOYMENT DUTIES** ................................................................................. 17

**X.   PLAINTIFFS' CIVIL CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW (COUNT XIII)** .. 18

    **A. AMS and Its Employees Cannot Conspire with Each Other Under the Intracorporate Doctrine** ........................................................................... 18

    **B. The Plaintiffs' Conspiracy Claims Fail to Establish a Meeting of the Minds** ...... 19

**XI.   CONCLUSION** ................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. CIV.A.3:05-CV-1307-G,
    2005 WL 2989307 (N.D. Tex. Nov. 7, 2005)........................................................5, 6

*Adv. Cardiovascular Sys., Inc. v. SciMed Life Sys.*,
    988 F.2d 1157 (Fed. Cir. 1993) ...........................................................................2

*Allen v. Home Depot U.S.A., Inc.*, No. CIV.A.SA-04-CA703XR,
    2004 WL 2270001 (W.D. Tex. Oct. 6, 2004)............................................................18

*Ansonia Bd. of Educ. v. Philbrook*,
    479 U.S. 60, 107 S.Ct. 367, 93 L.Ed.2d 305 (1986)..................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).........................................2, 19

*Associated Builders, Inc. v. Ala. Power Co.*,
    505 F.2d 97 (5th Cir.1974)..................................................................................3

*Baker v. Wal-Mart Stores E.*,
    2021 WL 4050850 (S.D. Miss. Aug. 12, 2021) ........................................................17

*Baker v. Wal-Mart Stores E.*, No. 21-60696, No. 1:19-CV-789-KS-RPM
    2022 WL 1078030 (5th Cir. Apr. 11, 2022) ...........................................................17

*Baptist Memorial Hospital System v. Sampson*,
    969 S.W.2d 945 (Tex. 1998) ..............................................................................17

*Barnes v. Gorman*,
    536 U.S. 181, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002).........................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)............................................2

*Betancourt v. Federated Dep't Stores*,
    732 F. Supp. 2d 693 (W.D. Tex. 2010)...................................................................5

*Bloom v. Bexar Cnty.*,
    130 F.3d 722 (5th Cir. 1997)...............................................................................4

*Brown v. McLane Children's Scott & White Hosp.*, No. W-19-CV-00045-ADA,
    2019 WL 13253791 (W.D. Tex. May 8, 2019) .........................................................7

*Campbell v. City of San Antonio*,
    43 F.3d 973 (5th Cir. 1995) ............................................................................................2

*Carnero G&P, LLC v. SN EF Maverick LLC*,
    657 B.R. 202 (S.D. Tex. 2024) .......................................................................................9

*Carter v. Target Corp.*,
    541 F. App'x 413 (5th Cir. 2013) ...................................................................................3

*Chambliss v. Foote*,
    562 F.2d 1015 (5th Cir. 1977) ......................................................................................18

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
    445 S.W.3d 716 (Tex. 2014) ...................................................................................11, 12

*Clark v. PFPP Ltd. P'ship*,
    455 S.W.3d 283 (Tex. App.—Dallas 2015, no pet.) .....................................................12

*Coffel v. Stryker Corp.*,
    284 F.3d 625 (5th Cir. 2002) ........................................................................................10

*Cuvillier v. Taylor*,
    503 F.3d 397 (5th Cir. 2007) ..........................................................................................2

*Deutsch v. Annis Enters., Inc.*,
    882 F.3d 169, (5th Cir. 2018) ......................................................................................5, 7

*Douglas v. Hardy*,
    600 S.W.3d 358 (Tex. App.—Tyler 2019, no pet.) ......................................................16

*Dussouy v. Gulf Coast Inv. Corp.*,
    660 F.2d 594 (5th Cir. 1981) ........................................................................................18

*English v. Fischer*,
    660 S.W.2d 521 (Tex. 1983) ...........................................................................................9

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*,
    51 S.W.3d 577 (Tex. 2001) ...........................................................................................11

*First United Pentecostal Church of Beaumont v. Parker*,
    514 S.W.3d 214 (Tex. 2017) .........................................................................................19

*Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*,
    960 S.W.2d 41 (Tex. 1998) ...........................................................................................12

*Frame v. City of Arlington*,
　657 F.3d 215 (5th Cir. 2011) .......................................................................7

*Gilkerson v. Chasewood Bank*,
　1 F. Supp. 3d 570, 592 (S.D. Tex. 2014) ...............................................5, 6

*Heller Fin., Inc. v. Grammco Computer Sales, Inc.*,
　71 F.3d 518 (5th Cir. 1996) ......................................................................11

*Holloway v. Skinner*,
　898 S.W.2d 793 (Tex. 1995) .....................................................................18

*Hunter v. Branch Banking & Tr. Co.*, No. 3:12-CV-2437-D,
　2013 WL 4052411 (N.D. Tex. Aug. 12, 2013)..........................................7

*Hurd v. BAC Home Loans Servicing, LP*,
　880 F. Supp. 2d 747 (N.D. Tex. 2012) .....................................................12

*In re Baerg Real Prop. Tr.*,
　585 B.R. 373 (Bankr. N.D. Tex. 2018) .......................................................9

*In re Sanchez Energy Corp.*,
　648 B.R. 592 (Bankr. S.D. Tex. 2023) ........................................................9

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
　892 F.3d 719 (5th Cir. 2018) ....................................................................16

*J.D. v. Georgetown Indep. Sch. Dist.*, No. A-10-CA-717 LY,
　2011 WL 2971284 (W.D. Tex. July 21, 2011) ...........................................8

*Labouliere v. Our Lady of the Lake Found.*, No. CV 16-00785-JJB-EWD,
　2017 WL 4365989 (M.D. La. Sept. 29, 2017) ............................................8

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
　242 S.W.3d 1 (Tex. 2007) .........................................................................11

*LAN/STV v. Martin K. Eby Constr. Co.*,
　435 S.W.3d 234 (Tex. 2014) .....................................................................11

*Leitch v. Hornsby*,
　935 S.W.2d 114 (Tex. 1996) .....................................................................17

