# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISON

| | | |
|---|---|---|
| ROSS PONDER AND SARAH PONDER, | § | |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF H.P., L.P., and R.P., MINORS, | § | |
| *Plaintiffs,* | § | |
| | § | CIVIL ACTION NO. 1:25-cv-02020-ADA-SH |
| v. | § | |
| | § | |
| AUSTIN MONTESSORI SCHOOL, INC.; | § | |
| RONALD GRAE BAKER, INDIVIDUALLY; | § | |
| and JINNY GONZALEZ, INDIVIDUALLY, | § | |
| *Defendants.* | § | |

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FOURTH AMENDED PETITION (Cause No. D-1-GN-25-002212)

Defendants Austin Montessori School, Inc. ("AMS"), Ronald Grae Baker, Individually, and Jinny Gonalez, Individually, (collectively "Defendants") file their Answer and Affirmative Defenses in response to Plaintiffs' Fourth Amended Petition (hereinafter referred to as "Petition") in the above-styled and numbered matter as follows:

## DEFENDANTS' ANSWER

Pursuant to Federal Rule of Civil Procedure 8(b), Defendants respond to the allegations in each corresponding paragraph of the Fourth Amended Petition (Dkt. 6 at 8-37) as follows:

**1.** No response is required to Paragraph 1.

## I.  PARTIES

**2.** Defendants have no reason to deny the information in Paragraph 2.

**3.** Defendants admit Paragraph 3 but aver that AMS is a Texas-registered 501(c)(3) non-profit organization.

**4.** Defendants admit to the allegations contained in Paragraph 4.

**5.** Defendants admit to the allegations contained in Paragraph 5.

## II.    JURISDICTION AND VENUE

**6.**    The allegations contained in Paragraph 6 set forth legal conclusions to which no response is required.

**7.**    The allegations contained in Paragraph 7 set forth legal conclusions to which no response is required, but for purposes of jurisdiction, Defendants admit that the events giving rise to Plaintiffs' claims occurred in Travis County, Texas.

## III.    SUMMARY

**8.**    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 with respect to what the Ponders felt or believed. Defendants deny the remaining allegations in Paragraph 8.

**9.**    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 with respect to the Ponders' family history or what they felt or believed. Defendants further aver that the Ponders emailed AMS on December 10, 2024, indicating they had a family history of ADHD.

**10.**    Defendants admit that Montessori education generally emphasizes self-directed learning, freedom of movement, and a prepared learning environment. Defendants deny the remaining allegations in Paragraph 10, including any assertion that Montessori principles require the development of a formal "support plan" for every child with unique needs through collaboration with parents.

**11.**    Defendants deny the allegations contained in Paragraph 11, but admit that Montessori education generally emphasizes positive guidance, respectful interactions, and the development of self-regulation rather than traditional punitive discipline; Defendants further deny

any allegation that Montessori education categorically prohibits all consequences or behavioral correction, or that it eliminates all rewards or corrective measures in practice.

**12.**     Defendants deny the allegations contained in Paragraph 12.

**13.**     Defendants deny the allegations contained in Paragraph 13.

**14.**     Defendants deny the allegations contained in Paragraph 14.

**15.**     Defendants deny the allegations contained in Paragraph 15.

**16.**     Paragraph 16 has been omitted from the Petition, and no response is required.

**17.**     Defendants deny the allegations contained in Paragraph 17.

**18.**     Defendants deny the allegations contained in Paragraph 18.

**19.**     Defendants deny the allegations contained in Paragraph 19.

**20.**     Defendants deny the allegations contained in Paragraph 20.

**21.**     Defendants deny the allegations in Paragraph 21. Defendants aver that students were accompanied to the bathroom or sent alone to use the facilities for student privacy.

**22.**     Paragraph 22 contains legal conclusions for which a response is not required regarding the Ponders' rights. Defendants deny the remaining allegations.

**23.**     Paragraph 23 contains legal conclusions regarding "state and federal law" for which a response is not required. Defendants deny the remaining allegations in Paragraph 23.

**24.**     Defendants deny the allegations contained in Paragraph 24, but aver that AMS, on certain occasions, contacted the Ponders regarding student-related matters and requested that they retrieve H.P. and/or R.P. from campus when their behaviors posed safety risks, in accordance with AMS's policies and procedures.

**25.**     Defendants deny the allegations contained in Paragraph 25.

## IV.   FACTS

26.    Defendants deny the allegations contained in Paragraph 26 to the extent that Plaintiffs first enrolled all children in August 2023. Defendants deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26.

27.    Defendants deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27.

28.    Defendants admit only so much of Paragraph 28 that alleges that AMS communicated with the Ponders that it was rare for a child to be admitted into the program after a child had turned 4.5 years of age. Defendants deny the remaining allegations.

29.    Defendants lack sufficient information or knowledge to form a belief as to the Ponders' financial status and deny the remaining allegations contained in Paragraph 29.

30.    Defendants admit the allegations contained in Paragraph 30 only to the extent that H.P.'s first day at AMS was August 17, 2023, and that H.P. did not like the lunch prepared by the Ponders. Defendants deny the allegation that AMS "noted there were no issues when H.P. napped." Defendants aver that the teacher stated she would inform the Ponders how H.P.'s nap went on that day.

31.    Defendants admit to the allegations contained in Paragraph 31.

32.    Defendants admit the first sentence of Paragraph 32 but aver that H.P. was exhibiting significant behavioral issues during afternoons. Defendants admit the remaining allegations in Paragraph 32.

33.    Defendants admit that on or about August 31, 2023, H.P. was to be picked up by 12:10 each day and deny the allegation regarding the reason AMS suggested a noon pick-up time.

Defendants lack sufficient information or knowledge to form a belief as to the Ponders' motivations for enrolling their children at AMS.

34.     Defendants deny the allegations contained in Paragraph 34.

35.     Defendants deny the first sentence of Paragraph 35 and lack sufficient information or knowledge to form a belief as to the truth of the second sentence.

36.     Defendants admit that on Friday, September 8, 2023, Gonzalez emailed the Ponders to request a meeting. Defendants aver that Gonzalez stated in that email that AMS wished to partner with the Ponders and provide resources on behalf of H.P.'s development, and that it proposed meeting the morning of the following business day. Defendants deny the allegation and characterization in Paragraph 36 that H.P. was "not allowed to return to the school until after the meeting occurred".

