UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| ROSS PONDER AND SARAH PONDER, INDIVIDUALLY, AND AS NEXT FRIEND OF H.P., L.P., and R.P., MINORS,<br>　　*Plaintiffs*,<br><br>v.<br><br>AUSTIN MONTESSORI SCHOOL, INC.; RONALD GRAE BAKER, INDIVIDUALLY; and JINNY GONZALEZ, INDIVIDUALLY,<br>　　*Defendants*. | §<br>§<br>§<br>§<br>§  CIVIL ACTION NO. 1:25-cv-02020-ADA-SH<br>§<br>§<br>§<br>§<br>§<br>§ |

## JOINT FED. R. CIV. P. 26 REPORT

**1) Are there any outstanding jurisdictional issues? For removed cases based on diversity jurisdiction, do the parties agree that the amount in controversy exceeded $75,000 at the time of removal? If not, each party should state its position on the amount in controversy.**

**Plaintiffs: Jurisdiction is proper in Travis County District Court.**

Plaintiffs filed suit in Travis County District Court. Defendants removed the case. Parties entered into an agreement that the Plaintiffs did not have federal claims and agreed to dismiss the federal claims and remand the case to Travis County District Court. Defendants lead counsel changed to Ms. Elizabeth Angelone. Ms. Angelone refuses to uphold the agreements of the prior lead counsel.

The Parties entered into a contract on or about January 17, 2024, which governs the subject matter of this dispute. It states, "In the event of litigation, the venue of any action hereunder shall lie exclusively within the Circuit Court of Travis County, Texas, and the parties hereto consent to personal jurisdiction and expressly waive all right to trial by jury." Contract states, "Circuit Court," this term means the state trial court. In the federal court system, the Circuit Courts are appellate courts. Since one cannot begin a case in appellate court, it is clear that the state district court of Travis County is the proper forum for this suit.

Moreover, 28 U.S.C. §1404(a) "governs the District Court's decision whether to give effect to the parties' forum selection clause," and the forum-selection clause must be "given controlling weight in all but the most exceptional cases." *Stewart v. Ricoh Corp.*, 487 U.S. 22 (1988), at 32, 33, 108 S.Ct. 2239. Additionally, after an agreement for a forum selection clause is made, "the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of litigation" is waived as the court must determine that "the private-interest factors…weigh entirely in favor of the pre-selected forum." *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

The Parties clearly contractually agreed to a forum of Travis County District Court. While the

Defendants then filed Special Exceptions to non-live pleading and in response, Plaintiffs added additional facts from the prior pleading in a n attempt to provide the detail requested by Defendant counsel Angelone. In doing so, the federal claim that was dismissed by agreement was accidentally added to the pleading. Defendants counsel never spoke with Plaintiffs' counsel about the clerical error. Upon discovering the error, Plaintiffs amended their petition to remove the action. The mistake was taken seriously, and staffing changes have been made.

Regardless, defendants, against the prior agreement of the parties, removed the case back to Federal Court. When filing the removal, Defendants alleged that Plaintiffs were pro se, meaning no notice would be provided to Plaintiffs. Dkt 1.

Plaintiffs, using an online tracking program, discovered that the removal had occurred without notice. Since Defendants' counsel had failed to confer or communicate, Plaintiffs' counsel reached to discuss the agreement of the parties, the mistake, and the Amended Petition that had been filed. Defendants' counsel refused to remand the case. In speaking with her, it was noted that she felt the reference to 504 made it the case a federal claim. As such, in a good faith effort to show that the only claims sought by Plaintiffs are state court claims, Plaintiffs' filed a Motion for Leave to file an Amended Petition. Dkt. 10.

Further, the Plaintiffs received additional information from the Defendants in the recent production subject to the Texas Attorney General Opinion requiring production related to the Texas Department of Health and Human Services investigation. The documents have revealed additional Texas State law violations, including violations of the Texas Deceptive Trade Practices Act. The newly provided investigation documents show that parents were promised transparent and open communication, and the staff were specifically prohibited from sharing observations from the classroom. These specific state claims, along with the other claims Plaintiffs have asserted, are all Texas claims. There are no federal claims.

The case must be remanded to Travis County District Court.

**Defendants:** Defendants removed this action to federal court based on federal question jurisdiction. Dkt. 1. Plaintiffs have since filed their Motion for Leave to File Plaintiffs' Fourth Amended Complaint (Dkt. 7), to which Defendants responded in opposition. Dkt. 9. Plaintiffs subsequently filed their Plaintiffs' Amended Motion for Leave to File Plaintiffs' Fourth/Fifth Amended Complaint (Dkt. 10), to which Defendants have responded. Dkt. 12. Defendants maintain that federal jurisdiction persists regardless of whether leave to amend is granted.