*Lightbourn v. Cnty. of El Paso, Tex.*,
　118 F.3d 421 (5th Cir. 1997) ......................................................................3

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992) .......................................................6

*Luna v. Am. Nat'l Ins. Co.*, No. EP-21-CV-00064-FM,
   2021 WL 1911339 (W.D. Tex. May. 12, 2021)...................................................................2

*McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-392,
   2012 WL 6114944 (E.D. Tex. Dec. 10, 2012) ...................................................................12

*McElroy ex rel. McElroy v. Tracy Unified Sch. Dist.*, No. 207CV00086MCE-EFB,
   2008 WL 4754831 (E.D. Cal. Oct. 29, 2008) ...........................................................3

*Mead v. Johnson Grp.*, Inc.,
   615 S.W.2d 685, 687 (Tex. 1981) .........................................................................10

*Miranda-Lara v. Rebert*, No. 09-18-00325-CV,
   2020 WL 5099968 (Tex. App.—Beaumont Aug. 31, 2020, no pet.) ................................13, 15

*Mobil Oil Corp. v. Ellender*,
   968 S.W.2d 917 (Tex. 1988) .................................................................................16

*Molina v. Volunteers of Am.*, No. 3:17-CV-882-L-BT,
   2018 WL 4492963 (N.D. Tex. Aug. 31, 2018).......................................................4

*Molina v. Volunteers of Am.*, No. 3:17-CV-882-L-BT,
   2018 WL 4488936 (N.D. Tex. Sept. 18, 2018) ......................................................4

*Mosley v. Midas Worthington, LLC*, No. CV 19-75-JWD-EWD,
   2020 WL 113350 (M.D. La. Jan. 9, 2020) .............................................................5

*Nottingham v. Richardson*,
   499 F. App'x 368 (5th Cir. 2012) .........................................................................3

*Occidental Chem. Corp. v. Jenkins*,
   478 S.W.3d 640 (Tex. 2016) ................................................................................16

*Perez v. Doctors Hosp. at Renaissance, Ltd.*,
   624 F. App'x 180 (5th Cir. 2015) .........................................................................5

*Pickern v. Holiday Quality Foods, Inc.*,
   293 F.3d 1133 (9th Cir. 2002) .............................................................................7

*Prosper v. Premier Sec. Agency*, No. CV H-21-1910,
   2021 WL 4442769 (S.D. Tex. Sept. 28, 2021)......................................................5

*Sandberg v. STMicroelectronics, Inc.*,
   600 S.W.3d 511 (Tex. App.—Dallas 2020, pet. denied) ........................................10

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
   607 F.3d 1029 (5th Cir. 2010) ........................................................................10

*Smith v. Merritt*,
   940 S.W.2d 602 (Tex. 1997) ..........................................................................13

*Sparks v. Tex. Dep't of Transp.*,
   144 F. Supp. 3d 902 (S.D. Tex. 2015)..............................................................9

*Stanley Indus. of S. Fla., Inc. v. J.C. Penney Co.*, No. CIV A. 3:05-CV-2499L,
   2006 WL 2432309 (N.D. Tex. Aug. 18, 2006)..................................................12

*Supreme Beef Packers, Inc. v. Maddox*,
   67 S.W.3d 453 (Tex. App.—Texarkana 2002, pet. denied) ........................13, 15

*Sw. Bell Tel. Co. v. DeLanney*,
   809 S.W.2d 493 (Tex. 1991) ....................................................................11, 12

*Thompson v. Microsoft Corp.*,
   2 F.4th 460 (5th Cir. 2021)............................................................................14

*U.S. ex rel. Grubbs v. Kanneganti*,
   565 F.3d 180 (5th Cir. 2009) ........................................................................10

*Van Winkle v. Houcon Partners, L.P.*, No. CV H-17-01875,
   2018 WL 3543908 (S.D. Tex. July 3, 2018) ......................................................5

*Van Winkle v. Pinecroft Center, LP*, No. CV H-16-2694,
   2017 WL 3648477 (S.D. Tex., Aug. 23, 2017) ..................................................6

*W. Invs., Inc. v. Urena*,
   162 S.W.3d 547 (Tex. 2005) ..........................................................................16

*Wells v. Minnesota Life Ins. Co.*,
   885 F.3d 885 (5th Cir. 2018)..........................................................................8

*Winkle v. Houcon Partners, L.P.,* No CV H-17-1875*,*
   2018 WL 3535300 (S.D. Tex. July 23, 2018) ....................................................5

*X.D. by De Leon v. Totally Kids Learning Ctr.*, No. 1:24-CV-051,
   2024 WL 4093215 (S.D. Tex. Aug. 12, 2024) ................................................6, 7

*X.D. by De Leon v. Totally Kidz Learning Ctr.*, No. 1:24-CV-00051,
   2024 WL 4068763 (S.D. Tex. Sept. 5, 2024) ............................................................6

## RULES AND STATUTES

29 U.S.C. § 794(a) ............................................................................................................3

42 U.S.C. § 12181(6) ........................................................................................................4

42 U.S.C. § 12182(a) ........................................................................................................4

42 U.S.C. § 12182(b)(2)(A)(ii) ........................................................................................4

42 U.S.C. §12188(a)(1) .....................................................................................................7

28 C.F.R. § 35.130(g) .......................................................................................................7

26 TEX. ADMIN. CODE § 744.501 ...................................................................................13

26 TEX. ADMIN. CODE § 744.2103 .................................................................................13

26 TEX. ADMIN. CODE §§ 744.1601-.1611 ....................................................................13

26 TEX. ADMIN. CODE § 746.123 (57) ...........................................................................14

26 TEX. ADMIN. CODE § 746.2202 .................................................................................14

26 TEX. ADMIN. CODE § 746.2601 .................................................................................14

26 TEX. ADMIN. CODE §§ 746.2901–2911 ....................................................................14

26 TEX. ADMIN. CODE §§ 746.3301–3321 ....................................................................14

26 TEX. ADMIN. CODE § 746.4103 .................................................................................14

TEX. OCC. CODE § 151.002 (13) .....................................................................................15

FED. R. CIV. P. 9 (b) .........................................................................................................11