37.     Defendants deny the statement contained in Paragraph 27 that "Over the weekend, the meeting was scheduled for September 11, 2023" and aver that on Friday, September 8, 2023, the Ponders proposed meeting at 10:00 a.m. the next business day. Defendants admit the meeting included the Ponders, Jinny Gonzalez, and Sveta Paris.

38.     Defendants have insufficient knowledge to admit or deny the statement contained in Paragraph 38 regarding what the Ponders had to do to attend the meeting, and Defendants aver that the Ponders repeatedly stated they had flexible working hours. Defendants deny the remaining allegations.

39.     Defendants admit the allegation contained in Paragraph 39 to the extent Plaintiffs quote that, following the meeting, AMS "interpret[s] behavior differently from the normative," and aver that the statement further explained that AMS "develop[s] a partnership with parents so that a child doesn't need to negotiate or 'code-switch' between their experience at home and

school. A child knows that the same thing is expected of them at school and at home. When a child is communicating through their behavior that they are feeling unsafe, they will continue communicating until the environment is consistent enough." Defendants deny the statement contained in Paragraph 39 that AMS was not trying to work with H.P. on his negative behaviors. Defendants admit they were "going to control the systems" by suggesting a predictable, consistent routine for H.P. across settings and further inviting the Ponders to seek further guidance from the school's counselor.

40.    Defendants deny the allegations contained in Paragraph 40 to the extent they characterize Ms. Gonzalez's communications as a "medical treatment plan," as directing medical care, or as instituting any rules for the Ponders. Defendant further avers that while Ms. Gonzalez communicated with the Ponders regarding H.P.'s transition to school, which had been particularly challenging for H.P., she provided guidance to encourage a consistent morning routine and a calm, unhurried environment for H.P. to receive individual attention.

41.    Defendants deny the allegations contained in Paragraph 41 to the extent they assert that Ms. Gonzalez "instituted rules" for speaking to H.P., as no rules were instituted, and no directives regarding how the Ponders were to speak to H.P. were imposed. Defendants admit that AMS suggested, "[w]hile we encourage you to acknowledge all feelings and need for attention, give it to him in a positive way. Use humor and lightness."

42.    Defendants deny the allegations contained in Paragraph 42 to the extent they assert that Ms. Gonzalez "forbade" the Ponders from walking to school or "required" exact compliance with the drop-off procedures. Defendant avers that Ms. Gonzalez, due to significant transition issues causing H.P. to exhibit negative behaviors during morning drop-off, requested that H.P. arrive at school by car at 8:00 a.m., that [H.P.]'s car seat be placed closest to the entrance of

Magnolia Cottage, and that H.P. remain buckled in the car seat until a staff member unbuckled him and invited him out. Defendant further avers that this guidance was intended to support H.P.'s safe and successful transition to school, and denies that it constituted a rule, medical treatment plan, or any restriction beyond the guidance described above.

43.    Defendant admits the allegations in Paragraph 43 but avers that Gonzalez, after consulting with the school's counselor, requested that H.P. be picked up at 10 a.m. for a two-week period to allow H.P. a shorter school day in which he could begin building skills and feel successful, and Defendants further avers that a follow-up meeting was planned at the end of the two weeks to assess H.P.'s progress and readiness for a longer school day. Defendants deny that this communication constituted a restriction on H.P.'s attendance, a medical treatment plan, or the imposition of any rules beyond the request described above.

44.    Defendants deny the allegations contained in Paragraph 44.

45.    Defendants deny the allegations contained in Paragraph 45 to the extent they assert that Ms. Gonzalez required a medical treatment plan for H.P. or required the school counselor, Leslie Grove, to observe H.P. Defendant further avers that Ms. Gonzalez asked the school counselor to observe H.P. and provide guidance and input on addressing H.P.'s behaviors. Defendant further avers that any reference to a "plan" was for developmental or behavioral guidance to support H.P.'s transition, and did not constitute a medical treatment plan, prescription, or diagnosis.

46.    Defendants deny the allegations contained in Paragraph 46 to the extent they assert that AMS limited H.P.'s attendance to noon or acted pursuant to a medical treatment plan. Defendant further avers that H.P. continued to experience significant behavioral issues after the morning work cycle. Lesley Grove used all available strategies and provided extensive support to

H.P., with limited success. Defendant further avers that AMS was willing to continue supporting H.P. during the morning work cycle and that, based on these circumstances, it was necessary to revert to an abbreviated day, with H.P. leaving at 12:30 p.m., beginning on Monday, December 16, 2024. Defendants further avers that this schedule was intended to support H.P.'s development and engagement at school, and did not constitute a medical treatment plan.

47.    Defendants deny the allegations contained in Paragraph 47 to the extent they assert that Ms. Gonzalez "demanded" that the Ponders keep their phones on at all times to accommodate immediate pickups. Defendant further avers that the Ponders were asked to keep their phones switched on and be available to pick up H.P. only if his distress created an unsafe situation for him or others in the school community. This request was intended solely to support H.P.'s safety and transition, and did not constitute a demand, rule, or medical treatment plan.

48.    Defendants admit the allegations contained in Paragraph 48.

49.    Defendants admit the first sentence of Paragraph 49. Defendants deny the second sentence.

50.    Defendants admit a meeting was scheduled with the Ponders and deny Paragraph 50 to the extent it asserts any meeting was scheduled or held to discuss H.P.'s "treatment of his condition".

51.    Defendants deny the allegations contained in Paragraph 51 to the extent they assert that Ms. Gonzalez emailed the Ponders on September 21, 2023, stating that AMS had to cancel a meeting. Defendants aver that on September 21, 2023, Mr. Ponder emailed Ms. Gonzalez, indicating that Sarah Ponder and L.C. Ponder were returning to Austin that day and requested that a meeting be scheduled for September 22, 2023. Defendants further aver that AMS responded that it was preparing for a school-hosted event, but stated that it could meet on September 26, 2023.

Defendants further aver that, regarding H.P.'s pick-up times for that week, AMS communicated the following schedule to the Ponders:

- Monday – In-Service (no school)
- Tuesday, September 26 – 10:00 a.m.
- Wednesday, September 27 – 10:30 a.m.
- Thursday, September 28 – 10:30 a.m.
- Friday, September 29 – 11:00 a.m.

Defendants deny all remaining allegations in Paragraph 51.