2) **Are there any unserved parties? If more than 90 days have passed since the filing of the Complaint or petition, should these unserved parties be dismissed?**

   **Plaintiffs:** At this time, there are no unserved parties. Through discovery other individual defendants may be named.

   **Defendants:** There are no unserved parties.

2

3)  **What are the causes of action, defenses, and counterclaims in this case? What are the elements of the cause(s) of action, defenses, and counterclaims pled?**

**Plaintiffs: Plaintiffs have alleged no federal claims**. Plaintiffs alleged breach of contract, fraudulent inducement to contract, fraud, negligence, negligence per se, negligent activity, respondent superior, and retaliation for filing the THHS complaint resulting in the Ponders being expelled. See Dkt. 10. All of the claims are state claims based on Texas laws, regulations, and Texas common law.

## Count 1- Negligence

Plaintiffs allege the Texas cause of action for negligence. The elements of negligence are (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately resulting from the breach. *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996). Plaintiffs allege that Defendants were negligent in ensuring the safety of the Ponder children. Plaintiffs allege that Defendants were negligent in supervising the staff and children. Plaintiffs allege that Defendants were negligent in hiring, training and supervising their employees. Plaintiffs allege that Defendants were negligent in failing to adhere to the Texas minimum standards for childcare.

Defendants were negligent in putting HP in a bathroom and leaving him there as punishment. Defendants were negligent in refusing to allow HP to go outside to play and forcing him to sit for hours and clean up lunch. Defendants were negligent in refusing to allow HP access to water as punishment and locking the water bottles away to prevent access to water. HP has suffered severe damages from this and has had to have significant counseling to deal with these torturous punishments.

Defendants were negligent in hiring unqualified staff and failing to train them. Defendant AMS hired Gonzalez and allowed her to medical treat HP. Defendant AMS failed to train the staff in appropriate punishments, how to interact with the children, and proper nap routines. These actions caused Plaintiffs significant damages. Defendants failed to allow the Ponder parents to communicate with the teachers and failed to provide access to critical information regarding their children. This caused prolonged damages to the Ponder children. The Ponder parents suffered injury for the mental distress caused by the refusal to allow them access to information and the repeated discussion from AMS and their staff about adherence to the medical treatment plan created by AMS for undeveloped will.

Defendants failed to train and failed to work with the Ponders and instead required the Ponders to pick up their children as soon as 2 hours after they were dropped off on a regular basis. This negligent training and failure to teach the staff how to work with the children and/or failure to hire sufficient staff to allow the children to stay all day as per the childcare agreements caused the Ponders to miss work and suffer economic damages.

Defendants claim that Plaintiffs have not asserted a duty. Defendants have a duty to protect and safely care for the children un their care under Texas statue, common law and contract. Plaintiffs have specifically asserted the following duties:

3

- The duty to provide care for the Ponder children. By sending the children home and refusing to care for them, Plaintiffs violated this duty.

- The duty to provide for the safety of the children. The Defendants failed to provide for the safety of the children by putting HP in a bathroom as punishment causing him to suffer. HP has suffered emotional distress and must attend counseling to deal with the mental injuries he has suffered.

- The duty to provide information to the parents. Defendants refused to share information regarding the Ponder children in violation of their agreements.

Defendants allege that they did not have a duty to care for and supervise the children at the daycare nor any duties toward their parents. The fact that the Defendants are alleging that they did not have a duty of care for the children it agreed to care for, is both telling and deeply concerning. The facts of the case provide numerous examples of ways that the Defendants breached their standard of care under Texas law.

**Count 2- Negligence Per Se**

The negligence per se claim is an exclusively Texas claim. This claim involves no federal claims. Negligence per se claims are based on the same actions as the negligence claims but essentially argues that because defendants broke specific laws they are "negligent as a matter of law." The violation of the law is in and of itself evidence that the Defendants failed to meet the standard of "reasonable care."

All licensed childcare operations in Texas must meet strict criteria set by Child Care Licensing (CCL), a division of Texas DFPS. Facilities must pass background checks, adhere to fire and health codes, and meet minimum staffing ratios. The state of Texas courts have long held that once a daycare accepts a child into its care, it has a duty to provide a safe environment and avoid foreseeable injury. *Applebaum v. Nemon*, 678 S.W.2d 533, Tex. App.—Houton [14th Dist.—1984, no pet.). Texas has strict "Minimum Standards for Child-Care Centers." These regulations (found in Title 26, Chapter 746) mandate specific child-to-staff ratios, safety equipment, and supervision levels. A violation of these standards is often used as evidence that the daycare breached its duty. Further, by accepting tuition and signing an enrollment agreement, the daycare enters a contract with the parents to provide the services and safety promised in their handbooks and policies.