FED. R. CIV. P. 12(b)(6) ............................................................................................1, 2, 3

## SECONDARY AUTHORITIES

Ross A. Thompson, Emotional Dysregulation: A Theme in Search of a Definition,
   31 Dev. & Psychopathology 805 (Cambridge Univ. Press 2019) .............................15

## RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I.   SUMMARY OF CLAIMS

Through a sweeping and impermissible "shotgun pleading" approach, Plaintiffs assert a litany of claims against the Austin Montessori School, Inc. ("AMS" or "School"), a private daycare/school, and two of its employees, acting in their employment capacities, stemming from one of the Plaintiffs' children's disenrollment from AMS in the hopes that at least one will find its target. Specifically, the complaint lists an array of causes of action without specifying to which defendant each claim applies, including:

- **Disability-based claims:** Title III of the Americans with Disabilities Act (Count VI), Section 504 of the Rehabilitation Act (Count VII), and Retaliation (Count XII);

- **Contract and fraud-based claims:** Breach of Contract (Count VIII), Fraud (Count IX), and Fraudulent Inducement combined with Breach of Contract (Count X);

- **Negligence-based claims:** Negligence (Count I), Negligence *Per Se* (Count II), Gross Negligence (Count III), Negligent Activity (Count IV), and *Respondeat Superior* (Count V); and

- **Intentional tort claims:** State Civil Conspiracy (Count XI).

However, Plaintiffs' scattershot method fails to find any target and fails to raise a right to relief above the speculative level, and Plaintiffs' claims must be dismissed for failure to state any cognizable claim upon which relief may be granted.

### II.   RULE 12(B)(6) STANDARD

The claims against Defendants must be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare litigants the burdens of unnecessary pretrial and trial activity."

*Adv. Cardiovascular Sys., Inc. v. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). The test of pleadings under Rule 12(b)(6) is designed to balance an individual's right to redress against the interests of all parties and the court in avoiding the unnecessary expenditure of time, money, and resources in response to meritless claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 558, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). When considering a motion to dismiss, the court accepts as true all well-pleaded facts and views those facts in a light most favorable to the plaintiff. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). While "the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment." *Luna v. Am. Nat'l Ins. Co.*, No. EP-21-CV-00064-FM, 2021 WL 1911339, at *1 (W.D. Tex. May. 12, 2021) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Twombly*, 550 U.S. at 555)). A plaintiff must plead more than unadorned accusations, "labels and conclusion," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly,* 550 U.S. at 555-57. To this end, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell*, 43 F.3d at 975.

However, if a plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint or attached to the motion to dismiss that is central to the plaintiff's claims

and referenced in the complaint, then these contradicted allegations cannot be accepted as true under Rule 12(b)(6). *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (citing *Associated Builders, Inc. v. Ala. Power Co.,* 505 F.2d 97, 100 (5th Cir.1974) (internal citation omitted). Here, the Plaintiffs have failed to plead sufficient facts to meet their burden to raise a right to relief above the speculative level, and their claims against the Defendants must be dismissed for failure to state a cognizable claim upon which relief may be granted.

## III. PLAINTIFFS' DISABILITY-BASED CLAIMS LACK ANY BASIS IN LAW AND MUST BE DISMISSED (COUNTS VI, VII, AND XII)

Plaintiffs allege violations of Section 504 of the Rehabilitation Act, which provides that "[n]o otherwise qualified individual with a disability...shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 427 (5th Cir. 1997).

### A. Plaintiffs' Failure to Allege that AMS Receives Federal Funding Mandates Dismissal of Their Section 504 Claim

Plaintiffs do not state that AMS, a private daycare provider, receives federal funding, which is fatal to their Section 504 of the Rehabilitation Act claim. *Nottingham v. Richardson*, 499 F. App'x 368, 376 (5th Cir. 2012) (dismissing Rehabilitation Act claim because there was no evidence that the jail received federal funds); *McElroy ex rel. McElroy v. Tracy Unified Sch. Dist.*, No. 207CV00086MCE-EFB, 2008 WL 4754831, at *5 (E.D. Cal. Oct. 29, 2008) ("In this case, Plaintiff's FAC does not include allegations of facts as to any public funding received by the Private Defendants. Broad allegations that all Defendants received public funding, without more, cannot support a cause of action under Section 504."). Plaintiffs' allegations against AMS do not include any factual assertions regarding federal public funding received by AMS; accordingly, Plaintiffs' claims under Section 504 must be dismissed as a matter of law.

## B.      Plaintiffs' Title III of the ADA Claims Also Fail as a Matter of Law

Title III of the Americans with Disabilities Act ("ADA") prohibits private entities from discriminating against individuals with disabilities in the provision of "goods, services, facilities, privileges, advantages, or accommodations." *Bloom v. Bexar Cnty.*, 130 F.3d 722, 726 (5th Cir. 1997) (quoting 42 U.S.C. § 12182(a)) (emphasis added). A private entity is "any entity other than a public entity." 42 U.S.C. § 12181(6). A place of public accommodation discriminates under Title III when it fails to take necessary steps to ensure that individuals with disabilities are not excluded, denied services, segregated, or otherwise treated differently than non-disabled individuals through the absence of services. 42 U.S.C. § 12182(a). A private entity discriminates if it fails to "make reasonable modifications in its policies, practices, or procedures, when such modifications are necessary to afford…accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). To state a claim under Title III, a plaintiff must allege that: "(1) he is a disabled individual; (2) that defendant owns, leases, or operates a place of public accommodation; and (3) defendants discriminated against plaintiff within the meaning of the ADA on the basis of his disability." *Molina v. Volunteers of Am.*, No. 3:17-CV-882-L-BT, 2018 WL 4492963, at *2 (N.D. Tex. Aug. 31, 2018) (citing 42 U.S.C. § 12182(a)), *report & recommendation adopted*, No. 3:17-CV-882-L-BT, 2018 WL 4488936 (N.D. Tex. Sept. 18, 2018). Plaintiffs have failed to meet their burden.