**52.**     Defendants deny the allegations contained in Paragraph 52.

**53.**     Defendants deny the allegations contained in Paragraph 53.

**54.**     Defendants deny the allegations in Paragraph 54 to the extent they assert that AMS had "no concern" regarding H.P.'s behavioral issues. Defendants admit that on October 2, 2023, H.P.'s teacher informed the Ponders that H.P. had "the best day he has had so far at school" and acknowledged that the Ponders maintained consistency with him that particular morning. Defendants deny that this communication reflects any formal determination regarding H.P.'s behavioral needs and further deny all other allegations in Paragraph 54.

**55.**     Defendants deny the allegations in Paragraph 55 to the extent they assert that AMS stated the Ponders "followed the treatment plan that AMS had instituted through Ms. Gonzalez" or that AMS "refused to allow H.P. to attend school full-time." Defendants admit that on December 8, 2023, AMS communicated to the Ponders:

> We are honored to work with you, Ross, and Sarah, in support of [H.P.]'s development. We deeply desire to meet his needs. Thank you for your partnership and trust as we work together towards these ends. It is our fondest hope that very soon [H.P.] will be thriving vigorously in the Magnolia Cottage community.

Defendants further aver that the same communication also noted that H.P. continues to exhibit unsafe behaviors:

- React verbally and physically when receiving a redirection from an adult;
- Exhibit unsafe expressions of frustration directed at other children, materials, and adults;
- Challenge community norms in ways that risk excluding him; and
- Becomes overwhelmed by emotion.

Defendants deny all other allegations in Paragraph

56.    Defendants deny the allegations contained in Paragraph 56, including any characterization of services recommended by AMS or Ms. Gonzalez as "quack medicine." AMS avers that it did recommend that H.P.'s needs be supported through collaboration on age-appropriate language, acknowledgment of relational and behavioral successes, emotional vocabulary development, coping strategies, school counselor support, and possible evaluation of self-regulation, impulsivity, and social skills. Defendants further aver that while the Ponders chose to contact Jennie Buckley, AMS did not represent her as an occupational therapist, did not direct the Ponders to hire her, and did not recommend "quack medicine" of any kind.

57.    AMS denies the allegations contained in Paragraph 57 that Leslie Grove is a school psychologist, and Defendants further deny that Grove "found that [H.P.] was doing very well." Defendants admit the remaining allegations contained in Paragraph 57.

58.    Defendants deny the allegations in Paragraph 58 to the extent they assert that Ms. Gonzalez "no longer allowed" H.P. to attend school past 11:00 a.m. Defendants aver that H.P.'s 11:00 a.m. departure was implemented as part of a transitional plan following the holiday break and was intended to continue pursuant to that plan. Defendants further aver that the Ponders were informed that H.P. would be gradually transitioned to remain through lunch, and that AMS advised it would follow up at the end of the week to discuss the transition plan going forward.

59.    Defendants deny the allegations contained in Paragraph 59. Defendants deny that the contractual terms or tuition payments guaranteed "full day coverage" or prohibited adjusted

schedules. Defendants further aver that the enrollment agreement does not define or guarantee a full-day program, expressly provides that tuition may vary based on a student's level of participation in the school program, and grants AMS sole discretion to modify student programming and to terminate enrollment. Defendants aver that, on December 19, 2024, AMS offered a tuition reduction and partial refund for H.P. for the reduced level of participation in the program, which the Ponders accepted. Defendants deny that AMS advised the Ponders that H.P. was required to be picked up early to accommodate additional new children. Defendants further aver that, on January 5, 2024, AMS communicated that H.P. would continue departing at 11:00 a.m. pursuant to an ongoing transitional plan following the holiday break, with the stated intention of transitioning H.P. to remain through lunch and continuing to reassess the plan going forward.

60.    Defendants deny the allegations contained in Paragraph 60 and aver that H.P.'s teacher emailed the Ponders stating, "First off, thank you both for your patience as we work towards moving [H.P.] to a longer day. We are changing a few things in our environment this week, and testing out a few more supports. I will have more information for you at the end of next week (Feb 2)."

61.    Defendants lack sufficient information to admit or deny the allegations in Paragraph 61 regarding Ross Ponder's brother, other than what was told to them by the Ponders, and therefore deny them. Defendants deny the remaining allegations.

62.    Defendants admit H.P. turned 4.5 on February 20, 2024. Defendants deny the remaining allegations in Paragraph 62.

63.    Defendants deny the allegations contained in Paragraph 63.

64.    Defendants deny the allegations contained in Paragraph 64.

65.    Defendants deny the allegations contained in Paragraph 65.

65.1    Plaintiffs misnumber Paragraph 66 as Paragraph 65, which Defendants will treat as Paragraph 65.1. Defendants admit that H.P. received a private medical occupational therapy (OT) evaluation conducted in April 2024 on May 8, 2024. Defendants aver that the evaluation noted:

However, approximately halfway through the evaluation he presented with high arousal and decreased impulse control. Max support was required to complete standardized assessments. Repeated verbal reminders by father were needed to lower his volume of voice. Per father's report, [H.P.] will become dysregulated at school and the teacher will need to clear the room.

Defendants admit that AMS agreed to meet with Plaintiffs to discuss their medical OT evaluation. Defendants further aver that H.P. received an educational OT evaluation by Austin ISD on December 9, 2024. Defendants aver, consistent with the private evaluation, AISD's OT evaluation notes that H.P. required safety rules and boundaries, including interventions to address elopement.

65.2    Plaintiffs misnumber Paragraph 67, also as Paragraph 65, which Defendants will treat as Paragraph 65.2. Defendants deny the allegations contained in Paragraph 65.2. Defendants further aver that because a teacher would be out the next day, H.P.'s teacher would be unable to attend the scheduled meeting.

66.    Defendants admit the first sentence contained in Paragraph 66. Defendants deny the remaining allegations.

67.    Defendants admit the allegations contained in Paragraph 67 to the extent that on May 17, 2024, they did not commit to H.P. beginning an extended day program in June. Defendants aver that they informed the Plaintiffs that H.P.'s teacher would assess H.P.'s readiness upon her return from vacation in July, and that any increase in hours would be implemented gradually, as appropriate, to gauge H.P.'s capacity. Defendants deny that any decision was based on staffing issues alone and deny any implication that H.P. was improperly denied full-time enrollment.