Defendants breached their duty under 26 Tex. Admin. Code § 746.307 by failing to provide records to the Ponders. The lack of access prevented the children from receiving proper medical treatment and caused the Ponders extreme distress.

Plaintiffs allege the Texas Cause of action for negligence per se for violations of the minimum standards for childcare (Count 2). Specifically Plaintiffs allege that AMS:

4

1. Texas law requires that discipline be positive and encourage self-esteem, self-control, and self-direction. 26 TAC 744.501. Repeatedly, AMS failed to use praise and encouragement, instead using humiliation and rejection with H.P.
2. Texas law has specific maximums on the number of children that can be in a room 26 TAC Sec. 746.1601-1615.  These numbers were exceeded or the Ponder children were sent home to accommodate the new students after the holidays.
3. Accommodations recommended by qualified professionals and medical experts were not provided to H.P. in violation of 26 TAC 746.2202.
4. AMS failed to encourage H.P. to express feelings and failed to give him appropriate attention.  20 TAC 746.2601
5. AMS failed to comply with the regulations regarding naptimes and food service for H.P.  26 TAC Sec. 746.2901-2911; 26 TAC Sec. 746.3301-3321.
6. AMS failed to notify the Ponders that AMS refused to administer or allow students to take ADHD medications in violations of 26 TAC Sec. 746.3811.
7. AMS failed to follow the laws regarding release of children.  26 TAC Sec. 746.4103
8. Having 39 children in a room at naptime.
9. Allowed staff to practice medicine without a Texas license.
10. Defendant Gonzlez practiced medicine without a Texas medical license.

**Count 3- Gross Negligence**

Plaintiffs allege the Texas cause of action of gross negligence.  This claim involves no federal claims. Plaintiffs allege that Defendants conduct rose to the level of gross negligence. Gross negligence includes both objective and subjective components. *Medina v. Zuniga*, 593 S.W.3d 238, 247 (Tex. 2019); *Martinez*, 606 S.W.3d at 463. Gross negligence requires proof that (1) when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the defendant had actual, subjective awareness of the risk involved, but the defendant nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *Medina*, 593 S.W.3d at 247; *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994); TEX. CIV. PRAC. & REM. CODE § 41.001(11).

Plaintiffs allege that the actions the basis of the negligence cause were done intentionally.  Locking a child in the bathroom as punishment and prohibiting access to water involve extreme degree of risk and harm.  Defendants clearly knew of this risk, as both the staff and board were familiar with the dangers, and had attended trainings on these types of risks.

**Count 4- Negligent Activity**

Plaintiffs allege the Texas state law cause of action of negligent activity.  Again, this claim involves no federal claims. The Texas Supreme Court held, "Recovery on a negligent activity theory requires that the person have been injured by or as a

5

contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch v. Kroger Co.,* 845 S.W.3d 262, 264 (Tex. 1992).

Plaintiffs were invitees and were injured on Plaintiffs' premises, including be put in the bathroom as punishment and taking the water bottles away and preventing access to water from Plaintiff children as punishment.

### Count 5- Respondeat Superior

Plaintiffs allege the Texas procedural vehicle of respondeat superior. No federal claims are alleged. Plaintiffs allege that Defendant AMS is responsible for the acts of its employees under the theory of respondeat superior. No federal law claims are asserted. This is not a stand alone cause of action, but simply procedural vehicle to attach liability to an employer for their employee's negligence. *Painter v. Amerime Drilling I, Ltd.,* 561 S.W.3d 125 (Tex. 2018*).* Plaintiffs allege that the actions of Baker, Gonzalez, and other AMS employees were done in the course and scope of their employment.

### Count 6- Breach of Contract

Plaintiffs allege the Texas state law cause of action for breach of contract. Again no federal claims are alleged. The contract is between a Texas company and a Texas family to provide daycare and school services in Texas. Plaintiffs allege that the contract was breached based on the fact that the Plaintiffs paid and contracted to receive full day care for all three children. Defendants did not provide full day care and for the children and required that HP be picked up as early as 10 am. Plaintiffs allege that the Defendants did not provide the contracted for services. Plaintiffs paid for the services and as a result of Defendant AMS's breach, they were forced to pay for additional childcare services.

### Count 7- Fraud

Plaintiffs allege the Texas state cause of action for fraud. No federal claims are alleged. The elements of fraud are: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation intending that the other party act upon it; (5) the party acted in reliance on the representation;  and (6) the party thereby suffered injury. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

Plaintiffs allege that the Defendants defrauded them into enrolling their children and into making payments and re-enrolling the children. Plaintiffs allege that Defendants told Plaintiffs that they would provide schooling in keeping with the Montessori teachings, in keeping with their published promises and that they would provide full day care knowing these statements were false to induce them to contract. Defendants knowingly misrepresented that the Montessori teachings would be followed at the school and made false statements to

get the Ponders to enroll their children.  Plaintiffs paid money to Defendants and had to pay for additional care.  Additionally, the disruption caused damages to their business and work.