### 1.      *Plaintiffs' ADA Claims for Compensatory and Punitive Damages Fail as a Matter of Law*

Title III of the ADA only permits "claims for injunctive relief" and does "not permit claims for compensatory or punitive damages." *Barnes v. Gorman*, 536 U.S. 181, 189, 122 S. Ct. 2097, 2103, 153 L. Ed. 2d 230 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in

suits brought under §202 of the ADA and §504 of the Rehabilitation Act."); *Prosper v. Premier Sec. Agency*, No. CV H-21-1910, 2021 WL 4442769 at *2 (S.D. Tex. Sept. 28, 2021) (citing *Perez v. Doctors Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 183 (5th Cir. 2015)). Accordingly, the damages claims must be dismissed. Defendant will, however, address Plaintiffs' claim for injunctive relief, which seeks staff training and policy revisions.

### 2. *Plaintiffs Lack Standing Under Title III of the ADA*

Title III of the ADA permits only injunctive relief, so plaintiffs must show a "real and immediate threat of repeated injury" to have standing. *Deutsch v. Annis Enters., Inc.*, 882 F.3d 169, 173 (5th Cir. 2018). Courts recognize two ways to establish such standing: the intent-to-return theory and the deterrent-effect doctrine. *See, e.g., Van Winkle v. Houcon Partners, L.P.*, No. CV H-17-01875, 2018 WL 3543908, at *6 (S.D. Tex. July 3, 2018), *report & recommendation adopted sub nom. Winkle v. Houcon Partners, L.P.,* No CV H-17-1875, 2018 WL 3535300 (S.D. Tex. July 23, 2018); *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 592 (S.D. Tex. 2014). District courts within the Fifth Circuit have applied both. *See Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. CIV.A.3:05-CV-1307-G, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); *Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 707–08 (W.D. Tex. 2010). Here, Plaintiffs fail to meet the requirements of either theory and, therefore, lack standing to pursue a claim under the ADA.

The intent-to-return theory holds that a plaintiff must demonstrate a specific intent to return to the noncompliant public accommodation to show continuing, present adverse effects and thereby establish standing under Title III of the ADA. *Mosley v. Midas Worthington, LLC*, No. CV 19-75-JWD-EWD, 2020 WL 113350, at *6 (M.D. La. Jan. 9, 2020). This analysis draws support from *Lujan*, in which the United States Supreme Court held that a plaintiff's profession of a mere "someday" intention to return to the site of an alleged injury is not enough to show continuing,

present adverse effects – particularly when the plaintiff neither describes any concrete plans to return nor even specifies when the "someday" will be. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563, 112 S. Ct. 2130, 2138, 119 L.Ed.2d 351 (1992). Accordingly, the intent-to-return theory requires a plaintiff to show a "concrete, particularized, and plausible plan to return to the out-of-compliance public accommodation that discriminated against her." *Gilkerson*, 1 F. Supp. 3d at 581.

Courts, including those in the Fifth Circuit, often apply a four-factor test to assess intent to return: (1) proximity of the plaintiff's residence to the facility; (2) past patronage; (3) definiteness of plans to return; and (4) frequency of nearby travel. *Id.* at 592. Here, Plaintiffs allege past attendance but provide no information on residence proximity, plans to return, lack of alternatives, or nearby travel. These omissions fail to show a concrete, particularized intent to return.[1] Under the intent-to-return theory, Plaintiffs have not established the standing necessary to support their ADA claim, and these claims must be dismissed.

Plaintiffs have also failed to establish standing under the deterrent-effect doctrine. Under the deterrent-effect doctrine, an individual with a disability may have standing if he or she is deterred from visiting a non-compliant facility due to accessibility barriers. Though not formally adopted by the Supreme Court or Fifth Circuit, district courts within the Fifth Circuit have applied

---

[1] *See id.* at 581; *X.D. by De Leon v. Totally Kids Learning Ctr.*, No. 1:24-CV-051, 2024 WL 4093215, at *4 (S.D. Tex. Aug. 12, 2024), *report and recommendation adopted sub nom. X.D. by De Leon v. Totally Kidz Learning Ctr.*, No. 1:24-CV-00051, 2024 WL 4068763 (S.D. Tex. Sept. 5, 2024) ("[T]he requests constitute, at best, 'someday intentions' to return to TKLC 'without any description of concrete plans, or indeed even any specification of when the someday will be' which 'do not support a finding of the 'actual or imminent' injury that our cases require."). Simply put, the pleading contains no allegations of an intent to return. *See, e.g., Van Winkle v. Pinecroft Center, LP*, No. CV H-16-2694, 2017 WL 3648477, at *7 (S.D. Tex., Aug. 23, 2017) ("Nor is Plaintiff's ambiguous pleading of his intent to return to Defendant's establishment, the third factor, adequate to establish Article III standing–he does not specify any dates, how often he intends to visit, or why he intends to visit it."); *Access 4 All, Inc.*, 2005 WL 2989307 at *4 (holding that the definitiveness factor did not weigh in the plaintiff's favor when the complaint merely alleged that the plaintiff intended to return to the property to avail himself of the goods and services offered there).

the doctrine. It is grounded in the ADA's "futile gesture" provision, allowing standing without actual use if the barrier concretely affects the plaintiff's activities. *See* 42 U.S.C. § 12188(a)(1); *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011). However, plaintiffs must show actual, concrete plans to return—hypothetical intent is not enough. *See also Deutsch*, 882 F.3d at 174.

Here, Plaintiffs lack standing under both the intent-to-return and deterrent-effect theories because they allege no intent to return to AMS. Courts have held that the deterrent-effect doctrine still requires a plausible desire to return. *See Hunter Branch Banking & Tr. Co.*, No. 3:12-CV-2437-D, 2013 WL 4052411, at *3 (N.D. Tex. Aug. 12, 2013). Unlike the plaintiff in *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002), who clearly wanted to return but was deterred, Plaintiffs assert no such intent. *See also X.D.*, 2024 WL 4093215, at *5. Plaintiffs' generalized claims of harm, absent any concrete allegations of future intent, fall short of establishing the actual, non-speculative injury required for standing under either theory.