68.    Defendants admit the allegations in Paragraph 68 to the extent that the Ponders responded to an email to H.P.'s teacher on July 2, 2024, stating that they agree that "1230 is wonderful" and planned to pick him up then. Defendants deny the remaining allegations.

69.    Defendants admit the allegations contained in Paragraph 69 only to the extent that Jinny Gonzalez sent communications to AMS families regarding staffing changes. Defendants deny the remaining allegations.

70.    Defendants deny the allegations in Paragraph 70 to the extent that Plaintiffs assert H.P. was required to be picked up "early." Defendants aver that the departure time was part of a transitional plan, intended to gradually increase H.P.'s hours, and that Plaintiffs were informed of the plan and its ongoing reassessment.

71.    Defendants deny the allegations in Paragraph 71 to the extent they suggest that R.P. was required to be picked up "early." Defendants further deny that the number of children in the nap program, Casita, was improper or affected any individual child's care.

72.    Defendants deny the allegations contained in Paragraph 72.

73.    Defendants admit that Montessori teachings emphasize guidance. Defendants deny the remaining allegations in Paragraph 73.

74.    Defendants deny that the Ponders notified them on September 11, 2024, that their dog had died, and aver that the Ponders provided such notice on September 12, 2024.

75.    Defendants admit that on September 12, 2024, Jinny Gonzalez provided notice to all families regarding a staffing change in Magnolia Cottage. Defendants aver that the notice informed families that a teacher had resigned to attend to a family matter in another city and that another staff member would serve as the interim assistant. Defendants deny any allegations suggesting that the notice reflected misconduct or improper staffing practices or concerns.

**76.**     Defendants deny the allegations in Paragraph 76 and aver that on September 12, 2024, AMS notified the Ponders that R.P. would need to be picked up by 12:30 p.m. the following day because R.P. "has gotten progressively agitated to the point that she is now hitting the adults, screaming, and running around the entire time, and is not able to regain control. This is extremely disruptive to the Casita program as we have a large number of other children who are unable to use the Casita napping program in the way it is intended." Defendants aver that the adjusted pickup time was communicated to support R.P.'s needs and that tuition adjustments were coordinated with the Director of Enrollment Management. Defendants deny any suggestion that this action constituted improper discipline or was punitive.

**77.**     Defendants deny the allegations in the first sentence of Paragraph 77. Defendants lack sufficient information to respond to the second sentence of Paragraph 77.

**78.**     Defendants deny the first and second sentences of Paragraph 78. Defendants have insufficient information to respond to how Ponders felt or what concerns were raised by R.P.'s prior or current school.

**79.**     Defendants deny the first and second sentences of Paragraph 79. The third sentence of Paragraph 79 is a legal conclusion for which no response is required. To the extent a response is required, Defendants deny.

**80.**     Defendants admit the allegations in Paragraph 80 only to the extent that on November 22, 2024, Ms. Gonzalez emailed the Ponders to discuss H.P.'s challenging behaviors and deny that the meeting was to discuss any "treatment plan." Defendants admit the Ponders stated, in response to the meeting request, that they would be making some "parenting adjustments." AMS denies that it refused to fill out the requested Vanderbilt questionnaire and avers that the Ponders provided the teacher with the incorrect "Parent" form.

**81.** Defendants have insufficient information to form a belief regarding Paragraph 81 as to when H.P. was diagnosed with ADHD and aver that the documents provided to AMS by the Ponders indicate H.P. was diagnosed with ADHD on December 6, 2024. Defendants deny the remaining allegations.

**82.** Defendants deny the allegations contained in Paragraph 82.

**83.** Defendants admit the allegations in Paragraph 83 only to the extent that the December 5, 2024, meeting report indicated that AMS "deeply desired to meet [H.P.'s] needs" and outlined several adjusted procedures intended to support H.P.

**84.** Defendants deny the first sentence of Paragraph 84 and aver that beginning on December 16, 2024, and aver they informed the Ponders that H.P. would need to be picked up by 12:30.

**85.** Defendants lack sufficient knowledge to form a belief as to the truth of the first sentence of Paragraph 85. Defendants deny the remaining allegations and state that it does not provide or conduct "evaluations," a fact which it communicated to the Ponders.

**86.** Defendants admit the allegations contained in Paragraph 86 only to the extent that a meeting occurred on December 16, 2024. Defendants deny the remaining allegations. To the extent this paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

**87.** Defendants lack sufficient information to admit or deny the first sentence of Paragraph 87. Defendants deny the allegations that any adjustment necessarily resulted in any significant improvement in H.P.'s ADHD behaviors.

**88.** Defendants deny the allegations contained in Paragraph 88.

89.     Defendants admit the Ponders requested Ms. Gonzalez be taken off the team in a public forum and deny the remaining allegations contained in Paragraph 89.

90.     Defendants admit the first sentence of Paragraph 90 and deny the remaining allegations.

91.     Defendants deny the allegations set forth in Paragraph 91 and aver that AMS requested a meeting on January 17, 2025, to discuss H.P.'s enrollment status, to which Mr. Ponder responded on January 20, 2025.

92.     Defendants admit the allegations in Paragraph 92 only to the extent that a meeting occurred on January 24, 2025. Defendants deny the remainder of the factual allegations.

93.     Defendants admit the allegations contained in Paragraph 93 only to the extent that a meeting occurred. Defendants deny the remaining allegations.

94.     Defendants admit the allegations in Paragraph 94 only to the extent that the Ponders informed AMS that they had filed a complaint with the Texas Health and Human Services and that AMS became aware of the complaint on January 25, 2025. Defendants deny the remaining allegations.

95.     Defendants deny the allegations contained in Paragraph 95.

96.     Defendants admit Paragraph 96 only to the extent that the Ponders posted in a parent-run WhatsApp group. Defendants deny the remaining allegations,

97.     Defendants admit to the allegations contained in Paragraph 97 only to the extent that a gathering occurred at the Ponders' home. Defendants deny the remaining allegations

98.     Defendants admit to the allegations contained in Paragraph 98 only to the extent that the evaluation report dated January 29, 2025, exists. Defendants deny any allegations purporting to characterize the contents of the report or its application to AMS.

99.     Defendants lack sufficient information to admit or deny the allegations in Paragraph 99 to the extent they concern why the Ponders included Jinny Gonzalez in this communication. Defendants deny any remaining allegations in Paragraph 99.