Defendants told Plaintiffs that they would be evaluating HP for future enrollment and would not be expelled but instead expelled him without warning and then expelled the remaining children.  This left the children without care.  Plaintiffs had to miss work and hire additional care.  Further this caused extreme anxiety and mental anguish.

**Count 8- Fraudulent Inducement**

Plaintiffs allege the Texas state cause of action for fraudulent inducement to contract.  Again, there are no federal claims.  This involves a contract that was made in Texas, by Texas parties.  Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform.12 Because fraudulent inducement arises only in the context of a contract, the existence of a contract is an essential part of its proof.13 *Anderson v. Durant,* 550 S.W.3d 605, 614.

Again, Plaintiffs allege that Defendants told Plaintiffs that they would provide schooling in keeping with the Montessori teachings, in keeping with their published promises and that they would provide full day care knowing these statements were false to induce them to contract.  Plaintiffs paid money to Defendants and had to pay for additional care.  Additionally, the disruption caused damages to their business and work.

Defendants allege that specific statements were not provided.  However, the pleadings specifically cite to statements about full day care, statements about Montessori teachings, and specific statements on the Defendants websites and in the handbooks that was relied upon.

**Count 9- Retaliation**

Plaintiffs allege the Texas state cause of action for retaliation.  The Ponders retaliation claim is based only in Texas law.  The Ponders allege that their rights under the Texas Constitution were violated because Defendant AMS did not follow its procedures to expel the Ponders.  The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. The provision protects substantive and procedural rights. *Su Inn Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 683-84 (Tex. App.—Amarillo 1998, pet. denied). The Plaintiffs had a property interest in that they paid for the full year of tuition and other costs associated with the school and did so to allow them to have time to go to work and receive childcare.  This is a property and liberty interest under the Texas Constitution.  Plaintiffs were entitled to procedural due process protection under Texas law. *In re G.C.*, 66 S.W.3d 517, 525 (Tex. App.—Fort Worth 2002, no pet.).  This was not followed and the Plaintiffs suffered injury.

Further, under Texas law it is illegal to retaliate for filing a complaint with the state of Texas.  This claim is not a federal claim.  The Ponders reached out to the parent community about their concerns.  Plaintiffs also filed a complaint with TDHHS.  Upon filing the

complaint, the Plaintiffs were expelled. The Texas Bill of Rights for children, Texas Human Resource Code Sec. 42.04271(b)(11). This law states that "A parent or guardian of a childcare facility has a right to be free from retaliatory action by the childcare facility for exercising any of the parent's or guardian's rights." One of those rights is the right to file a complaint against the facility with the TDHHS. This is NOT a claim for Federal Whistleblower Protection Act, the Americans with Disabilities Act (ADA), or Section 504 of the Rehabilitation Act.

Further, Plaintiffs will be amended the petition to add claims for violations of the Texas Deceptive Trade Practices Act.

Defendants have not asserted any counterclaims.

Defendants claim that the Plaintiffs suffered no physical damage. This is blatantly untrue. The medical records proving this were being ordered in Texas case and clearly show the harm to all the children and parents. A person can suffer physical injury without a bruise or bleeding. The anxiety, depression, and extreme psychological damages are real injuries.

**Defendants:**

Based on Plaintiffs' Fourth Amended Petition filed in state court, Plaintiffs have pleaded both contract- and fraud-based claims, as well as negligence-based claims and an unspecified retaliation claim. Specifically, Plaintiffs assert the following: Breach of Contract (Count 8), Fraud (Count 9), Fraudulent Inducement to Contract (Count 10), and Retaliation (Count 11) as contract- and fraudrelated claims, and Negligence (Count 1), Negligence Per Se (Count 2), Gross Negligence (Count 3), Negligent Activity (Count 4), and Respondeat Superior (Count 5) as negligence-related claims. *See* Dkt. 6, pp. 25–33. AMS asserts numerous defenses to Plaintiffs' claims. *See* Dkt. 13. With respect to contract and fraud claims, Plaintiffs fail to allege a breach of any specific contractual term or facts sufficient to satisfy the elements of fraud or fraudulent inducement. Retaliation claims are barred under Texas law, can only arise under federal law, and fail under federal law for insufficient pleading.

Negligence-related claims are barred by the economic loss rule, the discretionary nature of regulatory duties, and the failure to plead independent legal duties. Individual Defendants Baker and Gonzalez acted within the scope of employment and owe no independent duties to Plaintiffs, precluding personal liability.