### 3. *Plaintiff Parents Lack Associational Standing and Fail to State Viable Claims Under Section 504 and the ADA*

Plaintiff Parents seek compensatory damages for lost wages based on their association with a disabled person. While the ADA and Rehabilitation Act prohibit associational discrimination, such claims require the non-disabled plaintiff to suffer a direct and independent denial of benefits or services—not merely derivative harm based on the treatment of the disabled individual. *See* 28 C.F.R. § 35.130(g); *Brown v. McLane Children's Scott & White Hosp.*, No. W-19-CV-00045-ADA, 2019 WL 13253791, at *5 (W.D. Tex. May 8, 2019). Here, Plaintiff Parents fail to allege that either of them are disabled or that either was personally denied services, excluded, or discriminated against because of their association with their child. In such cases, courts have consistently rejected associational claims where the alleged harm is purely derivative. *See, e.g.*,

*J.D. v. Georgetown Indep. Sch. Dist.*, No. A-10-CA-717 LY, 2011 WL 2971284, at *10 (W.D. Tex. July 21, 2011); *Labouliere v. Our Lady of the Lake Found.*, No. CV 16-00785-JJB-EWD, 2017 WL 4365989, at *6 (M.D. La. Sept. 29, 2017). Accordingly, Plaintiff Parents lack associational standing, and their claims for lost wages and compensatory damages must be dismissed.

### C.   Summary of Disability-Based Claims

Plaintiffs have failed to state a viable claim under either Section 504 of the Rehabilitation Act or Title III of the ADA. To state a claim under Section 504, a plaintiff must allege, among other elements, that the defendant receives federal financial assistance. Plaintiffs have not alleged that AMS receives such funding, and therefore fail to establish a necessary element of their Section 504 claim. Concerning the ADA, Plaintiffs lack standing to seek injunctive relief under either the intent-to-return theory or the deterrent-effect doctrine, as they have not demonstrated a real and immediate threat of future injury. Plaintiffs have failed to allege a concrete intent to return to the daycare or facts showing they are deterred from returning due to existing barriers. Accordingly, Plaintiffs' claims under Section 504 and the ADA must be dismissed.

## IV.   THE PLAINTIFFS' BREACH OF CONTRACT CLAIMS (COUNT VIII & X) LACK MERIT

As their central claim, the Plaintiffs allege that AMS breached the contract with the Plaintiffs by failing to provide Section 504 services for H.P., failing to allow the children to receive a full-day education, and failing to follow school policies. Dkt. 1-3 at 28-29. Plaintiffs also allege AMS failed to provide appropriate childcare, custody, and supervision. *Id*. at 22. To prevail on this breach of contract claim, the Plaintiffs must show that (1) they had a valid contract with AMS; (2) they tendered performance; (3) AMS breached the contract; and (4) they sustained damages resulting from the breach. *See Wells v. Minnesota Life Ins. Co.*, 885 F.3d 885, 889 (5th Cir. 2018) (applying Texas law).

The Plaintiffs' breach of contract claim against AMS is based on a misunderstanding of the terms outlined in the contractual agreement and fails to meet the necessary elements to support a valid claim. Texas law generally disfavors implied covenants, instead tending to construe contracts as they are written. *See In re Baerg Real Prop. Tr.*, 585 B.R. 373 (Bankr. N.D. Tex. 2018); *In re Sanchez Energy Corp.*, 648 B.R. 592, 615 (Bankr. S.D. Tex. 2023), *aff'd sub nom. Carnero G&P, LLC v. SN EF Maverick LLC*, 657 B.R. 202 (S.D. Tex. 2024). The contract contains no terms regarding Section 504 services, an entitlement to a full day, or any reference to a contractual obligation to follow the school's policies. While Plaintiffs believe the contract was violated in these ways, the contract simply contains no references to these alleged covenants. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983) (rejecting implied covenant of good faith and fair dealing).

Further, the contract between the parties grants AMS broad discretion over the suspension or termination of students. Specifically, the contract allows AMS to terminate or withdraw enrollment at its sole discretion if continued attendance is deemed detrimental to the school community. Dkt. 1-3 at 40-41, ¶¶ 4, 7. This means that even if Plaintiffs assert AMS failed to provide certain services or follow specific policies, AMS's actions may still be permissible under the contract, given the broad discretion it holds. *See Id.* at 39-42. The contract further specifies that AMS has the right to withdraw or suspend enrollment for reasons unrelated to failure to provide services, such as concerns about the impact of a student's continued attendance on the school community. *Id* at 41 ¶ 7. This provision supports AMS's actions in suspending or expelling H.P. if it believes such actions are in the best interest of the school. The Plaintiffs' allegations, therefore, fail to demonstrate that AMS breached any contractual obligations under these terms.

Additionally, the Plaintiffs have not shown that they suffered actual damages as a result of the alleged breach. They claim harm, but they have not provided sufficient evidence of specific financial loss, damages, or causation stemming from AMS's actions. Causation is an essential element for the Plaintiffs' breach of contract theory of liability. *Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 528 (Tex. App.—Dallas 2020, pet. denied) (citing *Mead v. Johnson Grp.*, Inc., 615 S.W.2d 685, 687 (Tex. 1981). Without clear evidence of damages or causation, the Plaintiffs fail to satisfy a necessary element of their breach of contract claim and fail for several reasons: they have not demonstrated that AMS breached the terms of the contract, and they fail to adequately show actual damages or causation. As such, the breach of contract claim should be dismissed.