100.    Defendants deny the allegations contained in Paragraph 100.

101.    Defendants admit the allegations contained in Paragraph 101 only to the extent that on January 31, 2025, AMS terminated the enrollment of the Ponders' children. Defendants deny the remaining allegations, including that the terminations constituted retaliation.

102.    Defendants deny the allegations contained in Paragraph 102.

103.    Defendants deny the factual allegations in Paragraph 103, including any characterization of AMS staff or any alleged impact on H.P. Defendants specifically deny that any action by AMS caused harm to H.P. or prevented him from obtaining a proper diagnosis from a licensed physician. Defendants deny that H.P. was compelled to attend outside services. To the extent the paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

104.    Defendants deny the allegations in Paragraph 104, including any characterization of H.P.'s emotional state or the level of care provided by AMS. Defendants specifically deny that AMS intentionally or negligently failed to address H.P.'s needs or that AMS caused any behavior problems. Defendants further deny that the Montessori method, as implemented by AMS, was not provided to the Ponder children. To the extent this paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

105.    Defendants deny the allegations in Paragraph 105, including any characterization of AMS's conduct, the Ponders' experiences, or the impact on the family. Defendants specifically deny that AMS imposed malicious punishments or unreasonable demands, caused chaos, anxiety,

or disruption, or required any specific treatments for H.P. Defendants further deny that AMS failed to respect the Ponders or that any outside services were unnecessary or harmful. To the extent this paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

106.    Defendants lack sufficient information to admit or deny the first sentence of this Paragraph 106 regarding Mr. Ponder's employment. Defendants deny the remaining allegations, including that any change in hours caused detriment to Mr. Ponder's income. To the extent this paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

107.    Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 107 regarding the impact on Sarah Ponder's career or business relationships. Defendants deny that AMS sent any defamatory communication or that any action by AMS caused the loss of any client or had any long-term impact on Ms. Ponder's company. To the extent this paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

108.    Defendants deny the allegations in Paragraph 108, including that the children were forced from their school or that any action by AMS caused a significant or severe impact on their education. Defendants further deny that the children were unable to be immediately placed in another school as a result of any conduct by AMS. To the extent this paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

109.    Defendants deny the allegations in Paragraph 109, including any assertion that the children were expelled or that any action by AMS caused extreme mental anguish to the Ponder

family. Defendants further deny that any statement attributed to Maria Montessori establishes liability or causation. To the extent this paragraph contains legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

    **110.**    Paragraph 110 of Plaintiffs' Petition is blank. Accordingly, no response is required.

## Count 1 - (Negligence)

    **110.1**    Plaintiffs to repeat Paragraph 110; accordingly, Defendants treat this as Paragraph 110.1. Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if fully set forth herein.

    **111.**    Defendants deny the allegations in Paragraph 111. Defendants specifically deny that any act or omission by Defendants proximately caused Plaintiffs' alleged injuries or damages and deny that Defendants breached any duty owed to Plaintiffs. Defendants further deny each of the alleged acts or omissions listed in subparts (a) through (g). To the extent this paragraph asserts legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

    **112.**    Defendants deny the allegations in Paragraph 112. To the extent this paragraph asserts legal conclusions regarding duty or liability, no response is required, and to the extent a response is required, such legal conclusions are denied.

    **113.**    Defendants deny the allegations in Paragraph 113. To the extent this paragraph asserts legal conclusions regarding duty or liability, no response is required, and to the extent a response is required, such legal conclusions are denied.

    **114.**    Defendants deny the allegations in Paragraph 114. To the extent this paragraph asserts legal conclusions regarding duty or liability, no response is required, and to the extent a response is required, such legal conclusions are denied.

**115.**    Defendants deny the allegations in Paragraph 115. To the extent this paragraph asserts legal conclusions regarding duty or liability, no response is required, and to the extent a response is required, such legal conclusions are denied.

**116.**    Defendants deny the allegations in Paragraph 116. To the extent this paragraph asserts legal conclusions regarding duty or liability, no response is required, and to the extent a response is required, such legal conclusions are denied.

**Count 2 – (Negligence *Per Se*)**

**117.**    Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**118.**    Defendants deny the allegations in Paragraph 118. To the extent this paragraph asserts legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

**119.**    Defendants deny the allegations in Paragraph 119. To the extent this paragraph asserts legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied

**120.**    Defendants deny the allegations in this paragraph, including that AMS exceeded any maximum child-to-caregiver ratios or violated 26 TAC §§ 746.1601–1615, or that the Ponder children were sent home to accommodate new students. To the extent this paragraph asserts legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

**121.**    The allegations contained in Paragraph 121 set forth legal conclusions to which no response is required. Defendants deny any remaining allegations.

**122.**    Defendants deny the allegations contained in Paragraph 122.

123.    Defendants deny the allegations contained in Paragraph 123.

124.    Defendants deny the allegations contained in Paragraph 124.

125.    Defendants deny the allegations contained in Paragraph 125.

126.    Defendants deny the allegations in Paragraph 126. To the extent this paragraph asserts legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

127.    Defendants deny the allegations contained in Paragraph 127. To the extent this paragraph asserts legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

128.    Paragraph 128 asserts legal conclusions and no response is required, and to the extent a response is required, such legal conclusions are denied.

129.    The allegations contained in Paragraph 129 set forth legal conclusions to which no response is required. Defendants deny any remaining allegations.

130.    The allegations contained in Paragraph 130 set forth legal conclusions to which no response is required. Defendants deny any remaining allegations.

**Count 3 – (Gross Negligence)**

131.    Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

132.    The allegations contained in Paragraph 132 set forth legal conclusions to which no response is required. Defendants deny any remaining allegations.

133.    The allegations contained in Paragraph 133 set forth legal conclusions to which no response is required. Defendants deny any remaining allegations.

**Count 4 – (Negligent Activity)**

**134.**    Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**135.**    Defendants admit the allegations contained in Paragraph 135 and aver that AMS is also a private school.

**136.**    Defendants admit H.P., L.P., and R.P. attended AMS. The remaining allegations contained in Paragraph 136 are legal conclusions to which no response is required.

**137.**    The allegations contained in Paragraph 137 are legal conclusions to which no response is required.

**138.**    The allegations contained in Paragraph 138 are legal conclusions to which no response is required.

**Count 5 – (Respondeat Superior)**

**139.**    Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**140.**    The allegations contained in Paragraph 137 are legal conclusions to which no response is required. Defendants admit that at all times, Defendant employees were acting in the course and scope of their employment.