A.   **Contract and Fraud-Based Claims**

Plaintiffs' breach of contract claim centers on allegations that AMS failed to provide 504 services, a full day of instruction, and compliance with certain school policies. The elements of a breach of contract claim under Texas law are: (1) the existence of a valid contract, (2) Plaintiff's performance or excuse for nonperformance, (3) Defendant's breach of contractual obligations, including adherence to policies, and (4) resulting damages. The written agreement contains no provisions referencing Section 504 services, instructional entitlements, or school policies, and Plaintiffs do not allege breach of any specific contractual term. Defendants assert Texas law does not recognize

8

an implied covenant of good faith and fair dealing in this context, and the parol evidence rule precludes reliance on extrinsic evidence. Moreover, the agreement expressly grants AMS unilateral discretion to suspend or terminate enrollment, withdraw a student if continued attendance is detrimental, and make programmatic decisions based on a student's ability to participate. Plaintiffs also fail to allege actual damages or causation resulting from any alleged breach.

Plaintiffs' claims for fraud and fraudulent inducement are based on alleged misrepresentations concerning enrollment and accommodation-related decisions. To state a viable claim under Texas law, Plaintiffs must allege: (1) a material misrepresentation or omission of fact, (2) knowledge of falsity or reckless disregard for truth, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages resulting from that reliance. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 50–51 (Tex. 1998). Defendants assert Plaintiffs' allegations fail to satisfy the heightened pleading requirements of Rule 9(b), which mandates the identification of the "who, what, when, where, and how" of the alleged misrepresentations. The alleged statements concern prospective enrollment or accommodation decisions made after execution of the contract and therefore do not support a fraudulent inducement theory. Plaintiffs further acknowledge that AMS advised them to independently retain an occupational therapist, reflecting that AMS would not provide such services. Plaintiffs also fail to establish that AMS receives federal funds, and AMS is not subject to Section 504.

Plaintiffs additionally assert a retaliation claim based on complaints to HHS, alleging retaliation and disability discrimination. Texas law does not recognize a standalone cause of action for parental retaliation against a private daycare provider, and any such claim must arise, if at all, under federal law, including the Federal Whistleblower Protection Act, the Americans with Disabilities Act (ADA), or Section 504 of the Rehabilitation Act. Even under federal law, Plaintiffs fail to plead sufficient facts to state a plausible claim.

**B.      Negligence-Based Claims**

Plaintiffs' negligence claims, including negligence, negligence per se, gross negligence, and negligent activity, arise entirely from the alleged failure to perform under the parties' contract. Under Texas law, the economic loss rule bars tort recovery where the alleged harm is purely economic loss stemming from contractual expectations. *See Heller Fin., Inc. v. Grammco Computer Sales, Inc.*, 71 F.3d 518, 527 (5th Cir. 1996); *Chapman Custom Homes, Inc.*, 445 S.W.3d 716, 718 (Tex. 2014). Defendants assert Plaintiffs have not identified any actionable independent legal duty owed by AMS outside of the contractual relationship, and thus their negligence-based claims fail as a matter of law.

Negligence Per Se (Count 2) claims are also deficient. Texas law requires that a statute or regulation impose a specific, non-discretionary duty for negligence per se to apply. Defendants assert the provisions cited by Plaintiffs involve discretionary decision-making or professional judgment. *See Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App.— Texarkana 2002, pet. denied); *Miranda-Lara v. Rebert*, 2020 WL 5099968, at *4 (Tex. App.— Beaumont Aug. 31, 2020). Plaintiffs fail to identify any clear statutory violation or resulting harm.
Moreover, Texas law does not provide a private civil cause of action for certain alleged regulatory violations, including the unauthorized practice of medicine or discretionary child-care rules, and Plaintiffs therefore lack standing to assert negligence per se claims based on these statutes. *See*

*Aguirre v. Tristar Risk Mgmt.*, No. C-10-394, 2011 WL 248199, at *6 (S.D. Tex. Jan. 24, 2011); *Patel v. Rios*, No. 01-20-00856-CV, 2022 WL 3649348, at *7 (Tex. App.—Houston [1st Dist.] Aug. 25, 2022, pet. denied).

Gross negligence requires extreme risk of serious injury and conscious disregard of that risk. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1988). Defendants assert Plaintiffs fail to plead facts sufficient to meet this standard. Similarly, negligent activity claims require an ongoing, contemporaneous negligent act directly causing injury, which Plaintiffs do not allege. *See Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016); *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). Respondeat superior is not an independent cause of action but a theory of vicarious liability. *See Baptist Memorial Hospital System v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). To the extent Plaintiffs assert such a claim independently, Defendants assert it fails as a matter of law.