## V.    PLAINTIFFS FAILED TO MEET THE HEIGHTENED PLEADING STANDARD FOR FRAUD (COUNT IX)

Plaintiffs' fraud claim fails to meet the heightened pleading standard under FED. R. CIV. P. 9(b), which requires plaintiffs to state, "with particularity the circumstances constituting fraud." The Fifth Circuit mandates that fraud claims be pled with specificity, including the "who, what, when, where, and how" of the alleged fraudulent conduct. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009); *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010). Under Texas law, fraud requires: (1) a false representation, (2) knowledge of its falsity, (3) intent to induce action, (4) reliance, and (5) injury. *Coffel v. Stryker Corp.*, 284 F.3d 625, 631 (5th Cir. 2002). Plaintiffs fail to specify the time, place, and contents of the false representations and do not explain why Defendant Baker's promise regarding enrollment was fraudulent, nor how Plaintiffs relied on it or suffered injury. Therefore, this claim should be dismissed.

## VI.  PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM FAILS FOR LACK OF SPECIFICITY AND FAILS TO MEET RULE 9(B) REQUIREMENTS (COUNT X)

Plaintiffs' fraudulent inducement claim similarly fails under Rule 9(b). To establish fraud under Texas law, plaintiffs must show: (1) a false material representation, (2) knowledge of its falsity, (3) intent to induce reliance, and (4) justifiable reliance causing injury. *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Plaintiffs allege that Defendant Baker, in his capacity as Head of School for AMS, falsely promised to withhold an enrollment decision to observe the child's response to medication, but they failed to provide the necessary details, such as when and where the representation was made or how it was fraudulent. There is no explanation of reliance or resulting injury. As such, the Plaintiffs' claim for fraudulent inducement must be dismissed for lack of specificity.

## VII.  THE ECONOMIC LOSS RULE BARS PLAINTIFFS' NEGLIGENCE CLAIMS, WHICH ARISE SOLELY FROM CONTRACTUAL OBLIGATIONS (COUNTS I, II, III, AND IV)

The Plaintiffs aver several negligence claims in their complaint: negligence (Count 1), negligence *per se* (Count 2), gross negligence (Count 3), and negligent activity (Count 4). The crux of the Plaintiffs' complaint, however, stems from what they allege is a breach of the parties' contract; therefore, Plaintiffs' negligence-related claims are barred by the economic loss rule. Under Texas law, a failure to perform under a contract typically gives rise to a breach of contract claim—not a tort. *Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 527 (5th Cir. 1996). The economic loss rule bars tort recovery when the loss claimed is purely the economic loss of a contractual expectancy. *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12–13 (Tex. 2007); *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235–36 (Tex. 2014). When the alleged harm is only economic loss to the subject of the contract itself, the claim sounds in contract, not tort. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991). A tort claim

may only proceed where the alleged duty breached is independent of the contract, and the harm is more than just lost contractual benefits. *Chapman*, 445 S.W.3d at 718.

The Texas Supreme Court has explained that a claim sounds in tort only when the defendant's conduct would give rise to liability independent of any contractual obligation. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) (quoting *DeLanney*, 809 S.W.2d at 494). In other words, if the alleged duty arises solely from the contract, the claim is contractual in nature. Courts applying this rule consider whether the duty is imposed by law or created by contract, and whether the injury alleged is purely economic loss to the contract's subject matter. As explained in *Stanley Indus. of S. Fla., Inc. v. J.C. Penney Co.*, courts consider whether the alleged duty arises from contract rather than law and whether the injury is an economic loss to the contract's subject. No. CIV A 3:05-CV-2499L, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006). Plaintiffs must show an independent injury. *McDaniel v. JPMorgan Chase Bank, N.A.*, No. 1:12-CV-392, 2012 WL 6114944, at *7 (E.D. Tex. Dec. 10, 2012). The rule applies to claims for negligent misrepresentation (*Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012)) and negligence-related claims, including negligent hiring (*Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 289 (Tex. App.—Dallas 2015, no pet.)).

Here, Plaintiffs' negligence-based claims against AMS arise solely from an alleged contractual agreement for childcare services. Plaintiffs contend that AMS breached duties related to the care, custody, and supervision of their children—duties that are explicitly tied to the contract. Dkt. 1-3 at pp. 27-28. Plaintiffs do not identify any independent legal duty owed by AMS outside of the contractual relationship. Because all alleged obligations stem from the contract, and no

separate legal duty is claimed, the economic loss rule applies and bars these tort claims. Accordingly, Plaintiffs have failed to state a valid negligence-based cause of action.

## A.     Negligence *Per Se* Claims Must be Dismissed (Count II)

Even assuming *arguendo* that Plaintiffs' negligence claims are not otherwise barred, their negligence per se claims must still be dismissed. Under Texas law, negligence per se allows a court to define a duty of care based on a penal statute, rather than the common-law reasonably prudent person standard. *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). However, this doctrine only applies where a statute imposes a specific, mandatory standard of conduct—not where it requires judgment or discretion. *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App.—Texarkana 2002, pet. denied); *Miranda-Lara v. Rebert*, No. 09-18-00325-CV, 2020 WL 5099968, at *4 (Tex. App.—Beaumont Aug. 31, 2020, no pet.). Texas courts routinely reject negligence per se claims based on statutes that incorporate discretionary decision-making.

Plaintiffs cite several provisions of the Texas Administrative Code, but none establish an absolute, non-discretionary duty sufficient to support negligence per se. For example, 26 TEX. ADMIN. CODE § 744.501 requires child-care centers to adopt operational policies on topics like hours of operation and illness exclusions. Plaintiffs do not allege that AMS failed to adopt such policies, and the section itself does not impose a specific standard of conduct.

Section 744.2103 governs disciplinary practices and requires that discipline be consistent with policy, age-appropriate, and non-damaging. However, this provision permits caregivers to exercise discretion in determining appropriate discipline, and thus cannot form the basis for negligence *per se*. Plaintiffs also cite 26 TEX. ADMIN. CODE §§ 744.1601–.1611, alleging AMS exceeded classroom numbers. But these provisions establish minimum caregiver-to-child ratios and group sizes, not total classroom occupancy limits. Moreover, § 744.1609 expressly allows providers discretion to exceed group sizes in certain circumstances. Plaintiffs have failed to allege

13

a clear violation or link any such violation to harm, and the discretionary nature of these rules precludes negligence *per se*. Similarly, Plaintiffs point to 26 TEX. ADMIN. CODE § 746.2202, which requires reasonable accommodations for children with special care needs as recommended by qualified professionals. However, this regulation does not require the implementation of every recommendation without qualification. As courts have recognized, the law does not require that all proposed accommodations be adopted if they are not feasible or appropriate. *Thompson v. Microsoft Corp.*, 2 F.4th 460, 469 (5th Cir. 2021); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S.Ct. 367, 371, 93 L.Ed.2d 305 (1986). The regulation also relies on a definition of "special care needs" that calls for professional judgment to assess whether a child qualifies, again underscoring the discretionary nature of the rule. 26 TEX. ADMIN. CODE § 746.123 (57).