**141.**    There is no Paragraph 141 in Plaintiffs' pleading; therefore, no response is required.

**142.**    There is no Paragraph 142 in Plaintiffs' pleading; therefore, no response is required.

**143.**    There is no Paragraph 143 in Plaintiffs' pleading; therefore, no response is required.

**144.**    There is no Paragraph 144 in Plaintiffs' pleading; therefore, no response is required.

**145.**    There is no Paragraph 145 in Plaintiffs' pleading; therefore, no response is required.

## Count 8 – (Breach of Contract[1])

**146.** Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**147.** Defendants admit only to the extent that Paragraph 147 contains allegations that Plaintiffs signed certain contracts, applications, and related paperwork with AMS. To the extent this paragraph asserts legal conclusions, no response is required, and to the extent a response is required, such legal conclusions are denied.

**148.** Defendants deny the allegations in Paragraph 148.

**149.** The allegations contained in Paragraph 149 are legal conclusions to which no response is required.

**150.** The allegations contained in Paragraph 150 are legal conclusions to which no response is required.

**151.** Paragraph 151 asserts a request for attorney's fees and a legal conclusion to which no response is required, and to the extent a response is deemed required, Defendants deny that Plaintiffs are entitled to recover attorney's fees.

## Count 9 - (Fraud)

**152.** Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**153.** Defendants deny the allegations contained in Paragraph 153.

**154.** The allegations in Paragraph 154 constitute legal conclusions to which no response is required. To the extent Paragraph 154 contains any factual assertions, Defendants deny those allegations.

---

[1] There are no Counts 5, 6, and 7 in Plaintiffs' pleading.

**155.**    The allegations in Paragraph 155 constitute legal conclusions to which no response is required. To the extent Paragraph 155 contains any factual assertions, Defendants deny those allegations.

**156.**    Paragraph 156 asserts a request for treble damages and attorney's fees and states legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny that Plaintiffs are entitled to treble damages or attorneys' fees.

### Count 10 – (Fraudulent Inducement to Contract and Breach of Contract)

**157.**    Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**158.**    Defendants deny the allegations contained in Paragraph 158 to the extent that Plaintiffs assert that AMS guaranteed full-day Montessori schooling from 8 a.m. to 3 p.m., Monday through Friday. Defendants lack sufficient information to admit or deny any remaining allegations in this paragraph.

**159.**    Defendants admit that part of the AMS mission statement is to "cultivate compassion and respect". Defendants deny the remaining allegations in Paragraph 159.

**160.**    Defendants lack sufficient information to admit or deny the allegations contained in Paragraph 160 regarding the Montessori teachings as described, including the quoted statements and references to specific publications. Defendants deny any remaining allegations to the extent they purport to assert that AMS failed to follow Montessori teachings.

**161.**    Defendants deny the factual allegations contained in Paragraph 161 to the extent that Plaintiffs assert that AMS guaranteed Guides trained by AMI, the "most authentic standard of Montessori pedagogy," or compliance with developmental milestones as described. Defendants

lack sufficient information to admit or deny any remaining allegations regarding Plaintiffs' reasons for reenrollment.

**162.** Defendants deny the allegations contained in Paragraph 162.

**163.** Defendants admit the allegations contained in Paragraph 163 only to the extent that the AMS parent handbook exists. Defendants deny the remaining allegations in Paragraph 163.

**164.** Defendants admit that AMS included statements regarding compliance with the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, as amended, at a time when AMS was required to follow Section 504 due to receipt of PPE funds, which AMS no longer accepts. Defendants further aver that H.P.'s disability was not discovered or disclosed until after H.P. was enrolled. Defendants admit that Grae Baker was the alleged coordinator and deny that any actions or omissions by AMS constituted discrimination as alleged in Paragraph 164.

**165.** The allegations in Paragraph 165 constitute legal conclusions to which no response is required. Defendants deny the remaining factual allegations.

**166.** The allegations in Paragraph 166 constitute legal conclusions as to fraudulent inducement to which no response is required. Paragraph 166 further asserts a request for treble damages and attorney's fees and states legal conclusions to which no response is required. To the extent a response is deemed necessary, Defendants deny that Plaintiffs are entitled to treble damages or attorneys' fees and deny any fraudulent inducement.

**167.** There is no Paragraph 167 in Plaintiffs' pleading; therefore, no response is required.

**168.** There is no Paragraph 168 in Plaintiffs' pleading; therefore, no response is required.

### Count 11 – (Retaliation)

**169.** Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**170.**    To the extent Paragraph 170 asserts legal conclusions, including the existence of a retaliation cause of action or entitlement to relief, no response is required; to the extent a response is deemed required, such allegations are denied.

**171.**    Paragraph 171 is mislabeled as paragraph "17". To the extent Paragraph 17 asserts legal conclusions, including retaliation, defamation, or violations of unspecified policies, no response is required; to the extent a response is deemed required, such allegations are denied. Defendants deny the remaining factual allegations.

**172.**    There is no Paragraph 172 in Plaintiffs' pleading; therefore, no response is required.

## DAMAGES

**173.**    Defendants repeat and reallege each and every response in this Answer and Affirmative Defenses as if set forth more fully herein.

**173.1**    Plaintiffs repeat Paragraph 173; therefore, Defendants will refer to this paragraph as 173.1. To the extent the allegations assert legal conclusions regarding proximate cause, damages, or entitlement to relief, no response is required. To the extent a response is deemed required, such allegations are denied. Alternatively, Defendants lack knowledge or information sufficient to form a belief as to the truth of Plaintiffs' allegations regarding the nature, extent, causation, reasonableness, necessity, or amount of the alleged damages, including but not limited to alleged loss of tuition value, lost wages, medical expenses, therapy expenses, physical pain and suffering, mental anguish, or future damages, and therefore deny the same. Defendants further deny that any alleged damages were caused by Defendants' conduct and deny that Plaintiffs are entitled to recover any of the damages alleged.

**175.**    There is no Paragraph 175 in Plaintiffs' pleading; therefore, no response is required.

**176.**    There is no Paragraph 176 in Plaintiffs' pleading; therefore, no response is required.

## CONDITIONS PRECEDENT

**177.** Defendants deny the allegations contained in Paragraph 177 and aver that the parties have participated in mediation.