Austin Montessori School ("AMS") is a private, nonprofit educational organization. As a qualifying charitable organization under the Texas Charitable Immunity and Liability Act, TEX. CIV. PRAC. & REM. CODE, Ch. 84, AMS and its employees are immune from liability for acts of ordinary negligence committed in good faith and within the scope of their duties. *See* id. §§ 84.004(a), 84.005. This immunity extends to officers, trustees, and employees acting within the course and scope of their employment. Only acts that are intentional, willfully negligent, or done with conscious indifference or reckless disregard fall outside the statutory protections. Accordingly, any claims pled by Plaintiffs for negligence, negligence per se, gross negligence, or related tort theories are subject to dismissal to the extent they allege ordinary negligence by AMS or its employees. This immunity constitutes a substantive defense to Plaintiffs' negligence-based causes of action and establishes statutory limitations on damages and recovery, including a maximum recovery per injured person.

**C.   Additional Defenses**

AMS, as a 501(c)(3) charitable organization, is also entitled to statutory immunity and damage caps under the Texas Charitable Immunity and Liability Act, TEX. CIV. PRAC. & REM. CODE §§ 84.004(a), 84.005, 84.007(a).

Plaintiffs' requests for attorneys' fees on state law claims are barred under TEX. CIV. PRAC. & REM. CODE §38.001(b), which prohibits recovery of attorneys' fees against charitable organizations.

**D.   Counterclaims**

Defendants have not asserted any counterclaims in this matter at this time.

**4)   Are there any agreements or stipulations that can be made about any facts in this case or any element in the cause(s) of action?**

**Plaintiff:**

> The contract confers an agreement that the case must be brought in Travis County District Court and be heard by a Travis County District Judge.
>
> The parties agreed that the only claims in the case are state court claims related to Texas law. The parties agreed to remand the case to state court. The parties agreed that the federal count related to 504 were not relevant to the case at hand. (There was no request for ADHD accommodations for HP because he was expelled.)
>
> The claims surrounding the diagnosis sound in Texas law, as they are for the improper diagnosis of the alleged medical condition "undeveloped will" and the subsequent treatment of same by AMS by unlicensed staff and management.) As expressed above ALL claims are state law claims. There are no federal claims and as per the agreements of the parties this case should be remanded. Unfortunately, upon a change in lead counsel for Defendants, the Defendants went back on their agreement and will no longer honor the prior agreement of the parties regarding jurisdiction of this matter.
>
> Further, parties agreed to follow the contract between the parties. This included the specific jurisdiction provision that required the matter be brought in Travis County District Court and the jury demand. When Defendants counsel reached out to ask about the jury demand, Plaintiffs' counsel stated that thy agreed to follow the contract and as per the contract the right to a jury trial was waived. However, Defendants counsel will not agree to abide by the prior agreement regarding the jurisdiction in Travis County District Court, as per the contract. Defendants seek to enforce part of the agreement as it relates to the jury waiver but refuse to agree to the prior agreement and contract terms as it relates to jurisdiction. Plaintiffs have agreed that they will remove the jury demand when the case is remanded to state court.

**Defendants:**

The parties have addressed the issue of a jury trial in this case. Defendants assert that the parties contractually waived their right to a jury trial in the enrollment agreement. Dkt. 15. Plaintiffs have expressed their agreement to withdraw their jury demand; consequently, Defendants have filed a motion to strike the jury demand, which remains pending. Id. No other agreements or stipulations have been made.

**5)     State the parties' views and proposals on all items identified in Fed. R. Civ. P. 26(f)(3).**

**Plaintiffs:**

> Plaintiffs have received disclosures in the state court matter but received limited documents from Defendants. Discovery was sent in the State Court case but immediately before the due date, Defendants removed the case for. Second time. Defendants counsel refuses to speak to counsel for Plaintiffs, making any efforts to confer or discuss impossible.

11

(A) Defendants will seek to compel the required documents under the Texas disclosure rules upon the case being remanded to state court.   (B) Discovery will be needed on the following topics:
1. The punishment given to the Ponder children
2. The punishment of HP by putting him in a bathroom.
3. The refusal to allow access to water for drinking and locking up water bottles.
4. The expulsion policies of Defendant AMS and the application of same.
5. The handbooks and policies of AMS.
6. The determination to only allow HP to attend for a limited period, sometimes as little as 2 hours.
7. The unlawful practice of medicine in violation of Texas law and the treatment of the "undeveloped will."
8. The refusal and policies regarding communication to parents and access to records.
9. The compliance and violations associated with Texas regulations and laws regarding day care facilities.
10. The events that gave rise to the contracts for services.
11. The website and the policies and promises made.
12. The statements and decisions made by AMS board, administration and teachers related to the Ponders.
13. The use of the What' App group for parents.
14. The modalities of treatment that Defendants required Plaintiffs to obtain.
15. Plaintiffs have obtained medical records via depositions on written questions in the State court matter.  There are five Plaintiffs and multiple providers.  Defendants are seeking to limit the number of depositions to include medical providers and depositions on written question. To do so would make it impossible for Plaintiffs to even obtain the medical records necessary to prove their damages.