Plaintiffs further cite Section 746.2601 of the Texas Administrative Code, which requires that pre-kindergarten children receive routines, individual attention, and emotionally supportive interaction. But this standard inherently involves discretion in determining what constitutes adequate care. As such, it cannot serve as the basis for negligence per se. The same is true for nap-related regulations (26 TEX. ADMIN. CODE §§ 746.2901–2911, .3301–3321), which require providers to consider each child's physical needs and allow flexibility in rest time and quiet activities. As to Plaintiffs' allegation that AMS failed to disclose a no-medication policy before enrollment, they cite no regulation requiring such notice, nor do they allege any injury resulting from a failure to administer medication. This is insufficient to support negligence *per se*.

Regarding child release procedures, 26 TEX. ADMIN. CODE § 746.4103 requires child-care centers to adopt and instruct employees on policies for verifying the identity of individuals picking up children. The verification methods are illustrative (*e.g.*, photo ID, license plate numbers) and do not impose a mandatory protocol. Because the provision allows for discretion, it too cannot

14

support negligence *per se*. Finally, Plaintiffs allege that 39 children napping in a Casita violated state regulations, but they cite no specific regulation limiting the number of napping children in one room. Without an identified violation of a specific and mandatory regulation, this claim also fails.

Plaintiffs also assert negligence per se based on Defendant Gonzalez allegedly practicing "quack medicine" without a license. Dkt. 1-3 at 9, 14, 19. Under Texas law, "practicing medicine" includes diagnosing, treating, or offering to treat physical or mental conditions, or attempting to cure them, by someone who either publicly professes to be a physician or charges compensation for such services. TEX. OCC. CODE § 151.002 (13). Plaintiffs conclude that Defendant Gonzalez engaged in "quack medicine" by allegedly diagnosing Plaintiff H.P. with an "underdeveloped will" and stating he was emotionally dysregulating at school.[2] Dkt. 1-3 at 9. Notwithstanding that "underdeveloped will" and "emotionally dysregulating" are not recognized medical diagnoses, Plaintiffs fail to allege that Gonzalez publicly represented herself as a physician or surgeon or that she charged for these services. Without these critical allegations, Plaintiffs' claim cannot support a negligence *per se* cause of action, as they fail to establish the necessary elements of an underlying statutory violation.

Each of the provisions cited by Plaintiffs either permits provider discretion, lacks a clearly defined, mandatory standard of conduct, or fails to even allege a violation of the statute. Because negligence per se requires the violation of a statute that imposes a specific duty without room for judgment, Plaintiffs' claims must be dismissed. *See Supreme Beef*, 67 S.W.3d at 456; *Miranda-Lara*, 2020 WL 5099968, at *4.

---

[2] Thompson, Ross, "Emotional dysregulation: A theme in search of a definition," *Development and Psychopathology*, Cambridge University Press (2019), v.31, 805–815.

**B.**     **Plaintiffs' Gross Negligence Claim Fails to Meet the Required Standards for Punitive Damages (Count III)**

Plaintiffs have asserted a claim for gross negligence and seek punitive damages. However, gross negligence is not an independent cause of action; it depends on an initial finding of ordinary negligence. *Douglas v. Hardy*, 600 S.W.3d 358, 372 (Tex. App.—Tyler 2019, no pet.). Furthermore, simple negligence is insufficient to meet the criteria for gross negligence; rather, the objective prong of gross negligence requires an "extreme risk," which is the likelihood of serious injury, not a mere possibility of harm. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1988). The subjective prong requires actual awareness of the risk, accompanied by an act of conscious disregard for it. *Id.* Plaintiffs' allegations fail to meet these requirements, as they do not demonstrate that the risk of harm was extreme or that AMS was actually aware of any serious danger and acted with reckless indifference. Without sufficient factual support for both prongs, Plaintiffs' claim for gross negligence and punitive damages must be dismissed.

**C.**     **Negligent Activity Claims Lack Merit (Count IV)**

Plaintiffs assert a claim for negligent activity but fail to provide sufficient factual allegations to support it. Texas law distinguishes between negligent activity and premises liability, and Plaintiffs must specifically plead facts showing negligent activity, not just a condition of the premises. For a negligence claim based on activity, Plaintiffs must allege an ongoing, contemporaneous negligent act that directly caused their injury. *See Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016); *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). However, Plaintiffs provide no such allegations. The Fifth Circuit allows for pleading on information and belief when facts are within the defendant's control, but Plaintiffs must still provide enough facts to show that the claim is not speculative. *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). Here, Plaintiffs'

allegations lack the necessary details to establish a plausible negligent activity claim because they make no allegations of an ongoing, contemporaneous negligent act that directly caused their injury, making it impossible for the court to reasonably infer that any negligence occurred. Therefore, Plaintiffs' claim must be dismissed.

## VIII.    RESPONDEAT SUPERIOR CLAIMS FAIL AS A MATTER OF LAW (COUNT V)

Plaintiffs' claim under the doctrine of *respondeat superior* fails as a matter of law. *Respondeat superior* is not an independent cause of action but rather a theory of vicarious liability that holds an employer liable for the acts of an employee. *Baptist Memorial Hospital System v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). As stated in *Baker v. Wal-Mart Stores E.*, No. 1:19-CV-789-KS-RPM, 2021 WL 4050850, at *9 (S.D. Miss. Aug. 12, 2021), *aff'd sub nom. Baker v. Wal-Mart Stores E.*, No. 21-60696, 2022 WL 1078030 (5th Cir. Apr. 11, 2022), a claim for *respondeat superior* cannot stand independently of an underlying actionable claim, which Plaintiffs fail to establish here. To the extent Plaintiffs assert a standalone claim for *respondeat superior*, such a claim must be dismissed.