## JURY DEMAND

**178.** Defendants deny that Plaintiffs are entitled to a trial by jury as demanded in Paragraph 178, as the parties expressly waived such a right in their contract.

## AFFIRMATIVE DEFENSES AND ENTITLEMENTS

Without waiving the foregoing general denial, Defendants assert that Plaintiffs' claims are frivolous, legally insufficient, and fail to state a claim upon which relief can be granted, and further assert the following affirmative and other defenses:

**179. Jury Waiver:** The parties expressly and mutually agreed, as reflected in the executed contract, to waive their right to a trial by jury.

**180. Statutory Immunity:** Austin Montessori School ("AMS") is a private, nonprofit educational organization entitled to protection under both Texas statutory and common law. As a qualifying charitable organization under the Texas Charitable Immunity and Liability Act, TEX. CIV. PRAC. & REM. CODE, Ch. 84, AMS and its employees are immune from liability for acts of ordinary negligence committed in good faith and within the scope of their duties. *See id.* §§ 84.004(a), 84.005. Likewise, under TEX. BUS. ORGS. CODE § 22.221, AMS's directors, officers, and members of its governing body, including its Head of School and other administrators, are not personally liable for acts or omissions undertaken in good faith and with ordinary care on behalf of the organization.

**181. Common-Law Bar Against Individual Liability:** Under Texas common law, officers, directors, and employees are not personally liable for acts undertaken in a representative

capacity on behalf of their employer, so long as those acts are performed in good faith and within the scope of their duties. *Maxey v. Citizens Nat'l Bank*, 507 S.W.2d 722, 725–26 (Tex. 1974). All conduct alleged in Plaintiffs' petition was performed by defendants Baker and Gonzalez in the course of their employment for AMS and therefore cannot give rise to individual liability. AMS and its employees acted within the **scope of** professional judgment and discretion, including educational and administrative decisions.

182. **Respondeat Superior Limitation:** Even assuming, *arguendo*, that any AMS employee engaged in wrongful conduct, which Defendants expressly deny, AMS cannot be held vicariously liable for actions undertaken outside the course and scope of employment or for purely personal reasons. Here, Plaintiffs have affirmatively alleged that Defendants Baker and Gonzalez acted at all times within the scope of their employment. Further, they have not pleaded, nor could they plausibly allege, that any purported act was motivated by personal interests or undertaken for any purpose other than furthering AMS's educational mission.

183. **Good Faith and Absence of Malice:** At all times relevant, Defendants acted in good faith, exercised ordinary care, and acted in the best interests of AMS and its students. Plaintiffs have alleged no facts demonstrating malice, bad faith, or conscious indifference. Accordingly, all claims seeking personal or organizational liability fail as a matter of law.

184. **Failure to State a Whistleblower Retaliation Claim:** Plaintiffs' claims of retaliation based on their filing of a complaint with the Texas Health and Human Services Commission ("HHS"), which included unsubstantiated failure to accommodate allegations, fail to state a claim upon which relief can be granted. Texas whistleblower protections apply only to employees of public entities or certain governmental employers, and do not extend to parents or other private individuals filing complaints against a private daycare. Accordingly, any such claims

lack merit because Texas provides no private cause of action for retaliation in this context. TEX. HUM. RES. CODE §§ 42.041 et seq.

185.    **Failure to state Accommodate/Retaliation Claims**: Plaintiffs' claims for failure to accommodate or retaliation under Texas law, regardless of the theory put forth, fail to the extent they are based on their children's enrollment or complaints to HHS. Texas law provides **no private cause of action** for failure to accommodate or retaliation by a private daycare. Accordingly, any contractual claims or any state law claims, premised on alleged failure to accommodate or retaliatory conduct, lack merit and fail to state a claim.

186.    **No Claim for "Practice of Medicine" (Statutory Exclusion):** Under TEX. OCC. CODE § 151.002(a)(13), the "practice of medicine" is narrowly defined as diagnosing, treating, or offering to treat a physical or mental condition. Defendants did not diagnose, prescribe, or treat any condition, nor did they represent themselves as qualified to do so. Participation in educational, administrative, or supportive activities does not constitute the "practice of medicine" under Texas law.

187.    **Lack of Standing – Unauthorized Practice of Medicine:** Plaintiffs lack standing to assert claims premised on the alleged unauthorized practice of medicine. The Texas Occupations Code vests exclusive investigative and enforcement authority over such matters in the Texas Medical Board. *See* TEX. OCC. CODE §§ 155.001, 165.151 et seq. Texas courts have consistently held that no private right of action exists for alleged violations of these provisions.

188.    **Failure to State a Claim for Fraud or Fraudulent Inducement:** Plaintiffs' fraud-based claims fail to state a claim upon which relief may be granted. Plaintiffs have not alleged, with the requisite specificity, the elements of fraud, including a material misrepresentation, falsity, intent, justifiable reliance, and resulting damages, as required by Texas law.

189.    **Failure to state a claim for Negligence, Gross Negligence, or Negligence Per Se:** To the extent Plaintiffs assert any claim of negligence per se based on alleged violations of Texas Health and Human Services Commission statutes or regulations, such claims fail. While such statutes may establish a standard of care for childcare providers, Texas law does not provide a private right of action for the enforcement of HHS licensing rules. Any alleged violations are enforceable only through HHS administrative action and cannot serve as the basis for a civil claim against AMS. Plaintiffs' claims for negligence and gross negligence fail to the extent they are based on conclusory allegations or regulatory violations. Further, Plaintiffs have not alleged facts sufficient to establish the elements of negligence or gross negligence under Texas law, including duty, breach, causation, and damages. Accordingly, these **claims** fail to state a claim upon which relief can be granted**.**

190.    **No Independent Cause of Action for Negligent Training or Supervision and Failure to State a Claim:** Texas does not recognize negligent training or supervision as a standalone cause of action, absent an underlying actionable tort by an employee. Because Plaintiffs have not alleged or cannot prove such an underlying tort, their negligent training and supervision claims fail as a matter of law. Alternatively, Plaintiffs failed to state a claim by failing to allege that Plaintiffs must allege that AMS, or any Defendants, knew or should have known that caregivers were inadequately trained in state-mandated childcare standards, and Plaintiffs must specify how this lack of training created a foreseeable and unreasonable risk of harm. To state a claim, Plaintiffs must also plead facts to demonstrate that proper training in those standards would have prevented the alleged injuries, as required by Texas law.