Plaintiffs believe that the case should be remanded to state court and Texas discovery rules apply.  The five plaintiffs have multiple medical records and the records for each party must be sought separately.  As such, limits should not include medical records.

(C) Plaintiffs have not received significant documents and at this time.  Plaintiffs sent preservation letters to attempt to prevent evidence from being destroyed by third parties, board members and employees.
(D) Plaintiffs request that the standard protections are made regarding children, medical records, and personal information such as bank accounts and social security numbers.
(E) The case involves only state claims.  As such, additional discovery will be necessary to show the violations of these state law claims in federal court.
(F) The Plaintiffs request that the Defendants be compelled to produce the documents responsive to the disclosures and if they fail to do so that their pleadings be struck.

**Defendants:**

12

Defendants' counsel has not "refused" to talk with Plaintiffs' counsel. Based on the parties' conference and the status of discovery to date, the parties have exchanged their Texas Rule 194 initial disclosures before mediation. On November 12, 2025, Plaintiff Ross Ponder served AMS with **110 Requests for Admission** (RFAs) and **50 Requests for Production (RFPs)**, and has served no fewer than **23 Deposition Witness Questionnaires (DWQs)** to third parties, and a litigation hold letter to AMS's parents. Defendants contend that this volume of discovery is disproportionate and burdensome and propose reasonable limits consistent with FED. R. CIV. P. 26(b)(1) and proportionality principles.

Defendants' request for discovery in this case should be focused on matters relevant to the claims and defenses, including the terms and execution of the enrollment agreement, communications regarding enrollment and accommodation decisions, alleged retaliation or disability discrimination, negligence claims, and Plaintiffs' claimed damages. Defendants further propose that discovery of electronically stored information (ESI) be limited to communications and records directly related to these subjects, with metadata preserved as necessary to authenticate records, and that production be proportional to the needs of the case. Plaintiffs may seek broader discovery regarding AMS policies, employee communications, and operational decisions, including matters raised in the Fourth Amended Petition.

With respect to claims of privilege and work-product protection, Defendants intend to assert attorney-client and work-product privileges as appropriate and propose the use of standard privilege logs under FED. R. CIV. P. 26(b)(5). Plaintiffs may request production of documents subject to privilege assertions, subject to standard dispute resolution procedures.

Defendants propose reasonable limits on discovery consistent with Fed. R. Civ. P. 26(b)(1) and proportionality principles. Defendants assert discovery to date has been excessive. On November 12, 2025, Plaintiffs served AMS with 110 Requests for Admission (RFAs)**,** 50 Requests for Production (RFPs)**,** and no fewer than 23 Deposition Witness Questionnaires (DWQs) to both parties and third parties. Defendants propose the following limits per side:

- **RFAs:** 110;
- **RFPs:** 50;
- **Interrogatories (Rogs):** 25;
- **Depositions:** 30 total, including all depositions of parties and any DWQs served on third parties;
- Third-party discovery limited to witnesses or entities directly relevant to the claims and defenses;
- Requests that are duplicative, cumulative, or disproportionate to the needs of the case may be objected to.

Finally, Defendants request that the Court consider issuing further discovery-management orders to prevent undue burden, protect privileged or confidential information, and limit discovery on claims barred as a matter of law, such as state-law retaliation, negligence per se, and attorneys' fees claims, unless Plaintiffs can identify factual disputes supporting such claims. Plaintiffs may oppose such limitations to ensure access to discovery on all allegations in the Fourth Amended Petition.

**6) What, if any, discovery has been completed? What discovery remains to be done? Have the parties considered conducting discovery in phases?**

**Plaintiffs:**

The parties exchanged their Texas Rule 194 of Civil Procedure initial disclosures before participating in mediation. Limited documents were produced. These documents were not all documents responsive to the RFD. Plaintiffs have sent discovery in the state court case. Instead of responding Defendants removed this case for a second time, against the agreement of the parties.
Plaintiffs have served third-party subpoenas on former employees and some parents. Plaintiffs have sent litigation hold letters to board members, current employees, and staff. Plaintiffs intend to depose all Defendants, HP's teacher Lesley, and possibly other staff. We may also depose the school founder, other parents, and assistant teachers. Plaintiffs have sent depositions on written questions on each Plaintiff to each medical provider in the state court matter. We will need to collect additional information and experts will be designated.