## IX.    DEFENDANTS GONZALEZ AND BAKER ACTED WITHIN THE SCOPE OF THEIR EMPLOYMENT DUTIES

Plaintiffs have not alleged an independent cause of action against Defendants Baker and Gonzalez. The individual claims asserted against them should be dismissed because the conduct at issue arises entirely from actions taken within the course and scope of their employment with AMS. Under Texas law, employees are not personally liable for negligence unless they owe an independent duty to the plaintiff separate from their responsibilities to the employer. *See Leitch v. Hornsby*, 935 S.W.2d 114, 117–18 (Tex. 1996). In *Leitch*, the Texas Supreme Court held that corporate officers and agents cannot be held individually liable for negligence where the duty breached belongs solely to the employer—in that case, the duty to provide a safe workplace. *Id*.

Similarly, the claims against Gonzalez and Baker stem from their roles in administering school discipline, managing enrollment decisions, and communicating with parents—all of which fall squarely within their official duties at AMS. These actions were carried out on behalf of the school and do not give rise to any personal duty owed directly to Plaintiffs. *See Allen v. Home Depot U.S.A., Inc.*, No. CIV.A.SA-04-CA703XR, 2004 WL 2270001, at *3 (W.D. Tex. Oct. 6, 2004). Plaintiffs have failed to identify any duty independent of their employment that would support individual liability. At most, their allegations amount to a disagreement with how AMS, through its employees, handled internal school operations. Because all conduct was undertaken within the scope of employment and no independent duty is alleged, the claims against Gonzalez and Baker in their individual capacities should be dismissed.

## X.   PLAINTIFFS' CIVIL CONSPIRACY CLAIMS FAIL AS A MATTER OF LAW (COUNT XIII)

The Plaintiff's civil conspiracy claim must be dismissed for two primary reasons: (1) AMS and its employees cannot conspire with each other under the intracorporate conspiracy doctrine, and (2) Plaintiffs have failed to sufficiently allege the elements required for a civil conspiracy claim.

### A.   AMS and Its Employees Cannot Conspire with Each Other Under the Intracorporate Doctrine

Under the intracorporate conspiracy doctrine, an entity and its employees or agents, as a single legal entity, cannot conspire with itself. This principle has been consistently upheld by courts, including the Texas Supreme Court in *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995), and the Fifth Circuit in *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977). A corporation and its employees are regarded as a single legal entity, meaning they cannot be deemed to have conspired with one another. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981), further affirms that the acts of a corporation's agents are considered the acts of the corporation

18

itself, negating the requirement for separate individuals or entities to be involved in a conspiracy. Therefore, any claim of conspiracy between AMS and its employees must be dismissed outright as legally untenable.

**B.     The Plaintiffs' Conspiracy Claims Fail to Establish a Meeting of the Minds**

Even if the intracorporate doctrine did not apply, Plaintiffs' conspiracy claims are still insufficient because they fail to adequately allege the required elements of a civil conspiracy. Under Texas law, to succeed on a civil conspiracy claim, Plaintiffs must prove: (1) a combination of two or more persons, (2) with a specific objective or course of action, (3) an agreement to achieve that objective, (4) unlawful overt acts in furtherance of the conspiracy, and (5) damages caused by the conspiracy. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017).

The Plaintiffs' allegations are conclusory and lack the necessary factual specificity to support a viable conspiracy claim. The Plaintiffs merely assert that a conspiracy occurred, but do not provide specific facts to show how AMS and its employees agreed to engage in wrongful conduct. A civil conspiracy claim requires more than vague assertions; it demands detailed facts establishing a meeting of the minds, a coordinated course of action, and specific unlawful acts taken in furtherance of that conspiracy. *Id*. The Plaintiffs fail to allege these facts with the level of detail required under *Iqbal*, 556 U.S. at 681, which holds that conclusory statements are insufficient to survive a motion to dismiss. Thus, the Plaintiffs' civil conspiracy claim must be dismissed due to both the legal bar imposed by the intracorporate conspiracy doctrine and their failure to meet the factual requirements of a civil conspiracy under Texas law or any conspiracy theory.

19

## XI.    CONCLUSION

The plaintiffs' complaint, constructed through an impermissible "shotgun pleading" approach, indiscriminately asserts a host of legal theories without clearly identifying which facts support which claims or which Defendants are allegedly liable for what conduct. This scattershot method runs afoul of basic pleading standards and fails to give fair notice of the claims asserted, much less state a plausible basis for relief. As detailed above, the Plaintiffs have not articulated any legally cognizable claim under federal or state law. The negligence-based claims are barred by the economic loss doctrine and unsupported by any independent duty; the statutory disability claims are inapplicable to AMS as a private school and fail to allege required elements such as intentional discrimination; and the fraud and contract-based claims lack specificity, plausibility, and legal merit. Because Plaintiffs have failed to meet the threshold pleading requirements and because none of the asserted claims provide a viable basis for relief, all claims against Defendants must be dismissed in their entirety.

Respectfully submitted,

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**
Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone:    512-840-0022
Facsimile:    210-538-5384

By: */s/ Christopher Schulz*
**CHRISTOPHER SCHULZ**
State Bar No. 24060576
Email: cshulz@slh-law.com
**ELIZABETH ANGELONE**
State Bar No. 24077349
Email:eanglone@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2025, the foregoing document was electronically filed with the Clerk of the Court, and a copy was served via the Court's electronic filing system on Plaintiffs' counsel of record, as well as directly via email to:

Amy C. Welborn
**WELBORN LAW LLC**
8712 Mesa Suite B206
Austin, Texas 78759
amy@welborn-law.com

*/s/ Christopher Schulz*
Attorney for Defendants