191.    **No Breach of Contract:** Defendants fully performed all contractual obligations. Any alleged damages or dissatisfaction asserted by Plaintiffs stem from their own actions, assumptions, or misinterpretations, and not from any failure or breach by Defendants.

192.    **Failure to State a Claim for Breach of Contract:** Even assuming that a valid contract existed, Plaintiffs have failed to plead facts sufficient to establish a breach because:

- They have not identified any specific contractual provision allegedly breached;
- They have not pleaded or demonstrated actual damages proximately caused by Defendants, and they have failed to establish causation between any alleged breach and their purported harm.

193.    **Accord and Satisfaction:** The parties agreed to accept an alternate performance in satisfaction of the alleged contractual obligation by accepting reduced tuition and refunds.

194.    **Waiver and Estoppel:** Plaintiffs have waived, or are estopped from asserting, certain claims due to their own conduct, representations, or omissions. Plaintiffs waived any claims arising from conduct they expressly agreed to in the enrollment agreements.

195.    **Frustration of Purpose:** The principal purpose of the contract, if any, was substantially frustrated by circumstances beyond Defendants' control and not caused by Defendants' actions.

196.    **Economic Loss Rule:** Plaintiffs' tort claims are barred, in whole or in part, by the economic loss rule. Under Texas law, a party may not recover in tort for purely economic losses arising from contractual duties. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 235 (Tex. 2014). Plaintiffs' alleged damages are economic and arise solely from contractual obligations; thus, their tort-based claims are barred.

197. **Parol Evidence Rule:** The written contract constitutes the parties' complete and final agreement. Any alleged oral or contemporaneous representations or agreements are inadmissible to vary or contradict the written terms.

198. **Comparative Negligence:** Plaintiffs' claims are barred, in whole or in part, by the doctrine of comparative negligence. *See* TEX. CIV. PRAC. & REM. CODE § 33.001 *et seq*. Any damages or injuries alleged by Plaintiffs were proximately caused or contributed to by Plaintiffs' own acts, omissions, negligence, or failure to exercise ordinary care. To the extent Plaintiffs' percentage of responsibility equals or exceeds fifty percent, recovery is barred as a matter of law. In the alternative, any recovery by Plaintiffs must be reduced in proportion to their own percentage of fault or negligence.

199. **Damages – Contract Claims:** To the extent Plaintiffs seek damages for breach of contract, their recovery is limited to direct economic damages representing the benefit of the bargain. Non-economic damages such as mental anguish, pain and suffering, or loss of enjoyment are not recoverable in contract. *See Reed*, 711 S.W.2d at 618–19.

200. **Limitations on Damages for Nonprofit Entity**: To the extent Plaintiffs seek damages against AMS, Defendants assert that any recovery is limited by Texas law. As a nonprofit organization, AMS is not liable for punitive or exemplary damages except as expressly authorized by statute, and any claims for non-economic damages may also be limited. Plaintiffs' damages, if any, are therefore subject to the statutory caps and limitations applicable to nonprofit entities under Texas law.

201. **Failure to Mitigate Damages**: Plaintiffs' claims are barred or limited to the extent that they failed to take reasonable steps to mitigate their alleged damages**.** Any recovery to which

Plaintiffs might otherwise be entitled must be reduced or denied to reflect their own failure to act reasonably to avoid or minimize harm.

202.    **Nonprofit Employees**: To the extent Plaintiffs assert claims against AMS employees in their individual or official capacities, Defendants assert that employees of a nonprofit organization are entitled to protection under Texas law**.** Any claims for actions taken within the course and scope of their employment are barred, limited, or subject to statutory defenses**,** including immunity for discretionary acts and compliance with applicable regulations governing nonprofit operations.

203.    **Treble Damages Unavailable:** Plaintiffs' request for treble damages is improper as a matter of law. Treble damages are authorized only under limited statutory schemes, which are not present here. Plaintiffs have not pleaded any claim under any statute permitting treble damages.

204.    **Medical Expenses – Paid or Incurred Rule:** Any claim for medical expenses is limited to the amounts actually paid or incurred on behalf of Plaintiffs, as required by TEX. CIV. PRAC. & REM. CODE § 41.0105.

205.    **Attorney's Fees**: Plaintiffs have failed to state any statutory entitlement to recover attorney's fees. Even if the Court awards attorney's fees to Plaintiffs, it should further reduce the total awarded pursuant to the "Johnson factors." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir 1974).

206.    **Defendants' Entitlement to Attorneys' Fees**: Defendants assert that, to the extent Plaintiffs' claims are frivolous, legally insufficient, or fail to state a claim, Defendants are entitled to recover reasonable attorneys' fees and costs under applicable Texas law, including TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.*, and any other governing contractual or statutory provisions.

207. **Statutory Caps**: Defendants assert any statutory limitations on suit or liability, including any caps and/or limitations on awards of relief that arise under both federal and state law.

208. **Burden of Proof**: In asserting these defenses, Defendants do not admit that the burden of proving the allegations or denials contained in the defenses is on Defendants, but, to the contrary, assert that the burden of proving the inverse of the allegations contained in any of the defenses is on the Plaintiffs. Defendants assert the right to raise additional defenses that become apparent throughout the continued factual development of this case.

WHEREFORE, Defendants respectfully request that the Court dismiss all claims asserted by Plaintiffs against Defendants with prejudice, award Defendants their reasonable attorneys' fees and taxable costs to the extent permitted by law, and grant Defendants such other and further relief, at law or in equity, as the Court deems just and proper.

Respectfully submitted

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**
Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Elizabeth Angelone*
ELIZABETH ANGELONE
State Bar No. 24077349
Email: eangelone@slh-law.com
RANDEE HOBBS
State Bar No. 24131772
Email: rhobbs@slh-law.com

**ATTORNEYS FOR DEFENDANTS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 15, 2026, a true and correct copy of the foregoing document was served on all counsel of record by filing the same through the Court's CM/ECF system, which will send notification of such filing to all registered CM/ECF users as follows:

WELBORN LAW LLC
1100 West Ave.
Austin, Texas 78701
Amy C. Welborn
amy@welborn-law.com

*/s/ Elizabeth Angelone*
Attorney for Defendants