**Defendants:**

The parties exchanged their Texas Rule 194 of Civil Procedure initial disclosures before participating in mediation. On November 12, 2025, Plaintiff Ross Ponder additionally served Defendant AMS with 106 Requests for Admissions and 40 Requests for Production. Plaintiffs have served no less than 23 DWQs to third parties, along with an improper "prelitigation hold" letter to AMS parents. *See* Dkt. 14. Should this case survive the motion to dismiss stage, Defendants intend to serve RFPs, RFAs, and Rogs to Plaintiffs and will likely also seek to depose Plaintiffs' Ross and Sarah Ponder, their identified experts, and medical and mental health providers identified by Plaintiffs.

**7)     What, if any, discovery disputes exist?**

**Plaintiffs:**

The case should be remanded to the state court, as all claims are state matters. Plaintiff anticipates filing a motion to compel in state court regarding the discovery that was not answered. It is clear that Defendants removed the matter to federal court, against the agreement of the parties and without any communication with Plaintiffs' counsel to avoid responding to discovery.

Parties disagree on the limits of discovery. Defendants are attempting to limit the discovery to prevent Plaintiffs from proving damages.

Defendants have a Motion for protection related to the litigation hold letters that were properly sent to persons who may hold key documents in this litigation.
**Defendants:**

Defendants will not respond to Plaintiffs' scandalous and unsupported assertions at this time. On or about January 15, 2026, Plaintiffs served a "pre-litigation" hold letter to numerous existing parents of children enrolled in AMS, demanding that they preserve certain documents and

14

attaching a copy of the proposed Fourth/Fifth Amended Complaint. Defendants contend that these letters are improper and constitute an attempt to involve third parties who are not parties to this litigation. Defendants filed a motion for a protective order and to strike Plaintiffs' litigation hold letters. Dkt. 14. That motion remains pending.

Defendants maintain that any communication with non-parties regarding discovery obligations should be limited and coordinated to avoid undue burden or confusion, and that preservation efforts should be conducted under appropriate court guidance and with the proper use of third-party subpoenas.

**8)    Have the parties discussed the desirability of filing a proposed order pursuant to Federal Rule of Evidence 502?**

**Plaintiffs:**

Despite Plaintiffs' counsel's numerous attempts to communicate with counsel for Defendants, Defendants counsel refuses to communicate. As such, it has been impossible to discuss any matters in this case.

Further, Defendants refused to stand by the agreement that the case be remanded to state court and the only state claims remain. See, Motion to Remand (Dkt 10). While due to a clerical error a federal claim was inadvertently listed, the pleading was amended as soon as it was discovered, and no federal claims remain. Regardless, Defendants have asserted that Plaintiffs must seek federal clams and removed the case, asserting that the Plaintiffs were pro se, to prevent notice from being sent to Plaintiffs. See, Dkt 1. As such, Plaintiffs' clearly have cause to believe that Defendants may not respect an agreement of the parties.

That being said, Plaintiffs are willing to enter into a standard protective order.

    **Defendants:**

Defendants seek to enter a 502(d) order to preserve privilege protections and avoid waivers for inadvertently produced documents during discovery, and allow the parties to claw back privileged or protected materials without waiving applicable privileges or protections. The parties intend to confer further and, if agreement is reached, submit a joint proposed 502(d) order for the Court's consideration. Defendants are not opposed to the entry of a confidentiality order.

**9)    Have the parties discussed mediation?**

**Plaintiffs:**

The parties participated in mediation with Jeff Jury of Lakeside Mediation Center on October 9, 2025. Plaintiffs continue to communicate with Mr. Jury to attempt to come to a resolution of this matter. Plaintiffs believe that continuing to work with Mr. Jury and even a possible mediator's proposal would be beneficial and could lead to resolution.

**Defendants:**

The parties participated in mediation with Jeff Jury of Lakeside Mediation Center on October 9, 2025, and were unsuccessful. Defendants do not believe additional mediation would be fruitful at this time.

        Respectfully submitted,

**WELBORN LAW LLC**
1100 West Ave.
Austin, Texas 78701
Telephone: (512) 825-3390

By: */s/ Amy C. Welborn*
Amy C. Welborn
State Bar No. 24012853  amy@welborn-law.com
**ATTORNEY FOR PLAINTIFFS**

   -AND-

**SCHULMAN, LOPEZ, HOFFER & ADELSTEIN, LLP**
Travis Building
9011 Mountain Ridge Dr., Suite 210
Austin, Texas 78759
Telephone: 512-840-0022
Facsimile: 210-538-5384

By: */s/ Elizabeth Angelone*
ELIZABETH ANGELONE
State Bar No. 24077349
Email: eangelone@slh-law.com
RANDEE HOBBS
State Bar No. 24131772
Email: rhobbs@slh-law.com
**ATTORNEYS FOR DEFENDANTS**